**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **STRAGENT, LLC,**<br><br>          Plaintiff,<br><br>     v.<br><br>**BMW OF NORTH AMERICA, LLC, and BMW MANUFACTURING CO., LLC,**<br><br>          Defendants. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement in which Plaintiff Stragent, LLC ("Plaintiff" or "Stragent") complains against Defendants BMW of North America, LLC and BMW Manufacturing Co., LLC, all upon information and belief, as follows:

**THE PARTIES**

1. Plaintiff Stragent is a limited liability company existing under the laws of the State of Texas.

2. Defendant BMW of North America, LLC ("BMW NA") is a limited liability company organized under the laws of Delaware, with its registered office located at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801, and having a place of business at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677.  BMW NA is a wholly owned subsidiary of BMW (US) Holding Corp., a holding entity, which in turn is a wholly owned subsidiary of Bayerische Motoren Werke AG ("BMW AG").  MINI USA, the distributor for the Mini brand of automobiles, is a division of BMW NA.

3. Defendant BMW Manufacturing Co., LLC ("BMW MC") is a corporation

organized under the laws of Delaware, with its registered office located at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801, and having a place of business at 1400 Highway 101 South, Greer, South Carolina 29651.  BMW MC is a wholly owned subsidiary of BMW (US) Holding Corp., which in turn is a wholly owned subsidiary of BMW AG.

4. BMW AG is based in Munich, Germany, and is the parent company of the BMW Group, which comprises BMW AG itself and all subsidiaries over which BMW AG has either direct or indirect control.  The BMW Group encompasses entities in the Automotive, Motorcycles and Financial Services operating segments operating in about 140 countries and employing a workforce of about 134,682 people.  BMW NA and BMW MC are part of the BMW Group.

5. BMW NA markets all BMW-branded and Mini-branded automobiles in this country.  BMW MC manufactures certain BMW cars in South Carolina, which it then transfers to BMW NA to market in this country, or to export to other countries.

6. The automobiles which are manufactured by BMW MC, whether sold in this country or exported, and all BMW-branded and Mini-branded automobiles used, offered for sale, sold or imported by BMW NA, since July 11, 2017, the date Patent No. 9,705,765 issued, are collectively referred to here as "BMW Autos" or as "Accused Instrumentalities."

## JURISDICTION AND VENUE

7. This is an action for patent infringement arising under the patent laws of the United States of America, 35 U.S.C. § 1, et seq., including 35 U.S.C. § 271.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8. This Court has general and specific personal jurisdiction over Defendants because

both Defendants reside in the State of Delaware.

9. Venue is proper in this judicial district as to each Defendant under 28 U.S.C. § 1400(b) because both Defendants reside in this judicial district.

## DEFENDANTS' USE OF AUTOSAR TECHNOLOGY

10. AUTOSAR (AUTomotive Open System ARchitecture) is an enabling technology, and, particularly, a layered system for sharing information in an automobile vehicle, which has been standardized by a worldwide development partnership of vehicle manufacturers, suppliers and other companies from the electronics, semiconductor and software industry. AUTOSAR comprises, among other things, a set of specifications describing software architecture components and defining their interfaces. The AUTOSAR standards facilitate the exchange and update of software and hardware over the service life of a vehicle by providing a common software infrastructure for automotive systems of all vehicle domains based on standardized interfaces for the different software layers. E.g. the software in a control module is stored at different levels. Highest up is the actual application that is unique to the different car manufacturers. The application corresponds to a certain function and means that something must finally be carried out. Execution is performed by the processor (Micro controller) generating an electrical output signal. But before the applications request reaches the processor, it (i.e. the request) must be managed by the different parts of the software. Communication between these software parts is now standardized according to guidelines from AUTOSAR. This means that the supplier supplies the control module with software that works directly with the car manufacturer's application. All control modules connected to FlexRay and CAN networks contain software components corresponding to AUTOSAR's specifications. AUTOSAR's specifications also apply to communication that occurs via FlexRay and CAN networks.

