## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STRAGENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-510-LPS |
| | ) | |
| BMW OF NORTH AMERICA, LLC, and | ) | |
| BMW MANUFACTURING CO., LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| STRAGENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-511-LPS |
| | ) | |
| MERCEDES-BENZ USA, LLC, | ) | |
| MERCEDES-BENZ VANS, LLC, DAIMLER | ) | |
| TRUCKS NORTH AMERICA, LLC, and DAIMLER | ) | |
| NORTH AMERICA CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| STRAGENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-512-LPS |
| | ) | |
| VOLVO CAR NORTH AMERICA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS UNDER RULE 12(b)(6) BASED ON CLAIM AND ISSUE PRECLUSION

# TABLE OF CONTENTS

**Page**

I.    Nature and Stage of the Proceedings ...................................................................1

II.   Summary of Argument ........................................................................................1

III.  Statement of Facts...............................................................................................2

  1.   The Patent Family Tree...............................................................................6

  2.   The Texas Patents .......................................................................................7

  3.   The Patents-in-Suit......................................................................................7

    a.   U.S. Patent No. 9,705,765.................................................................8

    b.   U.S. Patent No. 10,002,036...............................................................9

    c.   U.S. Patent No. 10,031,790.............................................................11

    d.   U.S. Patent No. 10,248,477.............................................................12

IV.   Argument ..........................................................................................................14

  A.   These Cases are Barred by Claim Preclusion ...........................................14

    1.   There has already been a final judgment on the merits with the
         same parties on this cause of action..........................................................15

    2.   Stragent's complaints allege the same cause of action that was
         at issue in *Stragent II*. ..............................................................................15

      a.   The scope of accused activity here is the same as the
           accused activity in *Stragent II*......................................................16

      b.   The asserted patents are essentially the same as those at
           issue in *Stragent II.* .....................................................................16

  B.   These Cases Are also Barred by Issue Preclusion ...................................18

  C.   Stragent Violated 37 C.F.R. § 42.73(d)(3), Which Also Bars These
       Cases .........................................................................................................19

V.    Conclusion ........................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acumed LLC v. Stryker Corp.*,
    525 F.3d 1319 (Fed. Cir. 2008)................................................................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................14, 17

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
    575 U.S. 138 (2015)....................................................................................................18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................14

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    859 F.3d 1352 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 2621 (2018)....................14

*CoreStates Bank, N.A. v. Huls Am., Inc.*,
    176 F.3d 187 (3d Cir. 1999)..................................................................................14, 15

*In re Cortright*,
    165 F.3d 1353 (Fed. Cir. 1999)..................................................................................19

*Indivior Inc. v. Dr. Reddy's Labs., S.A.*,
    752 F. App'x 1024 (Fed. Cir. 2018) ..........................................................................16

*Intellectual Ventures I, LLC v. Lenovo Grp., Ltd.*,
    370 F. Supp. 3d 251 (D. Mass. 2019) ..................................................................18, 19

*Johnson v. City of Shelby*,
    574 U.S. 10 (2014).....................................................................................................14

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
    719 F.3d 1367 (Fed. Cir. 2013)..................................................................................15

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*,
    140 S. Ct. 1589 (2020)................................................................................................14

*MaxLinear, Inc. v. CF CRESPE LLC*,
    880 F.3d 1373 (Fed. Cir. 2018)............................................................................18, 19

*Ohio Willow Wood Co. v. Alps S., LLC*,
    735 F.3d 1333 (Fed. Cir. 2013)..................................................................................18

*Papst Licensing GmbH v. Samsung Elecs. Am., Inc.*,
    924 F.3d 1243 (Fed. Cir. 2019)..................................................................................18, 19

*In re PersonalWeb Techs. LLC*,
    No. 19-1918, 2020 WL 3261168 (Fed. Cir. June 17, 2020).............................................14, 15

*In re Princo Corp.*,
    478 F.3d 1345 (Fed. Cir. 2007)..................................................................................18, 19

*Raniere v. Microsoft Corp.*,
    887 F.3d 1298 (Fed. Cir. 2018)..........................................................................................15

*Regents of the Univ. of Minn. v. LSI Corp.*,
    926 F.3d 1327 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 908 (2020)................................19, 20

*Senju Pharm. Co. v. Apotex Inc.*,
    746 F.3d 1344 (Fed. Cir. 2014).................................................................................. *passim*

*SimpleAir, Inc. v. Google LLC*,
    884 F.3d 1160 (Fed. Cir. 2018)..........................................................................14, 15, 16, 17

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
    778 F.3d 1311 (Fed. Cir. 2015)..........................................................................................18

*Superior Offshore Int'l, Inc. v. Bristow Grp. Inc.*,
    738 F. Supp. 2d 505 (D. Del. 2010)...................................................................................17

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)..........................................................................................................15

*Think Prods., Inc. v. ACCO Brands Corp.*,
    419 F. Supp. 3d 1078 (N.D. Ill. 2019)...............................................................................18

*XY, LLC v. Trans Ova Genetics*,
    890 F.3d 1282 (Fed. Cir. 2018)..........................................................................................18

**Regulations**

37 C.F.R. § 1.321(c)..................................................................................................................8

37 C.F.R. § 42.73(d)(3)...................................................................................................5, 19, 20

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................................14

Fed. R. Civ. P. 12(b)(6) ........................................................................................................14

**Other Authorities**

https://www.daimler.com/company/north-america/mercedes-benz-usa.html
........................................................................................................................................15

M.P.E.P. § 1504.06 ................................................................................................................8

M.P.E.P. § 2111 ...................................................................................................................19

