# EXHIBIT L


FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
WWW.FINNEGAN.COM

**LIONEL M. LAVENUE**
571.203.2750
lionel.lavenue@finnegan.com

June 8, 2020

George Pazuniak
O'Kelly & Ernst, LLC
824 N. Market St.
Suite 1001A
Wilmington, DE 19801

> *Stragent, LLC v. BMW of North America, LLC, and BMW Manufacturing Co., LLC*
>      (No. 1:20-cv-00510-LPS) (D. Del.)

Dear Mr. Pazuniak:

We represent BMW of North America, LLC and BMW Manufacturing Co., LLC ("BMW") in the above-captioned matter. In this case, Stragent, LLC alleges that BMW infringes four patents: U.S. Pat. Nos. 9,705,765 ("'765"); 10,031,790 ("'790"); 10,002,036 ("'036"); and 10,248,477 ("'477"). We have closely reviewed Stragent's various patent infringement allegations, and we have several observations. Specifically, Stragent should withdraw its claims against BMW in this case for at least three reasons: (1) Stragent's knows or should know its asserted patents are invalid; (2) Stragent's asserted patents are unenforceable; and (3) Stragent, based on prior litigations against BMW on the same subject matter, is precluded from bringing this action.

### 1.  Stragent's Patents Are Invalid

As you know, these four asserted patents are continuations of, and terminally disclaimed from, patents Stragent asserted against BMW in the Eastern District of Texas (No. 16-cv-446, asserting U.S. Pat. Nos. 8,209,705 and 8,566,843).[1] As you also know, ***all claims*** of Stragent's previously asserted patents—i.e., the parent patents to those Stragent now asserts—were found invalid in Inter Partes Review Proceedings. *See* IPR2017-676, IPR2017-1521, and IPR2017-1522, invalidating 8,209,705; and IPR2017-677, IPR2017-1519, and IPR2017-1520, invalidating 8,566,843.[2]

---

[1] After all claims of the asserted patents in that case were found invalid by the PTAB, the Eastern District of Texas dismissed Stragent's case with prejudice and declared BMW the prevailing party. C.A. No. 16-cv-446 (E.D. Tex.), Dkt. 120, 121.

[2] The Final Written Decisions (FWDs) in each of these IPRs occurred as follows:
  • IPR2017-00676 ('705 patent): June 14, 2018

(continued…)

George Pazuniak
June 8, 2020
Page 2

Moreover, we have compared the independent claims of the four patents asserted in the present case in the District of Delaware to the independent claims of the patents asserted in Stragent's previous litigation against BMW in the Eastern District of Texas (C.A. No. 16-cv-446, asserting U.S. Pat. Nos. 8,209,705 and 8,566,843) and confirmed that they are not patentably distinct.[3] Thus, as we explained when Stragent first threatened to assert these patents[4] against BMW almost two years ago, Stragent knows, or should know, that these patents are invalid.[5] Indeed, Stragent admitted in the prior litigation that at least one of the continuations of the invalidated '705 and '843 patents "share[s] the same specification, cover[s] the same subject matter, and ha[s] closely related claims." No. 16-cv-446 (E.D. Tex.), Dkt. 80 at 3. The other continuation patents do too.

Further, the change in the PTAB's claim construction standard from "broadest reasonable interpretation" to the *Phillips* standard will not save Stragent's new patents from the same fate as their parent patents. As an initial matter, the two standards are not that different. Indeed, the relevant portion of the M.P.E.P. confirms that "[t]he

- IPR2017-00677 ('843 patent): June 13, 2018
- IPR2017-01519 ('843 patent): December 6, 2018
- IPR2017-01520 ('843 patent): December 6, 2018
- IPR2017-01521 ('705 patent): December 6, 2018
- IPR2017-01522 ('705 patent): December 6, 2018

Mercedes entities also filed IPR petitions, which also resulted in the PTAB finding the vast majority of the claims of the '705 and '843 patents invalid on additional grounds. *See* C.A. No. 6:16-cv-00446 (E.D. Tex.), Dkt. 108 at 2-5 (recapping the IPR proceedings involving the '705 and '843 patents).

[3] Exemplary charts comparing the invalidated claims of the invalidated '705 and/or '843 patents to the asserted independent claims of the asserted continuation patents are attached.

[4] On June 22, 2018, Stragent sent BMW a letter threatening BMW with the '765 and '036 patents, as well as the application that would become the '790 patent. Stragent filed the continuation that would become the '477 patent on October 1, 2018. Stragent also threatened BMW with another parent patent, U.S. Pat. No. 9,575,817, which Stragent improperly attempted to assert in the previous Eastern District of Texas case. Stragent has not asserted the '817 patent in this case. Copies of Stragent's June 22, 2018 threat letter to BMW and our August 10, 2018 response are attached.

[5] Because '705 and '843 patents were invalidated in IPR Proceedings, and each of the patents asserted here has no patentable distinction to those invalidated patents, Stragent is on notice of that the same prior art anticipates and/or renders obvious Stragent's asserted patents. Proceeding with litigation in view of invalidating prior art can support a fee award. *See Rothschild Connected Devices Innovations LLC v. Guardi*, 858 F.3d 1383, 1387-88 (Fed. Cir. 2017).

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

George Pazuniak
June 8, 2020
Page 3

broadest reasonable interpretation does not mean the broadest possible interpretation," and that terms must be construed "consistent with the ordinary and customary meaning of the term (unless the term has been given a special definition in the specification), . . . must be consistent with the use of the claim term in the specification and drawings . . . [and] must be consistent with the interpretation that those skilled in the art would reach." M.P.E.P. § 2111 (citing *In re Cortright,* 165 F.3d 1353, 1359, 49 USPQ2d 1464, 1468 (Fed. Cir. 1999). Indeed, the claim constructions BMW proposed and the PTAB adopted in the IPRs are unlikely to change, as the constructions were well reasoned and based on the intrinsic record.

And any "new" limitations Stragent added to its continuation patents likewise do not distinguish those patents over the prior art, and thus these continuation patents are invalid. For example, the specifications of the asserted patents define terms broadly and provide only general support for the (mostly functional) limitations of Stragent's claims. Additionally, both the patent specifications and prosecution histories are generally devoid of lexicography and disclaimer or other disavowal of claim scope. Thus, the intrinsic record does not appear to support constructions narrow enough to circumvent the asserted prior art of the previous IPRs. Thus, any revived attempts to read limitations from the specification into claims through claim construction, as Stragent tried, but failed to do in order to avoid the previous IPRs, will fail now as well. Accordingly, there are no patentable distinctions in Stragent's new patents sufficient to overcome the prior art.

