**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **STRAGENT, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:20-cv-00510-LPS** |
| **BMW OF NORTH AMERICA, LLC, and** | |
| **BMW MANUFACTURING CO., LLC,** | |
| **Defendants.** | |
| **STRAGENT, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:20-cv-00511-LPS** |
| **MERCEDES-BENZ USA, LLC; MERCEDES-BENZ VANS, LLC; DAIMLER TRUCKS NORTH AMERICA LLC; and DAIMLER NORTH AMERICA CORPORATION,** | |
| **Defendants.** | |
| **STRAGENT, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:20-cv-00512-LPS** |
| **VOLVO CAR NORTH AMERICA, LLC,** | |
| **Defendant.** | |

**STRAGENT'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS UNDER RULE 12(b)(6) BASED ON CLAIM AND ISSUE PRECLUSION**

*Of Counsel*:

Thomas F. Meagher
Alan Christopher Pattillo
Meagher Emanuel Laks Goldberg & Liao, LLP
One Palmer Square
Suite 325
Princeton, New Jersey 08542
(609) 454-3500
tmeagher@meagheremanuel.com
cpattillo@meagheremanuel.com

George Pazuniak (DE Bar 478)
O'KELLY & ERNST, LLC
824 N. Market St.
Suite 1001A
Wilmington, DE 19801
Tel: 302-478-4230
Email: GP@del-iplaw.com

*Counsel for Plaintiff*
*Stragent, LLC.*

## **TABLE OF CONTENTS**

I.   STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS            - 1 -

II.  SUMMARY OF ARGUMENT                                             - 1 -

III. STATEMENT OF FACTS                                             - 2 -

1.   The Prior Texas Litigation                                     - 2 -

2.   The IPR Proceedings                                            - 4 -

3.   The Current Claims Are Patentably Distinct From The IPR Claims  - 4 -

4.   The Current Claims Issued After Full Disclosure Of The IPRs    - 6 -

5.   Pre-Motion Communications Between The Parties                  - 6 -

IV.  ARGUMENT                                                       - 7 -

    a.   Defendants Have Burden Of Proving That Preclusion Applies  - 7 -

    b.   There Is No Judicial Decision On The Merits                - 8 -

    c.   Preclusion Is Improper Where There Is A Difference In The Law  - 9 -

    d.   The Present Claims Are Patentably Distinct From The IPR Claims  - 12 -

    e.   No Issue Preclusion                                        - 17 -

    f.   37 C.F.R. § 42.73(d)(3) Has No Application                 - 19 -

V.   CONCLUSION                                                     - 19 -

## **TABLE OF AUTHORITIES**

**CASES**

*Cuozzo Speed Techs., LLC v. Lee*,

    136 S. Ct. 2131 (2016) ........................................................................................ - 10 -, - 11 -

*Gould Elecs. Inc. v. United States*,

    220 F.3d 169 (3d Cir. 2000) ................................................................................................ - 7 -

*Herrera v. Wyoming*,

    139 S. Ct. 1686 (2019) ...................................................................................................... - 10 -

*In re PersonalWeb Techs. LLC*,

    961 F.3d 1365 (Fed. Cir. 2020) ......................................................................................... - 8 -

In *XY, LLC v. Trans Ova Genetics*,

    890 F.3d 1282 (Fed. Cir. 2018) ....................................................................................... - 11 -

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,

    719 F.3d 1367 (Fed. Cir. 2013) ............................................................................. - 9 -, - 17 -

*MaxLinear, Inc. v. CF CRESPE LLC*,

    880 F.3d 1373 (Fed. Cir. 2018) ....................................................................................... - 12 -

*Microsoft Corp. v. I4I Ltd. P'ship*,

    564 U.S. 91 (2011) ............................................................................................................. - 7 -

*Ohio Willow Wood Co. v. Alps S., LLC*,

    735 F.3d 1333 (Fed. Cir. 2013) ....................................................................................... - 18 -

*Papst Licensing GmbH v. Samsung Elecs. Am., Inc.*,

    924 F.3d 1243 (Fed. Cir. 2019) ....................................................................................... - 12 -

iv

*Raniere v. Microsoft Corp.*,

    887 F.3d 1298 (Fed. Cir. 2018)................................................................- 8 -

*SimpleAir, Inc. v. Google LLC*,

    884 F.3d 1160 (Fed. Cir. 2018)................................................- 13 -, - 17 -

## STATUTES

35 U.S.C. § 282(a) ................................................................- 13 -, - 16 -

35 U.S.C. §253................................................................................- 3 -

## OTHER AUTHORITIES

M.P.E.P. § 2111 ..........................................................................- 11 -

## RULES

Fed. R. Civ. P. 41(a)(2)..............................................................- 2 -, - 3 -

