# Exhibit 1

## Response to Defendants' Exhibit L Chart Exhibit A

| 10,248,477 | 8,209,705 (cancelled) | 8,566,843 (cancelled) |
|---|---|---|
| [1.4] a memory manager associated with the non-volatile memory, said memory manager **comprising an upgrade and configuration manager** to configure the data structure of the non-volatile memor**y, an event manager** to capture input-output events as variables and generate new events, flags or signals, **a data access** manager to control code update and configuration of the memory and access rights for individual applications at execution, **and a data integrity component** to analyze stored state variables for integrity and generate events or flags if any problem occurs | 3. The method as recited in claim 1, wherein the information is extracted from the message received by a storage resource manager.<br>4. The method as recited in claim 1, wherein the information is converted from a signal received by a storage resource manager.<br>8. The non-transitory computer-readable medium as recited in claim 7, wherein the storage resource includes a bulletin board.<br>12. The non-transitory computer-readable medium as recited in claim 7, wherein the computer program product is operable such that objects are generated based on a change of state of the information stored on the storage resource.<br>13. The non-transitory computer-readable medium as recited in claim 12, wherein the objects include at least one of flags, events, signals, and interrupts.<br><br>**Stragent Response:**<br><br>The '477 claim is narrower in scope than the '705 patent claims. The '477 claims require a "memory manager" that has specific substructures and configurations. | 3. The non-transitory computer-readable medium as set forth in claim 1, wherein the computer program product is operable such that the storage resource includes a bulletin board resource.<br><br>**Stragent Response:**<br><br>The '477 claim is narrower in scope than the '843 patent claims. The '477 claims require a "memory manager" that has specific substructures and configurations. However, the claims of the '843 patent, similar to those of the '705, merely refer to a "storage resource manager" at a high level, and that the "storage resource" can include a bulletin board resource." Nothing in the '843 claims explicitly or implicitly describes any of the actual underlying substructures of the "memory manager" as recited here. Nor has any decision by the PTAB discussed or referenced any "upgrade and configuration manager", "event manager", "data access manager", or "data integrity component" as required by claim 1 of the '477 patent. These additional limitations alone create a narrower claim than those |

| 10,248,477 | 8,209,705 (cancelled) | 8,566,843 (cancelled) |
|---|---|---|
| | However, the claims of the '705 patent deal merely refer to a "storage resource manager" at a high level.  Nothing in the '705 claims explicitly or implicitly describes any of the actual underlying substructures of the "memory manager" as recited here.  Nor has any decision by the PTAB  discussed or referenced any "upgrade and configuration manager", "event manager", "data access manager", or "data integrity component" as required by claim 1 of the '477 patent.  These additional limitations alone create a narrower claim than those in the IPR proceedings, and thus claim 1 of the '477 patent represents a patentably distinct claim. | in the IPR proceedings, and thus claim 1 of the '477 patent represents a patentably distinct claim. |
| [1.12] share the **stored** information with at least one of a plurality of heterogeneous processes including at least one process associated with a second physical network selected from the group consisting of FlexRay, Controller Area Network, and Local Interconnect Network, utilizing a network protocol different from a protocol of the first physical network | [20.7] logic for causing the information to be shared by: in real-time, sharing the information utilizing at least one message format corresponding to a second network protocol associated with a second network which is different from the first network protocol;<br><br>**Stragent Response:**<br><br>The key issue here is the word "stored," because one of the contested issues at the | [51.8] wherein the apparatus is operable such that the information is capable of being shared in real-time utilizing a second network protocol associated with a second network, and the control unit includes:<br>55. The apparatus as set forth in claim 51, wherein the apparatus is operable such that the first network and the second network are heterogeneous networks.<br>56. The apparatus as set forth in claim 51, wherein the apparatus is operable such that the second network protocol is different than the first network protocol |

2

| 10,248,477 | 8,209,705 (cancelled) | 8,566,843 (cancelled) |
|---|---|---|
| | PTAB trials was that the prior claims simply stated "share the information" without any requirement that the shared information be that information which had been "stored" in view of the prior limitations.  The current '477 claim 1 is now limited to sharing "stored" information, which avoids the disputed issue at trial.  Obviously, the claims at issue in the various IPR proceedings did not include the requirement for sharing the "stored" information, and that one word creates a patentably distinct claim. | **Stragent Response:**<br><br>The key issue here is the word "stored," because of the contested issues at the PTAB trial was that the prior claims simply stated "share the information" without any requirement that the shared information be that information which had been "stored" in view of the prior limitations.  The current '477 claim 1 is now limited to sharing "stored" information, which avoids the disputed issue at trial.  Obviously, the IPR Claims did not include the requirement for sharing the "stored" information, and that one word creates a patentably distinct claim. |
| [1.13] interfaces for communication with **each of FlexRay, Controller Area Network, and Local Interconnect Network networks**, with each physical network in communication with a component including at least one of a sensor, an actuator, or a gateway, and with each of the FlexRay, Controller Area Network, and Local Interconnect Network interfaces comprising a corresponding network communication bus controller | [20.8] wherein the system is associated with an electronic control unit with at least one gateway function, and a plurality of interface portions including:<br><br>See also, claim 1 ("wherein the method is associated with an electronic control unit with at least one gateway function, and a plurality of interface portions"); claim 7 ("wherein the computer program product is associated with an electronic control | See, e.g., claim 1 ("wherein the computer program product is associated with an electronic control unit with a plurality of interface portions); claim 47 ("wherein the method is associated with an electronic control unit with a plurality of interface portions"); claim 48 ("wherein the computer program product is operable such that the information is capable of being shared in real time utilizing a control unit that includes a plurality of |

