```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -

 4   STRAGENT, LLC,                  :    CIVIL ACTION
                                     :
 5             Plaintiff,            :
     v                               :
 6                                   :
     BMW OF NORTH AMERICA, LLC, and  :
 7   BMW MANUFACTURING CO., LLC,     :
                                     :
 8             Defendants.           :    NO. 20-510-LPS
     -------------------------------
 9   STRAGENT, LLC,                  :    CIVIL ACTION
                                     :
10             Plaintiff,            :
     v                               :
11                                   :
     DAIMLER NORTH AMERICA           :
12   CORPORATION,DAIMLER TRUCKS NORTH:
     AMERICA, LLC, MERCEDES-BENZ USA,:
13   LLC, MERCEDES-BENZ VANS, LLC,   :
                                     :
14             Defendants.           :    NO. 20-511-LPS
     -------------------------------
15   STRAGENT, LLC,                  :    CIVIL ACTION
                                     :
16             Plaintiff,            :
     v                               :
17                                   :
     VOLVO CAR NORTH AMERICA, LLC,   :
18                                   :    NO. 20-512-LPS
               Defendants.
19                              - - -

20                        Wilmington, Delaware
                         Friday, October 23, 2020
21                         Telephone Conference

22                              - - -

23   BEFORE:       HONORABLE LEONARD A. STARK, Chief Judge

24                              - - -

25                                   Brian P. Gaffigan
                                     Registered Merit Reporter
```

1    APPEARANCES:

2

3              O'KELLY & ERNST, LLC
               BY:  GEORGE PAZUNIAK, ESQ., and
4                   THOMAS H. KRAMER, ESQ.

5                   Counsel for Plaintiff Stragent, LLC.

6

               SHAW KELLER LLP
7              BY:  KAREN E. KELLER, ESQ., and
                    ANDREW E. RUSSELL, ESQ.
8
                    and
9
               FINNEGAN HENDERSON FARABOW GARRETT & DUNNER LLP
10             BY:  LIONEL M. LAVENUE, ESQ.
                    (Reston, Virginia)
11
                    and
12
               FINNEGAN HENDERSON FARABOW GARRETT & DUNNER LLP
13             BY:  R. BENJAMIN CASSADY, ESQ., and
                    AMANDA E. STEPHENSON, ESQ.
14                  (Washington, District of Columbia)

15                  Counsel for Defendants BMW of North
                    America, LLC and BMW Manufacturing Co. LLC
16

17             MORRIS NICHOLS ARSHT & TUNNELL LLP
               BY:  JACK B. BLUMENFELD, ESQ.
18
                    and
19
               QUINN EMANUEL URQUHART & SULLIVAN, LLP
20             BY:  EDWARD J. DeFRANCO, ESQ.
                    (New York, New York)
21
                    and
22
               QUINN EMANUEL URQUHART & SULLIVAN, LLP
23             BY:  JEFFREY S. GERCHICK, ESQ.
                    (Washington, District of Columbia)
24
               Counsel for Defendants Mercedes-Benz USA, LLC,
25             Mercedes-Benz Vans, LLC, Daimler Trucks North
               America, LLC and Daimler North America Corp.

1    APPEARANCES:   (Continued)

2
                   STAMOULIS & WEINBLATT, LLC
3                  BY:  STAMATIOS STAMOULIS, ESQ.

4                  and

5                  HUDNELL LAW GROUP P.C.
                   BY:  LEWIS E. HUDNELL, III, ESQ.
6                       (Mountain View, California)

7                  Counsel for Defendant Volvo Car North America, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22                              - oOo -

23                    P R O C E E D I N G S

24            (REPORTER'S NOTE:  The following telephonic oral

25    argument was held remotely, beginning at 1:32 p.m.)

1          THE COURT:  Good afternoon, everybody.  This is

2   Judge Stark.

3          Who is there for the plaintiff, please?

4          MR. PAZUNIAK:  Good afternoon, Your Honor.

5   George Pazuniak here.  I will be arguing for the plaintiff.

6   With me is Tom Kramer from my office as well as the client

7   representative, Mr. Andrew Gordon.

8          THE COURT:  Okay.  Good afternoon to all of you.

9          And who is there for the various defendants,

10  please?

11         MS. KELLER:  Good afternoon, Your Honor.  It's

12  Karen Keller from Shaw Keller on behalf of BMW.  And with me

13  today is Lionel Lavenue, Ben Cassady, and Amanda Stephenson

14  from Finnegan; and also Andrew Russell from my office.

15         THE COURT:  Okay.  Good afternoon.

16         MR. BLUMENFELD:  Good afternoon, Your Honor.

17  It's Jack Blumenfeld from Morris Nichols for the Mercedes

18  defendants.  With me are Ed DeFranco and Jeff Gerchick from

19  Quinn Emanuel.

20         THE COURT:  Okay.  Good afternoon.

21         MR. STAMOULIS:  Good afternoon, Your Honor.

22  This is Stam Stamoulis for the Volvo defendant.  And with me

23  on the line is Lewis Hudnell from Hudnell Law.

24         THE COURT:  Okay.  Good afternoon to you as

25  well.

```
 1                    I'll ask that you all put your phones on mute,

 2      please, except for when you are speaking because there are a

 3      fair number of us on the call, including my court reporter.

 4                    And I'll note for the record we're here on three

 5      related cases.  They all involve Stragent LLC as the

 6      plaintiff.

 7                    The first action is versus BMW of North America

 8      LLC and BMW Manufacturing Company LLC.  That is our Civil

 9      Action No. 20-510-LPS;

10                    20-511-LPS involves the Mercedes defendants;

11                    And 20-512-LPS involves the Volvo defendant.

12                    We're here to hear argument on the defendants'

13      motions to dismiss.  We have allocated up to 45 minutes for

14      each side.

15                    I do have in front of me copies of the slides

16      that each side presented and were submitted electronically

17      yesterday, so you can feel free to go ahead and make

18      reference to those.

19                    Are there any housekeeping questions or anything

20      else before we get started with the argument?

21                    Mr. Pazuniak?

22                    MR. PAZUNIAK:  None from me, Your Honor.

23                    THE COURT:  Okay.  And from any of the

24      defendants?

25                    MR. LAVENUE:  No, Your Honor.  No, thank you.
```

1    Lionel Lavenue from Finnegan.

2                THE COURT:  Okay.  Then we will hear argument

3    from defendant, please.

4                MR. LAVENUE:  Thank you, Your Honor.  Lionel

5    Lavenue from Finnegan.  I will be arguing for the

6    defendants.

7                Among our 45 minutes, I would like to take

8    30 minutes with the opening and then reserve 15 minutes for

9    rebuttal.

10               THE COURT:  Well, I will let you know when you

11   have about ten minutes left when we get there, but you can,

12   of course, stop talking before then unless I'm asking you

13   questions.

14               So go right ahead.

15               MR. LAVENUE:  Thank you, Your Honor.

16               So, of course, we are referring to our

17   PowerPoint presentation.  And as you can see on slide 1,

18   there are the three defendant groups, and I will be arguing

19   for all three for the motion to dismiss.

20               On slide 2, we basically give the overview of

21   why we're here today, and that is, our motion to dismiss is

22   based upon preclusion.  And that is to preclude Stragent

23   from bringing a new lawsuit of new patents in Delaware after

24   it originally brought a lawsuit in Texas on patents that are

25   related, and all those patents were found to be invalid.

1             The three types of preclusion that we have

2    outlined in the motion to dismiss are claim preclusion based

3    upon the prior case, issue preclusion, and PTO preclusion

4    based upon the prior IPR findings.

5             What we're not arguing in our motion to dismiss

6    is we're not arguing validity as noted on slide 2, we're

7    arguing for preclusion.

8             And my friend from Stragent focuses a lot on the

9    issues of validity, but we're simply arguing the elements of

10   preclusion which are outlined on slide 3.

11            On slide 3 we have claim preclusion and its

12   three elements, the two elements of issue preclusion, and

13   the one issue of PTO preclusion, and so that is the basis of

14   our argument why the case should about dismissed and that

15   Stragent should not have a second bite at the apple.

16            Before we dive into the details as shown on

17   slide 4 of the three types of preclusion, we would like to

18   go into a little bit of background as shown on slide 5.

19            And on slide 5 we have an overview of the patent

20   family, the Stragent patent family.

21            The patent family began with a provisional in

22   2002, and then there have been three lawsuits that have

23   involved the patent family.

24            The first lawsuit was Stragent 1 which involved

25   a different party, Bosch.

1          Stragent 2 was the Texas lawsuit and that was a

2     lawsuit based upon two patents.  And those were the patents

3     that were found invalid by the Patent Office.

4          And then Stragent 3 is the case in Delaware now

5     with the four patents that we have at hand.

6          We note that on slide 5, the patents that all

7     resulted after the first patent, so the first patent was the

8     '263 patent from Stragent 1, all the patents that came after

9     that were terminally disclaimed by Stragent at the Patent

10    Office.  In other words, when these patent applications

11    were filed and prosecuted, the Patent Office argued that

12    the inventions were not patentably significantly distinct

13    from what occurred from the patent application that began

14    in '263.

15         They were modifications, minor modifications.

16         Now, we have something even different in

17    distinguishing the patents that were in the Texas case,

18    which are the two patents indicated in red on slide 5 and

19    the patents that are now in Delaware, Your Honor.  And the

20    thing that is different is that Stragent had made very clear

21    in the briefing on this motion to dismiss and its response

22    brief, and its arguments, that all of the limitations of the

23    claims of the Delaware patents have narrower limitations in

24    the claims of the parent patents, the two patents, the

25    patents that are indicated from Texas.  And that is very

1  relevant to preclusion, which we will talk about a bit in

2  the preclusion sections.

3          So on slide 6, we note that the Stragent patent

4  family, it's all the same patent.  The only difference is

5  the claims.  So it's one title across all patents.  One

6  specification.  All of the patents are exactly the same

7  with respect to the information other than the claims

8  themselves.

9          And then the issue that we'll get to is the

10  claims themselves on whether or not and how that affects the

11  preclusion arguments.

12          But first if we go to slide 7, Your Honor, you

13  can see a little bit more detail about the history of the

14  case.  The history is very important for the preclusion

15  argument, which I'll get to in a moment, but it's important

16  to understand the context of how Stragent went after the

17  three parties here in Texas, what happened in Texas, and how

18  that affects the preclusion issues.

19          So on slide 7, we can see that the first

20  lawsuit was brought against Bosch, and that is what we

21  call Stragent 1.  That case resulted in a dismissal with

22  prejudice.

23          The next case was Stragent 2 and 3.  And those

24  cases were against the same defendants, BMW, Volvo, and

25  Mercedes.

1          And we have indicated with the color coding, the

2     blue is Stragent 1, the orange is Stragent 2 from Texas, and

3     the indicators on the time line that are in purple, those

4     are the Delaware case.