11. The BMW Group is a Core Partner in the AUTOSAR consortium. The first BMW automobiles incorporating the Autosar technology were the 2009 model year BMW Series 7. Since then, Autosar has become the standard in all BMW automobiles. Simon Furst, General Manager Software Development and Software Infrastructure for BMW AG, confirmed that AUTOSAR has been implemented as the core common requirement of all electronic control units of all BMW automobiles, or, in Mr. Furst's words: "ONE ARCHITECTURE. ONE STANDARD. AUTOSAR." Dr. Furst's presentation indicates that BMW has incorporated the entirety of the Autosar standard relevant to, at least, the Controller Area Network ("CAN"), FlexRay and Ethernet networks. There have been several releases of AUTOSAR. The AUTOSAR Releases are backward-compatible, and any differences in the releases do not affect the application of the Autosar standard to the BMW Autos.

12. In the period from July 11, 2017, all BMW Autos that have been made, used, offered for sale, sold or imported into this country (including the X1, X2, X3, X4, X5, X6, X7, i3, i8, The BMW 2, 3, 4, 5, 7, 8 Series, Z4 and M Models, as well as BMW's Mini-branded automobiles) have incorporated the Autosar technology.

13. The Autosar systems in BMW Autos include a number of automotive electronic control units ("ECUs"), at least many of which are provided by third-party manufacturers. The ECUs comprise Autosar-related software provided by the BMW Group and software that is specified by the BMW Group, and specifically (a) the Autosar stack, which is the Autosar basic software ("BSW") including the microcontroller abstraction layer and run time environment according to Autosar ver. 4.x.x; (b) BMW Autosar Core 4, which consists of the BMW System Software and a compatible Autosar Stack; and (c) BMW System Software, which denotes the BMW specific parts of the BMW Autosar Core 4 as well as related software specifications,

documentations, software tools, exemplary build environment and tests.  Dr. Furst stated in his presentation: "Common requirements and features to all OEMs shall be standardized in Autosar," and that "BMW takes the AUTOSAR stack as base to develop and integrate all BMW specific functionalities, called 'BMW system functions', on top," displaying an image of the BMW Autosar implementation:



Dr. Furst continued: "BMW [i] delivers all BMW specific platform software parts as source code for series development; [ii] delivers an example configuration and  a free license for the make/build system; [and iii] delivers the SW-Cs in serial production quality and supports them during the whole lifecycle."

14. Thereafter, the ECU manufacturer will substitute its own Autosar Stack, but BMW requires that the Stack be compliant with the Autosar 4.x.x. standard, or as Dr. Furst stated, the ECU provider "Has to ensure that 'his' stack is compliant to the required AUTOSAR version."  The ability to transmit data by way of AUTOSAR is an essential feature and function

of BMW Autos.

       15.    Although, as noted above, it is apparent that all BMW Autos comprise the Autosar systems specified by the BMW Group, it is impossible to determine the Autosar detail for any given BMW Auto. The reason is that the Autosar details are embedded in the firmware of the various ECUs of the BMW Auto, and at least many of the ECUs in BMW Autos are VIN-specific. That firmware information cannot be extracted from the ECUs. Further, the BMW Group has maintained its implementation of Autosar as a trade secret, and it is not possible to determine from publicly-available information the actual implementations of Autosar in BMW Autos, at least beyond the information that the BMW Group has generally implemented the full Autosar Release 4.x.x. Thus, for example, one can consider BMW Part MEVD172G, which is the Basic Control Unit DME:



       16.    The part is manufactured by Bosch, pursuant to the BMW Group's specifications, and is apparently incorporated into certain models. Part MEVD172G has included the Infineon TriCore TC1797 32-Bit Single-Chip Microcontroller:



The chip is designed to be compatible with Autosar for use in engine and transmission control units, and includes, for example, both flash and Ram memory, both CAN and FlexRay channels/modules, serial interfaces, and on-chip debug support. Nevertheless, it is impossible to credibly deconstruct the chip in the ECU to determine the software embedded in the chip. This illustrates the impossibility of determining the exact software that the BMW Group had specified for any particular ECU or automobile.

## COUNT I

### INFRINGEMENT OF U.S. PATENT NO. 10,248,477

17. Plaintiff realleges and incorporates by reference the paragraphs 1 through 16 of this Complaint, as if fully set forth herein.

18. Plaintiff is the owner by assignment of United States Patent No. 10,248,477 entitled "System, Method and Computer Program Product for Sharing Information in a Distributed Framework" ("the '477 Patent"). The '477 Patent was duly and legally issued on

April 2, 2019.  A true and correct copy of the '477 Patent is attached as Exhibit A.  Plaintiff holds the exclusive rights to bring suit with respect to any past, present, and future infringement of the '477 Patent.