**TABLE OF EXHIBITS**

| | |
|---|---|
| Exhibit A | Case IPR2017-457, Paper No. 34 (June 13, 2018) |
| Exhibit B | Case IPR2017-485, Paper No. 31 (June 13, 2018) |
| Exhibit C | Case IPR2017-676, Paper No. 33 (June 14, 2018) |
| Exhibit D | Case IPR2017-677, Paper No. 32 (June 13, 2018) |
| Exhibit E | Case IPR2017-1502, Paper No. 24 (Dec. 6, 2018) |
| Exhibit F | Case IPR2017-1503, Paper No. 25 (Dec. 6, 2018) |
| Exhibit G | Case IPR2017-1504, Paper No. 25 (Dec. 6, 2018) |
| Exhibit H | Case IPR2017-1519, Paper No. 32 (Dec. 6, 2018) |
| Exhibit I | Case IPR2017-1520, Paper No. 32 (Dec. 6, 2018) |
| Exhibit J | Case IPR2017-1521, Paper No. 31 (Dec. 6, 2018) |
| Exhibit K | Case IPR2017-1522, Paper No. 32 (Dec. 6, 2018) |
| Exhibit L | June 8, 2020 Rule 11 Letter from L. Lavenue to G. Pazuniak, encl: <ul><li>Stragent June 22, 2018 Threat Letter to BMW</li><li>BMW August 10, 2018 letter to Stragent</li><li>Exs. A–D (Exemplary charts comparing the asserted '477 patent, '790 patent, '036 patent, and '765 patent claims to invalid '705 and '843 patent claims)</li></ul> |
| Exhibit M | August 13, 2018 Letter from D. Pollock to D. Murray |
| Exhibit N | August 14, 2018 Letter from B. Watkins to D. Murray |
| Exhibit O | U.S. Patent No. 8,209,705 |
| Exhibit P | U.S. Patent No. 8,555,843 |
| Exhibit Q | File History of U.S. Patent No. 9,705,765 |
| Exhibit R | June 22, 2020 email correspondence chain between BMW counsel and Stragent counsel |

| | |
|---|---|
| Exhibit S | File History of U.S. Patent No. 10,002,036 |
| Exhibit T | File History of U.S. Patent No. 10,031,790 |
| Exhibit U | File History of U.S. Patent No. 10,248,477 |
| Exhibit V | Exemplary chart of AUTOSAR documents and sections cited by Stragent against U.S. Patent No. 9,705,765 |
| Exhibit W | Exemplary chart of AUTOSAR documents and sections cited by Stragent against U.S. Patent No. 10,002,036 |
| Exhibit X | Exemplary chart of AUTOSAR documents and sections cited by Stragent against U.S. Patent No. 10,031,790 |
| Exhibit Y | Exemplary chart of AUTOSAR documents and sections cited by Stragent against U.S. Patent No. 10,248,477 |
| Exhibit Z | Stragent's Eastern District of Texas infringement contention chart against Mercedes for U.S. Patent No. 8,209,705 |
| Exhibit AA | Stragent's Eastern District of Texas infringement contention chart against Mercedes for U.S. Patent No. 8,566,843 |
| Exhibit AB | Stragent's Eastern District of Texas infringement contention chart against BMW for U.S. Patent No. 8,209,705 |
| Exhibit AC | Stragent's Eastern District of Texas infringement contention chart against Mercedes for U.S. Patent No. 8,566,843 |
| Exhibit AD | Stragent's Eastern District of Texas infringement contention chart against Volvo for U.S. Patent No. 8,209,705 |
| Exhibit AE | Stragent's Eastern District of Texas infringement contention chart against Volvo for U.S. Patent No. 8,566,843 |

## I.     Nature and Stage of the Proceedings

Plaintiff Stragent, LLC ("Stragent") has sued Defendants BMW of North America, LLC and BMW Manufacturing Co., LLC ("BMW"); Mercedes-Benz USA, LLC ("MBUSA"), Mercedes-Benz Vans, LLC ("MBV"), Daimler Trucks North America, LLC ("DTNA"), and Daimler North America Corp. ("DNAC") (collectively, "Mercedes"); and Volvo Car North America, LLC ("Volvo") (collectively, "Defendants") for infringement of the same four patents in three separate actions.[1]  Defendants now move to dismiss these actions.

## II.     Summary of Argument

This is not the first time Stragent has asserted patents in the same family against Defendants. In 2016, Stragent sued the Defendants[2] in the Eastern District of Texas, asserting that their vehicles' alleged compliance with the AUTOSAR communication standard infringed U.S. Patent Nos. 8,209,705 ("the '705 patent") and 8,566,843 ("the '843 patent") (collectively, the "Texas Patents"). *See Stragent, LLC v. BMW of N. Am., LLC*, No. 6:16-cv-446-RWS-KNM, D.I. 1 & 60 (E.D. Tex.) (consolidating BMW case with cases filed against Mercedes and Volvo) ("*Stragent II*"). The Texas Court entered final judgment on the merits against Stragent in that case based on the Patent Office's determination in *inter partes* review proceedings ("IPRs") that every claim of the Texas Patents is unpatentable, on multiple grounds, and Stragent's withdrawal of its infringement claims with prejudice. *Id.*, D.I. 111. In entering final judgment, the Texas Court declared Defendants the "prevailing parties." *Id.*, D.I. 121.

---

[1] Unless otherwise specified, references to "D.I." refer to C.A. No. 20-510-LPS.
[2] Of the Mercedes parties, MBV and DTNA were not named parties in *Stragent II*. MBV and DTNA are, however, directly or indirectly related to parties in *Stragent II*, and their interests are sufficiently aligned such that claim preclusion should apply to the claims against them.

(continued…)

Before *Stragent II* was dismissed, Stragent filed four continuations of the invalidated Texas Patents, which issued as the four patents asserted here.[3] During prosecution, Stragent terminally disclaimed three of the four currently asserted patents over the invalidated Texas Patents, and the fourth asserted patent, the '477 patent, over the continuation '790 and '036 patents, each of which is terminally disclaimed over the Texas Patents and is asserted here. Stragent filed these terminal disclaimers rather than identifying any elements of the patents-in-suit that render their claims patentably distinct from the invalid Texas Patents.

By this motion, Defendants seek to prevent Stragent from obtaining an improper "second bite at the apple." Stragent had its opportunity to litigate the same cause of action it is advancing here in the Texas Court and before the Patent Office. Stragent asserted patents and claims that are not materially different from those it now asserts here, the same parties were involved, and a final judgment on the merits was entered against Stragent. As a result, both claim and issue preclusion apply, and Stragent's complaints should be dismissed.

## III.    Statement of Facts

### A.    Stragent's Earlier Unsuccessful Assertions of Patents in the Same Family

In 2011, Stragent asserted the ultimate parent patent of this family, U.S. Patent No. 7,802,263 ("the '263 patent") against a host of companies, including Robert Bosch LLC ("Bosch"). Over a year later, Stragent dismissed its claims **with prejudice**.[4] *See Stragent, LLC v. STMicroelectronics, Inc.*, No. 6:11-cv-111-LED, D.I. 1 & 406 (E.D. Tex.) ("*Stragent I*").