## 2. Stragent's Patents Are Unenforceable

As we also explained in our August 20, 2018 letter, Stragent's failure to satisfy its duty of candor to the Patent Office raises serious doubt regarding the enforceability of the asserted patents. Specifically, Stragent had a duty to disclose all material information to the PTO, including prior art, arguments, and other information from trial proceedings conducted by the PTAB (including IPRs) and other litigations. *See*, *e.g.*, M.P.E.P. § 2001.06(c). Based on our review of the prosecution histories, Stragent failed to disclose at least (1) the petitions in BMW's IPRs 2017-01519, 2017-01520, 2017-01521, and 2017-01522 to the examiner of the '765 patent, and (2) certain "invalidity contentions" to the examiner of all of the asserted patents. These breaches of Stragent's duty of candor affect all of the asserted patents. *See Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1288-89 (Fed. Cir. 2011) ("[T]he taint of a finding of inequitable conduct can spread from a single patent to render unenforceable other related patents and applications in the same technology family."). And even when Stragent did disclose information regarding the PTAB's decisions invalidating the parent patents to the Examiner, it often did so in a manner designed to dissuade serious consideration.

Regarding the four BMW IPR petitions Stragent failed to disclose to the Examiner of the '765 patent, those IPR petitions, although they involved the same prior art that

George Pazuniak
June 8, 2020
Page 4

had already been disclosed to the examiner in connection with IPRs 2017-00676 and 2017-00677, challenged additional claims and included additional arguments not included in the earlier two IPRs. The additional claim challenges and arguments fall within the scope of materials that Stragent had a duty to disclose. Instead, Stragent permitted the '765 patent to issue on July 11, 2017 without disclosing the four BMW petitions, which were filed on June 6, 2017 (over a month earlier).

And even when Stragent did disclose information from the successful IPRs against Stragent's parent patents to the PTO, it did so in a manner designed to avoid serious scrutiny by the Examiners. For example, with regard to the '477 patent, Stragent did not provide notice of the FWDs to the Examiner until January 25, 2019, almost two months after the latest FWDs, more than six months after the earliest FWDs, and only three days before the Examiner issued a Notice of Allowance. Likewise, concerning the '790 patent, while Stragent did submit an Information Disclosure Statement (IDS) giving notice of the FWDs finding all claims unpatentable in IPRs 2017-00676 and 2017-00677 on June 16, 2018, this was after allowance. And, importantly, Stragent never provided actual copies of the FWDs or any other papers submitted in the IPRs to the Examiner (e.g., the decisions to institute the IPRs), nor did Stragent identify the other IPRs filed against the parent patents before the '790 patent issued. Stragent's disclosures to the Examiners were similarly incomplete for the '036 and '765 patents.

Regarding the invalidity contentions that Stragent failed to disclose, BMW and co-defendants in related litigations served them on June 22, 2017. *See* C.A. No. 6:16-cv-00446 (E.D. Tex.), Dkt. 96. Stragent may have disclosed some of the art from those contentions,[6] but, even if Stragent disclosed the references themselves, Stragent had a duty to also disclose the substance of the invalidity contentions (i.e., the invalidity arguments and detailed claim charts). *See*, *e.g.*, M.P.E.P. § 2001.06.(c) (providing that "the existence of such litigation and any other material information arising therefrom must be brought to the attention of the examiner" and noting that an example of "such material information is any assertion that is made during litigation and/or trial proceeding which is contradictory to assertions made to the examiner" and information that may arise in "pleadings, admissions, discovery including interrogatories, depositions, and other documents and testimony."). Thus, regardless of whether Stragent identified the prior art cited in BMW's invalidity contentions, it had a duty to share the substance and arguments of those contentions with the Examiner, which it did not. Accordingly, Stragent's patents are unenforceable.

---

[6] Stragent stated in a May 2, 2018, IDS transmittal for the '036 patent that "prior art received in one or more invalidity contentions" had been disclosed in other IDSs, which is apparently a reference to the contentions received from BMW and its co-defendants.

George Pazuniak
June 8, 2020
Page 5

### 3.  Stragent's Allegations Are Precluded

As discussed, the patents Stragent asserts here are non-distinct continuations of patents Stragent asserted against BMW and then disclaimed, after they were invalidated by BMW. Further, Stragent now accuses the same AUTOSAR technology at issue in the prior Eastern District of Texas case.[7] Thus, Stragent is precluded from asserting them now. Indeed, courts have enforced claim preclusion, even where the currently asserted patents are different from, but continuations of, the ones previously asserted (as here). For example, in *SimpleAir Inc. v. Google LLC*, 884 F.3d 1160 (Fed. Cir. 2018), the Federal Circuit reasoned that a cause of action asserting continuation patents could be precluded, so long as "the scope of the asserted patent claims in the two suits is essentially the same." *Id.* at 1167. And, even when "the language of the claim terms has changed," if the "scope of the claims [does] not materially change," a finding of claim preclusion is appropriate. *Indivior Inc. v. Dr. Reddy's Labs., S.A.*, 752 Fed. Appx. 1024, 1035 (Fed. Cir. 2018). Also, a terminal disclaimer, like those Stragent filed for all the currently asserted patents, is a "strong clue" that claim scope is the same. *Id.* Thus, even if Stragent's asserted patents were valid and enforceable, Stragent is precluded from asserting them against BMW.

### 4.  Formal Notice Pursuant to FRCP 11

Given the invalidity and unenforceability of the patents asserted in the present case, and the fact that Stragent is precluded from bringing the present suit, it does not appear that Stragent has a good-faith basis for bringing this lawsuit. However, if Stragent has information that is inconsistent with the facts and law discussed above, Stragent must now provide it. *See Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1368 (Fed. Cir. 2007 ("Once a litigant moves based upon non-frivolous allegations for a Rule 11 sanction, the burden of proof shifts to the non-movant to show it made a reasonable pre-suit inquiry into its claim."). For example, Stragent must now:

> (1) identify the patentably distinct elements and identify the support for such elements in the specification (to the extent Stragent claims that the closely related continuation patents to its invalid and disclaimed parent patents are distinct);

> (2) identify which claim terms should be afforded narrow constructions that would avoid the prior art identified in the several

---

[7] As BMW explained in its Motion to Strike Stragent's infringement contentions in the Eastern District of Texas case, Stragent's infringement allegations in that case were flawed. *See* C.A. No. 6:16-cv-00446 (E.D. Tex.),Dkt. 69, 93. Stragent's allegations in this case appear to suffer many of the same flaws, based on our preliminary review. For those and other reasons, Stragent has not set forth a sufficient case for infringement and BMW does not infringe.

George Pazuniak
June 8, 2020
Page 6

successful IPRs, and those proposed constructions and their intrinsic
support; and

(3) explain why Stragent's failure to comply with its duty of candor
does not render Stragent's continuation patents unenforceable.