## REGULATIONS

37 C.F.R. § 42.73(d)(3)................................................................- 18 -

37 C.F.R. 1.321(a)..........................................................................- 3 -

37 CFR 42.100(b) ..........................................................................- 11 -

## I.   Statement Of The Nature And Stage Of The Proceedings

Plaintiff Stragent, LLC ("Stragent") filed the above three captioned cases for infringement of four patents against Defendants BMW of North America, LLC and BMW Manufacturing Co., LLC (C.A. No. 20-510-LPS); Mercedes-Benz USA, LLC, Mercedes-Benz Vans, LLC, Daimler Trucks North America, LLC, and Daimler North America Corp. (C.A. No. 20-511-LPS); and Volvo Car North America, LLC (C.A. No. 20-512-LPS) (collectively, "Defendants"). Defendants moved to dismiss these actions, with all three sets of Defendants filing identical motions, briefs and exhibits.  This is Stragent's response to the Motions.  Consistent with Defendants' briefs, all "D.I." references are to C.A. No. 20-510-LPS.

## II.   Summary Of Argument

1.  Defendants' summary of arguments is largely incorrect.  Stragent had previously sued Defendants under Patents 8,209,705 ("the '705 Patent") and 8,566,843 ("the '843 Patent") in the Eastern District of Texas.  Thereafter, the Patent Trial And Appeal Board of the United States Patent and Trademark Office ("PTAB") held all the claims of the two patents unpatentable under 35 U.S.C. §103(a).  Stragent appealed the PTAB determinations to the Federal Circuit Court of Appeals, but then, before any substantive proceedings, agreed to dismiss the appeals as there was essentially no likelihood that the appeal would be successful.  Then, on February 18, 2019, Stragent disclaimed all the claims of both Patents pursuant to 35 U.S.C. §253 and 37 C.F.R. 1.321(a), and moved to dismiss the Texas cases on the grounds that, with the patents disclaimed, the Court had no further subject matter jurisdiction over the patents.  The Court granted Stragent's motion to dismiss, awarded costs to Defendants, and denied BMW's motion for attorney fees.  (Neither the Mercedes nor Volvo Defendants moved for fees).

2.  Defendants err in arguing that the "Texas Court entered final judgment on the merits against Stragent."  The cases against Defendants in the Texas Court were dismissed with prejudice pursuant to Fed. R. Civ. P. 41(a)(2).  The dismissal followed Stragent's disclaimer of the patents that were in suit in Texas, and, thus, the Texas Court lacked jurisdiction over the patents.

3.  The PTAB's determinations of the unpatentability of the '705 patent and '843 patent claims ("IPR Claims") has no preclusive effect here, because the obviousness determinations were based on now-discredited law.  Thus, on this basis alone the determinations cannot be preclusive in view of the "change of law" exception to claim and issue preclusion.

4.  Further, the PTAB's determinations of the unpatentability of the IPR Claims has no preclusive effect here, because the asserted claims of the four patents in suit are materially different and patentably distinct from the IPR Claims.  Defendants fail to show identicality of the IPR Claims and the present claims in suit.  Indeed, Defendants do not even attempt to show any correspondence between the IPR Claims and the asserted claims of one of the patents in suit. The statutory presumption of validity of the instant claims in suit cannot be circumvented by Defendants' unsupported assertions that the Court should find identicality even though the present claims in suit are significantly narrower than the IPR Claims and include entirely different limitations.

## III.   <u>Statement Of Facts</u>

### 1.   <u>The Prior Texas Litigation</u>

For reasons that are not disclosed, Defendants first assert that Stragent had sued Robert Bosch LLC under Patent 7,802,263, and then dismissed that case with prejudice.  ("*Stragent I*"). The litigation is irrelevant, as the '263 Patent had never been asserted against any of the

Defendants, nor been involved in any IPR proceedings.  There was never any judicial determination that any of the claims of the '263 Patent were invalid or not infringed.

Stragent had sued some of the current Defendants for infringing claims of the '705 and '843 Patents in the Eastern District of Texas.  Thereafter, certain BMW and Mercedes/Daimler entities filed a series of IPR petitions to hold all the claims of the '705 Patent and '843 Patent to be unpatentable for anticipation or obviousness.  After the PTAB ordered a trial of the asserted patents, Stragent and the Defendants stipulated to a stay of the Texas litigations pending the outcome of the IPR proceedings.  Ultimately, the PTAB rejected the Petitioners' anticipation arguments, but held all the claims of the two patents unpatentable for obviousness under 35 U.S.C. §103(a).