3

| 10,248,477 | 8,209,705 (cancelled) | 8,566,843 (cancelled) |
|---|---|---|
| including a corresponding network communication bus driver; | unit with at least one gateway function, and a plurality of interface portions"). **Stragent Response:** The '705 patent claims broadly require an ECU with two or more interfaces that is "associated with a gateway function". None of the final written decisions discussed systems containing three networks, much less the three specific networks described. Rather, they described CAN, and one other network – Ethernet, FireWire, MOST, etc. The narrower '477 claim 1 specifically requires interfaces for three specific types of physical networks – FlexRay, CAN, and LIN, where each physical network needs to include "at least one of a sensor, an actuator, or a gateway", and where each network comprises a bus controller that includes a bus driver. These additional limitations alone create a narrower claim than those in the IPR proceedings, and thus claim 1 of the '477 patent represents a patentably distinct claim. | interfaces"); claim 49 ("wherein the computer program product is associated with a unit with a plurality of interface portions"); claim 50 ("wherein the electronic control unit is operable such that the information is capable of being shared in real time, and the electronic control unit includes a plurality of interfaces"). 17. The non-transitory computer-readable medium as set forth in claim 1, wherein the computer program product is operable such that the electronic control unit is equipped with at least one gateway function. **Stragent Response:** Like the '705 claims, the '843 patent claims broadly require an ECU with two or more interfaces, and where the ECU can contain a gateway function. None of the final written decisions discussed systems containing three networks, much less the three specific networks described. Rather, they described CAN, and one other network – Ethernet, FireWire, MOST, etc. The narrower '477 claim 1 specifically requires interfaces for three specific types of physical networks – |

4

| 10,248,477 | 8,209,705 (cancelled) | 8,566,843 (cancelled) |
|---|---|---|
| | | FlexRay, CAN, and LIN, where each physical network needs to include "at least one of a sensor, an actuator, or a gateway", and where each network comprises a bus controller that includes a bus driver. These additional limitations alone create a narrower claim than those in the IPR proceedings, and thus claim 1 of the '477 patent represents a patentably distinct claim. |
| [1.14] …. said first communication interface configured to extract variables from the overall message communicated by the first physical network employing a first protocol and **storing the packet data unit representing the datum information carried by the overall message from a first physical network in the database**; and | [20.9] a first interface portion for interfacing with the first network, the first interface portion including a first interface-related first layer part for receiving first interface-related first layer messages and a first interface-related second layer part, the first interface-related first layer messages being processed after which first interface-related second layer messages are provided, where the first network is at least one of a Controller Area Network, a Flexray network, or a Local Interconnect Network; and<br><br>**Stragent Response:**<br><br>The '705 claims merely require the messages be "processed". The narrower | [51.9] a first interface for interfacing with the first network, the first interface including a first interface-related first component for receiving first data units and a first interface-related second component, the control unit being operable such that the first data units are processed after which processed first data units are provided, where the first network is at least one of a Controller Area Network type, a Flexray network type, or a Local Interconnect Network type; and<br><br>**Stragent Response:**<br><br>Like the '705 claims, the '843 claims merely require the messages be "processed". The narrower claim 1 of the '477 patent now requires, among other |

| 10,248,477 | 8,209,705 (cancelled) | 8,566,843 (cancelled) |
|---|---|---|
|  | claim 1 of the '477 patent now requires, among other things, an additional step of "storing" the packet data unit in the database. Even assuming, *arguendo*, that such processing includes extracting variables, which is also an additional limitation in '477 claim 1 not require in the '705 claims, nothing in any of IPR proceedings, including the final written decisions, discusses storing packet data units in a database. These additional limitations alone create a narrower claim than those in the IPR proceedings, and thus claim 1 of the '477 patent represents a patentably distinct claim. | things, an additional step of "storing" the packet data unit in the database. Even assuming, *arguendo*, that such processing includes extracting variables, which is also an additional limitation in '477 claim 1 not required in the '843 claims, nothing in any of IPR proceedings, including the final written decisions, discusses storing packet data units in a database. These additional limitations alone create a narrower claim than those in the IPR proceedings, and thus claim 1 of the '477 patent represents a patentably distinct claim. |
| [1.16] wherein the automotive electronic control unit is configured such that **the stored information may be shared with the second physical network by replicating the packet unit data obtained from the first physical network by composing another message configured to be communicated using the different protocol of the second physical network**. | 2. The method as recited in claim 1, wherein the information is replicated among a plurality of the storage resources.<br><br>**Stragent Response:**<br><br>Claim 2 of the '705 patent requires replicating information among two or more storage resource. The IPR proceedings and final written decisions discuss, e.g., "replicating information stored in a global variable table across local variable tables …." (IPR2017-00458, paper 31, pp. 51-52) or storing the copies of the same message in multiple | 45. The non-transitory computer-readable medium as set forth in claim 1, wherein the computer program product is operable such that the first interface-related second layer messages and the second interface-related first layer messages are a same messages.<br><br>**Stragent Response:**<br><br>Nothing in the '843 patent claim 45 requires that the stored information from a first network be shared by replicating the packet unit data by composing another message in a protocol for a second |

| 10,248,477 | 8,209,705 (cancelled) | 8,566,843 (cancelled) |
|---|---|---|
| | places (see IPR2017-00676, paper 33, p. 38). This is not the same as the current, narrower claim limitation, which requires specifically replicating the packet unit data by composing another message in a different protocol.  These additional limitations alone create a narrower claim than those in the IPR proceedings, and thus claim 1 of the '477 patent represents a patentably distinct claim. | network. Nothing in any IPR proceeding or final written decision discusses this additional requirement. These additional limitations alone create a narrower claim than those in the IPR proceedings, and thus claim 1 of the '477 patent represents a patentably distinct claim. |