5          So if we dive into more detail on slide 8 of

6     Stragent 2 and Stragent 3, then what we've done here is,

7     again, using the legend on the bottom left, you can see that

8     the court proceedings from the Texas case in Stragent 2 are

9     indicated in orange.

10          For example, the far left side of the timeline,

11     the Stragent 2 complaint was filed.

12          And then you can see on the far right side of

13     the timeline, the Stragent 2 final judgment was entered.

14          So this shows the timeline from 2016 to 2020,

15     and that was the four-year timeline for the Stragent 2 case

16     in Texas.

17          Now, during that time, Stragent filed and

18     obtained other patents that were in that patent family that

19     I showed you earlier, and the filings and issue dates of

20     those are indicated in black, the patent applications filed

21     and issued.

22          And so you can see those have been placed on the

23     timeline as well.

24          Also on the timeline in green is what happened

25     in the Patent Office for the two patents that were asserted

1    in Texas.

2                So what happened in Texas is Stragent initially

3    filed a complaint with one set of claims that were asserted,

4    and the defendants filed IPR petitions against those claims.

5                Later, Stragent amended its contentions and

6    added new claims in Texas, and so a second round of IPR

7    petitions were filed.

8                So if you are wondering why there were so many

9    IPR petitions filed, that is the explanation, because there

10   were two sets of allegations by Stragent.  And eventually

11   what happened was all of the claims of the two patents

12   from Texas were found to be invalid by the Patent Office,

13   based upon those IPRs.

14               And so finally on slide 8, we have the Stragent

15   3 case with the Delaware complaint filed in April of 2020,

16   a Rule 11 letter sent by all the defendants to Stragent

17   about the preclusion issues in June of 2020, and then

18   finally the motion to dismiss in July of 2020, and that is

19   why we're here today.

20               On slide 9, we have a little bit more detail

21   about the four patents that are in Delaware, which are

22   indicated in yellow at the top of the timeline.  And we

23   show the issuance date and a comparison of those issuance

24   dates based upon the timing of when the final written

25   decisions were issued by the Patent Office.

1          This is relevant because as you can see,

2    three of the patents issued after the Patent Office issued

3    its final written decision, and that is relevant for PTO

4    preclusion.  But also interestingly we note, Your Honor,

5    that even one of these patents, the '477 patent, was filed

6    after the parent patents were found to be invalid and it

7    issued thereafter, which, again, shows another point in the

8    preclusion analysis.

9          If we go to slide 10, Your Honor, we can see

10   that where we are now is going back just a little bit more

11   detail on Stragent's 1, 2, and 3.  Slide 10 just has the

12   details about the initial case, the Stragent 1 case, and the

13   Bosch dismissal.

14         On slide 11, we have further detail on Stragent

15   2.  And as you can see, we have summarized on the left side

16   the bases for the preclusion arguments, and that is there

17   was a Texas determination of a with prejudice dismissal in

18   Texas on June of 2020, and that is the general -- that is

19   the base, the baseline, for our claim preclusion because

20   there was a prior claim in Texas by Stragent against the

21   same parties.

22         There was a final decision with prejudice which

23   equates on the merits dismissal and therefore that's claim

24   preclusion.  We'll get into that in more detail.

25         Separately and -- secondly and separately is the

1    issue of issue preclusion which is based upon the PTAB's

2    decision.   So the issue preclusion is not based upon the

3    Texas ruling, it's based simply upon the PTAB, and that is

4    the issues that were adjudicated as shown on the right side

5    of slide 11 for the two patents indicated in red which were

6    found to be invalid.

7         Those issues in our view, they're precluded from

8    an issue preclusion perspective from being asserted in this

9    case because we have satisfied, and we can show that we have

10   satisfied the elements of issue preclusion, that the four

11   patents in Delaware should not be asserted again based upon

12   the fact that their parent applications were found to be

13   invalid in the IPRs.

14        THE COURT:  Mr. Lavenue.

15        MR. LAVENUE:  Yes.

16        THE COURT:  Before you move to 12 --

17        MR. LAVENUE:  Yes, Your Honor.

18        THE COURT:  -- I have a couple of question.

19        There are three defendants here, of course.  I

20   recognize you are speaking on behalf of all of them, but can

21   I -- should I understand that the way the Eastern District

22   of Texas action concluded is not materially different for

23   any of the three defendant groups?

24        MR. LAVENUE:  There is a slight difference in

25   the way that Judge Mitchell issued her ruling between BMW

1    and -- on the one hand and Volvo and Mercedes on the other.

2           But from the perspective of the application of

3    claim preclusion, we would argue that it does not make a

4    difference with respect to the application of the law.

5           Technically, Your Honor, Judge Mitchell, when

6    she issued her ruling, as to BMW she issued a ruling with

7    prejudice dismissal because we had filed a motion for

8    summary judgment.

9           And at the hearing, on our motion for summary

10   judgment, she asked counsel for Stragent, do you agree to

11   a with prejudice dismissal, a voluntary with prejudice

12   dismissal for all defendants?

13          And counsel for Stragent said, yes, I do.  I

14   agree to that.

15          And so in her ruling, she says okay, well, BMW

16   is dismissed with prejudice.  And that was it.  There was no

17   other information.

18          And then she said, and then Volvo and Mercedes,

19   they're dismissed with prejudice based upon lack of subject

20   matter jurisdiction.  But we do not believe that the fact

21   that she says that it's with prejudice for lack of subject

22   matter jurisdiction does not mean that she does not have

23   jurisdiction to issue a with prejudice dismissal for Volvo

24   and Mercedes because under *Rainiere* and the *3M v Barr* case,

25   the Federal Circuit has made clear that a District Court has

1       the ability to determine and issue a with prejudice

2       dismissal because it has jurisdiction to address the issue

3       of whether or not it should be with prejudice or not with

4       prejudice.

5                   Because, as we note on slide 12, there was a lot

6       of back and forth, Your Honor, with Stragent on this very

7       issue because Stragent threatened all three defendants

8       during the Texas action based upon the patents that are now

9       in Delaware.  And when they threatened us on that, we then

10      responded and we said, look, we believe that your threats

11      are improper because the patents, they are invalid.  And if

12      they're invalid in Texas, then you should be precluded from

13      suing later.

14                  And that is Exhibit L of our motion to dismiss.

15      Both letters -- there was one letter that we had with

16      Stragent in 2018 and another letter we had with Stragent in

17      2020, our Rule 11 letter, both outlining those disputes and

18      those were before Judge Mitchell.

19                  So when we briefed the issue of dismissal with

20      Judge Mitchell, she knew that there was a threat of

21      subsequent lawsuits after the Texas case, and she knew the

22      importance of the distinction between a without prejudice

23      and a with prejudice dismissal.  And, in fact, as Your Honor

24      knows from its own ruling in the *Powers Integrations* case,

25      you know, that is a tremendous distinction.  Judge Mitchell

1    was aware of that distinction.  She knew the implications of

2    the with prejudice dismissal, and she knew that counsel for

3    Stragent had actually approached the defendants in Texas and

4    asked us for a without prejudice dismissal, which we

5    vehemently opposed.

6              And when we had the argument on the motions

7    before Judge Mitchell, this was specifically addressed.  And

8    that is why she asked counsel for Stragent, do you agree to

9    have the defendants dismissed with prejudice?  And he said,

10   yes.

11             So the voluntary dismissal, we would submit,

12   takes the fact that BMW may be in a slightly better position

13   because we did file a motion for summary judgment and we

14   had a dismissal with prejudice that was unqualified, but we

15   would submit that there is really no distinction because of

16   the voluntary dismissal with prejudice against all of the

17   defendants.

18             THE COURT:  All right.  Is it your view,

19   defendants' view, that any dismissal that is "with

20   prejudice" can be a basis for claim preclusion no matter

21   what the substantive basis for the with prejudice is; or

22   even where we don't know what the basis is, it just happens

23   to be a dismissal with prejudice?

24             MR. LAVENUE:  Your Honor, I would say that in

25   general, the presumption would be if it's a with prejudice

1    dismissal, that it would have a preclusive effect consistent

2    with the comments that you had made at *Powers Integrations*.

3              I'm not saying that in every case without

4    exception there could not be an exception.  I'm not aware of

5    an exception, but I wouldn't say that that is 100 percent of

6    the case.  I would say there is clearly a presumption that

7    if it's a with prejudice dismissal, that preclusion applies;

8    and there is a whole series of cases that we found that

9    supports that.

10             We haven't found any cases that supports

11   Stragent's view that there are exceptions.  That we have not

12   been able to find, Your Honor.

13             THE COURT:  Are you familiar with the *Media*

14   *Technologies* decision of the Federal Circuit?

15             MR. LAVENUE:  Give me some more detail on that.

16             THE COURT:  Give me a second.

17             *Media Technologies Licensing LLC vs. Upper Deck*

18   *Company*, 334 F.3d 1366, (Federal Circuit 2003).  I think

19   that case involved a lack of standing and a consideration as

20   to whether a prior dismissal for lack of standing may have

21   given rise or not given rise to later preclusion.

22             Is that one you're prepared to speak about?

23             MR. LAVENUE:  So I don't know if I have looked

24   at the *Media Technologies* case specifically, but I have

25   looked at other cases that dealt with lack of standing and

1    the implications to a with prejudice and without prejudice

2    dismissal.

3           Every case that we found that dealt with a lack

4    of standing, they all did not have the situation where there

5    was a specific dispute that was brought to the Court's

6    attention over whether or not the case should be dismissed

7    with prejudice or without prejudice.

8           And in the *3M v Barr Labs* case, 289 F.3d 775,

9    pinpoint cite 781 -- 783, there, it makes clear that if

10   there is a dispute over whether or not it should be a with

11   prejudice or a not with prejudice, that the controversy

12   itself, the controversy over -- I'm reading from the case --

13   "The controversy over the form of dismissal was itself

14   sufficient," in order to have jurisdiction for the Court to

15   make that decision.

16          So the standing cases that we have looked at,

17   and I would suspect it is probably similar to the *Media*

18   *Technologies* case, would find that the Federal Circuit

19   has confirmed that you do have, at the District Court, the

20   ability to make that determination with prejudice or not

21   with prejudice.  And even if there has been what I call

22   jurisdictional trickery, but to be fairer to Stragent, an

23   attempt to avoid preclusion, which is what they certainly

24   were trying to do, that attempt to avoid preclusion, if it's

25   brought to the Court's attention and if the Court renders a

1    decision based on that fact, then that would have a

2    preclusive effect; and that is the Court would not lose

3    standing for that reason.

4              THE COURT:  Okay.  Thank you.

5              If I were ultimately to be persuaded on your

6    claim preclusion argument, would I need to reach issue

7    preclusion or the Patent Office estoppel argument you make?

8              MR. LAVENUE:  Absolutely not, Your Honor.  If

9    you have reached an issue in our favor on claim preclusion,

10   then the other issues would then be moot because that would

11   be dispositive; the case would go away.