19. The '477 Patent claims are materially different from the claims that had been considered in *Inter Partes* Reviews IPR2017-00676, IPR2017-00677, IPR2017-00457, IPR2017-00458, IPR2017-01503, IPR2017-01502, IPR2017-01504, 2017-01519, IPR2017-01520, IPR2017-01521; 2017-01522, which collectively involved Patent 8,209,705 claims 1-20, and Patent 8,566,843 claims 1-59 (collectively "Prior IPRs").  As one simple example, the '477 Patent claim 1 specifies a "layered system for sharing information," wherein the information is stored and, thereafter, the system "share[s] the stored information with at least one of a plurality of heterogeneous processes including at least one process associated with a second physical network selected from the group consisting of FlexRay, Controller Area Network, and Local Interconnect Network, utilizing a network protocol different from a protocol of the first physical network," which limitations were not included in the claims considered in the Prior IPRs.

20. During the prosecution of the applications leading to the '477 Patent, applicant cited to the Patent Office all the prior art that was raised during the course of the Prior IPRs, and advised the Patent Office of the Prior IPR proceedings, including that "The above cited inter partes reviews have received final written decisions rendering all challenged claims unpatentable."

21. Defendants have directly infringed at least claim 1 of the '477 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing Accused Instrumentalities, on and after April 2, 2019, without license or authority.  Any Accused Instrumentalities containing at least one ECU that operates according to, or in

compliance with, Autosar 4.x.x standards inherently and necessarily infringes the claims of the '477 Patent. Infringement is demonstrated by the preliminary claim chart attached as Exhibit E to this Complaint which compares the limitations of exemplary claim 1 of the '477 Patent against the Accused Instrumentalities. Defendants are also believed to infringe claims 2, 4-6, 9-13, 15-17, 20-24, and 26-30 of the '477 Patent, which will be determined once Plaintiff has an opportunity for discovery, including receipt of Defendants' core documents.

22. Plaintiff and Defendants have previously litigated U.S. Patents 8,209,705 and 8,566,843, which are patents which issued from a common application and are related to the '477 Patent. In that prior litigation, Defendants never produced any evidence that the Accused Instrumentalities were not practicing Autosar and/or were not infringing the claims of U.S. Patents 8,209,705 and 8,566,843. If such evidence had existed, Defendants would have disclosed such evidence to Plaintiff, because such proof would have been sufficient to avoid the cost of the prior or future litigations. Thus, Defendants' inability to identify any limitation in the Plaintiff's asserted patents that is not found in Autosar or in Defendants' automotive vehicles is an eloquent admission by Defendants that the implementation of Autosar infringes the claims of Plaintiff's asserted patents and that Defendants are knowingly infringing.

23. Defendants' acts of infringement have caused and continue to cause damage to Plaintiff. Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful acts.

## COUNT II

### DIRECT INFRINGEMENT OF U.S. PATENT NO. 10,031,790

24. Plaintiff realleges and incorporates by reference prior paragraphs 1 through 16 of this Complaint, as if fully set forth herein.

25. Plaintiff is the owner by assignment of United States Patent No. 10,031,790 ("the '790 Patent") entitled "System, Method and Computer Program Product for Sharing Information in a Distributed Framework." The '790 Patent was duly and legally issued on July 24, 2018. A true and correct copy of the '790 Patent is attached as Exhibit B. Plaintiff holds the exclusive rights to bring suit with respect to any past, present, and future infringement of the Patent.

26. The '790 Patent claims are materially different from the claims that had been considered in the Prior IPRs. Further, during the prosecution of the applications leading to the '790 Patent, applicant cited to the Patent Office all the prior art that was raised during the course of the Prior IPRs, and advised the Patent Office of the Prior IPR proceedings, including that "The above cited inter partes reviews have received final written decisions rendering all challenged claims unpatentable."

27. Defendants have been and now are directly infringing at least claim 15 of the '790 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing BMW Autos without license or authority. Any BMW Auto containing at least one ECU that operates according to, or in compliance with, Autosar 4.x.x standards inherently and necessarily infringes the claims of this Patent. Infringement is demonstrated by the preliminary claim chart attached as Exhibit F to this Complaint which compares the limitations of exemplary claim 15 of the '790 Patent against the Accused Instrumentalities. Further, Defendants' BMW Autos may also be infringing claims 1, 2, 11, 13 and 26, which will be determined once Plaintiff has an opportunity for discovery, including receipt of Defendants' core documents.