Stragent filed another complaint in 2016, asserting later patents in the same family against automotive companies, including BMW, Mercedes, and Volvo. *Stragent II*, D.I. 1 & 60

---

[3] U.S. Patent Nos. 10,248,477 ("the '477 patent"); 10,031,790 ("the '790 patent"); 10,002,036 ("the '036 patent"); and 9,705,765 ("the '765 patent").
[4] Stragent again accuses a Bosch product here. D.I. 1, ¶ 16 ("The part is manufactured by Bosch . . . and is apparently incorporated into certain models.").

(consolidating BMW case with cases filed against Mercedes and Volvo). The Texas Patents asserted in *Stragent II* were continuations of the '263 patent asserted in *Stragent I*, with the *Stragent II* complaint asserting infringement against automotive products allegedly compliant with AUTOSAR specifications. Stragent's initial complaint was dismissed (without prejudice) for failing to properly plead infringement and identifying "no common element between the AUTOSAR Standard and the asserted claims, nor . . . explain[ing] how the accused products, by complying with the AUTOSAR Standard, . . . infringe the asserted claims." *Id.*, D.I. 29 at 9–10 (Report and Recommendation to dismiss Stragent's improperly pleaded complaint). Stragent later filed an amended complaint. *Id.*, D.I. 34. Stragent then served infringement contentions improperly attempting to assert a third patent in the same family (U.S. Patent No. 9,575,817 ("the '817 patent")), which is a continuation of the '843 patent asserted in the *Stragent II* complaints. When Defendants objected to the addition, Stragent argued there would be no prejudice because the '817 patent and the Texas Patents "share the same specification, cover the same subject matter, and have closely related claims." *Id.*, D.I. 80 at 2, 3. *See also infra* Section III.B.1 ("Patent Family Tree")*.*

While *Stragent II* was pending, BMW and Mercedes[5] filed multiple petitions for IPR directed to the Texas Patents, resulting in eleven final written decisions in which all claims were collectively held unpatentable:

| Case No. | Parties | Patent | Petition | Institution | FWD | Outcome |
|---|---|---|---|---|---|---|
| IPR2017-00457 | Stragent Mercedes | 8,566,843 | Dec. 9, 2016 | June 16, 2017 | June 13, 2018 (Ex. A) | Claims 1 and 47–51 unpatentable |
| IPR2017-00458 | Stragent Mercedes | 8,209,705 | Dec. 9, 2016 | June 16, 2017 | June 13, 2018 (Ex. B) | Claims 1–7 and 20 unpatentable |
| IPR2017-00676 | Stragent BMWNA | 8,209,705 | Jan. 18, 2017 | June 16, 2017 | June 14, 2018 (Ex. C) | Claims 1–6 and 20 unpatentable |

[5] The petitioning Mercedes parties were Daimler AG, Daimler North America Corporation, Mercedes-Benz USA, LLC, and Mercedes-Benz U.S. International, Inc.

| IPR2017-00677 | Stragent BMWNA | 8,566,843 | Jan. 18, 2017 | June 16, 2017 | June 13, 2018 (Ex. D) | Claims 51–59 unpatentable |
|---|---|---|---|---|---|---|
| IPR2017-01502 | Stragent Mercedes | 8,209,705 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (Ex. E) | Claims 8–19 unpatentable |
| IPR2017-01503 | Stragent Mercedes | 8,566,843 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (Ex. F) | Claims 2–37, 39–46, and 52–59 unpatentable |
| IPR2017-01504 | Stragent Mercedes | 8,566,843 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (Ex. G) | Claims 2–37, 40–46 and 52–59 unpatentable |
| IPR2017-01519 | Stragent BMWNA | 8,566,843 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (Ex. H) | Claims 1–50 unpatentable |
| IPR2017-01520 | Stragent BMWNA | 8,566,843 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (Ex. I) | Claims 1–18 and 20–50 unpatentable |
| IPR2017-01521 | Stragent BMWNA | 8,209,705 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (Ex. J) | Claims 7–17 and 19 unpatentable |
| IPR2017-01522 | Stragent BMWNA | 8,209,705 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (Ex. K) | Claims 7–14 and 16–19 unpatentable |

Stragent appealed the first round of IPR decisions to the Court of Appeals for the Federal Circuit, but these appeals were dismissed for failure to prosecute after Stragent admitted that it "would be a waste of the Court's time and the parties' resources to continue [Stragent's already noticed appeals] and/or file new appeals." *Stragent II*, D.I. 109, Ex. O at 5 (Jan. 24, 2019, email from Stragent counsel to BMW counsel**)**; *Stragent, LLC v. BMW of N. Am., LLC*, No. 18-2294, D.I. 20 & No. 18-2295, D.I. 10 (Fed. Cir. Feb. 11, 2019) (dismissing appeals). Stragent did not appeal any other IPR decisions.

Based on these final written decisions, BMW moved for summary judgment of invalidity. *Stragent II*, D.I. 109. Rather than substantively respond, Stragent **disclaimed all claims** of the Texas Patents and moved to dismiss its infringement allegations **with prejudice**. *Id.*, D.I. 111, Exs. A & B (attaching disclaimers of the Texas Patents). Accordingly, the Texas Court dismissed all

4

the *Stragent II* cases **with prejudice** on July 23, 2019, finding Defendants to be the prevailing parties. *Id.*, D.I. 121 at 2. The Court issued the Final Judgment on June 16, 2020. *Id.*, D.I. 141.