And to the extent Stragent claims that providing this information is premature, this
information should have been part of your pre-suit investigation, which Stragent must
explain, especially given these circumstances.

If Stragent cannot provide facts or law explaining Stragent's presuit investigation
and objective basis for this lawsuit, we ask Stragent to withdraw its Complaint against
BMW at these early stages. However, if Stragent ignores our request to withdraw the
Complaint, please be advised that BMW will seek sanctions under Fed. R. Civ. P. 11,
28 U.S.C. § 1927, 35 U.S.C. § 285, and any other applicable statutes or authority
against both you and your client.

We appreciate your attention to this matter, and we look forward to a response.

Sincerely,

Lionel M. Lavenue

Enclosures:
Stragent June 22, 2018 Threat Letter to BMW
BMW August 10, 2018 letter to Stragent
Exemplary charts comparing the invalidated claims of the invalidated '705 and/or '843
patents to the asserted independent claims of the continuation patents.

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP



211 W. Tyler, Suite C-2
Longview, Texas 75601
(903) 230-9676

June 22, 2018

Lionel M. Lavenue
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
11955 Freedom Drive
Reston, VA 20190

Via E-Mail: lionel.lavenue @finnegan.com

Re:     Stragent Patent Portfolio
        Notice of Possible Patent Infringement and Offer of License

Dear Mr. Lavenue:

The purpose of this letter is to put you on notice of U.S. Patent Numbers 9,575,817, 9,705,765 and 10,002,036, as well as USPAN 15/919,201 (for which issue fees have already been paid), owned by our company, Stragent, LLC ("Stragent").  As it has been established in connection with previous correspondence, your company is employing the AUTOSAR standard in some of its products.  As you can see from the attached exemplary draft claim charts for U.S. Patent 9,575,817, claim 8, 9,705,765, claim 1, 10,002,036, claim 1, and USPAN 15/919,201, claim 50, we believe that such has applicability to the AUTOSAR standard.

O'Kelly and Ernst, LLC ("O'Kelly") is our authorized licensing agent.  Stragent, through O'Kelly, is willing to discuss licensing terms at preferential rates for your prompt resolution of this matter.  If you have any immediate questions, please contact Mr. Murray directly.  His contact information is below.

Daniel Murray
O'Kelly & Ernst, LLC
E:  dmurray@oelegal.com
T:  (302) 778-3517
F:  (302) 295-2873

Sincerely,

Andrew Gordon, Executive Vice President



FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
WWW.FINNEGAN.COM

LIONEL M. LAVENUE
571.203.2750
lionel.lavenue@finnegan.com

August 10, 2018

Daniel Murray, Esq.                                    <u>Via Email</u>
O'Kelly & Ernst, LLC
901 N. Market St., Suite 1000
Wilmington, DE 19801
dmurray@oelegal.com

**Re: Stragent's June 22, 2018 Letter**

Dear Mr. Murray:

    We write in response to the letter of June 22, 2018, sent by your client, Stragent, LLC, purportedly to "put [us] on notice of U.S. Patent Numbers 9,575,817, 9,705,765 and 10,002,036, as well as USPAN 15/919,201," which Stragent purportedly believes relate to the AUTOSAR standard.  Stragent's letter, which we understand to be a threat of suit alleging infringement of the patents identified therein, contains a number of flawed and baseless assertions.

    *First*, we note that neither Stragent's letter nor claim charts mentions any company by name. But, because the file name of the letter we received includes "BMW," we assume Stragent's allegations are directed to our clients, the BMW defendants in Stragent's pending (but currently stayed) patent infringement lawsuit in the Eastern District of Texas (case no. 6:16-cv-00446).  While we received your letter and represent the BMW defendants in the E.D. Texas lawsuit, BMW is not "our" company, as the letter implies.

    *Second*, Stragent should know that the patents identified in the June 22 letter are invalid.  Stragent has filed multiple lawsuits asserting U.S. Patent Nos. 8,209,705 and 8,566,843, which have been stayed while the PTAB resolves several *inter partes* review petitions concerning those patents.[1]  The PTAB has already issued multiple final written decisions finding all challenged claims of the '705 and '843 patents invalid, and instituted six additional IPRs to address the remaining claims identified in Stragent's infringement

---

[1] Although Stragent included the '817 patent in its infringement contentions in the pending E.D. Texas case, it never attempted to amend its complaint to include allegations of infringement of that patent.  As a result, the '817 patent was never actually part of the pending cases, and the Defendants filed a motion to strike those infringement contentions.

Daniel Murray, Esq.
August 10, 2018
Page 2

contentions.  A final written decision on these remaining petitions is expected by December 8, 2018.

Based on our review to date, the claims of the patents identified in the June 22 letter are not patentably distinct from those of the '705 and '843 patents that have been previously deemed unpatentable by the PTAB, or are currently subject to IPR for that purpose.  This is further confirmed by the claim charts Stragent attached to the letter, which are nearly indistinguishable from those provided in the E.D. Texas litigation.  As a result, Stragent's patents listed in the June 22 letter are invalid under 35 U.S.C. §§ 102 and/or 103 at least in view of the prior art previously cited in the IPRs.[2]  Asserting a patent that the owner knows, or should know, is invalid is "by itself a sufficient basis for finding [a] case[] exceptional [and awarding attorneys' fees under 35 U.S.C. § 285]."  *See, e.g., MyHealth v. ALR Tech., Inc.*, No. 2:16-cv- 00535-RWS-RSP (Lead), Dkt. No. 131 (Memorandum Opinion and Order), at *8 (E.D. Tex. Dec. 19, 2017).

*Third*, Stragent's failure to satisfy its duty of candor to the Patent Office renders at least three of the patents listed in the June 22 letter unenforceable.  Stragent failed to disclose to the Patent Office the PTAB decisions instituting the IPRs of the '705 and '843 patents, the PTAB's final written decisions in those IPRs, or Defendants' invalidity contentions and associated claim charts from the E.D. Texas lawsuit.  There can be no doubt that this information is material to patentability of these patents, and that Stragent was aware of this information.  Thus, Stragent had a duty to disclose it.  *See, e.g.,* MPEP § 2001.06(c).  Stragent's failure to do so renders those patents unenforceable, and may impact Stragent's patent portfolio as a whole.[3]  *See Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1288-89 (Fed. Cir. 2011) ("[T]he taint of a finding of inequitable conduct can spread from a single patent to render unenforceable other related patents and applications in the same technology family.")

*Fourth*, Stragent is estopped from asserting any claim not patentably distinct from those previously held unpatentable in the IPRs.  *See* 37 C.F.R. 42.73(d)(3)(i).  Because

---

[2] Defendants in the E.D. Texas lawsuits served invalidity contentions on Stragent explaining additional grounds for invalidity of the asserted patents, including, but not limited to, lack of written description, lack of enablement, and indefiniteness under 35 U.S.C. § 112.  These arguments would also be applicable to those patents presently identified in your letter.