Stragent appealed the PTAB determinations to the Federal Circuit Court of Appeals, but then, before any substantive proceedings, agreed to dismiss the appeals as there was essentially no likelihood that the appeal would be successful.  Then, on February 18, 2019, Stragent disclaimed all the claims of both Patents pursuant to 35 U.S.C. §253 and 37 C.F.R. 1.321(a). Exhibit 4 and 5, attached hereto.

In the meantime, BMW had moved for summary judgment of invalidity of the '705 and '843 Patent claims.  Stragent responded that the Texas Court could not enter summary judgment because the patents were statutorily disclaimed, and, hence, the Texas Court lacked any subject matter jurisdiction.  After briefing and a hearing, the Texas Court dismissed the cases with prejudice pursuant to Fed. R. Civ. P. Rule 41(a)(2) in view of the lack of subject matter jurisdiction, and expressly denied BMW's motion for summary judgment.  (Exhibit 6).  The Court allowed BMW to pursue claims for attorney fees, which the Court thereafter denied on the merits, holding that "While Stragent's suit was ultimately unsuccessful, BMW has not shown

that Stragent presented 'exceptionally meritless claims' or that Stragent's conduct was 'unreasonable in comparison to a mine-run patent case.'" (Case 6:16-cv-00446 Dkt. 138) (Neither the Mercedes nor Volvo Defendants moved for fees).

### 2.    The IPR Proceedings

The PTAB determined that the IPR Claims were invalid based at least in part on the PTAB's claim constructions.  In construing the claims, the PTAB followed the then-applicable law that required the PTAB to apply "the broadest reasonable construction in light of the specification of the patent in which they appear."  (D.I. 12-1 at 9; D.I. 12-2 at 9; D.I. 12-3 at 15; D.I. 12-4 at 15; D.I. 12-5 at 10; D.I. 12-6 at 11; D.I. 12-7 at 11; D.I. 12-8 at 11; D.I. 12-9 at 13; D.I. 12-10 at 11; D.I. 12-11 at 13.).

The PTAB's claim constructions were critical to at least some of the PTAB's determinations of the obviousness of the IPR Claims.  For example, a key claim term was "sharing the information," which the PTAB generally construed as requested by the Petitioners based on the then-applicable BRI standard, and applied the term to reject Stragent's efforts to distinguish the prior art.  Thus, the PTAB stated, for example, that

> Patent Owner's argument implicitly applies a construction of "sharing the same information" that we do not adopt. See PO Resp. 52 ("sharing in the context of the invention of the '705 Patent requires sharing information in real time between two networks, via a shared memory resource").

(D.I. 12-3 at 57).  As detailed in the Argument section, *infra*, the PTAB's construction of the "sharing" term repeatedly impacted the PTAB's application of the prior art to the IPR Claims.

### 3.    The Current Claims Are Patentably Distinct From The IPR Claims

Defendants make little effort to carry their burden of showing that the present claims in suit are patentably indistinct from the IPR Claims.  The entirety of Defendants' arguments is contained in a series of charts, identified as Exhibits A – D, that are attached to a letter from

- 4 -

Defendant's counsel to Stragent. Exhibit L (D.I. 12-12).  None of the charts address, however, claim 15 of the '790 Patent (Count II), which is the only claim of the '790 Patent that Stragent has specifically asserted against the Defendants.  Defendants fail to demonstrate any correspondence between the many significant limitations of the presently asserted claims versus the IPR Claims.  This is demonstrated in Exhibits 1-3, attached hereto, which copies Defendants' charts and inserts Stragent's analysis of the Defendants' allegations.  As shown in the attached Exhibits 1-3, the asserted claims of the current patents in suit are materially narrower than the IPR claims, and include limitations which have no counterparts in the IPR Claims.

The Complaints in these cases specifically make the following allegations regarding the IPR Claims, and those allegations are supported by Exhibits 1-3, and must be deemed to be true for purposes of the present motions to dismiss:

> 19.  The [Patent 10,248,477] claims are materially different from the claims that had been considered in Inter Partes Reviews IPR2017-00676, IPR2017-00677, IPR2017-00457, IPR2017-00458, IPR2017-01503, IPR2017-01502, IPR2017-01504, 2017-01519, IPR2017-01520, IPR2017-01521; 2017-01522, which collectively involved Patent 8,209,705 claims 1-20, and Patent 8,566,843 claims 1-59 (collectively "Prior IPRs").  As one simple example, the '477 Patent claim 1 specifies a "layered system for sharing information," wherein the information is stored and, thereafter, the system "share[s] the stored information with at least one of a plurality of heterogeneous processes including at least one process associated with a second physical network selected from the group consisting of FlexRay, Controller Area Network, and Local Interconnect Network, utilizing a network protocol different from a protocol of the first physical network," which limitations were not included in the claims considered in the Prior IPRs.