12             And interestingly, Stragent would still maintain

13   its ability, if you rule on claim preclusion only and not

14   issue preclusion, they would have the ability to go out and

15   sue others, just not the three defendants here because

16   claim preclusion only applies to those parties that were in

17   the Texas case, Volvo, Mercedes, and BMW, and not to any

18   others.

19             THE COURT:  Okay.  Thank you.  You can move on

20   if you want to.

21             MR. LAVENUE:  Okay.  Thank you, Your Honor.

22             So slide 12 is basically -- I have already

23   addressed this as it was giving the background of how we got

24   to the dispute over the new patents that are in Delaware

25   with Stragent.

1            And slide 13 also highlights the fact that the

2       new patents in Delaware were terminally disclaimed, and

3       that when you have a terminal disclaimer, that is an

4       indication that the scope of the patent claims are narrower

5       and therefore would not be patentably distinct, which is

6       relevant for the third element of claim preclusion as to

7       whether or not we're talking about the same cause of action

8       and relevant to issue preclusion as to whether or not the

9       claims are essentially the same.

10            So with that, Your Honor, we would go to slide

11       14, which is claim preclusion.

12            And then to slide 15, where we just

13       distinguished the issues between claim preclusion and issue

14       preclusion, that, in contrast to what I think are my friends

15       from Stragent, they argue that we're arguing invalidity for

16       claim preclusion, we're not.  We're simply arguing that the

17       claims should be precluded based upon the same cause of

18       action.

19            So if we go to slide 16, the three elements of

20       claim preclusion are outlined, and the first one is final

21       judgment on the merits.

22            So if we go slide 17, we can see that we do have

23       in our view a final judgment on the merits because there is

24       a with prejudice dismissal as to all three of the parties.

25            That is clarified on slide 18.  And 18 is an

1    overview time line of what I explained before, Your Honor,

2    where I was describing how on slide 18, on the far left,

3    it shows on January 24th, 2019, Stragent approached the

4    defendants to seek about prejudice dismissal and then it was

5    after that that there was a back and forth where Stragent --

6    we offered Stragent a walkaway deal where we said, look,

7    we will stop fighting with you and not seek these and not

8    pursue other remedies against you if you will just agree to

9    drop all of your future cases.

10          They then came back and they said, well, we're

11   not going to go there, but, you know, we want you to dismiss

12   the case.

13          So we determined that they were trying to

14   basically manipulate the jurisdiction of the Eastern

15   District court to avoid preclusion.

16          So on February 13th, 2019, BMW filed a motion

17   for summary judgment.

18          And then on February 18th, 2019, notice that's

19   five days later, Stragent attempts to disclaim its claims

20   in order to allege that it has vitiated summary matter

21   jurisdiction.

22          Well, as you can see, that is impossible

23   because we sought the motion for summary judgment before

24   they vitiated the claims.  And that is what Judge Mitchell

25   took up, was the motion for summary judgment and whether or

1    not there was the ability for not only BMW but for all the

2    defendants to seek a dismissal of the case.

3              And interestingly, on February 27th, 2019,

4    Stragent filed a voluntary motion to dismiss with prejudice.

5              We believe that Stragent made a critical error

6    here, a legal error in asking for a dismissal with prejudice

7    because by asking for a dismissal with prejudice instead of

8    a dismissal without prejudice, they undermined their ability

9    to avoid claim preclusion.

10             At the hearing, on April 2019, these issues were

11   discussed as far as the with prejudice or without prejudice

12   dismissal.

13             Obviously, Your Honor, we did not go into

14   debating claim preclusion and issue preclusion, but we did

15   specifically argue over whether or not it should be with a

16   with prejudice or not with prejudice.  And at that hearing,

17   counsel for Stragent specifically agreed.

18             So if we go to slide 19, we have on slide 19

19   the motion to dismiss by Stragent where it asks for a with

20   prejudice dismissal.  That is in the upper left-hand corner

21   of slide 19.

22             And then in the bottom left-hand corner of slide

23   19, we can see that, again, there was a recitation that --

24   this Judge Mitchell, by the way.  At oral argument,

25   plaintiff agreed to the dismissal of its claims against the

1    BMW defendants with prejudice.  But not only was it against

2    the BMW defendants, but, as the Court -- as you know, Your

3    Honor, from seeing Judge Mitchell's rulings, she also

4    dismissed with prejudice with respect to all defendants.

5            And the reason for that is on the right side of

6    slide 19, where the Court asks -- and this is with all the

7    defendants in the courtroom and represented -- are you

8    comfortable with the Court granting the dismissal under

9    41(a)(2) on the terms the Court considers proper, declaring

10   the defendants as prevailing parties, awarding costs, and

11   giving them an opportunity to file for fees?

12           And then counsel for Stragent said, yes.

13           And she confirmed:  You mean yes?

14           Yes, yes.

15           So the ultimate order that issued from Judge

16   Mitchell was a dismissal with prejudice.

17           If Stragent wanted to avoid the preclusion

18   effect, then it should have asked the Court to have that

19   dismissal be without prejudice.  Even if it was impossible

20   to obtain that remedy for BMW, which we submit it was,

21   even with respect to Volvo and Mercedes, Stragent failed to

22   make that argument and to reserve that right and therefore

23   it failed to avoid preclusion.

24           So for that reason, Your Honor, on slide 20,

25   our conclusion is that there has been a with prejudice

| | |
|---|---|
| 1 | dismissal.  And under the *Rainiere* case, as well as all of |
| 2 | the other cases we have outlined on slide 21, *Rainiere*, |
| 3 | *Hallco*, *PersonalWeb*, *Levi Strauss*, all of those cases in our |
| 4 | view support that if you have a with prejudice dismissal, |
| 5 | then that is considered a judgment on the merits and that |
| 6 | therefore we have satisfied the first element of the three |
| 7 | elements of claim preclusion. |
| 8 | And so with that -- |
| 9 | THE COURT:  Yes.  Mr. Lavenue, Judge Mitchell is |
| 10 | a Magistrate Judge.  I take it it is uncontested what she |
| 11 | recommended was ultimately adopted by a District Judge? |
| 12 | MR. LAVENUE:  That's correct, Your Honor.  In |
| 13 | our attachments we have Judge Mitchell's ruling, and then |
| 14 | after that, Judge Schroeder, the District Court, adopted her |
| 15 | ruling and issued a final judgment based upon her ruling. |
| 16 | Exactly.  That is correct. |
| 17 | THE COURT:  Okay.  Thank you. |
| 18 | MR. LAVENUE:  But he did adopt her ruling and |
| 19 | issued a ruling consistent with that -- with a final |
| 20 | judgment; Judge Schroeder. |
| 21 | THE COURT:  Okay. |
| 22 | MR. LAVENUE:  Okay.  With that, Your Honor, we |
| 23 | jump to slide 25 with the conclusion that we believe we |
| 24 | satisfied Element 1 of claim preclusion. |
| 25 | Element 2, as shown on slide 26 and then 27, we |

1    do not believe is disputed, that the parties are the same.

2    Both of the complaints are of record, and they both name the

3    same three parties.

4              So on slide 28, we would submit that we have

5    identified that the second element of claim preclusion has

6    been satisfied.

7              That brings us to the third element on slide 29,

8    Your Honor, which is the element of, are we talking about

9    the same cause of action?  So not the same patent, not the

10   same claims, but the same cause of action.

11             And if we go to slide 30, in order to understand

12   what the same cause of action means, that is defined by the

13   law as two separate steps or analysis.

14             First, is it the same accused technology?

15             And second, are the allegations within the same

16   scope of the claims?

17             So we take each one of those one by one.

18             On slide 31, it is clearly the same accused

19   technology as shown on slide 31.  We have the complaint from

20   Texas on the left, bottom left.  We have the complaints from

21   Delaware on the bottom right.  And the allegations are

22   exactly the same.  The only difference is that one is

23   generally to LSR and the other is to a specific standard,

24   but that is the same accused technology.

25             So therefore on slide 32, the same accused

1    technology is satisfied, and we go to slide 33.

2                    And slide 33 is whether or not the scope of the

3    allegations fall within the claims of the Texas case that

4    are alleged in the Delaware case.

5                    And for that we submit that we have a very easy

6    row to hoe here, Your Honor.  And that is because of what we

7    can see on slide 34, Your Honor.

8                    The reason that we believe this is a very easy

9    determination is Stragent has made our job easy for us by

10   clarifying their belief that all of the claims in the

11   Delaware case are narrower than the claims in the Texas

12   case.  And here we have five examples from the briefing-only

13   motion to dismiss where Stragent has specifically said, for

14   example, in the top left, "The present claims in suit in

15   Delaware are significantly narrower than the IPR claims."

16                   And each one of these quotes identify, in

17   further detail that Stragent believes that the claims are

18   narrower.

19                   In fact, on the bottom left, Stragent says the

20   current claims in Delaware are material, materially narrower

21   than the IPR claims.

22                   So if the claims in Delaware are narrower than

23   the claims are in Texas, then we believe that legally they

24   are part of the same cause of action.  And we believe that

25   the case law supports us, as shown on slide 35.

1          So the error that we believe that Stragent

2   advances is that the claims have to be identical in order

3   for this element to be satisfied.  But then that is not what

4   the case law says.  In fact, the Patent Office would not

5   even have granted the patents if the patents were identical.

6   They had to have some change.  The question is if you have

7   a change in order to get a continuation patent like these

8   patents are, then what are those changes?  Are they

9   narrower?  Are they the same?  Or are they broader?

10          So if we look at slide 36, we see that Stragent

11   has made our job easier for us because they said that the

12   claims are narrower.

13          So here we have two examples, for example -- two

14   scenarios as examples.

15          We have on the left side a scenario where the

16   cause of action includes almost the same scope as the

17   original claims.  But that's not what Stragent says we have.

18          And then we have the scenario where the cause

19   of action has new claims that are narrower than the original

20   claims.  And so that is where Stragent says we are.  They

21   say we're in that Scenario No. 2.

22          Well, if we're in Scenario No. 2 -- not if.  As

23   Stragent concedes that they believe that we are in Scenario

24   No. 2, then that means that the claims are within the same

25   cause of action, and therefore this element is satisfied as

1  shown on slide 37.

2          Now, on slide 37 and 38, we have two cases that

3  are relevant to this analysis.  *Senju*, which is a case

4  affirming Judge Robinson, where the Federal Circuit said if,

5  if you have claims that are narrower because, for example,

6  in a reexamination, the claims always have to be narrower,

7  then you cannot have a second bite at the apple because

8  claim preclusion prevents repetitious suits involving the

9  same cause of action.  Not the same patents, the same cause

10  of action.

11          So you had a patent that was reexamined and

12  another patent -- reexamination patent came from that, and

13  it was narrower and the Court said, therefore, that is

14  repetitious.  It's a second bite at the apple and therefore

15  we're not going to allow that under claim preclusion.