28. Defendants have been aware of the '790 Patent and its application to BMW Autos since at least June 22, 2018, when Plaintiff delivered a notice letter to Defendants' counsel,

advising Defendants of the about-to-issue application for the '790 Patent, together with a claim chart demonstrating how BMW Autos fell within the scope of at least the allowed application claim 50, which is now claim 15 of the '790 Patent.

29. Defendants' response to the above letter of June 22, 2018 never identified any limitation of the '790 Patent that was missing or could not be found in the Accused Instrumentalities. Further, Plaintiff and Defendants have previously litigated U.S. Patents 8,209,705 and 8,566,843, which are patents which issued from a comm on application and are related to the '790 Patent. In that prior litigation, Defendants never produced any evidence that the Accused Instrumentalities were not practicing Autosar and/or were not infringing the claims of U.S. Patents 8,209,705 and 8,566,843. If such evidence had existed, Defendants would have disclosed such evidence to Plaintiff, because such proof would have been sufficient to avoid the cost of the prior or future litigations. Thus, Defendants' inability to identify any limitation in the Plaintiff's patents that is not found in Autosar or in Defendants' automotive vehicles is an eloquent admission by Defendants that the implementation of Autosar infringes the claims of Plaintiff's asserted patents and that Defendants are knowingly infringing. Defendants' acts of infringement have been willful.

30. Defendants' acts of infringement have caused and continue to cause damage to Plaintiff. Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful acts.

## COUNT III

### DIRECT INFRINGEMENT OF U.S. PATENT NO. 10,002,036

31. Plaintiff realleges and incorporates by reference prior paragraphs 1 through 16 of this Complaint, as if fully set forth herein.

32. Plaintiff is the owner by assignment of United States Patent No. 10,002,036 ("the '036 Patent") entitled "System, Method and Computer Program Product for Sharing Information in a Distributed Framework." The '036 Patent was duly and legally issued on June 19, 2018. A true and correct copy of the '036 Patent is attached as Exhibit C. Plaintiff holds the exclusive rights to bring suit with respect to any past, present, and future infringement of the Patent.

33. The '036 Patent claims are materially different from the claims that had been considered in the Prior IPRs. Further, during the prosecution of the applications leading to the '036 Patent, applicant cited to the Patent Office the Prior IPRs and all the prior art that was raised during the course of the Prior IPRs.

34. Defendants have been and now is directly infringing at least claim 1 of the '036 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing the Accused Instrumentalities without license or authority. Any Accused Instrumentalities containing at least one ECU that operates according to, or in compliance with, Autosar 4.x.x standards inherently and necessarily infringes the claims of the '036 Patent. Infringement is demonstrated by the preliminary claim chart attached as Exhibit G to this Complaint which compares the limitations of exemplary claim 1 of the '036 Patent against the Accused Instrumentalities. Further, the Accused Instrumentalities may also be infringing claims 2-127, which will be determined once Plaintiff has an opportunity for discovery, including receipt of Defendants' core documents.

35. Defendants have been aware of the '036 Patent and its application to the Accused Instrumentalities since at least June 22, 2018, when Plaintiff delivered a notice letter to Defendants' counsel, advising Defendants of the '036 Patent, together with Exhibit G which demonstrated how the Accused Instrumentalities fell within the scope of claim 1 of the '036

Patent.

36. Defendants' response to the above letter of June 22, 2018 never identified any limitation of the '036 Patent that was missing or could not be found in the Accused Instrumentalities. Further, Plaintiff and Defendants have previously litigated U.S. Patents 8,209,705 and 8,566,843, which are patents which issued from a common application and are related to the '036 Patent. In that prior litigation, Defendants never produced any evidence that the Accused Instrumentalities were not practicing Autosar and/or were not infringing the claims of U.S. Patents 8,209,705 and 8,566,843. If such evidence had existed, Defendants would have disclosed such evidence to Plaintiff, because such proof would have been sufficient to avoid the cost of the prior or future litigations. Thus, Defendants' inability to identify any limitation in the Plaintiff's asserted patents that is not found in Autosar or in Defendants' automotive vehicles is an eloquent admission by Defendant that the implementation of Autosar infringes the claims of Plaintiff's asserted patents and that Defendant is knowingly infringing. Defendants' acts of infringement have been willful.

37. Defendants' acts of infringement have caused and continue to cause damage to Plaintiff. Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful acts.