On June 22, 2018, while IPR proceedings on the Texas Patents and *Stragent II* were pending, Stragent sent Defendants' counsel letters threatening four patents, three of which it now asserts in this case: (1) the '765 patent; (2) the '036 patent; (3) the application that would become the '790 patent; and (4) the '817 patent (the patent it tried unsuccessfully to shoehorn into the Texas case, but does not assert here). Ex. L (June 8, 2020 BMW Rule 11 Letter Enclosure 1 (Stragent June 22, 2018 Threat Letter to BMW)). BMW explained why the asserted patents were invalid and noninfringed, at least because (1) the Patent Trial and Appeal Board ("PTAB") had already found patentably indistinct claims to be invalid; (2) Stragent failed to meet its duty of candor to the Patent Office by failing to disclose relevant information; (3) Stragent was estopped from obtaining and enforcing patents that were patentably indistinct in view of 37 C.F.R. § 42.73(d)(3); and (4) Stragent's infringement theories were deficient. Ex. L (June 8, 2020 BMW Rule 11 Letter Enclosure 2 (BMW Aug. 10, 2018 letter to Stragent)). Volvo and Mercedes did the same. Ex. M (Aug. 13, 2018 Volvo letter); Ex. N (Aug. 14, 2018 Mercedes letter). Stragent never responded to Defendants' letters or attempted to amend the *Stragent II* complaint to include the referenced patents, three of which are asserted here, despite having the ability and opportunity to do so. Instead, Stragent waited until after the Texas Patents were invalidated (confirming a loss in *Stragent II*) to file the present suits on patent claims that are indistinct from those already litigated to a final decision on the merits.

**B.** **The Accused Technology Is Identical and the Asserted Claims Are Patentably Indistinct from Those in *Stragent II***

**1.** **The Patent Family Tree**

The asserted patents are all continuations of, and terminally disclaimed over, the '263 patent, the Texas Patents (found invalid in IPRs and expressly disclaimed by Stragent), and the '817 patent (or to other patents in the chain that are terminally disclaimed to these patents):

| | | | |
|---|---|---|---|
| **U.S. Provisional App. No. 60/434,018** Filed Dec. 17, 2002 | Provisional Application | | |
| **U.S. Patent No. 7,802,263** (App. No. 10/737,690) Filed Dec. 15, 2003 | '263 patent: Asserted unsuccessfully against Bosch in *Stragent I*; case dismissed with prejudice. | | |
| **U.S. Patent No. 8,209,705** (App. No. 12/182,570) Filed July 30, 2008 | '705 patent: Invalid patent previously asserted in E.D. Tex.; case dismissed with prejudice; PTAB final decisions finding claims not appealed; Defendants were "prevailing parties"; costs awarded to Defendants. Attached as Ex. O. | | |
| **U.S. Patent No. 8,566,843** (App. No. 13/531,319) Filed June 22, 2012 | '843 patent: Invalid patent previously asserted in E.D. Tex.; case dismissed with prejudice; PTAB final decisions finding claims not appealed; Defendants were "prevailing parties"; costs awarded to Defendants. Attached as Ex. P. | | |
| **U.S. Patent No. 9,575,817** (App. No. 14/011,705) Filed Aug. 27, 2013 | '817 patent: Stragent attempted to add to E.D. Tex. case via contentions, arguing the patents "**share the same specification, cover the same subject matter, and have closely related claims**." | | |
| **U.S. Patent No. 9,705,765** (App. No. 15/405,088) Filed Jan. 12, 2017 | **U.S. Patent No. 10,002,036** (App. No. 15/405,110) Filed Jan. 12, 2017 | '765 patent: Asserted here; terminally disclaimed over now-invalid '705 and '843 patents, as well as the parent '263 and '817 patents. | '036 patent: Asserted here; terminally disclaimed over now-invalid '705 and '843 patents, as well as the parent '263 and '817 patents and sister co-asserted '765 patent. |
| **U.S. Patent No. 10,031,790** (App. No. 15/919,201) Filed Mar. 12, 2018 | '790 patent: Asserted here; terminally disclaimed over now-invalid '705 and '843 patents, as well as the parent '263, '817, and '036 patents. | | |
| **U.S. Patent Pub. 2019/0004880** (App. No. 16/042,159) Filed July 23, 2018 | Pending application; terminally disclaimed over '843, '036, '477, '790, and '817 patents. | | |
| **U.S. Patent No. 10,248,477** (App. No. 16/148,949) Filed Oct. 1, 2018 | '477 patent: Asserted here; terminally disclaimed over '790 and '036 patents, which themselves are terminally disclaimed over invalid patents as noted above. | | |

### 2.      The Texas Patents

The Texas Patents are both entitled "System, Method and Computer Program Product for Sharing Information in a Distributed Framework," and they share a specification. They are directed to using automotive electronic control unit ("ECU") gateway middleware having associated "bulletin board" memory that allows for "real-time" sharing of information across different in-vehicle networks—e.g., sharing information between two or more of a Controller Area Network ("CAN"), Local Interconnect Network ("LIN"), and FlexRay Network in "vehicle communication and control systems, real-time monitoring systems, industrial automation and control systems, as well as any other desired system." Ex. O ('705 patent at 1:22–25, 3:24–33). The Texas Patents state that multiple automotive ECUs "control complex applications such as engine control, brake control, or diagnostics" while connected by multiplexing bus-systems corresponding to different networks. *Id.* at 3:13–16, 3:26–33. Such ECUs have software for interfacing with the ECU's input/output mechanisms and storing information within the ECU. *Id.* at 4:45–5:9. These ECUs share arbitrated access to a "common, or shared storage system that is connected to all of the system networks through network interfaces." *Id.* at 7:30-32, 8:13–31.

This functionality was well known in the art before the respective priority dates. *See, e.g.*, Ex. K (IPR2017-1522, Paper No. 32 at 38–44); *see also* Exs. A–K. Thus, every claim of these patents (79 total—20 for '705 and 59 for '843) was found invalid by the Patent Office. *See supra* Section III.A.

### 3.      The Patents-in-Suit

The '765, '036, '790, and '477 patents-in-suit are each continuations of the '817 patent, which is a continuation of the Texas Patents, and a further continuation of the '263 patent. Each of the patents-in-suit therefore shares the same title and specification with these other patents in the priority chain. All of these patents thus provide the same disclosure of ECU gateway

middleware having shared memory that operates to allow for the transmission of information between different in-vehicle environments.

### a.   U.S. Patent No. 9,705,765

Stragent filed the continuation application that ultimately issued as the '765 patent on January 12, 2017, days before BMW and Mercedes filed the first round of IPRs on the Texas Patents. Ex. Q ('765 patent file history). Though no office action was issued, Stragent and the Examiner communicated via email regarding Stragent's amended claims, which the Examiner said he would allow if Stragent filed terminal disclaimers over the invalid Texas Patents.[6] *Id.* at 202. Stragent did not dispute the need for these terminal disclaimers, nor did Stragent argue that the claims of the '765 patent were patentably distinct from its parent patents. *Id.* at 112 (Mar. 3, 2017, Terminal Disclaimers).