[3] This is not the first time Stragent has withheld material information from the PTO.  In a 2011 case Stragent filed against BMW and Mercedes (E.D. Tex. Case No. 6:11-cv-278), Stragent withheld material litigation information during a reexamination of its asserted patent and prosecution of related applications.  *See* Case No. 6:11-cv-278, Dkt. 380 (BMW's Motion for Leave to Amend).  Stragent's track record of withholding material information from the PTO in efforts to harass defendants with serial infringement suits further evidences its bad faith and intent to deceive.

Daniel Murray, Esq.
August 10, 2018
Page 3

the claims of the patents identified in the June 22 letter are not patentably distinct from those of the '705 and '843 patents that have been deemed unpatentable, Stragent is estopped from taking action inconsistent with the PTAB's judgment, including attempting to assert infringement and re-litigate the validity of its prior patents through the patentably indistinct claims of the patents raised in your letter.

*Fifth*, based on our review of the claim charts attached to the June 22 letter, Stragent's apparent theory of infringement for the patents listed therein is virtually indistinguishable from its theory for the invalid '705 and '843 patents. The E.D. Texas defendants filed a Motion to Strike Stragent's infringement contentions for the '705 and '843 patents because they are insufficient and fail to provide notice of Stragent's claims. The allegations raised in the June 22 letter suffer the same deficiencies.

For at least these reasons, any lawsuit filed by Stragent alleging infringement of the patents identified in the June 22 letter would be baseless and in bad faith. If Stragent were to file such a baseless lawsuit, our client will file another round of IPR petitions challenging the validity of the new patents. In view of its decisions to date, we expect the PTAB would institute IPR without hesitation and issue a final written decision finding claims unpatentable for many of the reasons already articulated. Upon filing these IPRs, our client would again seek to stay any new lawsuit, and request recovery of attorneys' fees and costs under 35 U.S.C. § 285 upon successful completion of these IPRs and, correspondingly, such new lawsuit. *Deep Sky Software, Inc. v. Southwest Airlines Co.*, 2015 WL 10844231, Case No. 10-cv-1234-CAB (S.D. Cal. Aug. 19, 2015). We would further pursue all applicable remedies against Stragent and its counsel, including sanctions under Rule 11 and 28 U.S.C. § 1927, regarding their decision to file in the first instance. Further, in order to recover our fees, we will seek discovery into Stragent's business operations, including its capitalization, principals, and contingency fee arrangements with counsel. *See Iris Connex, LLC v. Dell, Inc.*, 235 F.Supp.3d 826 (E.D. Tex. 2017).

We expect that this response concludes this matter. If you would like to schedule a call to further discuss these issues, please let us know.

Sincerely,

Lionel M. Lavenue

**EXHIBIT A**

Exemplary Claim Comparison for '477 Patent

| 10,248,477 (asserted) | 8,209,705 (cancelled) | 8,566,843 (cancelled) |
|---|---|---|
| [1.pre] A layered system for sharing information in an automobile vehicle, said system comprising: | [20.pre] A system for sharing information, the system comprising: | [51.pre] An apparatus, comprising: |
| [1.1] an automotive electronic control unit comprising a microprocessor and an operating system; | [20.1] processor and memory, the memory storing:<br><br>11. The non-transitory computer-readable medium as recited in claim 7, wherein the computer program product is operable such that the information is shared with an operating system. | [51.1] a control unit configured for:<br><br>24. The non-transitory computer-readable medium as set forth in claim 1, wherein the computer program product is operable such that the first interface-related first layer part or the second interface-related first layer part includes at least one of a controller, a communication interface, or *an operating system interface*; and<br><br>the first interface-related second layer part or the second interface-related second layer part includes at least one of a remote message conversion layer, a communication interface, or *an operating system interface*. |
| [1.2] a hardware abstraction layer within the electronic control unit allowing the operating system to be adapted to a specific hardware implementation as used in the electronic control unit; | 17. The non-transitory computer-readable medium as recited in claim 7, wherein the computer program product is part of an apparatus including a plurality of layers including at least two of an application layer, a middleware layer, a real-time operating system layer, a device driver layer, and a hardware abstraction layer. | 24. The non-transitory computer-readable medium as set forth in claim 1, wherein the computer program product is operable such that the first interface-related first layer part or the second interface-related first layer part includes at least one of a controller, *a communication interface*, or an operating system interface; and<br><br>the first interface-related second layer part or the second interface-related second layer part includes at least one of a remote message conversion layer, *a communication interface*, or an operating system interface. |
| [1.3] non-volatile memory comprising a database with a data structure; | *See* element [20.1], reciting "memory" and "the memory storing." | 4. The non-transitory computer-readable medium as set forth in claim 1, wherein the computer program product is operable Such that the storage resource includes a shared memory.<br><br>8. The non-transitory computer-readable medium as set forth in claim 1, wherein the computer program product is operable Such that the storage resource involves a database. |
| [1.4] a memory manager associated with the non-volatile memory, said memory manager comprising an upgrade and configuration manager to configure the data structure of the non-volatile memory, an event manager to capture input-output events as variables and generate new events, flags or signals, a data access manager to control code update and configuration of the memory and access rights for individual applications | 3. The method as recited in claim 1, wherein the information is extracted from the message received by a storage resource manager.<br><br>4. The method as recited in claim 1, wherein the information is converted from a signal received by a storage resource manager. | 3. The non-transitory computer-readable medium as set forth in claim 1, wherein the computer program product is operable such that the storage resource includes a bulletin board resource. |