> ***

> 26.  The [Patent 10,031,790] claims are materially different from the claims that had been considered in the Prior IPRs.

> ***

> 33.  The [Patent 10,002,036] claims are materially different from the claims that had been considered in the Prior IPRs.

> ***

- 5 -

40.  The [Patent 9,705,765] claims are materially different from the claims that had been considered in the Prior IPRs.

(D.I. 1 at ¶¶ 19, 26, 33 40)

**4.      The Current Claims Issued After Full Disclosure Of The IPRs**

The Complaints allege that the current Patents were issued after Stragent had advised the

PTO Examiner of the pending IPRs and submitted the relevant documentation to the PTO.  *See*,

for example:

20.  During the prosecution of the applications leading to the '477 Patent, applicant cited to the Patent Office all the prior art that was raised during the course of the Prior IPRs, and advised the Patent Office of the Prior IPR proceedings, including that "The above cited inter partes reviews have received final written decisions rendering all challenged claims unpatentable."

***

26. … Further, during the prosecution of the applications leading to the '790 Patent, applicant cited to the Patent Office all the prior art that was raised during the course of the Prior IPRs, and advised the Patent Office of the Prior IPR proceedings, including that "The above cited inter partes reviews have received final written decisions rendering all challenged claims unpatentable."

**5.      Pre-Motion Communications Between The Parties**

Defendants assert that Stragent never responded to Defendants' letters prior to their filing

the present motion.  That is incorrect, as evidenced in Defendants' own Exhibit R (D.I. 12-18).

Counsel for the parties had exchanged a number of emails on the subject.  Stragent had judicially

set forth its position that the prior IPR decisions could not be preclusive because of the change in

law and in view of the differences in the claims, and, further, that the new claims were issued

only after Stragent had submitted the IPR materials, including the adverse PTAB decisions, to

the PTO during prosecution of the claims.  This position was set in, for example, Stragent's

filings in the Eastern District of Texas.  *See* Dkt. 137 in Case 6:16-cv-00446, a copy of which is

attached as Exhibit 7.  Stragent noted that it had filed the present actions in this Court, and

explained why those actions were not precluded.  *Id*. at 4-5.

After presenting its arguments on the record in the EDTX Court, there was nothing more that Stragent could say that would have changed the course to which the Defendants were committed. Stragent stated then, as it says today, that Stragent could pursue claims under its new patents because the IPR decisions were not preclusive because of a change in the law and in view of the differences between the claims, and because the claims issued after full disclosure of the PTAB proceedings.  *Id.*  The gap between the parties was sufficiently fundamental and significant that no further letters would change anyone's positions.  Engaging Stragent in substantive letter writing could obviously have benefitted Defendants as Defendants could then use the letters in preparing their inevitable motions to dismiss, but Stragent is not obliged to afford Defendants that tactical advantage.

## IV.     <u>Argument</u>

### a.   <u>Defendants Have Burden Of Proving That Preclusion Applies</u>

"In a Rule 12(b)(6) motion, the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law.  The defendant bears the burden of showing no claim has been stated."  *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

Given the statutory presumption that all patent claims are presumed valid, "a defendant seeking to overcome this presumption must persuade the factfinder of its in-validity defense by clear and convincing evidence.  *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 97 (2011).  Thus, on the present motion Defendants have both the normal burden of establishing that Stragent fails to state a cause of action, but, in addition, that burden is weighed with the further presumption

that the present claims are valid which Defendants can overcome only by clear and convincing evidence.  In this case, Defendants have to prove that the present claims are, in fact, so patentably indistinct from the IPR Claims, and that the PTAB applied the law that would be applicable in this proceeding, so that the presumption of validity can be overcome as a matter of law.

### b.   <u>There Is No Judicial Decision On The Merits</u>

Defendants assert that there was a final judgment on the merits.  (D.I. 12 at 15).  But, Defendants acknowledge that the prior actions were dismissed, which dismissals were based on the fact that Stragent had disclaimed the patents, and the district courts had no subject matter jurisdiction upon which to proceed with the case.  Defendants present no authority whatsoever that such a dismissal constitutes a judgment on the merits sufficient to invoke preclusion for any patent other than those that were the subject of the dismissal.  Defendants misstate the cases they cite for support.  (D.I. 12 at 15).  In *Raniere v. Microsoft Corp*., 887 F.3d 1298, 1307–08 (Fed. Cir. 2018), the only issue was whether a dismissal pursuant to Fed. R. Civ. P. Rule 41 resulted in having a "prevailing party" for purposes of seeking sanctions under 35 U.S.C. § 285.  The issue of "prevailing party" is entirely distinct from a decision of the merits, because parties can prevail on a number of grounds that are unrelated to the merits of the cases.  Nothing in the Court's decision remotely supports Defendants' preclusion argument, which is why Defendants presumably merely cited the case without analyzing the case or noting any applicable language in the case.