16          Well, Stragent, they allege, they assert that

17  their patents in Delaware are significantly narrower,

18  materially narrower so therefore the same narrowing that

19  applies in a reexam would also apply to their situation

20  under their own concessions.

21          Now, we don't even have to use the reexam

22  example only.  In *SimpleAir* on slide 38, we know that is

23  exactly what happened.  In *SimpleAir*, where you had an

24  original patent and then you had a continuation, the

25  parent patent was found invalid, the continuation was then

1      asserted, and in *SimpleAir*, the Federal Circuit said that

2      the continuation patents, if they present the same cause of

3      action as previously litigated, then claim preclusion can

4      apply.

5              And how did *SimpleAir* determine whether or not

6      it was the same cause of action?  Well, they looked to see,

7      are the claims that are asserted in the continuation, were

8      they narrower?

9              And here we know that Stragent admits they're

10     narrower, and there was a terminal disclaimer just as we

11     have here.  And because there was a terminal disclaimer,

12     then therefore we know that there was narrowing or, you

13     know, a less than the whole of what they had.

14             So their mission is confirmed that it was

15     narrower.

16             We don't understood the concession of Stragent

17     that they're narrower to win, Your Honor, just to make

18     clear.  But we do know that the claims are narrower, and

19     Stragent's confirmation that they believe it is narrower

20     confirms that we do meet all of the elements of the claim

21     preclusion.

22             And that is confirmed also by the terminal

23     disclaimer, and that is confirmed by the case law that

24     supports that position.

25             So on slides 40 and 41, Your Honor, we would

1    conclude that claim preclusion is satisfied.

2                    THE COURT:  All right.  Let me -- I just want to

3    make sure I understand your position on the narrower.

4                    Is it your burden to persuade me that the claims

5    in front of me are narrower than the claims in the Texas

6    case; and if it is your burden, is it sufficient for me to

7    rely on the plaintiff's concession?  Or do I need -- or do

8    you need to persuade me to do something more than that?

9                    MR. LAVENUE:  So we believe it's our burden to

10   show you that preclusion applies, but our burden is

11   preponderance of the evidence.  We looked that up yesterday

12   just to make sure.

13                   So if we have convinced you by a preponderance of

14   the evidence that the allegations that are made in Delaware

15   are within the same cause of action of the allegations that

16   were made in Texas, based upon the fact that they are the same

17   accused products, at step 1, and that the claims are within

18   the scope, the claims in Delaware are within the scope of the

19   Texas action, the second part of that analysis of element 3,

20   then we have met our burden.

21                   And we would submit that we have met our burden

22   based upon the fact that there is three things that indicate

23   that these claims fall within the claims from Texas.

24                   One is, there is the concession that the claims

25   are narrower by Stragent.

1          Two is the fact that the terminal disclaimer is

2     an indication, as *SimpleAir* outlines, is an indication that

3     if you have a terminal disclaimer, then there is not

4     materially significant improvements or indifferent

5     inventions that result from a terminal disclaimer.

6          In other words, they're modifications, but

7     they're not patentably distinct modifications.

8          And 3, that the case law of *SimpleAir* and of

9     *Senju* make clear that in order to avoid a second bite at

10    the apple, under the very similar circumstances that we have

11    here, that Stragent should not be able to have this

12    continuous repetitious lawsuits against these parties.

13         Those are the three points, Your Honor.

14         THE COURT:  Okay.  Thank you.

15         MR. LAVENUE:  So for that reason, we conclude

16    on slide 42 that we've identified all the elements of the --

17    for claim preclusion, and then we do have the highlight box,

18    Your Honor, which addresses your question from before.

19         So if there is a dismissal based upon claim

20    preclusion, then Stragent can sue anyone else except just

21    not BMW, Mercedes, and Volvo.

22         And this is only one of the three arguments we

23    present which then brings us to slide 43 which is issue

24    preclusion.

25         And with that, Your Honor, if I may be allowed

1    to do so, I think I would like to just pause here and allow

2    Stragent to argue.  And then if I have time, I will just

3    close out with the issue preclusion, if that is okay.

4              THE COURT:  That is fine but for, let me just

5    ask you a few more questions.

6              On your third argument, the one based on the CFR

7    regulation, have you cited cases that apply that bar as a

8    bar to District Court litigation, or might it be just a PTO

9    exclusive regulation?

10             MR. LAVENUE:  So the only case we're aware of

11   on that is the *Regents of University of Minnesota* Federal

12   Circuit case that said that the PTO preclusion is no

13   different than what is mandated under traditional principles

14   of res judicata and collateral estoppel.

15             And so it's more of a supplement to than a

16   substitution for either one of those other two preclusive

17   arguments, Your Honor.

18             THE COURT:  Okay.  There is some back and forth

19   about prevailing party, which I think was an issue under

20   your Texas case.

21             Is a finding of prevailing party the same as or

22   different than judgment on the merits?  And does that

23   question have anything to do with the issues you put in

24   front of me?

25             MR. LAVENUE:  We do not believe it does, Your

1    Honor.  We believe that the prevailing party issue, we

2    fought over that so strenuously in Texas in order to confirm

3    our right to seek fees under 285.

4            But prevailing parties is, once you have a

5    dismissal with prejudice, specifically a voluntary dismissal

6    with prejudice, then the prevailing party issue is not an

7    issue for claim preclusion.

8            THE COURT:  All right.  And there are some claim

9    charts that you refer me to in connection with the motion in

10   front of me.

11           Is that something I can properly consider on

12   this motion?  And did you overlook I think it was claim 15

13   of the '790 as plaintiffs suggest?

14           MR. LAVENUE:  So that is an interesting

15   question, Your Honor.  We believe that certainly the claim

16   charts that we present are of record, and so you can

17   obviously consider those because we submitted them with the

18   motion to dismiss.

19           Counsel for Stragent is correct that there is

20   one claim that was asserted for each of the four patents.

21   And the one patent, for the '790, as you can see, the

22   asserted claim is claim 15.  For the other three patents,

23   the '477, the '036 and the '765, the asserted claims were

24   claim 1.

25           So the '790, the asserted claim was claim 15.

1          So when we prepared the chart, we mistakenly put

2     claim 1 for the '790, but that is not a fatal defect.  First

3     of all, it is only an issue for claim preclusion, but it is

4     not a fatal -- I'm sorry.  It's an issue for issue

5     preclusion, not claim preclusion.

6          But it is not a fatal defect for our issue

7     preclusion argument because the chart that refers to claim

8     1, the elements are the same as claim 15.  The only

9     difference is the use of a different network.

10         And so the arguments that apply to claim 1 also

11    apply to claim 15.  The network distinction is irrelevant

12    for purposes of the analysis of the similarity between claim

13    1 and claim 15.

14         But we didn't even need the chart.  The chart

15    was simply supplemental, and we do properly assert in the

16    brief that claim 15 is not patentably distinct from the

17    claims of the patents in Texas.

18         And that is the heart of the matter.  Whether

19    or not the claim 1 or claim 15 is in the attached chart,

20    that is irrelevant in our view.  Especially considering that

21    the claims are the same, with the only distinction being the

22    network.

23         THE COURT:  All right.  Thank you.  We'll save

24    10 minutes for you for rebuttal, and we'll turn it over to

25    plaintiff now.

```
 1                    MR. LAVENUE:  Thank you.

 2                    THE COURT:  Mr. Pazuniak?  Are you there,

 3       Mr. Pazuniak?

 4                    MR. PAZUNIAK:  Oh, I'm sorry, Your Honor.  I

 5       forgot to unmute myself, now that you started.

 6                    THE COURT:  Okay.  That's fine.

 7                    MR. PAZUNIAK:  Thank you.  Good afternoon, Your

 8       Honor, and if it may please the Court.

 9                    Just a few initial comments about the slides we

10       have seen.

11                    Defendants' slides do include references to

12       materials that are not of record.  And that was actually

13       argued by the Texas counsel.

14                    For example, slide 19.

15                    It has materials there that were never presented

16       in any of the briefs or any other of the pleadings in this

17       case.

18                    There is nothing particularly troubling about

19       the content, but Stragent never really had an opportunity to

20       respond to that.

21                    But slide 19 also directs us to what I consider

22       to be a very erroneous assertion by defendants' counsel, and

23       that is what happened in the Eastern District of Texas

24       regarding the motion for summary judgment.

25                    Counsel flatly stated that the Court knew about
```

1    the proceedings or the possibility of another lawsuit and

2    was concerned about or apparently concerned about the

3    preclusion and specifically granted the summary judgment

4    motion.

5            That is completely untrue.  First, the Court

6    never addressed -- the Court in Texas never addressed the

7    issue of other lawsuits.  And it's pure speculation about

8    what she may have anticipated or not.

9            The one thing that is undisputed is that the

10   Court did not grant BMW's motion for summary judgment.  In

11   fact, if I may refer the Court to, as a matter of judicial

12   notice, to docket entry 120, which is Judge Mitchell's

13   Report and Recommendation, and direct the Court to page 11.

14   The Court specifically said that the motion by BMW is

15   moot -- quote-unquote, "moot."

16           And the reason that the motion was moot was

17   because Stragent had disclaimed the two patents, all the

18   claims of the two patents that were involved in the

19   litigation before any determination of any issues by the

20   Court.

21           Stragent then moved to dismiss with prejudice

22   the three cases against the three defendants because once

23   the patents were disclaimed, there was nothing further to

24   litigate.

25           But also, as Stragent pointed out to the Court,

1   the Court could not grant summary judgment because the Court

2   no longer had Article III jurisdiction over the matter.

3           The Court simply -- once the patents are gone,

4   yes, the Court could still determine procedural issues such

5   as whether or not one party was a prevailing party for

6   purposes of seeking attorneys' fees, that is consistent with

7   Supreme Court authority, and whether to award costs.

8           But the Court was without subject matter

9   jurisdiction to opine or render any rulings regarding the

10  patents-in-suit because there was no longer any case or

11  controversy under Article III.

12          And we did cite one case, you know, that was

13  fairly directly on point, and that is the -- and that case

14  is cited again in our slides.  And I'll get to that in a

15  minute.

16          Secondly, and so to -- well, going back.  So to

17  answer Your Honor's question, is there a difference between

18  BMW, Volvo, and Mercedes as far as what happened in the

19  Eastern District of Texas?  I think both parties agree that

20  there shouldn't be any difference.  But the reason Stragent

21  argues there is no difference is that Judge Mitchell

22  particularly noted that Volvo's and Mercedes' cases were

23  dismissed for lack of subject matter jurisdiction.

24          And effectively, the Judge held the same thing

25  for BMW when she stated that BMW's motion for summary

1    judgment is moot.  And the reason it is moot is because

2    there is no longer any subject matter jurisdiction.

3              So then going back to some other general

4    observations.

5              Defendants make arguments in those slides that

6    were never raised in the briefs.  Most prejudicial, we

7    believe, are the new arguments that defendants make at

8    slides 58 through 67.