## COUNT IV

### DIRECT INFRINGEMENT OF U.S. PATENT NO. 9,705,765

38. Plaintiff realleges and incorporates by reference prior paragraphs 1 through 9 of this Complaint, as if fully set forth herein.

39. Plaintiff is the owner by assignment of United States Patent No. 9,705,765 ("the '765 Patent") entitled "System, Method and Computer Program Product for Sharing Information

in a Distributed Framework." The '765 Patent was duly and legally issued on July 11, 2017. A true and correct copy of the '765 Patent is attached as Exhibit D. Plaintiff holds the exclusive rights to bring suit with respect to any past, present, and future infringement of the Patent.

40. The '765 Patent claims are materially different from the claims that had been considered in the Prior IPRs. Further, during the prosecution of the applications leading to the '765 Patent, applicant cited to the Patent Office the Prior IPRs and all the prior art that was raised during the course of the Prior IPRs.

41. Defendants have been and now is directly infringing at least claim 1 of the '765 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing the Accused Instrumentalities without license or authority. Any Accused Instrumentalities containing at least one ECU that operates according to, or in compliance with, Autosar 4.x.x standards inherently and necessarily infringes the claims of this Patent. Infringement is demonstrated by the preliminary claim chart attached as Exhibit H to this Complaint which compares the limitations of exemplary claim 1 of the '765 Patent against the Accused Instrumentalities. Further, the Accused Instrumentalities may also be infringing additional claims, which will be determined once Plaintiff has an opportunity for discovery, including receipt of Defendants' core documents.

42. Defendants have been aware of the '765 Patent and its application to the Accused Instrumentalities since at least June 22, 2018, when Plaintiff delivered a notice letter to counsel, advising Defendants of the '765 Patent, together with a claim chart demonstrating how the Accused Instrumentalities fell within the scope of claim 1 of the '765 Patent.

43. Defendants' response to the above letter of June 22, 2018 never identified any limitation of the '765 Patent that was missing or could not be found in the Accused

Instrumentalities.  Further, Plaintiff and Defendants had previously litigated U.S. Patents 8,209,705 and  8,566,843, which are patents which issued from a common application and are related to the '765  Patent.  In that prior litigation, Defendants never produced any evidence that the Accused Instrumentalities were not practicing Autosar and/or were not infringing the claims of U.S. Patents 8,209,705 and 8,566,843.  If such evidence had existed, Defendants would have disclosed such evidence to Plaintiff, because such proof would have been sufficient to avoid the cost of the prior or future litigations.  Thus, Defendants' inability to identify any limitation in the Plaintiff's  asserted patents that is not found in Autosar or in Defendants' automotive vehicles is an eloquent admission by Defendants that the implementation of Autosar infringes the claims of Plaintiff's asserted patents and that Defendants are  knowingly infringing.  Defendant's acts of infringement have been willful.

44. Defendants' acts of infringement have caused and continue to cause damage to Plaintiff.  Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Stragent requests that this Court enter:

A.  A judgment in favor of Stragent that Defendants have infringed the '477 Patent, the '790 Patent, the '036 Patent and the '765 Patent;

B. A judgment and order requiring Defendants to pay Stragent its damages, costs, expenses, prejudgment and post-judgment interest, and post-judgment royalties for Defendants' infringement of the Patents as provided under 35 U.S.C. § 284;

C. A judgment and order holding that Defendants' infringement was willful, and awarding treble damages and attorney fees and expenses;

D. Judgment that this is an exceptional case, and, thus, awarding attorney fees and expenses to Plaintiff; and

E. Any and all other relief to which the Court may deem Stragent entitled.

## DEMAND FOR JURY TRIAL

Plaintiff Stragent, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: April 15, 2020

*Of Counsel*:

Thomas F. Meagher
Alan Christopher Pattillo
Meagher Emanuel Laks Goldberg & Liao, LLP
One Palmer Square
Suite 325
Princeton, New Jersey 08542
(609) 454-3500
tmeagher@meagheremanuel.com
cpattillo@meagheremanuel.com

Respectfully submitted,

/s/ George Pazuniak
George Pazuniak (DE Bar 478)
O'KELLY & ERNST, LLC
824 N. Market St.
Suite 1001A
Wilmington, DE 19801
Tel: 302-478-4230
Email: GP@del-iplaw.com

*Counsel for Plaintiff Stragent, LLC*.