Asserted claim 1[7] of the '765 patent is consistent in scope with the invalidated claims of the Texas Patents. For example, the core elements of each independent claim of the '765 patent, including claim 1, include: (a) an electronic control unit and nonvolatile memory; (b) software configured to receive information from a first physical network; (c) issuing a storage request in response to receipt of this information and determining whether a storage resource is available and

---

[6] Terminal disclaimers may be "filed to obviate judicially created double patenting in a patent application." 37 C.F.R. § 1.321(c). A "nonstatutory" double-patenting rejection, which is at issue here, is based on a judicially created doctrine grounded in public policy and which is primarily intended to prevent prolongation of the patent term by prohibiting claims in a second patent not patentably distinct from claims in a first patent. M.P.E.P. § 1504.06.

[7] Stragent's complaint states that it may assert additional claims of the asserted patents "once Plaintiff has an opportunity for discovery, including receipt of Defendants' core documents." D.I. 1, ¶¶ 21, 27, 34, 41. But Stragent's infringement allegations are, and have always been, based entirely on the publicly available AUTOSAR specifications. Stragent made the same contention in *Stragent II*, identifying only a few claims in its initial and amended complaints, and then adding dozens of additional claims in its infringement contentions. Stragent's contentions regarding these added claims, however, were again based on publicly available AUTOSAR specifications that were available to Stragent before it filed the complaint in *Stragent II*. Regardless, and without waiving any rights, Defendants do not infringe any claim of the patents-in-suit.

whether a threshold has been reached; (d) in the event that a storage resource is not available and the threshold has not been reached, issuing another storage request in connection with the storage resource; (e) in the event the storage resource is not available and the threshold has been reached, sending a notification; (f) in the event the storage resource is available, storing the information in the storage resource; (g) sharing the stored information with at least a process associated with a second physical network in less than one second; and (h) interfaces, including a first communications interface having a first interface-related data link layer component for interfacing with a CAN and a second communication interface having a second interface-related data link layer component for interfacing with a Flexray network. *See, e.g.*, D.I. 1, Ex. D at 26–29 ('765 patent at claims 1, 12, 13, 24).

Each of these elements (or a patentably indistinct variant) is found, for example, in invalidated claim 20 of the '705 patent and claim 51 of the '843 patent. A detailed element-by-element comparison is attached. Ex. L (June 8, 2020 Rule 11 Letter at Ex. D). And while Stragent states that the '765 patent claims are "materially different" from the invalidated claims of the Texas Patents (D.I. 1, ¶ 40), it offers no basis for this conclusory assertion and has refused requests to identify any such purported material difference. *See* Ex. L (June 8, 2020, Rule 11 letter from BMW counsel to Stragent counsel asking to identify patentably distinct elements of the asserted claims); Ex. R (June 22, 2020, email correspondence memorializing that Stragent has not identified patentably distinct claims).

### b.   U.S. Patent No. 10,002,036

Stragent filed the continuation application that ultimately issued as the '036 patent on January 12, 2017, the same day as the application for the '765 patent. Ex. S ('036 patent file history). Like the '765 patent, no office action issued, but Stragent and the Examiner communicated via email and phone regarding claim amendments. *Id.* at 247 (Apr. 25, 2018, email).

Without attempting to traverse any double-patenting rejections, Stragent filed terminal disclaimers to the Texas Patents, the parent '263 and '817 patents, and also the sister co-asserted '765 patent on April 25 and 27, 2018. *Id.* at 108, 116.

Asserted claim 1 of the '036 patent is consistent in scope with the invalidated claims of the Texas Patents.[8] For example, the core elements of each of the independent claims of the '036 patent, including claim 1, include: (a) an electronic control unit and nonvolatile memory; (b) software configured to receive information from a first physical network; (c) issuing a storage request in response to receipt of this information and determining whether a storage resource is available and whether a threshold has been reached; (d) in the event that a storage resource is not available and the threshold has not been reached, issuing another storage request in connection with the storage resource; (e) in the event the storage resource is not available and the threshold has been reached, sending a notification; (f) in the event the storage resource is available, storing the information in the storage resource; (g) sharing the stored information with at least a process associated with a second physical network in less than one millisecond; and (h) interfaces, including a first communications interface having a first interface-related data link layer component for interfacing with a Flexray network (or CAN) and a second communication interface having a second interface-related data link layer component for interfacing with a CAN (or Flexray network). *See, e.g.*, D.I. 1, Ex. C at 26–27, 29–30 ('036 patent, claims 1, 102). Each of these elements is found, for example, in previously invalidated claim 20 of the '705 patent and claim 51 of the '843 patent. A detailed element-by-element comparison is attached. Ex. L (June 8, 2020 Rule 11 Letter at Ex. B).

---

[8] The claims of Stragent's asserted patents are so similar that Stragent cannot even tell the difference. Stragent's infringement chart for the '036 patent (D.I. 1, Ex. G) actually contains the language of claim 1 of the '765 patent *Id.*, Ex. H. Thus, Stragent's '036 and '765 infringement charts are identical, except for listing a different patent in the title.

Although Stragent states in its complaint that the '036 patent claims are "materially different" from the claims of the Texas Patents found invalid by the PTAB (D.I. 1, ¶ 33), it offers no basis for this conclusory assertion and has refused requests to identify any purported material difference. *See* Ex. L (June 8, 2020, Rule 11 letter from BMW counsel to Stragent counsel asking to identify patentably distinct elements of the asserted claims); Ex. R (June 22, 2020, email correspondence memorializing that Stragent has not identified patentably distinct claims).

### c.        U.S. Patent No. 10,031,790

Stragent filed the continuation application that ultimately issued as the '790 patent on March 12, 2018, after IPRs on the related Texas Patents had already been instituted. Ex. T ('790 patent file history). Again, like the '765 and '036 patents, no office action issued, but Stragent and the Examiner communicated by phone on May 31, 2018 regarding the amended claims. *Id.* at 142 (June 15, 2018, Examiner interview summary). In those communications, Stragent agreed to file terminal disclaimers over the Texas Patents, as well as the '263, '817, and '036 patents. *Id.* at 142, 120 (May 31, 2018, Terminal Disclaimers). Stragent did not attempt to distinguish the '790 claims from any other patent in the priority chain.