**EXHIBIT A**

Exemplary Claim Comparison for '477 Patent

| | | |
|---|---|---|
| at execution, and a data integrity component to analyze stored state variables for integrity and generate events or flags if any problem occurs; | 8. The non-transitory computer-readable medium as recited in claim 7, wherein the storage resource includes a bulletin board.<br><br>12. The non-transitory computer-readable medium as recited in claim 7, wherein the computer program product is operable such that objects are generated based on a change of state of the information stored on the storage resource.<br><br>13. The non-transitory computer-readable medium as recited in claim 12, wherein the objects include at least one of flags, events, signals, and interrupts. | |
| [1.5] the non-volatile memory further comprising instructions to: | *See* element [20.1], reciting "memory; *see also* elements [20.2] through [20.7], reciting "logic for." | *See generally*, claims 1-46, reciting "[a] non-transitory computer-readable medium storing a computer program product for sharing information, the computer program product, comprising: code . . . ." |
| [1.6] receive information in the form of a packet data unit representing datum information carried by an overall message from a first physical network selected from the group consisting of FlexRay, Controller Area Network, and Local Interconnect Network; | [20.2] logic for allowing receipt of information associated with a message, utilizing a first network protocol associated with a first network; | [51.2] identifying information associated with a message received utilizing a first network protocol associated with a first network;<br><br>38. The non-transitory computer-readable medium as set forth in claim 1, wherein the computer program product is operable such that the first interface-related first layer messages, the first interface-related second layer messages, the second interface-related first layer messages, and the second interface-related second layer messages include protocol data units (PDUs).<br><br>41. The non-transitory computer-readable medium as set forth in claim 1, wherein the computer program product is operable Such that the message includes a protocol data unit (PDU). |
| [1.7] in response to the receipt of the information, issue a storage resource request in connection with a storage resource; | *See* claim element [20.4], *infra*, reciting "causing a re-request in connection with the storage resource." | [51.3] issuing a storage resource request in connection with a storage resource and determining whether the storage resource is available; |
| [1.8] determine whether the storage resource is available for storing the information; | [20.3] logic for causing a determination as to whether a storage resource is available; | *See* claim element [51.3], which recites "and determining whether the storage resource is available." |
| [1.9] determine whether a threshold has been reached in association with the storage resource request; | [20.4] logic for, in the event the storage resource is not available, determining whether a timeout has been reached and causing a re-request in connection with the storage resource: | [51.4] determining whether a threshold has been reached in association with the storage resource request; |

**EXHIBIT A**

Exemplary Claim Comparison for '477 Patent

| | | |
|---|---|---|
| [1.10] in the event the storage resource is not available and the threshold associated with the storage resource request has not been reached, issue another storage resource request in connection with the storage resource; | [20.5] logic for, in the event the timeout has been reached, causing an error notification to be sent, and | [51.5] in the event the storage resource is not available and the threshold associated with the storage resource request has not been reached, issuing another storage resource request in connection with the storage resource: <br><br> [51.6] in the event the storage resource is not available and the threshold associated with the storage resource request has been reached, sending a notification; and |
| [1.11] in the event the storage resource is available, store the information in the storage resource; and | [20.6] logic for, in the event the storage resource is available and the timeout has not been reached, causing storage of the information utilizing the storage resource; | [51.7] in the event the storage resource is available, storing the information utilizing the storage resource: |
| [1.12] share the stored information with at least one of a plurality of heterogeneous processes including at least one process associated with a second physical network selected from the group consisting of FlexRay, Controller Area Network, and Local Interconnect Network, utilizing a network protocol different from a protocol of the first physical network; | [20.7] logic for causing the information to be shared by: <br><br> in real-time, sharing the information utilizing at least one message format corresponding to a second network protocol associated with a second network which is different from the first network protocol; | [51.8] wherein the apparatus is operable such that the information is capable of being shared in real-time utilizing a second network protocol associated with a second network, and the control unit includes: <br><br> 55. The apparatus as set forth in claim 51, wherein the apparatus is operable such that the first network and the second network are heterogeneous networks. <br><br> 56. The apparatus as set forth in claim 51, wherein the apparatus is operable such that the second network protocol is different than the first network protocol. |
| [1.13] interfaces for communication with each of FlexRay, Controller Area Network, and Local Interconnect Network networks, with each physical network in communication with a component including at least one of a sensor, an actuator, or a gateway, and with each of the FlexRay, Controller Area Network, and Local Interconnect Network interfaces comprising a corresponding network communication bus controller including a corresponding network communication bus driver; | [20.8] wherein the system is associated with an electronic control unit with at least one gateway function, and a plurality of interface portions including: <br><br> *See also*, claim 1 ("wherein the method is associated with an electronic control unit with at least one gateway function, and a plurality of interface portions"); claim 7 ("wherein the computer program product is associated with an electronic control unit with at least one gateway function, and a plurality of interface portions"). | *See, e.g.*, claim 1 ("wherein the computer program product is associated with an electronic control unit with a plurality of interface portions"); claim 47 ("wherein the method is associated with an electronic control unit with a plurality of interface portions"); claim 48 ("wherein the computer program product is operable such that the information is capable of being shared in real time utilizing a control unit that includes a plurality of interfaces"); claim 49 ("wherein the computer program product is associated with a unit with a plurality of interface portions"); claim 50 ("wherein the electronic control unit is operable such that the information is capable of being shared in real time, and the electronic control unit includes a plurality of interfaces"). <br><br> 17. The non-transitory computer-readable medium as set forth in claim 1, wherein the computer program product is operable such that the electronic control unit is equipped with at least one gateway function. |

**EXHIBIT A**

Exemplary Claim Comparison for '477 Patent

| | | |
|---|---|---|
| [1.14] the interfaces including a first communication interface for interfacing with the first physical network, the first communication interface including a first communication interface-related data link layer component, said first communication interface configured to extract variables from the overall message communicated by the first physical network employing a first protocol and storing the packet data unit representing the datum information carried by the overall message from a first physical network in the database; and | [20.9] a first interface portion for interfacing with the first network, the first interface portion including a first interface-related first layer part for receiving first interface-related first layer messages and a first interface-related second layer part, the first interface-related first layer messages being processed after which first interface-related second layer messages are provided, where the first network is at least one of a Controller Area Network, a Flexray network, or a Local Interconnect Network; and | [51.9] a first interface for interfacing with the first network, the first interface including a first interface-related first component for receiving first data units and a first interface-related second component, the control unit being operable such that the first data units are processed after which processed first data units are provided, where the first network is at least one of a Controller Area Network type, a Flexray network type, or a Local Interconnect Network type; and |
| [1.15] a second communication interface for interfacing with the second physical network utilizing a protocol different than the protocol of the first physical network, the second communication interface including a second communication interface-related data link layer component; | [20.10] a second interface portion for interfacing with the second network, the second interface portion including a second interface-related first layer part for receiving second interface-related first layer messages and a second interface-related second layer part, the second interface-related first layer messages being processed after which second interface-related second layer messages are provided, where the second network is different from the first network and is at least one of the Controller Area Network, the Flexray network, or the Local Interconnect Network. | [51.10] a second interface for interfacing with the second network, the second interface including a second interface-related first component for receiving second data units and a second interface-related second component, the control unit being operable such that the second data units are processed after which processed second data units are provided, where the second network is at least one of the Controller Area Network type, the Flexray network type, or the Local Interconnect Network type. |
| [1.16] wherein the automotive electronic control unit is configured such that the stored information may be shared with the second physical network by replicating the packet unit data obtained from the first physical network by composing another message configured to be communicated using the different protocol of the second physical network. | 2. The method as recited in claim 1, wherein the information is replicated among a plurality of the storage resources. | 45. The non-transitory computer-readable medium as set forth in claim 1, wherein the computer program product is operable such that the first interface-related second layer messages and the second interface-related first layer messages are a same messages. |