In the second case, *In re PersonalWeb Techs. LLC*, 961 F.3d 1365 (Fed. Cir. 2020), the circumstances were that "[a]fter the district court issued its claim construction order in the Texas case, PersonalWeb stipulated to the dismissal of all its claims against Amazon with prejudice.

Pursuant to that stipulation, the district court … issued an order dismissing all claims against Amazon with prejudice; the court subsequently entered final judgment against PersonalWeb." *Id.* at 1372.  The issue before the Court was whether the stipulated dismissal with prejudice protected Amazon's customers from suits based on the same patents as had been previously involved in the litigation.  Nothing in the Court's decision supports Defendants' assertion that a dismissal of a case for lack of subject matter jurisdiction has preclusive effect, or would preclude actions based on different claims of different patents.

Defendants similarly do not analyze or quote the third and last case they cite, *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co*., 719 F.3d 1367 (Fed. Cir. 2013).  In fact, the case contradicts Defendants' arguments.  The case did involve a voluntary dismissal with prejudice, but, unlike this case, there was no issue that the Court did not have subject matter jurisdiction.  Moreover, the Court continued that, although a voluntary dismissal with prejudice may have claim preclusion effect, it cannot have any issue preclusive effects:

> As to issue preclusion, the 2011 Judgment on Dilution was only a voluntary dismissal with prejudice.   That judgment, while constituting an adjudication on the merits for claim-preclusion purposes, has no issue-preclusive effect.

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co*., 719 F.3d at 1372.  In any event, the Court reversed the USPTO Trademark Trial and Appeal Board that applied preclusion to preclude certain registrations, and held that preclusion was not applicable.

In short, Defendants present no authority that remotely supports its argument for claim preclusion on the current facts, and cite a case that directly contradicts Defendants' claim for issue preclusion.

### c.  Preclusion Is Improper Where There Is A Difference In The Law

Even if the Texas dismissals with prejudice can support preclusion, those dismissals followed the PTAB's determinations of unpatentability.  Yet, the PTAB rulings cannot have

preclusive effect to render the current claims invalid because the PTAB determinations were issued under the then existing law that required the PTAB to apply the "broadest reasonable construction in light of the specification of the patent in which they appear." *See* Section III(2) *supra*. A court dismissal with prejudice founded on such PTAB determinations is no stronger than the PTAB decisions themselves.

The PTAB rulings present two insurmountable hurdles to applying preclusion. First, it cannot be disputed that the claim construction standard applied by the PTAB is far more generous to invalidity than the *Phillips* standard applied in district courts. The Supreme Court specifically recognized that BRI and *Phillips* are different standards:

> Cuozzo says that the use of the broadest reasonable construction standard in *inter partes* review, together with use of an ordinary meaning standard in district court, may produce inconsistent results and cause added confusion. A district court may find a patent claim to be valid, and the agency may later cancel that claim in its own review. We recognize that that is so. This possibility, however, has long been present in our patent system, which provides different tracks—one in the Patent Office and one in the courts—for the review and adjudication of patent claims. As we have explained above, *inter partes* review imposes a different burden of proof on the challenger. These different evidentiary burdens mean that the possibility of inconsistent results is inherent to Congress' regulatory design.

*Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2146 (2016). Defendants have not pointed to any authority that would permit a court to apply an IPR Ruling that rested on the BRI standard to render invalid different claims of different patents, where validity would be determined after construing the claims by the *Phillips* standard.

The Supreme Court has stated that "[e]ven when the elements of issue preclusion are met, however, an exception may be warranted if there has been an intervening 'change in [the] applicable legal context,'" and that the "change-in-law exception recognizes that applying issue preclusion in changed circumstances may not 'advance the equitable administration of the law.'" *Herrera v. Wyoming*, 139 S. Ct. 1686, 1697 (2019) (internal citations omitted). That is clearly

- 10 -

the case here, because the prior invalidity determinations were made in a materially different legal context, and cannot be applied here.

Second, after the PTAB entered its decisions here, the PTO changed the rules applicable to the IPRs, and, as of November 13, 2018, the validity of patent claims in both the district courts and IPR proceedings are now governed by the *Phillips* standard. 37 CFR 42.100(b) ("In an *inter partes* review proceeding, a claim of a patent … shall be construed using the same claim construction standard that would be used to construe the claim in a civil action under 35 U.S.C. 282(b)").  Thus, the prior PTAB decisions may not have any effect even on subsequent IPR proceedings.