9              The background is that in responding to

10   defendants' motion, Stragent had filed a series of exhibits

11   demonstrating how the claims of the four patents here in

12   suit differed from the claims of the two patents that were

13   previously litigated in the IPR proceedings.  And they were,

14   those were DI 16-1 through DI 16-3.

15             Defendants reply did not address those exhibits

16   at all but simply argue that the technical distinctions of

17   the claims were not important.

18             Now, defendants present slides 58 through 67

19   that purport to respond to Stragent's slides.  In fact, if

20   you look at slides 59 through 66 and look at the third

21   column, they refer to Stragent's DI 16 1, 2, and 3 exhibits,

22   which were part of the Stragent's answer to which the

23   defendants never mentioned in their reply.

24             So I just note those facts.

25             Stragent here is not seeking a second bite at

1    the apple.   Stragent sued under two patents and defendants

2    responded with IPR petitions that resulted in the PTAB,

3    concluding that the asserted claims of those two patents

4    were invalid for obviousness.

5           And so Stragent disclaimed those claims of the

6    two patents, dismissed its lawsuit against the defendants,

7    and now has continued to persevere with the additional

8    patents that were subsequently issued.

9           The patents here are different patents with

10   different prosecution histories and with different claims.

11   It is not the same apple but a different apple.

12          And defendants also seem to confuse the issues

13   by bringing up the earlier lawsuit that Stragent had filed

14   against Bosch, but that case did not involve the defendants

15   at all and was directed to an entirely different set of

16   claims.   It really does not get us anywhere.

17          So if I could now go to the slides that we have

18   presented to the Court.

19          And, so, as we point out, that slide 2,

20   defendants have never denied that their products and methods

21   practice the asserted patent claims.

22          The prior decisions by the IPR were holding the

23   claims invalid for obviousness were based on what is now

24   the repudiated, broadest, reasonable construction standard.

25          After the decisions were rendered, very shortly

1    after that, the PTO changed the rule to say that claim

2    constructions will no longer follow the BRI standard but

3    will follow the *Phillips* standard which, of course, is an

4    issue because the PTAB had relied on the BRI standard in

5    concluding that the claims were invalid for obviousness.

6            So continuing.

7            The new slides, 58 through 67, notwithstanding,

8    I noted, were presented here at the last minute, and we

9    have had no opportunity to respond to it but until the

10   presentation of those slides as of 4:00 o'clock yesterday,

11   and the defendants had -- did not challenge the demonstrated

12   differences between the prior and the current claims.

13           As I note on slide 3, you can take, for example,

14   claim 1 of the '477 patent.  And I list elements that are

15   included in that claim that are not found in any of the

16   claims that were previously involved in suits.

17           THE COURT:  Mr. Pazuniak, are the claims of the

18   patents-in-suit here in front of me narrower than the claims

19   of the patents-in-suit you litigated in Texas?

20           MR. PAZUNIAK:  In the sense that they have

21   limitations that are not included in the prior limitations,

22   yes, they're narrower.

23           But on the other hand, they could also be looked

24   on as different claims.  They certainly have limitations not

25   included before and are different and are different for that

1    reason.

2              And we'll get to that, the importance of whether

3    they are different or narrower shortly.

4              THE COURT:  Well, you say in your brief

5    repeatedly that the claims here are narrower than the Texas

6    claims.  I understood that to be a concession that there is

7    no accused product that the claims in front of me would

8    reach that would not also be reached by the claims in Texas.

9              Is that what you meant, or that is not what you

10   meant?

11             MR. PAZUNIAK:  Yes.  That is correct, Your

12   Honor.  That as I pointed out, the defendants have never

13   challenged infringement.  So the same products and same

14   products and same methods that were asserted as infringing

15   in the Texas suit are also being asserted as infringing

16   here.

17             So the claims of the original two

18   patents-in-suit and the claims of the four patents here in

19   suit do cover and are asserted against the same products and

20   methods.

21             I'm not sure if I'm answering your question.

22             THE COURT:  I don't think you are fully

23   answering it.

24             When you say in your brief that the claims in

25   front of me here in Delaware are narrower than the claims

1    litigated in Texas, I thought what you were saying is there

2    is no infringing product anywhere in existence or even

3    theoretically.  There is nothing that infringes that

4    Delaware claims that would not also infringe the Texas

5    claims.

6              Is that what you are saying?

7              MR. PAZUNIAK:  Yes.  That is correct, Your

8    Honor.  That is correct.

9              And the reason that the narrower limitations

10   were mentioned is that the prior IPR proceedings obviously

11   had determined that certain claims were obvious.

12             If you had broader claims than the claims in

13   the IPR, then those claims would automatically be invalid

14   for obviousness because obviously narrower claims are

15   obvious than broader claims are obvious.

16             The importance of the narrower claims is that we

17   now have claims that overcome the prior art that was cited

18   in the IPR proceedings and which was the basis for the

19   finding of obviousness.

20             In other words, if the claims were not narrower,

21   they would be automatically invalid.  They have to be

22   narrower in order to be valid, in order to have issued.

23             THE COURT:  Okay.  Right.  So first, I mean,

24   that leads to a couple of questions.

25             One, the defendants view their motion as not

```
 1    putting an issue of invalidity in front of me but just an

 2    issue of preclusion.

 3              They're right about that, aren't they?

 4              MR. PAZUNIAK:  Well, claim preclusion, I think

 5    that is correct.

 6              Issue preclusion, I think the argument really

 7    is that -- you know, is that we cannot challenge the

 8    invalidity of the claims because the only issue of collusion

 9    or collateral estoppel argued is the finding of invalidity

10    by the PTAB in the IPR proceedings.

11              So if that -- if the only ruling in the IPR

12    proceedings is invalidity and you give issue -- I'm sorry,

13    issue preclusion or collateral estoppel effect to that

14    ruling, then you're basically saying the claims here are

15    invalid.

16              So the defendants' counsel is partially correct

17    as to claim preclusion but not as to issue preclusion.

18              THE COURT:  All right.  If I just focus for the

19    moment on claim preclusion, is defense counsel partially

20    correct or completely correct?

21              That is, if I grant their motion on claim

22    preclusion, you still walk out of here with a valid -- with

23    four valid patents that you could sue others on besides

24    these defendants; right?

25              MR. PAZUNIAK:  I think that is right.
```

1            But, frankly, Your Honor, I have not considered

2    the *Blonder Tongue* effect that that might have on future

3    cases.

4            So I don't want to -- I think that is right, but

5    I'm not sufficiently confident of my knowledge of the law to

6    be certain of that.

7            THE COURT:  And fair enough.  I didn't really

8    mean to emphasize that part of the question.

9            More directly, if I were to grant their motion

10   on the claim preclusion ground they're arguing, I'm not

11   making a finding that any claims in front of me are invalid;

12   I'm just making a finding that you no longer have a right to

13   sue these three defendants on these four patents.

14           Do you agree with that?

15           MR. PAZUNIAK:  Yes, Your Honor.  I do agree with

16   that.

17           THE COURT:  Okay.  So then come to then the

18   question, why -- I think you want to have me persuaded that

19   it doesn't matter.  That for claim preclusion purposes, even

20   though it is very clear you are conceding that the claims in

21   front of me are subsumed within the patent claims that you

22   litigated in Texas, that that doesn't matter, that doesn't

23   get defendants to where they need to get to show claim

24   preclusion.

25           Help me on that.  How is it that you are correct

1    on that point?

2          MR. PAZUNIAK:  Okay.  So if you -- well, there's

3    a couple things.

4          I don't want to ignore the fact that there is

5    no judgment on the merits.  There is no judgment on the

6    merits for claim preclusion purposes because the Court in

7    the Eastern District of Texas had no jurisdiction -- no

8    subject matter jurisdiction to issue any ruling, any

9    determination as to the patents because those patents were

10   done.  They were disclaimed.

11         And Judge Mitchell recognized that.  She

12   recognized that she had no subject matter jurisdiction.

13         So I don't want to ignore that issue, but I do

14   understand that what Your Honor is going to show -- well,

15   let's get to that.  And if I could ask the Court to turn to

16   slide 9.

17         The governing law is clearly stated in *SimpleAir*

18   *vs. Google*, and that is we are different patents and we have

19   different patents here.

20         So where different patents are asserted in a

21   first and second suit, a judgment in the first suit will

22   trigger claim preclusion only if the scope of the asserted

23   patent claims in the two suits is essentially the same.

24         So the Court doesn't say you have to have

25   broader claims or narrower -- or distinguishes between

1    broader or narrower claims.  The only issue is whether the

2    claims are the same or not.

3              Continuing, the defendants argue that the courts

4    have allowed narrower -- I'm sorry, have allowed claim

5    preclusion only where the claims in the second suit are not

6    narrower.

7              Well, that isn't true.  That's not what happened

8    in *Senju*.  In *Senju*, the issue is whether or not the

9    reexamined claims were the same cause of action.  And

10   specifically in that case, you had claims that were

11   originally asserted during the litigation.  The claims were

12   reexamined.

13             And the Court went on to point out that the

14   reexamined claims were no different than any other claims.

15             So, in fact, if you lack at defendants' slide

16   33, it says "Narrowed claims do not create any new cause of

17   action that plaintiffs lack under the original version of

18   the patent."

19             It's very clear that *Senju* was focused on the

20   fact that you had the same claims of the same patent

21   involved in both the first and the second lawsuit, and the

22   only difference was those claims had been reexamined.

23             And so the Court basically was saying since

24   you can't get broadening claims but can only get narrower

25   claims, then it is still the same patent claim and the same

1    cause of action.

2              And, again, if I could direct the Court to

3    *Senju* at page 1352, there, the Court stated that in this

4    case, I'm quoting:  "In this cause we reach the same

5    conclusion that the *Aspects* court did.  Claims that emerge

6    from reexamination do not in and of themselves create new

7    cause of action that did not exist before.  We've reach this

8    conclusion because a so-called reexamined patent is the

9    original patent.  It has just been reexamined another time

10   as indicated in the reexam certificate.  Reexamination does

11   not involve the filing of a new application nor the issuance

12   of a new patent," and unquote.

13             *Senju* relied on a prior case, *Aspects Eyewear*.

14   And that's 672 F.3d, 1335, which *Senju* cited, I think, about

15   44 times.  And *Aspects* was, like *Senju*, a case involving

16   reexamined claims and preclusion arising from asserted

17   reexamined claims.

18             So the whole issue of narrower claims in *Senju*

19   was only an issue because of the fact that we were dealing

20   with the same claim of the same patent that had been

21   previously asserted.

22             It should be noted that if defendants were

23   correct, that narrower claims were automatically precluded,

24   then by definition, you couldn't ever enforce the claims of

25   a patent that was a continuation or a continuation in part

1    of a prior patent.  It would be impossible because if the

2    claims were held invalid for obviousness, any broader claims

3    or the same scope would be automatically invalid.

4         You have to have narrower claims to avoid

5    automatic invalidity.