Asserted claim 15 of the '790 patent is consistent in scope with the invalidated claims of the Texas Patents. Each limitation of claim 15, or a patentably indistinct variant, is included in one of more claims of the Texas Patents. For example, the core elements of each independent claim of the '790 patent, including claim 15, include: (a) an electronic control unit and nonvolatile memory; (b) software configured to receive information from a first physical network; (c) issuing a storage request in response to receipt of this information and determining whether a storage resource is available and whether a threshold has been reached; (d) in the event that a storage resource is not available and the threshold has not been reached, issuing another storage request in connection with the storage resource; (e) in the event the storage resource is not available and the threshold

has been reached, sending a notification; (f) in the event the storage resource is available, storing the information in the storage resource; (g) sharing the stored information with at least a process associated with a second physical network; and (h) interfaces, including a first communications interface having a first interface-related data link layer component for interfacing with a CAN and a second communication interface having a second interface-related data link layer component for interfacing with a Flexray network. *See, e.g.*, D.I. 1, Ex. B at 24–28 ('790 patent, claims 1, 15, 26, 29). Each of these elements is found, for example, in previously invalidated claim 20 of the '705 patent and claim 51 of the '843 patent. A detailed element-by-element comparison is attached. Ex. L (June 8, 2020 Rule 11 Letter at Ex. C).

And although Stragent states that the '790 patent claims are "materially different" from those of the Texas Patents (D.I. 1, ¶ 26), it offers no basis for this conclusory assertion and has refused requests to identify any purported material difference. *See* Ex. L (June 8, 2020, Rule 11 letter from BMW counsel to Stragent counsel asking to identify patentably distinct elements of the asserted claims); Ex. R (June 22, 2020, email correspondence memorializing that Stragent has not identified patentably distinct claims).

### d.     U.S. Patent No. 10,248,477

Stragent filed the continuation application that ultimately issued as the '477 patent on October 1, 2018, nearly four months *after* the first PTAB decisions finding many claims of the Texas Patents unpatentable. Ex. U ('477 patent file history). Stragent received an office action on November 29, 2018, rejecting all '477 patent claims for obviousness-type double patenting in view of the '790 and '036 patents: "Although the claims at issue are not identical, they are not patentably distinct from each other because the claim limitations of the instant application is [sic] present in the ['790 patent]." *Id.* at 92; *see also id.* at 119 (noting claims were not ***patentably distinct*** from claims in the '036 patent). Stragent did not contest this assertion. Instead, Stragent executed a

terminal disclaimer to the '790 and '036 patents, which themselves had been terminally disclaimed to the Texas Patents, the '263 patent, and the '817 patent. *Id.* at 154.

Asserted claim 1 of the '477 patent is consistent in scope with the invalid claims of the Texas Patents. Each limitation, or a patentably indistinct variant, of the '477 patent is found in the invalidated claims of the Texas Patents. For example, the core elements of each independent claim of the '477 patent, including claim 1, include: (a) an electronic control unit and nonvolatile memory; (b) software configured to receive information from a first physical network; (c) issuing a storage request in response to receipt of this information and determining whether a storage resource is available and whether a threshold has been reached; (d) in the event that a storage resource is not available and the threshold has not been reached, issuing another storage request in connection with the storage resource; (e) in the event the storage resource is available, storing the information in the storage resource; (f) sharing the stored information with at least a process associated with a second physical network; and (g) interfaces, including a first communications interface for interfacing with the first physical network and a second communication interface for interfacing with the second physical network. *See, e.g.*, D.I. 1, Ex. A at 25–27 ('477 patent, claims 1, 12, 23). Each of these elements is found, for example, in previously invalidated claims of the '705 and '843 patents. A detailed element-by-element comparison is attached. Ex. L (June 8, 2020 Rule 11 Letter at Ex. A).

Stragent points to only one allegedly distinguishing feature from one claim, arguing that claim 1 of the '477 patent recites a "layered system for sharing information" where the system shares the "stored information with at least one of a plurality of heterogenous processes including at least one process associated with a second physical network selected from the group consisting of FlexRay, Controller Area Network, and Local Interconnect Network, utilizing a network

13

protocol different from a protocol of the first physical network." D.I. 1, ¶ 19. Although the "layered system" language is from the preamble, neither it nor any affirmative limitation of claim 1 constitutes a patentable distinction over the other patents in the family, as the Examiner's double-patenting rejection confirms and as can be plainly seen from a cursory review of the invalidated claims of the Texas Patents. For example, use of a "layered system" for storing information that is shared with one process using a protocol different from the first physical network is already disclosed in the Texas Patents. *See, e.g.*, Ex. L (June 8, 2020 Rule 11 Letter at Ex. A at 3).

## IV.    Argument

To comply with Fed. R. Civ. P. 8, a plaintiff must show that its complaint has "substantive plausibility" on its face. *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Rule 12(b)(6) allows a defendant to bring a motion to dismiss a claim that fails to meet this standard. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 2621 (2018). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 678 (citation omitted).

### A.    These Cases are Barred by Claim Preclusion

Whether a cause of action is barred by claim preclusion is a question of law, appropriately addressed under Fed. R. Civ. P. 12(b)(6). *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1165 (Fed. Cir. 2018); *Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344, 1348 (Fed. Cir. 2014). Claim preclusion requires "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999); *see also In re PersonalWeb Techs. LLC*, No. 19-1918, 2020 WL 3261168, at *6 (Fed. Cir. June 17, 2020) (citing *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594–95 (2020)). The analysis is pragmatic;

the "underlying policies that the doctrine of claim preclusion is designed to further are considerations of efficiency and finality." *Senju*, 746 F.3d at 1348. Here, all three elements of the claim preclusion test are met.

### 1.   There has already been a final judgment on the merits with the same parties on this cause of action.

The first two elements of claim preclusion are readily met here: (1) a final judgment on the merits and (2) the same parties or their privities. *CoreStates*, 176 F.3d at 194.