**EXHIBIT B**

Exemplary Claim Comparison for '036 Patent

| 10,002,036 (asserted) | 8,209,705 (cancelled) | 8,566,843 (cancelled) |
|---|---|---|
| [1.pre] An apparatus, comprising: | [20.pre] A system for sharing information, the system comprising: | [51.pre] An apparatus, comprising: |
| [1.1] an automotive electronic control unit including a nontransitory memory storage comprising instructions, and | [20.1] processor and memory, the memory storing:<br><br>*See* claim elements [20.2] through [20.7], *infra*, disclosing "logic for."<br><br>[20.8]*  wherein the system is associated with an electronic control unit with at least one gateway function, and a plurality of interface portions including:<br><br>* order of elements has been rearranged for convenience | [51.1] a control unit configured for:<br><br>*See generally*, claims 1-46, reciting "[a] non-transitory computer-readable medium storing a computer program product for sharing information, the computer program product, comprising: code . . . ." |
| [1.2] at least one hardware processor in hardwired communication with the memory storage, wherein | *See* claim elements [20.1] and [20.8], *supra*. | *See* claim element [51.1], *supra*. |
| [1.3] the at least one hardware processor executes the instructions to: | *See* claim elements [20.1] and [20.8], *supra*. | *See* claim element [51.1], *supra*. |
| [1.4] identify information associated with a message received utilizing a Flexray network protocol associated with a Flexray network; | [20.2] logic for allowing receipt of information associated with a message, utilizing a first network protocol associated with a first network;<br><br>*See* claim elements [20.8] and [20.9], *infra*, specifying a Flexray network. | [51.2] identifying information associated with a message received utilizing a first network protocol associated with a first network;<br><br>*See* claim elements [51.9] an [51.10], *infra*, specifying a Flexray network. |
| [1.5] issue a storage resource request in connection with a storage resource of the automotive electronic control unit and determine whether the storage resource is available for storing the information; | [20.3] logic for causing a determination as to whether a storage resource is available; | [51.3] issuing a storage resource request in connection with a storage resource and determining whether the storage resource is available; |
| [1.6] determine whether a threshold has been reached in association with the storage resource request; | [20.4] logic for, in the event the storage resource is not available, determining whether a timeout has been reached and causing a re-request in connection with the storage resource: | [51.4] determining whether a threshold has been reached in association with the storage resource request; |
| [1.7] in the event the storage resource is not available and the threshold associated with the storage resource request has not been reached, issue another storage resource request in connection with the storage resource; | *See* claim element [20.4], which recites "logic for, in the event the storage resource is not available, determining whether a timeout has been reached and causing a re-request in connection with the storage resource." | [51.5] in the event the storage resource is not available and the threshold associated with the storage resource request has not been reached, issuing another storage resource request in connection with the storage resource: |

**EXHIBIT B**

Exemplary Claim Comparison for '036 Patent

| | | |
|---|---|---|
| [1.8] in the event the storage resource is not available and the threshold associated with the storage resource request has been reached, send a notification; | [20.6]* logic for, in the event the timeout has been reached, causing an error notification to be sent, and<br><br><br>*order of elements has been rearranged for convenience | [51.6] in the event the storage resource is not available and the threshold associated with the storage resource request has been reached, sending a notification; and |
| [1.9] in the event the storage resource is available, store the information utilizing the storage resource; and | [20.5]* logic for, in the event the storage resource is available and the timeout has not been reached, causing storage of the information utilizing the storage resource;<br><br><br>*order of elements has been rearranged for convenience | [51.7] in the event the storage resource is available, storing the information utilizing the storage resource: |
| [1.10] share the information in less than one millisecond utilizing a Controller Area Network protocol associated with a Controller Area Network, the automotive electronic control unit remaining in hardwired communication with the Flexray network and the Controller Area Network, and including: | [20.7] logic for causing the information to be shared by:<br><br>in real-time, sharing the information utilizing at least one message format corresponding to a second network protocol associated with a second network which is different from the first network protocol; | [51.8] wherein the apparatus is operable such that the information is capable of being shared in real-time utilizing a second network protocol associated with a second network, and the control unit includes: |
| [1.11] a first interface for interfacing with the Flexray network, the first interface including a first interface-related data link layer component that uses Flexray network-related data link layer header bits and a first interface-related network layer component that uses Flexray network-related network layer header bits; and | [20.8] a first interface portion for interfacing with the first network, the first interface portion including a<br><br>first interface-related first layer part for receiving first interface-related first layer messages and a first inter face-related second layer part, the first interface-related first layer messages being processed after which first interface-related second layer messages are provided, where the first network is at least one of a Controller Area Network, a Flexray network, or a Local Interconnect Network; and | [51.9] a first interface for interfacing with the first network, the first interface including a first interface-related first component for receiving first data units and a first interface-related second component, the control unit being operable such that the first data units are processed after which processed first data units are provided, where the first network is at least one of a Controller Area Network type, a Flexray network type, or a Local Interconnect Network type; and |
| [1.12] a second interface for interfacing with the Controller Area Network, the second interface including a second interface-related data link layer component that uses Controller Area Network-related data link layer header bits and a second interface- related network layer component that uses Controller Area Network-related network layer header bits. | [20.9] a second interface portion for interfacing with the second network, the second interface portion including a second interface-related first layer part for receiving second interface-related first layer messages and a second interface-related second layer part, the second interface-related first layer messages being processed after which second interface-related second layer messages are provided, where the second network is | [51.10] a second interface for interfacing with the second network, the second interface including a second interface-related first component for receiving second data units and a second interface-related second component, the control unit being operable such that the second data units are processed after which processed second data units are provided, where the second network is at least one of the Controller |

**EXHIBIT B**

Exemplary Claim Comparison for '036 Patent

| | different from the first network and is at least one of the Controller Area Network, the Flexray network, or the Local Interconnect Network. | Area Network type, the Flexray network type, or the Local Interconnect Network type. |
|---|---|---|