Defendants argue that the change in the law is meaningless.  Defendants first cite M.P.E.P. § 2111 for the proposition that the BRI and *Phillips* standards are not that different. The M.P.E.P., however, is not authoritative except for Patent Office procedures, and the M.P.E.P. cannot overturn the governing law of the Supreme Court recognizing that there are material legal differences between BRI and the law applied by the district courts.  *Cuozzo, supra.* Indeed, if the BRI and *Phillip*s were not different, then there would not have been two different standards.

Second, Defendants argue "district courts have already found that IPR decisions trigger preclusion in district court even when IPRs and district courts employ different claim construction standards," citing three cases.  Defendants misstate the cases, because none held what Defendants argue.  In *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282 (Fed. Cir. 2018), the patents in suit were held invalid in an IPR proceeding and the Federal Circuit affirmed the PTAB.  Thus, the patents were gone.  "[W]e find that an affirmance of an invalidity finding, whether from a district court or the Board, has a collateral estoppel effect on all pending or co-

pending actions." *Trans Ova Genetics*, 890 F.3d at 1294.  But this applied only to pending or co-pending actions involving the same patents as were finally held unpatentable in an IPR proceeding.  Nothing in the case suggests that an affirmation of a PTAB unpatentability ruling would be collateral estoppel in district court proceedings involving different patents.

    *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373 (Fed. Cir. 2018) was not a case of preclusion at all.  The Court considered inconsistent PTAB decisions, and remanded to the PTAB instructing that "the Board must consider whether the dependent claims … can survive the unpatentability of claims … from which they depend in view of the prior art cited in the … IPR." *Id*. at 1377–78.

    *Papst Licensing GmbH v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243 (Fed. Cir. 2019) similarly said nothing more than that a PTAB decision as to validity of a patent was determinative if affirmed on appeal.  Nothing in any of the three Court's decisions even remotely suggests that claims, whose construction is determined by the *Phillips* standard, and where Defendants have to prove invalidity by clear and convincing standard, can summarily be held invalid based on the preclusive effect of a PTAB decision involving different claims where the claims were determined under the BRI standard and where the challengers did not have the clear and convincing burden of proof required by district court proceedings..

    **d.**  <u>**The Present Claims Are Patentably Distinct From The IPR Claims**</u>

    Leaving to one side the lack of any judicial determination on the merits and the differences in the legal framework of the present proceeding and the IPR determinations, the present cases are not the "same" as the prior Texas cases, as the present claims are materially and significantly patentably distinct form the IPR Claims.

    As the Federal Circuit pointed out, preclusion is <u>not</u> available even when "there is

substantial overlap between [the current case] and [the prior litigations], [and] the asserted patents all share a common specification and terminal disclaimer to a common parent," unless "the scope of the asserted patent claims in the two suits is essentially the same" i.e., that the claims are "patentably indistinct." *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1166, 1167 (Fed. Cir. 2018).

Here, Defendants have pointedly ignored the significant differences between the current claims and the IPR Claims. But the current claims are materially narrower than that IPR Claims, and include limitations that are nowhere found in the IPR Claims. The differences are detailed in the attached Exhibits 1-3, and the distinctions are significant. Although significant, very little is required to render claims to be patentably distinct. The Patent Code, 35 U.S.C. § 282(a) states unequivocally that:

> A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims…. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

Thus, every patent claim is entitled to a statutory presumption of validity that can be overcome only by clear and convincing standard of proof. The statute does not contain any exception that claims are less entitled to the presumption because they have some similarity to other claims, be members of the same patent family or have been the subject of a terminal disclaimer. Indeed, the statute applies even to claims in the *same* patent. In light of 35 U.S.C. § 282(a), "patentably indistinct" is available only where there are merely differences in wording or recitation of inherent features or similar. "Patentably indistinct" cannot be applied to invalidate claims that are narrower or include limitations that are not found in the earlier-invalidated claims.

In the face of this statutory presumption of validity, Defendants present arguments that

fail to reasonably address the very significant differences between the present claims and the IPR Claims. Indeed, Defendants' briefs do not actually analyze the current claims versus the IPR claims. Instead, Defendants' argument is that the Court should accept as true the generalized assertions in unsworn and unauthenticated charts that Defendants' counsel had sent to Stragent. D.I. (Defendants' Ex. L including chart Exs. A- D). The chart and Defendants' consequent arguments are fatally deficient.

Thus, Count I is directed to Patent 10,248,477, and claim 1 of that Patent includes the following limitations, which are not found in any of the IPR Claims:

> …. a memory manager associated with the non-volatile memory, said memory manager comprising an upgrade and configuration manager to configure the data structure of the non-volatile memory, an event manager to capture input-output events as variables and generate new events, flags or signals, a data access manager to control code update and configuration of the memory and access rights for individual applications at execution, and a data integrity component to analyze stored state variables for integrity and generate events or flags if any problem occurs; …..