6         In fact, the Patent Office shouldn't be issuing

7    claims that are of the same scope or broader than the claims

8    that had been previously held invalid for obviousness.

9         The one thing I should also stress is that at

10   slides 36 and 38, and during this -- the argument,

11   defendants' counsel suggested that *SimpleAir* also enforced

12   this "narrower" limitation.

13        In fact, *SimpleAir* did not.  The word

14   "narrower," narrower doesn't appear in the *SimpleAir* cause.

15        THE COURT:  Are you -- Mr. Pazuniak, are you

16   contending that there is a case that rejects the argument

17   about narrower claims not -- you know, you can't sue on

18   narrower claims due to claim preclusion, or are you just

19   saying that the cases that defendants are citing don't get

20   them where they need to go?

21        Another way of putting it, is there a case right

22   on point that you think goes your way, or are we -- do I

23   have an argument about what the implications are of these

24   various Federal Circuit decisions?

25        MR. PAZUNIAK:  Your Honor, I did actually look

```
 1      at the issue.  And in Senju and Aspects, you know, the

 2      Aspects case and the Senju case, both of which are

 3      reexamined claims, they're the only times that this issue of

 4      narrower has ever come up.

 5                  So the simple answer is there is no other case

 6      specifically addressing this issue of narrower.

 7                  But, again, I will cite the Court to slide 9 and

 8      the governing law because the clear statement of the Federal

 9      Circuit is that it's -- you know, that the only time hat --

10      that the claims of a subsequent patent are precluded is when

11      the asserted patent claims in the two suits are essentially

12      the same.  So ...

13                  THE COURT:  Well, let's talk about the logic of

14      that in this context.

15                  If -- I mean if it is open under the law, and

16      that's debatable, I suppose, but if it is, why shouldn't

17      the answer from the Court be, look, when you have an

18      indisputably and clearly narrower claim, then the claim that

19      was already dismissed -- let's say with the judgment on the

20      merits for the sake of argument, I know you disagree with

21      that -- at the end of the day, we're trying to figure out,

22      is this a second bite at the same apple?  If it's, you know,

23      concededly a tiny apple that is fully subsumed within the

24      big apple that you took a bite out of before, why shouldn't

25      that be viewed as essentially the same for purposes of
```

1    estoppel?

2              MR. PAZUNIAK:   Because the issue that decided

3    the case was not infringement or any other issue but a

4    determination of invalidity of the broader claims in the IPR

5    proceedings.   So -- and the new claims that we are asserting

6    didn't even exist at the time that the Texas case was filed.

7              So we have a series of patents that provide for

8    different scopes, and albeit they are narrower because they

9    include elements that are not in the earlier suits.   But

10   there, we have claims that are presumptively valid, claims

11   that are considered by the Federal Circuit to be separate

12   causes of action.

13             And then, you know, what is there -- oh.   On

14   that point, Your Honor, because maybe this also is a point

15   to answer your question.

16             If Your Honor can take a look at slide 8.   And

17   you will see there that we quote from the *Senju* case which

18   also states, "Ordinarily each patent asserted raises an

19   independent and distinct cause of action."

20             So we have *Senju* saying that each patent raises

21   a distinct cause of action.

22             We have shown in slide 9 the governing law that

23   says that, you know, that the scope of the two patents are

24   precluded -- I'm sorry, subsequent cases are precluded only

25   if the patent claims are essentially the same.

1          And then in this case, going back to Your

2   Honor's question -- so we have claims that were -- I mean,

3   if we had filed all six claims, suppose all six patents were

4   already issued when we filed the Eastern District of Texas

5   lawsuit, and two of those patents were held invalid -- that

6   is, the claims of two of those patents were held invalid,

7   would that automatically free the defendants from infringing

8   the other four patents?

9          Well, the answer is clearly not.  It wouldn't.

10  The Court would still have to determine whether the claims

11  of the other four patents were valid and if they were

12  infringed.

13         So why should the change -- why should the

14  situation change if, as in this case, the two patents were

15  asserted first because the other four patents haven't issued

16  but then after the four patents issued, they were brought

17  against the defendant?  Why did the -- the mere fact that

18  there is a second lawsuit should not make any difference if

19  we could have asserted all six claims to begin with.

20         And that's why this whole argument of narrower

21  seems to be, you know, directly contrary to what normally

22  is, you would expect in patent law.  And that is, if you

23  have narrower claims, then they're more likely to be held

24  valid than broader claims and they could have been asserted

25  if they had been filed in a single lawsuit, well, they can

1    be asserted in a second lawsuit.  Why not?  What is wrong

2    with that?  I don't think that defendants have answered that

3    question.  And yet that is, I think, the critical juncture.

4              THE COURT:  Let's come back, because we're

5    starting to get low on time, on the judgment on the merits

6    point which I know you dispute as well.

7              MR. PAZUNIAK:  Right.

8              THE COURT:  Why do I even need to look beyond a

9    dismissal with prejudice?  What difference does it make what

10   the basis was for a dismissal with prejudice?

11             MR. LAVENUE:  If Your Honor -- Your Honor

12   mentioned the *Media* case in Your Honor's questions to

13   defendant's counsel.  I just -- my recollection of that case

14   is that that case said that if you had no standing, there

15   is no preclusion because there is nothing decided on the

16   merits.

17             Well, the same thing here.  Again, if we take --

18   if we had filed, you know, for -- I'm sorry, had filed a

19   lawsuit with the two original patents and the four

20   additional patents and won the lawsuit, a dismissal of two

21   of those cases, that is, two of the patents would not do

22   anything to the four patents.

23             And here also, the two patents were dismissed

24   because they were gone.  There was no Article III subject

25   matter jurisdiction.

1           If a federal court has no Article III case or

2    controversy and thus has no subject matter jurisdiction, how

3    can you have a decision on the merits of the patent?

4           The Court certainly, since the case was filed,

5    the Court certainly had the jurisdiction to consider costs,

6    consider whether or not attorneys' fees should be granted.

7           And by the way, the Court found that Stragent

8    had done nothing wrong and so denied the -- you know, denied

9    the claim for attorneys' fees.

10          But just because the Court in determining that

11   it had the rights to issue costs and to determine whether

12   or not a party was a prevailing party for attorneys' fees

13   purposes doesn't mean that they did have jurisdiction to

14   enter any judgment on the merits of the patents.

15          And again --

16          THE COURT:  Mr. Pazuniak, first of all, you've

17   got 10 minutes left.

18          But did the Texas court have jurisdiction to

19   decide whether its dismissal would be with or without

20   prejudice?

21          MR. PAZUNIAK:  I think the with prejudice is

22   automatic because we were terminating all the issues.  I

23   mean, we had moved for dismissal with prejudice.

24          You know, I don't think that with prejudice has

25   any particular issue.  I need to -- perhaps I should have.

1    I didn't think of considering the Supreme Court.

2            On slide 6, we cite the Supreme Court case that

3    was cited in the Eastern District of Texas, the *Already LLC*

4    *vs. Nike*, 568 U.S. 85, 2013 case.

5            And that case was very similar to the Eastern

6    District case in the sense that during the course of the

7    litigation, the Court lost subject matter jurisdiction and

8    the Court said, look, you know, if -- the federal court has

9    to maintain subject matter, subject matter jurisdiction

10   throughout.  And once that subject matter jurisdiction was

11   lost, the case was over, even if it, the subject matter, was

12   lost during the litigation.

13           Well, the same thing here.  How can a Court

14   issue a decision on the merits when it has no jurisdiction?

15           And the *Already LLC vs. Nike* case is directly on

16   point.

17           So, yes.

18           THE COURT:  That's okay.  You can go on.

19           MR. PAZUNIAK:  Okay.  So I guess I only have a

20   few minutes.

21           And regarding the, you know, the collateral

22   estoppel.  If I could turn -- ask the Court to turn to slide

23   14.

24           The ruling, again, to have issue preclusion or

25   collateral estoppel, you have to have the same or patentably

1    indistinct claims as between the original judgment or the

2    claims being asserted.

3            The defendants have not presented any authority

4    or argument that different and/or narrower claims were

5    precluded because other claims of other patents were held

6    invalid for obviousness by the PTAB.

7            And I should also point out that the same holds

8    true for claim preclusion.

9            Other than *Aspects*, the *Aspects* case and the

10   *Senju* case involving reexamined claims, there are -- I'm not

11   aware of any Federal Circuit or Supreme Court or, in fact,

12   any District Court decision where claims were precluded from

13   being asserted unless they had essentially no patentable

14   distinction from the claims that were previously heard.

15           Finally, the issue of the difference between

16   broadest, reasonable construction and the current *Phillips*

17   standard is relevant, and I direct the Court to slide 15.

18           I mean, we -- the Supreme Court has clearly

19   stated that there is -- are exceptions from claim issue

20   preclusion if there is a change in the law.  And here, the

21   claims, yes, were held invalid by the PTAB in the IPR

22   proceedings.  Yes, they're gone and, you know, and we --

23   you know, if those claims were asserted in a District Court

24   proceeding, they couldn't -- those claims couldn't be

25   asserted because the claims were gone even though the

1    standards were different.

2            But if we're talking about issue preclusion, it

3    does make a difference that the PTAB today could not have

4    issued the same decisions that it did in the past because

5    now the law has changed, or the regulations have changed.

6    And the claim construction decisions which were critical to

7    the PTAB's decision could no longer be made.

8            So let me just -- if I have a minute, let me

9    just make sure that I have --

10           THE COURT:  You've still got several more

11   minutes so take your time.

12           MR. PAZUNIAK:  Okay.  I'm just checking to see

13   if there is -- okay.

14           There was the -- counsel argued of terminal

15   disclaimer and suggested that, oh, just because we had a

16   terminal disclaimer, you know, that is somehow critical.

17           The whole issue is summarized and concluded in

18   the *SimpleAir* case at 884 F.3d at 1168.  And the Court --

19   and we cited -- we cite this, I believe, in our briefs, that

20   a terminal disclaimer is a clue that there may be overlap

21   between the original claims and the subsequent claims.

22           But, again, the Court made it very clear that

23   it is wrong to rely solely on the terminal disclaimer.  And,

24   in fact, reversed the District Court for doing that and

25   required the Court to go back and to consider whether the

1    claims were the same or if they were patentably distinct.

2              Again, you know, going back to the question of

3    narrower.  It is strange that if you look at, you know, the

4    courts' -- all the courts' discussions of terminal

5    disclaimers.  Again, these are -- you know, the courts look

6    at the scope of the claims as between the original and the

7    subsequent claims.  No one looks at this and says, oh,

8    these are narrower claims and therefore, you know, they're

9    automatically precluded.  That just hasn't happened.

10             And so it doesn't seem like the courts and the

11   parties to the courts have viewed this case as -- or have

12   viewed this narrower issue in *Senju* as defendants have here.

13             Well, Your Honor, I think I have addressed the

14   issues.