*Stragent II* ended with the Court dismissing Stragent's claims against Defendants **with prejudice** (*Stragent II*, D.I. 121 & 141), which is a final judgment on the merits. *See, e.g.*, *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1307–08 (Fed. Cir. 2018); *PersonalWeb*, 2020 WL 3261168, at \*3; *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 719 F.3d 1367, 1372 (Fed. Cir. 2013). Further, BMW, Mercedes, and Volvo were declared "**prevailing parties**" and awarded costs. *Stragent II*, D.I. 121. Defendants here are the same prevailing parties as in Texas, or privies thereof,[9,10] and Stragent was the plaintiff. Thus, there is obviously a "final judgment on the merits" against "the same parties," satisfying the first two elements of preclusion.

### 2.   Stragent's complaints allege the same cause of action that was at issue in *Stragent II*.

The only remaining element of claim preclusion is whether this complaint alleges the same "cause of action" as *Stragent II*. It does. A cause of action is broadly defined by the transactional

---

[9] Of the Mercedes parties, MBV and DTNA were not named parties in *Stragent II*. However, DNAC was a named party in *Stragent II* and is the parent of MBUSA and MBV. Additionally, MBUSA (a named party in *Stragent II*) is responsible for the marketing, sale, and distribution of Mercedes-Benz van products in the United States. *See* https://www.daimler.com/company/north-america/mercedes-benz-usa.html. DTNA is owned by Daimler Trucks and Buses US Holding LLC, which is owned by Daimler Truck AG, which is owned by Daimler AG (a named party in the original complaint in *Stragent II*). Thus, the interests of MBV and DTNA are sufficiently aligned with *Stragent II* parties that claim preclusion should apply to claims against MBV and DTNA here. *See, e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 894 n.8 (2008).
[10] Volvo Cars of North America, LLC (named in *Stragent II*) is the same entity as Volvo Car North America, LLC (named here) as a result of a legal name change.

facts from which it arises. *SimpleAir*, 884 F.3d at 1165 (citing *Senju*, 746 F.3d at 1348). In a patent suit, essential transactional facts include the scope of the accused activity and the scope of the asserted patents. *Id.*; *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323–24 (Fed. Cir. 2008).

> a.   **The scope of accused activity here is the same as the accused activity in *Stragent II*.**

The accused activity here is *exactly* the same as the accused activity in *Stragent II*. Stragent here accuses a broad class of Defendants' vehicles of infringing for allegedly complying with certain aspects of the AUTOSAR specifications. *Compare Stragent II*, D.I. 34, ¶ 21 (accusing "all automobile vehicles and automobile parts that incorporate electronic control units that are designed to communicate via the AUTOSAR standard"), *with, e.g.*, 20-510-LPS, D.I. 1, ¶ 21 (accusing automobiles that contain "at least one ECU that operates according to, or in compliance with, Autosar 4.x.x. standards"); 20-511-LPS, D.I. 1, ¶ 27 (same for Mercedes); 20-512-LPS, D.I. 1, ¶ 14 (same for Volvo). Stragent's allegations here rely on the same substantive portions of these AUTOSAR specifications (albeit in different specification versions, at times). Exs. V–Y (nonexhaustive exemplary charts documenting similarity of infringement allegations). Further, Stragent acknowledged that evidence that would have proved the Texas Patents were not infringed "would . . . [be] sufficient to avoid" infringement of the four continuation patents at issue in this case. *See, e.g.*, D.I. 1, ¶¶ 22, 29, 36, 43. Thus, there is no material difference between the accused technology here and in *Stragent II*.

> b.   **The asserted patents are essentially the same as those at issue in *Stragent II*.**

When different patents are asserted in a later case, the question of whether the "cause of action" is the same is analyzed pragmatically to determine if the asserted claims are "essentially the same" for purposes of claim preclusion. *SimpleAir*, 884 F.3d at 1166–67. Patent claims are "essentially the same" if they are "patentably indistinct." *Indivior Inc. v. Dr. Reddy's Labs., S.A.*,

752 F. App'x 1024, 1034 (Fed. Cir. 2018) (citing *Simple Air*, 884 F.3d at 1167). A later cause of action may also be the same if the asserted patent claims are narrower than claims asserted in a prior case. *See generally Senju*, 746 F.3d at 1352–53. Furthermore, where a terminal disclaimer is entered during prosecution of a continuation patent in view of a parent patent, this offers a "strong clue" that continuation patent claims are "patentably indistinct" from those of the parent. *SimpleAir*, 884 F.3d at 1166–68.

The scope of the claims of the currently asserted patents is essentially the same as that of the invalid claims of the Texas Patents at issue in *Stragent II*. This is demonstrated, for example, by the fact that during prosecution of the patents-in-suit, Stragent filed terminal disclaimers rather than attempting to identify claim elements that distinguish the claims of the currently asserted patents from those of the invalid Texas Patents (Ex. Q at 112; Ex. S at 108, 116; Ex. T at 142, 120; Ex. U at 154)—a "strong clue" that the claims of the currently asserted patents are patentably indistinct from those of the Texas Patents. *SimpleAir*, 884 F.3d at 1168. Even if the "strong clue" of terminal disclaimers were not present, a comparison of the claims of the currently asserted patents to those of the Texas Patents establishes that, although the language may differ slightly, the patents-in-suit and the Texas Patents recite the same core elements that the PTAB found disclosed in the prior art and are consistent in scope.[11] Ex. L (June 8, 2020 Rule 11 Letter at Exs. A–D); Exs. V–Y. Furthermore, to the extent the claims of the patents-in-suit include limitations not found in the claims of the Texas Patents, those added limitations would merely serve to narrow the claims, which does not present a new cause of action because narrowed claims cannot

---

[11] To the extent Stragent alleges in its complaint that the patents-in-suit are "materially different" from the invalidated Texas Patents (D.I. 1, ¶ 19), this assertion is conclusory and should be disregarded. *See Superior Offshore Int'l, Inc. v. Bristow Grp. Inc.*, 738 F. Supp. 2d 505, 509 (D. Del. 2010) ("In determining whether a pleading states a plausible claim, all factual allegations must be assumed to be true; however, conclusory statements and legal conclusions are not entitled to the assumption of truth." (citing *Iqbal*, 556 U.S. at 677–79)).

encompass any product or process that would not have infringed the original claims. *Senju*, 746 F.3d at 1352–53.