**EXHIBIT C**

Exemplary Claim Comparison for '790 Patent

| 10,031,790 (asserted) | 8,209,705 (cancelled) | 8,566,843 (cancelled) |
|---|---|---|
| [1.pre] An apparatus, comprising: | [20.pre] A system for sharing information, the system comprising: | [51.pre] An apparatus, comprising: |
| [1.1] an automotive electronic control unit including a nontransitory memory storage comprising instructions, and | [20.1] processor and memory, the memory storing:<br><br>*See* claim elements [20.2] through [20.7], *infra*, disclosing "logic for."<br><br>[20.8]*  wherein the system is associated with an electronic control unit with at least one gateway function, and a plurality of interface portions including:<br><br>* order of elements has been rearranged for convenience | [51.1] a control unit configured for:<br><br>*See generally*, claims 1-46, reciting "[a] non-transitory computer-readable medium storing a computer program product for sharing information, the computer program product, comprising: code . . . ." |
| [1.2] at least one hardware processor in hardwired communication with the memory storage, wherein the at least one hardware processor executes the instructions to: | *See* claim elements [20.1] and [20.8], *supra*. | *See* claim element [51.1], *supra*. |
| [1.3] identify information associated with a message received utilizing a Flexray network protocol associated with a Flexray network that is a physical network; | [20.2] logic for allowing receipt of information associated with a message, utilizing a first network protocol associated with a first network;<br><br>*See* claim elements [20.8] and [20.9], *infra*, specifying a Flexray network. | [51.2] identifying information associated with a message received utilizing a first network protocol associated with a first network;<br><br>*See* claim elements [51.9] an [51.10], *infra*, specifying a Flexray network. |
| [1.4] in response to the identification of the information, issue a storage resource request in connection with a storage resource of the automotive electronic control unit and determine whether the storage resource is available for storing the information, where the storage resource is configured to store the information that is received utilizing the Flexray network for the purpose of sharing the information utilizing a Controller Area Network that is another physical network; | [20.3] logic for causing a determination as to whether a storage resource is available;<br><br>*See, e.g.*, claims 2-4 and 8, reciting a "storage resource" and storage resource manager" that satisfy the "configured to" limitations of this claim element. | [51.3] issuing a storage resource request in connection with a storage resource and determining whether the storage resource is available;<br><br>*See, e.g.*, claims 3-8, reciting a "storage resource" that satisfies the "configured to" limitations of this claim element. |
| [1.5] determine whether a threshold has been reached in association with the storage resource request; | [20.4] logic for, in the event the storage resource is not available, determining whether a timeout has been reached and causing a re-request in connection with the storage resource: | [51.4] determining whether a threshold has been reached in association with the storage resource request; |

**EXHIBIT C**

Exemplary Claim Comparison for '790 Patent

| | | |
|---|---|---|
| [1.6] in the event the storage resource is not available and the threshold associated with the storage resource request has not been reached, issue another storage resource request in connection with the storage resource; | *See* claim element [20.4], which recites "logic for, in the event the storage resource is not available, determining whether a timeout has been reached and causing a re-request in connection with the storage resource." | [51.5] in the event the storage resource is not available and the threshold associated with the storage resource request has not been reached, issuing another storage resource request in connection with the storage resource: |
| [1.7] in the event the storage resource is not available and the threshold associated with the storage resource request has been reached, send a notification; | [20.6]* logic for, in the event the timeout has been reached, causing an error notification to be sent, and<br><br><br>*order of elements has been rearranged for convenience | [51.6] in the event the storage resource is not available and the threshold associated with the storage resource request has been reached, sending a notification; and |
| [1.8] in the event the storage resource is available, store the information utilizing the storage resource; and | [20.5]* logic for, in the event the storage resource is available and the timeout has not been reached, causing storage of the information utilizing the storage resource;<br><br><br>*order of elements has been rearranged for convenience | [51.7] in the event the storage resource is available, storing the information utilizing the storage resource: |
| [1.9] share the information utilizing a Controller Area Network protocol associated with the Controller Area Network, the automotive electronic control unit remaining in hardwired communication with the Flexray network and the Controller Area Network, and including: | [20.7] logic for causing the information to be shared by:<br><br>in real-time, sharing the information utilizing at least one message format corresponding to a second network protocol associated with a second network which is different from the first network protocol;<br><br>*See* claim elements [20.8] and [20.9], *infra*, specifying CAN and Flexray networks. | [51.8] wherein the apparatus is operable such that the information is capable of being shared in real-time utilizing a second network protocol associated with a second network, and the control unit includes:<br><br>*See* claim elements [51.9] and [51.10], *infra*, specifying CAN and Flexray networks. |
| [1.10] a first interface for interfacing with the Flexray network, the first interface including a first interface-related data link layer component that uses Flexray network-related data link layer header bits and a first interface-related network layer component that uses Flexray network-related network layer header bits; and | [20.8] a first interface portion for interfacing with the first network, the first interface portion including a<br><br>first interface-related first layer part for receiving first interface-related first layer messages and a first inter face-related second layer part, the first interface-related first layer messages being processed after which first interface-related second layer messages are provided, where the first network is at least one of a Controller Area Network, a Flexray network, or a Local Interconnect Network; and | [51.9] a first interface for interfacing with the first network, the first interface including a first interface-related first component for receiving first data units and a first interface-related second component, the control unit being operable such that the first data units are processed after which processed first data units are provided, where the first network is at least one of a Controller Area Network type, a Flexray network type, or a Local Interconnect Network type; and |

**EXHIBIT C**

Exemplary Claim Comparison for '790 Patent

| | | |
|---|---|---|
| [1.11] a second interface for interfacing with the Controller Area Network, the second interface including a second interface-related data link layer component that uses Controller Area Network-related data link layer header bits and a second interface related network layer component that uses Controller Area Network-related network layer header bits; | [20.9] a second interface portion for interfacing with the second network, the second interface portion including a second interface-related first layer part for receiving second interface-related first layer messages and a second interface-related second layer part, the second interface-related first layer messages being processed after which second interface-related second layer messages are provided, where the second network is different from the first network and is at least one of the Controller Area Network, the Flexray network, or the Local Interconnect Network. | [51.10] a second interface for interfacing with the second network, the second interface including a second interface-related first component for receiving second data units and a second interface-related second component, the control unit being operable such that the second data units are processed after which processed second data units are provided, where the second network is at least one of the Controller Area Network type, the Flexray network type, or the Local Interconnect Network type. |
| wherein the automotive electronic control unit is configured such that:<br><br>the second interface-related network layer component uses the Controller Area Network-related network layer header bits by adding the Controller Area Network-related network layer header bits to a data unit including the information, and then the second interface-related data link layer component uses the Controller Area Network-related data link layer header bits by adding the Controller Area Network-related data link layer header bits to the data unit, before communicating the data unit on a physical link of the Controller Area Network; | This element does not render the '790 claims patentably distinct from the '705 claims. | This element does not render the '790 claims patentably distinct from the '843 claims.  *See also*:<br><br>39. The non-transitory computer-readable medium as set forth in claim 1, wherein the computer program product is operable such that the first interface-related first layer messages and the first interface-related second layer messages are different in terms of at least one aspect of headers thereof.<br><br>42. The non-transitory computer-readable medium as set forth in claim 1, wherein the computer program product is operable Such that the message includes a header.<br><br>44. The non-transitory computer-readable medium as set forth in claim 1, wherein the computer program product is operable such that the first interface-related second layer messages and the second interface-related first layer messages have a same format.<br><br>45. The non-transitory computer-readable medium as set forth in claim 1, wherein the computer program product is operable such that the first interface-related second layer messages and the second interface-related first layer messages are a same messages. |
| the first interface-related data link layer component uses the Flexray network-related data link layer header bits by removing the Flexray network-related data link layer header bits from another data unit, and the first interface-related network layer component uses the Flexray network-related network layer header bits by removing the Flexray network-related network layer header bits from the another data unit, where the information is extracted from the another data unit before the sharing; and | This element does not render the '790 claims patentably distinct from the '705 claims. | This element does not render the '790 claims patentably distinct from the '843 claims.  *See also* claims 39, 42, 44, and 45. |