No similar limitation is found in any of the IPR Claims, and Defendants fail to show any correspondence between the above limitation and any of the IPR Claims. See Exhibit 1 attached hereto. Further, the '477 claim 1 thereafter recites:

> share the _stored_ information with at least one of a plurality of heterogeneous processes including at least one process associated with a second physical network selected from the group consisting of FlexRay, Controller Area Network, and Local Interconnect Network, utilizing a network protocol different from a protocol of the first physical network….

The key issue here is the word "stored," because Stragent had argued at the PTAB trial that the claim term "sharing _the_ information" found in the IPR Claims referred to information that had been stored in accordance with preceding claims. Applying BRI, the PTAB specifically rejected Stragent's proposed construction and held that the "the shared information" need not be that which had been previously stored. *See*, for example, D.I. 12-3 at 18-19; D.I. 12-5 at 11-13; D.I.

- 14 -

12-6 at 13-15; D.I. 12-7 at 12-15; D.I. 12-8 at 15-19, 37-38; D.I. 12-9 at 17-21, 39-41; D.I. 12-10 at 14-18.  Given the benefit of having a claim limited to "sharing the *stored* information," Stragent included that specific limitation in this '477 Patent.  Given the importance that the PTAB placed on establishing that the IPR Claims could not be construed under the BRI standard to include the "stored" requirement, it cannot be argued that a claim limited to "sharing *stored* information" is patentably indistinct from claims that had no such limitation.

Claim 1 of the '477 Patent includes other limitations, including:

interfaces for communication with each of FlexRay, Controller Area Network, and Local Interconnect Network networks, with each physical network in communication with a component including at least one of a sensor, an actuator, or a gateway, and with each of the FlexRay, Controller Area Network, and Local Interconnect Network interfaces comprising a corresponding network communication bus controller including a corresponding network communication bus driver;

the interfaces including a first communication interface for interfacing with the first physical network, the first communication interface including a first communication interface-related data link layer component, said first communication interface configured to extract variables from the overall message communicated by the first physical network employing a first protocol and storing the packet data unit representing the datum information carried by the overall message from a first physical network in the database; and a second communication interface for interfacing with the second physical network utilizing a protocol different than the protocol of the first physical network, the second communication interface including a second communication interface-related data link layer component; wherein the automotive electronic control unit is configured such that the stored information may be shared with the second physical network by replicating the packet unit data obtained from the first physical network by composing another message configured to be communicated using the different protocol of the second physical network.

Again, as shown in Exhibit 1, Defendants' chart has not demonstrated that these limitations are found in the IPR Claims.

Count II is directed to Patent 10,031,790, but the only claim specifically asserted by Stragent is claim 15.  (D.I. 1 at ¶ 27).  Yet, Defendants do not even purport to provide any analysis, chart or any other information to demonstrate that the asserted Claim 15 of the '790

Patent is patentably indistinct from the IPR Claims.  Defendants have plainly failed to carry their burden of proof that this asserted claim is invalid.  Defendants address claim 1 of the '790 Patent, but then Defendants admit that they cannot find any comparable limitations in the IPR Claims.  Thus, '790 Patent Claim 1 includes the limitation:

> the first interface-related data link layer component uses the Flexray network-related data link layer header bits by removing the Flexray network-related data link layer header bits from another data unit, and the first interface-related network layer component uses the Flexray network-related network layer header bits by removing the Flexray network-related network layer header bits from the another data unit, where the information is extracted from the another data unit before the sharing

Defendants admittedly cannot find anything comparable to this limitation in the IPR Claims.  Instead, Defendants simply argue that "This element does not render the '790 claims patentably distinct from the ['705 and '843] claims."  (D.I. 12-12 at p. 21).

As shown in Exhibit 2, attached hereto, Defendants have also not shown any correspondence between certain limitations of Patent 10,002,036 claim 1and the IPR Claims; and Exhibit 3, attached hereto, Defendants have also not shown any correspondence between certain limitations of Patent 9,705,765 claim 1and the IPR Claims.

Defendants main argument appears to be the legally untenable proposition that any time the claims of a patent are held invalid, then all claims that issue in subsequent continuations patents are invalid as a matter of legal preclusion, at least if the claims were subject to a terminal disclaimer.  Yet, Defendants present no authority or legal analysis to support such a cataclysmic result.  The first part of Defendants' argument is untenable, because the assertion defies 35 U.S.C. § 282(a) which unequivocally states that even claims of the *same patent* are presumed valid notwithstanding the invalidity of other claims of the *same patent*.  Similarly, Defendants overstate the terminal disclaimer issue.  The Federal Circuit has stated that:

- 16 -

> a terminal disclaimer is a strong clue that a patent examiner and, by concession, the applicant, thought the claims in the continuation lacked a patentable distinction over the parent. But as our precedent indicates, that strong clue does not give rise to a presumption that a patent subject to a terminal disclaimer is patentably indistinct from its parent patents. It follows that a court may not presume that assertions of a parent patent and a terminally-disclaimed continuation patent against the same product constitute the same cause of action. Rather, the claim preclusion analysis requires comparing the patents' claims along with other relevant transactional facts.

*SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1168 (Fed. Cir. 2018).  Moreover, a terminal disclaimer by an applicant would have some benefit as a "clue" only if a challenger demonstrated that the terminal disclaimer had some material effect on the length of the patent term.  Here, all the claims derive from a common priority document, and Defendants have not demonstrated that Stragent's terminal disclaimer had any material effect at all.

  **e.** <u>**No Issue Preclusion**</u>

  Defendants' final argument is directed to issue preclusion.  Here, Defendants ignore the key holding of the *Levi Strauss & Co.* case that Defendants themselves cited in their brief.  The Court clearly stated that a voluntary dismissal with prejudice may have a claim preclusion effect, it cannot have any issue preclusive effect.  719 F.3d at 1372.  The cases cited by Defendants did not involve a voluntary dismissal, much less a dismissal based on lack of subject matter jurisdiction.

  Turning to the preclusive effect of the PTAB decision, Stragent's analysis above and in Exhibits 1-3 demonstrate that the differences between the prior IPR Claims and the present claims are far more than "slightly different language to describe substantially the same invention."   To establish issue preclusion, Defendants had to demonstrate that specific holdings by the PTAB require the Court to invalidate presumptively valid claims.  Yet, Defendants' best argument as to some claim limitations was a bald conclusory assertion that "This element does

not render the '790 claims patentably distinct from the ['705 and '843] claims."  (D.I. 12-12 at p. 21).

Defendants cite *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013).  But that case only highlights Defendants' failure to carry is burden of overcoming the presumed validity of the present claims.  First, there was no issue in *Ohio-Willow* regarding the differences between the BRI and the *Phillips* standards of claim construction.  Moreover, unlike in that case, Defendants have not shown that the specific limitations in the present claims are found in the IPR Claims or in the prior art that was relied upon by the PTAB to determine unpatentability.  In *Ohio-Willow*, for example, the Federal Circuit noted that it "is without dispute that the asserted claims of the '237 patent are substantially similar to the invalidated claims of the '182 patent," and that "the mere use of different words in these portions of the claims does not create a new issue of invalidity."  735 F.3d at 1342–43.  Indeed, even though Defendants have not even attempted to prove that the distinct limitations of the present claims are found in the prior art, the fact is that there is no evidence in any of the many PTAB decisions that any of the prior art disclose the particular limitations identified in Exhibits 1-3.   Thus, the present claims discuss specific components and configurations that are not present in the prior art used in the obviousness analyses.

Here, rather than describing the same feature differently, without adding any additional limitations, the present claims describe features entirely different from the IPR Claims.  As indicated above, one of the novel features of the present claims is the requirement for particular configurations of the CAN and Flexray networks.  Even though both networks were known in the prior art, Defendants have not shown any prior art that had the specific claimed configurations.  The present claims involve more than simply describing the same invention

- 18 -

"with slightly different language."

### f.   37 C.F.R. § 42.73(d)(3) Has No Application

Defendants assert that Stragent is estopped by 37 C.F.R. § 42.73(d)(3).  However, the regulation applies only to the PTO, and is limited to claims that are "patentably indistinct."  As demonstrated above and in Exhibits 1-3, the current clams include limitations not found in the IPR Claims, and are, thus, patentably distinct.  It is again noted that the present claims were allowed by the PTO with full knowledge of the IPR proceedings.

### V.   Conclusion

On the basis of the foregoing analysis of fact and law, Plaintiff Mentone respectfully requests that Defendant's motion to dismiss be Denied.

Dated: August 3, 2020

Respectfully submitted,

*Of Counsel*:                                                    */s/ George Pazuniak*
                                                                          George Pazuniak (DE Bar 478)
Thomas F. Meagher                                   O'KELLY & ERNST, LLC
Alan Christopher Pattillo                           824 N. Market St.
Meagher Emanuel Laks Goldberg & Liao,   Suite 1001A
LLP                                                              Wilmington, DE 19801
One Palmer Square                                    Tel: 302-478-4230
Suite 325                                                     Email: GP@del-iplaw.com
Princeton, New Jersey 08542
(609) 454-3500                                          *Counsel for Plaintiff*
tmeagher@meagheremanuel.com             *Stragent, LLC.*
cpattillo@meagheremanuel.com

- 19 -