15             THE COURT:  Okay.  Let me --

16             MR. PAZUNIAK:  Unless you have --

17             THE COURT:  Yes, I do have some more questions,

18   but thank you.

19             If we were outside of a patent context, and you

20   can tell me if you think this relevant or not, but I would

21   think that at least conceptually there would be an argument

22   that if you previously brought a claim against the same

23   defendant and there was a judgment on the merits against

24   you, I understand you argue that part, and what you tried to

25   then bring against those same defendants later is simply a

1    subset of the claim that you lost on the merits earlier,

2    wouldn't that be a situation for claim preclusion to apply?

3              MR. PAZUNIAK:  It depends on whether I think you

4    could have asserted the claims at that time.

5              So if, for example, you are -- forgetting the

6    patent aspect and just say plaintiff sues defendant for

7    violation of some common law right, and subsequently there

8    is a statute that provides for some relief which comes too

9    late to have been asserted in the original complaint, and

10   then in that case, the Court finds in favor of the

11   defendant.

12             Does that mean the plaintiff is foreclosed from

13   later suing on a statute that provides for relief?  I don't

14   think so.  That would, I think, would be a different cause

15   of action.

16             And here we know the Federal Circuit and Supreme

17   Court law is very clear that every patent is a separate

18   cause of action.

19             So I think it is a little -- taking it out of

20   the patent context, you would still get the same result that

21   Stragent argues here.

22             Again, the claims we are asserting did not exist

23   at the time that the complaint was filed.  In fact, some of

24   those claims didn't exist until the IPR was over.

25             THE COURT:  You do agree that all three

 1    defendants had dismissals with prejudice in Texas, right?

 2    That is not in dispute.

 3              MR. PAZUNIAK:  Correct.  The issue was never

 4    argued.  If we -- we all agreed that it should be with

 5    prejudice, yes.

 6              THE COURT:  There is some back and forth in

 7    the briefing about the appeal from the IPRs, from the PTAB

 8    finding that you, I guess, started an appeal and dropped

 9    it, conceding there was essentially no likelihood that that

10    appeal would be successful.

11              To the extent that that is relevant to my

12    analysis, should I treat an abandoned appeal any differently

13    than I would an appeal that was pressed all the way until

14    you actually lost in the Federal Circuit?

15              MR. PAZUNIAK:  I don't think the appeal would

16    make a difference one way or the other because if the --

17    the IPR decisions, which form the basis of the collateral

18    estoppel or issue preclusion argument, it's those decisions

19    that provide the foundation for the estoppel or the

20    preclusion.

21              Whether or not those decisions were affirmed

22    on appeal or whether no appeal was vacant or an appeal was

23    filed and then dismissed I don't think makes a difference

24    because it's the PTAB decision that form the basis for

25    anything.

1              Maybe I'm not understanding Your Honor's

2    question.

3              THE COURT:  No, that's fine.

4              Your complaint has various places where it

5    alleges that certain claims are materially different than,

6    you know, different patent claims.

7              Is that a legal conclusion, or is that a factual

8    allegation that you think I have to credit at this stage of

9    the case?

10             MR. PAZUNIAK:  Well, I think it is a factual

11   allegation because -- well, like every other patent issue,

12   there is a modicum of law and a modicum of fact.

13             The Court would obviously construe claims as a

14   matter of law so the Court would construe the original and

15   the subsequent claims, you know, for claim construction

16   purposes.  But then whether or not a given product or

17   process fell within the scope of the claim would be a fact

18   issue that would be presented by, as in any other case,

19   infringement experts and would be presented to a jury as a

20   fact issue once the claim constructions were issued.

21             THE COURT:  All right.  And then on these claim

22   charts that I think are with the defendants' briefing, you

23   fault them for being, I think, unauthenticated and unsworn.

24             What is the relevance of their unauthenticated

25   and unsworn nature?  And more generally, do you contend that

1   I can't even consider them?

2           MR. PAZUNIAK:   I don't believe it would be

3   appropriate to consider them because there are no issues

4   that are raised that are questions of law.

5           The claim charts -- well, the entire argument by

6   defendants as to the similarity of the original claims and

7   the subsequent claims is nothing more than counsel's ipsi

8   dixit.

9           Counsel says, oh, these are the same claims.

10  Look, there's no differences.   They put some claim charts

11  and say, oh, here are these words but those words don't mean

12  anything.

13          The fact is that Court can't determine that

14  simply based on assertions by counsel.   These are fact

15  issues that have to be presented by proper experts, and

16  there is no expert declaration or affidavit into the record.

17  All we have is counsel saying, oh, we believe these are the

18  same.   But that's, that is not evidence that the Court can

19  consider.

20          I mean, we have responded and have pointed to

21  actual language in the claims that are different between

22  the prior claims and the current claims, and so the Court

23  can look at the words of the claims and see that there are

24  differences and -- but after that, to suggest that those

25  claims are the same, the Court can't do that because only an

1    expert and proper factual foundation is required to show

2    that they're -- you know, that those language differences

3    are immaterial.

4              And the burden of proof, it's not disputed, the

5    burden of proof on these motions is on defendants.  So we

6    didn't have to file declarations to challenge what they

7    have said because we just addressed, you know, the same

8    kind of information they had presented, the defendants had

9    presented.

10             But the defendants have failed to present any

11   proper record for the Court to make the kind of

12   determination they're asking the Court to do.

13             THE COURT:  Okay.  Thank you.  You answered all

14   my questions.

15             And now, Mr. Lavenue, back to you.

16             MR. LAVENUE:  Thank you, Your Honor.  Lionel

17   Lavenue.

18             So I think that you have heard from counsel for

19   Stragent that our position, defendants' position on claim

20   preclusion is very strong.

21             There are only two issues that have been raised,

22   and both of those issues, I believe, can be easily disposed

23   of by the Court.

24             First, whether or not there is a final judgment

25   on the merits in the prior suit.

1          Counsel for Stragent challenges whether or not

2   Judge Mitchell's ruling of June 10th, 2019, where she notes

3   that counsel for Stragent voluntarily agreed to dismiss with

4   prejudice, that somehow the Court should not consider that,

5   I believe that would be great error.

6          Also, Judge Schroeder, when he adopted the

7   ruling of Judge Mitchell in his ruling of July 23rd, 2019,

8   Judge Schroeder's decision simply said that the decisions

9   were dismissed with prejudice, and he adopted the ruling of

10  Judge Mitchell.

11         Now, interestingly, it seems that even counsel

12  for Stragent concedes that BMW's position is extraordinarily

13  strong on this issue because I wrote down in my notes he

14  says, well, effectively it was the same for BMW.

15         So what counsel for Stragent did is they said,

16  well, look at what Judge Mitchell said.  She said, I'm

17  dismissing with prejudice based upon lack of subject matter

18  jurisdiction for Volvo and Mercedes, and then it's

19  effectively the same for BMW.

20         Well, no, that is not what happened.  What

21  happened was BMW brought a motion for summary judgment

22  during the issue of a with prejudice or not -- or without

23  prejudice dismissal.

24         And at the hearing, the Judge asked counsel

25  for Stragent, do you agree to voluntarily dismiss with

1    prejudice?

2              And he said yes.

3              And that voluntary dismissal with prejudice, it

4    took care of the motion for summary judgment.

5              So when counsel for Stragent said the motion for

6    summary judgment was moot, well, it was only mooted because

7    counsel for Stragent, at the hearing, agreed to a voluntary

8    dismissal with prejudice.  That was the reason for the

9    mooting, not because there was a lack of summary judgment --

10   of subject matter jurisdiction.

11             In fact, that was made clear from the fact that

12   in Judge Mitchell's ruling, she did not mention subject

13   matter jurisdiction as to BMW.  And even as to Volvo and

14   Mercedes, the same voluntary agreement to dismiss with

15   prejudice was made by counsel for Stragent as to them as

16   well.

17             So that is why Judge Schroeder, in his final

18   judgment, issued a ruling that dismissed with prejudice as

19   to all three.  And so that, we believe, would -- because

20   of the voluntary dismissal with prejudice by counsel for

21   Stragent, that addresses the final judgment on the merits

22   issue under claim preclusion.  So that, in our view, is a

23   strong argument not only for BMW but also for Volvo and

24   Mercedes.

25             Next --

1              THE COURT:  Before you get there, I think

2    Mr. Pazuniak is suggesting the Texas court had no authority

3    to do anything other than dismiss with prejudice.  To the

4    extent he is making that argument, what is your response?

5              MR. LAVENUE:  To the extent he is making that

6    argument, the *3M* case directly rebuts and refutes counsel

7    for Stragent on that issue.  And that was the quote I gave

8    before, the *3M* case, 289 F.3d 775 at 780 through 81, and I

9    have the pinpoint cite correct, and that is where the Court

10   said -- the Federal Circuit said the underlying patent

11   controversy may not have been sufficient for jurisdiction

12   but the controversy over the form of dismissal was itself

13   sufficient.

14             So the Court there found that merely the

15   dispute over whether or not to have a dismissal with

16   prejudice or without prejudice, there was jurisdiction for

17   that independent of the other issues.

18             In addition, the -- and I didn't read this

19   before, the Federal Circuit in the very next line cites to

20   "See also a Supreme Court case, *City of Erie*."  And the

21   quote from the parenthetical in this Federal Circuit case

22   from the Supreme Court is very illuminating for the

23   situation we have here where it says:  "A Court's interest

24   in preventing litigants from attempting to manipulate the

25   Court's jurisdiction to achieve a favorable decision

1    counsels against a finding of mootness."

2              So counsel for Stragent keeps saying, well, it

3    was moot and so therefore the Court in Texas could not have

4    issued a decision like it did for dismissal with prejudice.

5              Well, no, it wasn't moot because we had raised

6    the specific issue in our the briefing, we addressed the

7    issue at the hearing, and the Supreme Court and the Federal

8    Circuit has specifically concluded that it's not moot when

9    you have a party challenging whether or not the dismissal

10   should be under the appropriate circumstances.

11             And, in fact, I will also note that the Supreme

12   Court counsels against the manipulation of jurisdiction,

13   which it's clear that is what was happening here, Your

14   Honor.

15             Counsel for Stragent was trying to manipulate

16   the jurisdiction of the Eastern District of Texas in order

17   to try to avoid preclusion.  Both claim preclusion and issue

18   preclusion and that manipulation was through this trickery

19   of using a withdrawal or disavowal of the patent claims of

20   already invalid -- patents that were found to be invalid.

21             So the Patent Office, after we spent good time

22   and money challenging those patent claims, found them

23   invalid.  Counsel for Stragent then tried to use this

24   jurisdictional manipulation to then disavow them, say the

25   Eastern District did not have jurisdiction to go any further

1    and therefore tried to preclude us from getting a with

2    prejudice dismissal.

3              It's actually outrageous in context, and that

4    is exactly what's happening here.  And we believe both the

5    Supreme Court and the Federal Circuit and the other case law

6    clearly supports us on this issue for claim preclusion.