Accordingly, Stragent merely raises in its complaint the same cause of action for which a final judgment was entered in *Stragent II*, which is claim precluded from relitigation here.

### B.      These Cases Are also Barred by Issue Preclusion

"[W]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015) (citation omitted). A PTAB final judgment on the invalidity of a patent has an issue-preclusive effect on any pending actions involving that patent. *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed. Cir. 2018); *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018); *Papst Licensing GmbH v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1250–51 (Fed. Cir. 2019). For issue preclusion to apply, the asserted unadjudicated claim need not be identical to the adjudicated claim. *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319 (Fed. Cir. 2015). Issue preclusion attaches when a patent uses "slightly different language to describe substantially the same invention" even where a difference in claim scope exists. *Id.* (quoting *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013)). And issue preclusion can even apply to a claim in a different patent, when the language of that claim is not materially different from a claim previously found invalid. *See Think Prods., Inc. v. ACCO Brands Corp.*, 419 F. Supp. 3d 1078, 1085–86 (N.D. Ill. 2019) (granting summary judgment of invalidity via issue preclusion even though the new claims "contain[ed] different language"); *Intellectual Ventures I, LLC v. Lenovo Grp., Ltd.*, 370 F. Supp. 3d 251, 258 (D. Mass. 2019).

All told, there are eleven "valid and final judgments" that collectively rendered each and

every claim of the Texas Patents unpatentable. Exs. A–K. These decisions are final. *In re Princo Corp.*, 478 F.3d 1345, 1354 (Fed. Cir. 2007) (a decision becomes final "when it can no longer be appealed"). As discussed above, based at least on Stragent's own admissions and the language of the claims themselves, there is ***no*** patentable distinction between the currently asserted claims and the ones finally adjudicated to be invalid. *See supra* Section IV.A.2.b. No element of any claim of the currently asserted patents alters, let alone "materially alters," the invalidity analysis resulting in the PTAB's previous final judgment regarding invalidity of the Texas Patents. Thus, issue preclusion prevents Stragent from arguing that these claims are valid now.[12] *Intellectual Ventures*, 370 F. Supp. 3d at 258.

### C.     Stragent Violated 37 C.F.R. § 42.73(d)(3), Which Also Bars These Cases

Stragent is barred from asserting three patents—the '036, '790, and '477 patents—by 37 C.F.R. § 42.73(d)(3)'s estoppel provision. That provision provides that a "patent applicant or owner is precluded from taking action inconsistent with the adverse judgment, including obtaining in any patent: . . . [a] claim that is not patentably distinct from a finally refused or canceled claim." 37 C.F.R. § 42.73(d)(3). As the Federal Circuit has explained, 37 C.F.R. § 42.73(d)(3) prevents a patent owner from obtaining a patent on claims that are patentably indistinct from claims cancelled in an IPR proceeding, consistent with traditional principles of res judicata and collateral estoppel. *See Regents of the Univ. of Minn. v. LSI Corp.*, 926 F.3d 1327, 1345 n.5 (Fed. Cir. 2019) (additional views opinion), *cert. denied*, 140 S. Ct. 908 (2020).

---

[12] Any argument by Stragent that the change in the PTAB's claim construction standard from "broadest reasonable interpretation" ("BRI") to the *Phillips* standard materially alters the validity analysis would be wrong. ***First***, the M.P.E.P. confirms that the two standards are not very different since BRI does not mean the broadest *possible* interpretation, and the terms must still be interpreted in view of the ordinary meaning, the specification, drawings, and consistent with the meaning a skilled artisan would reach. M.P.E.P. § 2111 (citing *In re Cortright*, 165 F.3d 1353, 1359 (Fed. Cir. 1999)). ***Second***, district courts have already found that IPR decisions trigger preclusion in district court even when IPRs and district courts employ different claim construction standards. *Trans Ova Genetics*, 890 F.3d at 1294; *MaxLinear*, 880 F.3d at 1376; *Papst*, 924 F.3d at 1250–51.

The '036 patent issued on June 19, 2018, and the '790 patent issued on July 24, 2018. The PTAB first found the Texas Patents invalid on June 13 and 14, 2018. Yet Stragent allowed these patentably indistinct claims to issue. And Stragent filed the application resulting in the '477 patent on October 1, 2018, *after* the first round of final written decisions had already found patentably indistinct claims invalid. Furthermore, by the time the '477 patent issued on April 2, 2019, a total of *eleven* final written decisions had issued, finding all patentably indistinct claims of the Texas Patents invalid—decisions that Stragent itself admitted would be a "waste" of resources to appeal. *Stragent II*, D.I. 109, Ex. O at 5.

Stragent's deliberate prosecution of claims it knew to be patentably indistinct from those repeatedly found invalid by the PTAB openly violated § 42.73(d)(3). Again, these claims are confirmed to be patentably indistinct from the invalidated claims of the Texas Patents based at least based on: (1) the terminal disclaimers Stragent filed; (2) Stragent's admissions that patents in this family "cover the same subject matter, and have closely related claims"; (3) Stragent's admissions that evidence showing noninfringement in the prior cases would be exonerating here; (4) Stragent's failure to point out precisely what it believes to be "materially different" for the '036 and '790 patents; and (5) a review of the claim language itself, which reveals that the claims of the patents-in-suit merely repurpose invalid elements of the Texas Patents. Ex. L, V–Y. *See supra* Sections IV.A.2.b; IV.B. As such, § 42.73(d)(3) requires dismissing this complaint. *See Regents of the Univ. of Minn.*, 926 F.3d at 1345 n.5 (additional views opinion).

## V.   Conclusion

Stragent is barred by claim preclusion, issue preclusion, and/or § 42.73(d)(3) from pursing these cases against Defendants. Defendants respectfully request the Court dismiss Stragent's complaints.

/s/ Karen E. Keller
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
dfry@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

OF COUNSEL:
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190-5675
(571) 203-2700
R. Benjamin Cassady
Courtney S. Kasuboski
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER LLP
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

Samhitha M. Medatia
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER LLP
271 17th Street, NW, Suite 1400
Atlanta, GA 30363
(404) 653-6400

Dated: July 6, 2020