**EXHIBIT C**

Exemplary Claim Comparison for '790 Patent

| | | |
|---|---|---|
| a duration between the information being received at the automotive electronic control unit, and the sharing being completed by arriving at a destination, is less than one millisecond. | *See* claim element [20.7], supra, reciting "in real-time, sharing the information . . . with a second network." | *See* claim element [51.8], supra, reciting "the information is capable of being shared in real-time utilizing a second network protocol associated with a second network." |

**EXHIBIT D**

Exemplary Claim Comparison for '765 Patent

| 9,705,765 (asserted) | 8,209,705 (cancelled) | 8,566,843 (cancelled) |
|---|---|---|
| 1. An apparatus, comprising: | [20.pre] A system for sharing information, the system comprising: | [51.pre] An apparatus, comprising: |
| [1.1] an automotive electronic control unit comprising a hardware and instructions for: | [20.1] processor and memory, the memory storing:<br><br>*See* claim elements [20.2] through [20.7], *infra*, disclosing "logic for."<br><br>[20.8]*  wherein the system is associated with an electronic control unit with at least one gateway function, and a plurality of interface portions including:<br><br>* order of elements has been rearranged for convenience | [51.1] a control unit configured for:<br><br>*See generally*, claims 1-46, reciting "[a] non-transitory computer-readable medium storing a computer program product for sharing information, the computer program product, comprising: code . . . ." |
| [1.2] identifying information associated with a message received utilizing a Controller Area Network protocol associated with a Controller Area Network; | [20.2] logic for allowing receipt of information associated with a message, utilizing a first network protocol associated with a first network;<br><br>*See* claim elements [20.8] and [20.9], *infra*, specifying a CAN network. | [51.2] identifying information associated with a message received utilizing a first network protocol associated with a first network;<br><br>*See* claim elements [51.9] an [51.10], *infra*, specifying a CAN network. |
| [1.3] issuing a storage resource request in connection with a storage resource of the automotive electronic control unit and determining whether the storage resource is available for storing the information; | [20.3] logic for causing a determination as to whether a storage resource is available; | [51.3] issuing a storage resource request in connection with a storage resource and determining whether the storage resource is available; |
| [1.4] determining whether a threshold has been reached in association with the storage resource request; | [20.4] logic for, in the event the storage resource is not available, determining whether a timeout has been reached and causing a re-request in connection with the storage resource; | [51.4] determining whether a threshold has been reached in association with the storage resource request; |
| [1.5] in the event the storage resource is not available and the threshold associated with the storage resource request has not been reached, issuing another storage resource request in connection with the storage resource; | *See* claim element [20.4], which recites "logic for, in the event the storage resource is not available, determining whether a timeout has been reached and causing a re-request in connection with the storage resource." | [51.5] in the event the storage resource is not available and the threshold associated with the storage resource request has not been reached, issuing another storage resource request in connection with the storage resource; |
| [1.6] in the event the storage resource is not available and the threshold associated with the storage resource request has been reached, sending a notification; | [20.6]* logic for, in the event the timeout has been reached, causing an error notification to be sent, and<br><br><br>*order of elements has been rearranged for convenience | [51.6] in the event the storage resource is not available and the threshold associated with the storage resource request has been reached, sending a notification; and |

**EXHIBIT D**

Exemplary Claim Comparison for '765 Patent

| | | |
|---|---|---|
| [1.7] in the event the storage resource is available, storing the information utilizing the storage resource; and | [20.5]* logic for, in the event the storage resource is available and the timeout has not been reached, causing storage of the information utilizing the storage resource;<br><br>*order of elements has been rearranged for convenience | [51.7] in the event the storage resource is available, storing the information utilizing the storage resource: |
| [1.8] sharing the information in less than one second utilizing a Flexray network protocol associated with a Flexray network, wherein the automotive electronic control unit remains in hardwired communication with the Controller Area Network and the Flexray network and includes: | [20.7] logic for causing the information to be shared by:<br><br>in real-time, sharing the information utilizing at least one message format corresponding to a second network protocol associated with a second network which is different from the first network protocol;<br><br>*See* claim elements [20.8] and [20.9], *infra*, specifying CAN and Flexray networks. | [51.8] wherein the apparatus is operable such that the information is capable of being shared in real-time utilizing a second network protocol associated with a second network, and the control unit includes:<br><br>*See* claim elements [51.9] and [51.10], *infra*, specifying CAN and Flexray networks. |
| [1.9] a first interface for interfacing with the Controller Area Network, the first interface including a first interface-related data link layer component for using Controller Area Network-related data link layer header bits and a first interface-related network layer component for using Controller Area Network-related network layer header bits; and | [20.8] a first interface portion for interfacing with the first network, the first interface portion including a<br><br>first interface-related first layer part for receiving first interface-related first layer messages and a first inter face-related second layer part, the first interface-related first layer messages being processed after which first interface-related second layer messages are provided, where the first network is at least one of a Controller Area Network, a Flexray network, or a Local Interconnect Network; and | [51.9] a first interface for interfacing with the first network, the first interface including a first interface-related first component for receiving first data units and a first interface-related second component, the control unit being operable such that the first data units are processed after which processed first data units are provided, where the first network is at least one of a Controller Area Network type, a Flexray network type, or a Local Interconnect Network type; and |
| [1.10] a second interface for interfacing with the Flexray network, the second interface including a second interface-related data link layer component for using Flexray network-related data link layer header bits and a second interface-related network layer component for using Flexray network-related network layer header bits. | [20.9] a second interface portion for interfacing with the second network, the second interface portion including a second interface-related first layer part for receiving second interface-related first layer messages and a second interface-related second layer part, the second interface-related first layer messages being processed after which second interface-related second layer messages are provided, where the second network is different from the first network and is at least one of the Controller Area Network, the Flexray network, or the Local Interconnect Network. | [51.10] a second interface for interfacing with the second network, the second interface including a second interface-related first component for receiving second data units and a second interface-related second component, the control unit being operable such that the second data units are processed after which processed second data units are provided, where the second network is at least one of the Controller Area Network type, the Flexray network type, or the Local Interconnect Network type. |