7              THE COURT:  All right.  Could you respond to the

8    *Senju* point, the excerpts from it on slides 8 and 9 that

9    were highlighted in Mr. Pazuniak's argument?

10             MR. LAVENUE:  Yes, Your Honor.

11             So as far as the third element of claim

12   preclusion, whether or not it is the same cause of action,

13   counsel for Stragent spent a lot of their time talking

14   about *Senju*.  And that is in *Senju*, you inherently have

15   narrower claims and so, therefore, their argument that you

16   have narrower claims should not be determinative that the

17   cause of action is the same.

18             But what counsel for Stragent did not do is did

19   not go on from the *Senju* analysis, which gives the bases

20   for why if you had narrower claims it's the same cause of

21   action, which I will note indicates that we win on *Senju*

22   alone.

23             But if we go to *SimpleAir*, in *SimpleAir*, we

24   believe that counsel for Stragent made an error because in

25   *SimpleAir*, the case specifically says that when you have a

1    continuation patent application, it can either -- it cannot

2    only be narrower, it can be the same or even broader than

3    the parent.

4            So in a reexam situation, yes, it always is

5    going to be narrower.  But in a continuation situation, it

6    is not always going to be narrower.  It can be broader, the

7    same, or narrower.

8            The point that we're making in our argument is

9    that counsel for Stragent, by not only saying that his

10   claims in the Delaware patents are narrower but saying that

11   they're "significantly narrower" and "materially narrower,"

12   that makes very clear that the elements of the claims that

13   are in the Delaware patents, like the Court noted, are a

14   subset of the claims that were in the Texas patents; and

15   those Texas patents were found invalid which is an issue of

16   issue preclusion.

17           But we're only talking here about whether or

18   not it's the same cause of action.  So under *Senju* and

19   *SimpleAir*, for purposes of the same cause of action, if you

20   have claims that are significantly narrower, materially

21   narrower, then those would, under that case law, be subsumed

22   within the cause of action from the Texas cause.

23           And that is why we don't need to go to charts

24   and claim comparisons and all of the other analysis because

25   that decision has already been made for us by counsel for

1   plaintiff.   They have already conceded that these are the

2   same.

3                   THE COURT:   Okay.   And we're just about out of

4   time, but I do have a few more questions for you.

5                   *SimpleAir*, the citation on slide 9, which I

6   meant to refer to when I said *Senju*, so my mistake there,

7   you know, says the claims are -- must be essentially the

8   same.   "Narrower" and "materially narrower" seem not to be

9   essentially the same.

10                  So how does that law help you?

11                  MR. LAVENUE:   Well, *Senju* and, essentially the

12  same, is a claim that is subsumed within the other.   I mean,

13  that is the way that *Senju* describes the reexam situation.

14                  If you have a reexam and you have claims that

15  come from the reexam, then they're always going to become

16  narrower.   And they define that as essentially the same.

17                  *SimpleAir* takes that concept and moves it into

18  the continuation situation and they say, okay, if you have a

19  parent patent and then you have a continuation, we look to

20  the continuation to see whether or not it is -- it's one of

21  the three scenarios:

22                  Scenario 1, broader;

23                  Scenario 2, the same;

24                  Scenario 3, narrower.

25                  And here we actually have Scenario 3 plus.   And

1    in Scenario 3 plus, we have not only narrower but

2    significantly narrower and materially narrower.

3              That is the definition of essentially the same.

4              THE COURT:  All right.  So from slide 8, his

5    excerpt was ordinarily each patent asserted raises an

6    independent and distinct cause of action.

7              You're saying we're not in an ordinary

8    circumstance, I guess, because these are new patents, right?

9    So you would presume they are new causes of action but you

10   are saying, don't follow that.

11             MR. LAVENUE:  This is far from ordinary, Your

12   Honor.  That is clear.  So the ordinary would not fit the

13   bill here.

14             THE COURT:  All right.  And is there any

15   significance to the timing of the four patents-in-suit here

16   in Delaware, the timing for when they were issued and

17   whether they could have been brought in Texas?  Is that

18   pertinent to the analysis?

19             MR. LAVENUE:  Well, I was really surprised to

20   hear that, Your Honor, because I noted that counsel for

21   Stragent noted fairness on that issue.  And the case in

22   Texas ended in June of 2020.  All four of the patents in

23   Delaware, they were all issued before June of 2020.  In

24   fact, they were all issued in 2019, 2019 and before.

25             In fact, Your Honor, of the four patents that

1    are asserted in Delaware, three of those patents were

2    specifically accused against the defendants during the Texas

3    case, and that is what led to our concern and our dispute

4    over the with prejudice or without prejudice issue.

5              So counsel for Stragent was aware of the issue,

6    could have gone to the court in Texas and said at any time,

7    even up to the point of dismissal, we want to amend our

8    complaint to add these new patents.  They did not do so.

9              And most tellingly is when the case was ending

10   and we asked for a with prejudice dismissal, they had the

11   opportunity in front of Judge Mitchell to ask Judge Mitchell

12   to specifically make a without prejudice dismissal.

13   Instead, they voluntarily agreed to a with prejudice

14   dismissal knowing of the implications of preclusion.

15             And so the fairness is entirely on the side

16   of the defendants here, not on the side of the plaintiff

17   because the plaintiff could have at any time asked the Texas

18   court to include these patents in the case, to substitute

19   them out of the complaint.

20             THE COURT:  All right.  One last question.

21             There was a suggestion, I think also from

22   Mr. Pazuniak, that if you're right, then it may follow

23   logically that one can basically never sue on a continuation

24   or continuation in part patent.

25             I assume you think you are right, and I assume

1    you think that is not the logical implication.

2              So help me understand why.

3              MR. LAVENUE:  Well, it's not the logical -- I

4    assume that he means for the same parties.  In other words,

5    if you have a parent patent and you have a continuation

6    patent, then can you sue on the continuation patent if there

7    was a previous lawsuit on the parent patent?

8              And I think that would go to, what exactly was

9    the patent that was addressed in the prior case?

10             And also, if it's a continuation patent that is

11   subject to a terminal disclaimer, then that would certainly

12   err on the side of it being precluded.

13             But if it's a continuation patent, for example,

14   that is a CIP, a continuation in part that had new matter

15   and had claims that were not significantly narrower and

16   materially narrower but were broader or different from, you

17   know, outside of this little circle that we have in our

18   PowerPoint presentation where we say, well, are the claims

19   within the circle, well, if the claims are outside of the

20   circle, then certainly counsel for Stragent would be

21   entitled to pursue these claims.

22             But here the claims are not outside the circle.

23   They're not different from, they're narrower then.  And

24   they're not only narrower then, they're significantly

25   narrower.

```
 1              So if we're talking about a situation for claim

 2    preclusion, not issue preclusion, where you have a previous

 3    lawsuit against the same defendant, then that would be

 4    precluded on claims that were the same cause of action even

 5    in a continuation if, you wanted to avoid that then you can

 6    do that by having claims that were other than within the

 7    circle of the scope of the prior case.

 8              Like you said, is this is a subset of the case,

 9    which means that it is precluded, or is this something other

10    than a subset of the case, which means that you are not

11    precluded?  That's the distinction that would make the

12    answer.

13              THE COURT:  Okay.  Thank you very much.

14              I want to thank both counsel for the very

15    helpful argument.  These are challenging issues.  And

16    actually, in part, due to how complicated they are, I am

17    going to be asking you for some additional briefing.  Here

18    is what I want to make sure you cover in the supplemental

19    briefs.

20              There are a couple of cases, one of which I

21    think I mentioned during the argument.  I'm not sure if I

22    mentioned the second, but I will give you the citations to

23    them in a moment.

24              I want to have you both have a chance to

25    carefully consider the applicability, if any, of these two
```

1    Federal Circuit decisions and to give me your argument

2    about it, and probably for you each to have a chance to have

3    a very short response to each other's treatment of these

4    cases.

5              The first one is, and I'm sure I mentioned this

6    one, the *Media Tech Licensing* decision *vs. Upper Deck*

7    *Company*, 334 F.3d 1366, Federal Circuit 2003.

8              The second one is *Target Training International*

9    *vs. Extended North America*, 645 Fed.Appx. 1018.  So 645

10   Fed.Appx. 1018, Federal Circuit in 2016.

11             I believe both of these cases may, but maybe

12   don't, may have implications for the claim preclusion issue.

13             And, again, I want some help on understanding

14   your views on those two cases.

15             Second, the plaintiff contends, I don't know if

16   it's disputed, but contends that there is new material in

17   the extensive slide deck I received from defendants.  I

18   think it was about 85 slides.  Even though I did not review

19   the slides before the hearing, and as it turns out we

20   didn't discuss most of the slides, if not all of the ones

21   that plaintiff sort of objected to, I do have them in

22   front of me.

23             They may turn out to be helpful so I want

24   the plaintiff to have an opportunity to write a short

25   supplemental brief on any of what you think is new in those

1    slides, and I want defendant to at least have a chance to

2    reply to that.

3                So I'm going to leave it to you all, and I'll

4    ask you to do this by Monday, to get back to me with a

5    proposal for how quickly and how short in page length you

6    all can agree to brief these various issues that I have now

7    called out.

8                Mr. Pazuniak, any questions about that or

9    anything else to talk about?

10               MR. PAZUNIAK:  No, Your Honor.  Thank you.

11               But would it perhaps make more sense, Your

12   Honor, to just give us a sort of a -- Your Honor usually

13   says, like, three pages, single-spaced or, you know, five

14   pages, single-spaced.  You know, perhaps that would be

15   easier than for us trying to reach a determination on that.

16               I was just suggesting that I think both sides

17   might appreciate that.

18               THE COURT:  I mean, it might we easier, but I

19   guess maybe because it is the end of the day after a long

20   week, it's not coming to me what I should tell you on that

21   and there are issues on both sides.  So I am just going to

22   have to leave it to you all initially.

23               MR. PAZUNIAK:  Okay.  Okay.  That's fine.

24               Thank you, Your Honor.  I have -- plaintiff has

25   no more comments or questions.

1           THE COURT:  Mr. Lavenue, same question to you.

2      Questions to me or anything else to talk about?

3           MR. LAVENUE:  I don't think we have anything

4      else, Your Honor.  Thank you very much for your time today.

5           THE COURT:  Okay.  Then we'll just look for your

6      submission Monday with what you agreed to do, and thank you,

7      again, for the helpful argument.

8           Everybody stay safe; and I hope you enjoy the

9      weekend.  Bye-bye.

10          (The attorneys respond, "Thank you, Your

11     Honor.")

12          (Telephonic argument ends at 3:32 p.m.)

13

14       I hereby certify the foregoing is a true and accurate
       transcript from my stenographic notes in the proceeding.

15

16                     /s/ Brian P. Gaffigan
                      Official Court Reporter
17                       U.S. District Court

18

19

20

21

22

23

24

25