IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STRAGENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-510-LPS |
| | ) | |
| BMW OF NORTH AMERICA, LLC, and | ) | **JURY TRIAL DEMANDED** |
| BMW MANUFACTURING CO., LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' FIRST AMENDED ANSWER TO STRAGENT, LLC'S COMPLAINT
AND COUNTERCLAIMS OF BMW OF NORTH AMERICA, LLC**

Defendants BMW of North America, LLC and BMW Manufacturing Co., LLC

(collectively, "Defendants" or "BMW") hereby submit the following First Amended Answer to

the Complaint filed by Stragent, LLC ("Stragent") and Counterclaims of BMW of North America,

LLC ("BMW NA").  Unless expressly admitted, the allegations in the Complaint are denied.

**THE PARTIES[1]**

1.     **Plaintiff Stragent is a limited liability company existing under the laws of the
State of Texas.**

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph 1 of the Complaint, and therefore, deny each of the allegations.

2.     **Defendant BMW of North America, LLC ("BMW NA") is a limited liability
company organized under the laws of Delaware, with its registered office
located at The Corporation Trust Company, Corporation Trust Center, 1209
Orange Street, Wilmington, Delaware 19801, and having a place of business
at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677. BMW NA
is a wholly owned subsidiary of BMW (US) Holding Corp., a holding entity,
which in turn is a wholly owned subsidiary of Bayerische Motoren Werke AG**

---

[1] The headings from the Complaint are incorporated for placement purposes only and are not
intended to be statements or admissions by Defendants.

**("BMW AG"). MINI USA, the distributor for the Mini brand of automobiles, is a division of BMW NA.**

**ANSWER:** BMW NA admits that it is a Delaware limited liability company, with a registered office at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801, and has a place of business located at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677. BMW NA admits that BMW NA is a wholly owned subsidiary of BMW (US) Holding Corp., which, through other foreign intermediary entities, is a wholly owned subsidiary of Bayerische Motoren Werke AG ("BMW AG"). BMW NA admits that MINI USA is a division of BMW NA. The remainder of the allegations in Paragraph 2 constitute legal conclusions that require no response. To the extent Stragent alleges that BMW (US) Holding Corp. and BMW AG are parties to this action, BMW denies any such allegation as BMW (US) Holding Corp. and BMW AG are not named parties.

3.      **Defendant BMW Manufacturing Co., LLC ("BMW MC") is a corporation organized under the laws of Delaware, with its registered office located at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801, and having a place of business at 1400 Highway 101 South, Greer, South Carolina 29651. BMW MC is a wholly owned subsidiary of BMW (US) Holding Corp., which in turn is a wholly owned subsidiary of BMW AG.**

**ANSWER:** BMW MC admits that it is a Delaware limited liability company, with a registered office at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801, and has a place of business at 1400 Highway 101 South, Greer, South Carolina 29651. BMW MC admits that BMW MC is a wholly owned subsidiary of BMW (US) Holding Corp., which, through other foreign intermediary entities, is a wholly owned subsidiary of BMW AG. The remainder of the allegations in Paragraph 3 constitute legal conclusions that require no response. To the extent Stragent alleges that BMW (US) Holding Corp. and BMW AG are parties to this action, BMW denies any such allegation as BMW (US)

Holding Corp. and BMW AG are not named parties.

4.    **BMW AG is based in Munich, Germany, and is the parent company of the BMW Group, which comprises BMW AG itself and all subsidiaries over which BMW AG has either direct or indirect control. The BMW Group encompasses entities in the Automotive, Motorcycles and Financial Services operating segments operating in about 140 countries and employing a workforce of about 134,682 people. BMW NA and BMW MC are part of the BMW Group.**

**ANSWER:** To the extent that Paragraph 4 alleges that the BMW Group is a legal entity, BMW denies such allegations; "BMW Group" is used to collectively describe the activities of a group of entities and brands.  "BMW Group" is not a legal entity and has no legal existence.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the first two sentences of Paragraph 4.  The remaining allegations in Paragraph 4 constitute legal conclusions that require no response.  To the extent Stragent alleges that BMW AG is a party to this action, BMW denies any such allegation as BMW AG is not a named party.

5.    **BMW NA markets all BMW-branded and Mini-branded automobiles in this country. BMW MC manufactures certain BMW cars in South Carolina, which it then transfers to BMW NA to market in this country, or to export to other countries.**

**ANSWER:** BMW admits that BMW NA markets BMW- and Mini-branded automobiles.  BMW admits that BMW MC manufactures certain BMW automobiles in South Carolina.  The remainder of the allegations in Paragraph 5 constitute legal conclusions that require no response.

6.    **The automobiles which are manufactured by BMW MC, whether sold in this country or exported, and all BMW-branded and Mini-branded automobiles used, offered for sale, sold or imported by BMW NA, since July 11, 2017, the date Patent No. 9,705,765 issued, are collectively referred to here as "BMW Autos" or as "Accused Instrumentalities."**

**ANSWER:** The allegations in Paragraph 6 constitute legal conclusions that require no response, but to the extent a response is required BMW denies the allegations of Paragraph 6.

**JURISDICTION AND VENUE**

7.     **This is an action for patent infringement arising under the patent laws of the United States of America, 35 U.S.C. § 1, et seq., including 35 U.S.C. § 271. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).**

**ANSWER:** The allegation of jurisdiction in Paragraph 7 constitutes a legal conclusion that requires no response.  To the extent a response is deemed required, BMW admits that Plaintiff purports to state a civil claim arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, but BMW specifically denies any alleged infringement.

8.     **This Court has general and specific personal jurisdiction over Defendants because both Defendants reside in the State of Delaware.**

**ANSWER:** The allegations in Paragraph 8 constitute legal conclusions that require no response. To the extent a response is deemed required, BMW does not contest that this Court has personal jurisdiction for the purposes of this action, but denies that this is the most appropriate or convenient forum to exercise jurisdiction over BMW in this case.

9.     **Venue is proper in this judicial district as to each Defendant under 28 U.S.C. § 1400(b) because both Defendants reside in this judicial district**

**ANSWER:** The allegation in Paragraph 9 constitutes a legal conclusion that requires no response. To the extent a response is deemed required, BMW does not contest that venue exists in this District for purposes of this action, but denies that this is the most appropriate or convenient forum to exercise jurisdiction over BMW in this case.  BMW denies each of the remaining allegations of Paragraph 9.

**DEFENDANTS' USE OF AUTOSAR TECHNOLOGY**

10.     **AUTOSAR (AUTomotive Open System ARchitecture) is an enabling technology, and, particularly, a layered system for sharing information in an automobile vehicle, which has been standardized by a worldwide development partnership of vehicle manufacturers, suppliers and other companies from the electronics, semiconductor and software industry. AUTOSAR comprises, among other things, a set of specifications describing software architecture components and defining their interfaces. The AUTOSAR standards facilitate the exchange and update of software and**

> **hardware over the service life of a vehicle by providing a common software infrastructure for automotive systems of all vehicle domains based on standardized interfaces for the different software layers. E.g. the software in a control module is stored at different levels. Highest up is the actual application that is unique to the different car manufacturers. The application corresponds to a certain function and means that something must finally be carried out. Execution is performed by the processor (Micro controller) generating an electrical output signal. But before the applications request reaches the processor, it (i.e. the request) must be managed by the different parts of the software. Communication between these software parts is now standardized according to guidelines from AUTOSAR. This means that the supplier supplies the control module with software that works directly with the car manufacturer's application. All control modules connected to FlexRay and CAN networks contain software components corresponding to AUTOSAR's specifications. AUTOSAR's specifications also apply to communication that occurs via FlexRay and CAN networks.**

**ANSWER:** BMW is without knowledge or information sufficient to form a belief as to the truth

of the allegations of Paragraph 10 and, therefore, denies each of the allegations.

> 11.    **The BMW Group is a Core Partner in the AUTOSAR consortium. The first BMW automobiles incorporating the Autosar technology were the 2009 model year BMW Series 7. Since then, Autosar has become the standard in all BMW automobiles. Simon Furst, General Manager Software Development and Software Infrastructure for BMW AG, confirmed that AUTOSAR has been implemented as the core common requirement of all electronic control units of all BMW automobiles, or, in Mr. Furst's words: "ONE ARCHITECTURE. ONE STANDARD. AUTOSAR." Dr. Furst's presentation indicates that BMW has incorporated the entirety of the Autosar standard relevant to, at least, the Controller Area Network ("CAN"), FlexRay and Ethernet networks. There have been several releases of AUTOSAR. The AUTOSAR Releases are backward-compatible, and any differences in the releases do not affect the application of the Autosar standard to the BMW Autos.**

**ANSWER:** BMW admits that AUTOSAR advertises that the "BMW Group" is a "Core Partner."

However, to the extent that Paragraph 11 alleges that the BMW Group is a legal entity, BMW

denies such allegations; "BMW Group" is used to collectively describe the activities of a group of

entities and brands.  "BMW Group" is not a legal entity and has no legal existence. Further,

Stragent fails to provide sufficient specificity with respect to its allegation that BMW automobiles

incorporate "the entirety of the Autosar standard relevant to, at least, the Controller Area Network

("CAN"), FlexRay and Ethernet networks," nor does Stragent provide sufficient specificity with respect to when and where the alleged statements by Mr. Furst were made, and BMW is thus without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 11 and, therefore, denies each of the allegations. BMW also specifically denies any alleged infringement. To the extent Stragent alleges that BMW AG is a party to this action, BMW denies any such allegation as BMW AG is not a named party.

> 12. **In the period from July 11, 2017, all BMW Autos that have been made, used, offered for sale, sold or imported into this country (including the X1, X2, X3, X4, X5, X6, X7, i3, i8, The BMW 2, 3, 4, 5, 7, 8 Series, Z4 and M Models, as well as BMW's Mini-branded automobiles) have incorporated the Autosar technology.**

**ANSWER:** Stragent fails to provide sufficient specificity with respect to its allegation that BMW automobiles incorporate "the Autosar technology," and BMW is thus without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 12 and, therefore, denies each of the allegations in Paragraph 12. BMW also specifically denies any alleged infringement.

> 13. **The Autosar systems in BMW Autos include a number of automotive electronic control units ("ECUs"), at least many of which are provided by third-party manufacturers. The ECUs comprise Autosar-related software provided by the BMW Group and software that is specified by the BMW Group, and specifically (a) the Autosar stack, which is the Autosar basic software ("BSW") including the microcontroller abstraction layer and run time environment according to Autosar ver. 4.x.x; (b) BMW Autosar Core 4, which consists of the BMW System Software and a compatible Autosar Stack; and (c) BMW System Software, which denotes the BMW specific parts of the BMW Autosar Core 4 as well as related software specifications, documentations, software tools, exemplary build environment and tests. Dr. Furst stated in his presentation: "Common requirements and features to all OEMs shall be standardized in Autosar," and that "BMW takes the AUTOSAR stack as base to develop and integrate all BMW specific functionalities, called 'BMW system functions', on top," displaying an image of the BMW Autosar implementation:**



Dr. Furst continued: "BMW [i] delivers all BMW specific platform software parts as source code for series development; [ii] delivers an example configuration and a free license for the make/build system; [and iii] delivers the SW-Cs in serial production quality and supports them during the whole lifecycle."

**ANSWER:** To the extent that Paragraph 13 alleges that the BMW Group is a legal entity, BMW denies such allegations; "BMW Group" is used to collectively describe the activities of a group of entities and brands including, it is not a legal entity and it has no legal existence. Further, Stragent fails to provide sufficient specificity with respect to its allegations that "ECUs comprise Autosar-related software," nor does Stragent provide sufficient specificity with respect to when and where the alleged statements by Mr. Furst were made, and BMW is thus without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 13 and, therefore, denies each of the allegations in Paragraph 13.  To the extent Stragent alleges that BMW AG is a party to this action, BMW denies any such allegation as BMW AG is not a named party.  BMW also specifically denies any alleged infringement.

14.    **Thereafter, the ECU manufacturer will substitute its own Autosar Stack, but BMW requires that the Stack be compliant with the Autosar 4.x.x. standard,**

**or as Dr. Furst stated, the ECU provider "Has to ensure that 'his' stack is compliant to the required AUTOSAR version." The ability to transmit data by way of AUTOSAR is an essential feature and function of BMW Autos.**

**ANSWER:** Stragent fails to provide sufficient specificity with respect to its allegations that "the Stack be compliant with the Autosar 4.x.x. standard," nor does Stragent provide sufficient specificity with respect to when and where the alleged statements by Mr. Furst were made, and thus BMW is without knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, denies these allegations.  BMW is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 14 and, therefore, denies each of the remaining allegations in Paragraph 14.  BMW also specifically denies any alleged infringement.

15. **Although, as noted above, it is apparent that all BMW Autos comprise the Autosar systems specified by the BMW Group, it is impossible to determine the Autosar detail for any given BMW Auto. The reason is that the Autosar details are embedded in the firmware of the various ECUs of the BMW Auto, and at least many of the ECUs in BMW Autos are VIN-specific. That firmware information cannot be extracted from the ECUs. Further, the BMW Group has maintained its implementation of Autosar as a trade secret, and it is not possible to determine from publicly-available information the actual implementations of Autosar in BMW Autos, at least beyond the information that the BMW Group has generally implemented the full Autosar Release 4.x.x. Thus, for example, one can consider BMW Part MEVD172G, which is the Basic Control Unit DME:**



**ANSWER:** To the extent that Paragraph 15 alleges that the BMW Group is a legal entity, BMW

denies such allegations; "BMW Group" is used to collectively describe the activities of a group of entities and brands including, it is not a legal entity and it has no legal existence. Further, Stragent fails to provide sufficient specificity with respect to its allegations that "all BMW Autos comprise the Autosar systems specified by the BMW Group," and thus BMW is without knowledge or information sufficient to form a belief as to the truth of that allegation and, therefore, denies this allegation. BMW is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 15 and, therefore, denies each of the remaining allegations in Paragraph 15. BMW also specifically denies any alleged infringement.

16. **The part is manufactured by Bosch, pursuant to the BMW Group's specifications, and is apparently incorporated into certain models. Part MEVD172G has included the Infineon TriCore TC1797 32-Bit Single-Chip Microcontroller:**



**The chip is designed to be compatible with Autosar for use in engine and transmission control units, and includes, for example, both flash and Ram memory, both CAN and FlexRay channels/modules, serial interfaces, and on-chip debug support. Nevertheless, it is impossible to credibly deconstruct the chip in the ECU to determine the software embedded in the chip. This**

9

**illustrates the impossibility of determining the exact software that the BMW Group had specified for any particular ECU or automobile.**

**ANSWER:** To the extent that Paragraph 16 alleges that the BMW Group is a legal entity, BMW denies such allegations; "BMW Group" is used to collectively describe the activities of a group of entities and brands. "BMW Group" is not a legal entity and has no legal existence. Further, Stragent fails to provide sufficient specificity with respect to its allegations that the "chip is designed to be compatible with Autosar," and thus BMW is without knowledge or information sufficient to form a belief as to the truth of that allegation and, therefore, denies this allegation. BMW is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 16 and, therefore, denies each of the remaining allegations in Paragraph 16. BMW also specifically denies any alleged infringement.

## COUNT I

## [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 10,248,477

17.    **Plaintiff realleges and incorporates by reference the paragraphs 1 through 16 of this Complaint, as if fully set forth herein.**

**ANSWER:** BMW repeats each and every response contained in the preceding and following Paragraphs as though fully set forth herein.

18.    **Plaintiff is the owner by assignment of United States Patent No. 10,248,477 entitled "System, Method and Computer Program Product for Sharing Information in a Distributed Framework" ("the '477 Patent"). The '477 Patent was duly and legally issued on April 2, 2019. A true and correct copy of the '477 Patent is attached as Exhibit A. Plaintiff holds the exclusive rights to bring suit with respect to any past, present, and future infringement of the '477 Patent.**

**ANSWER:** BMW denies that the '477 patent was lawfully issued. Nevertheless, BMW admits that the issue date on the face of the '477 patent, as indicated by a copy of the '477 patent obtained from the USPTO's website, is April 2, 2019, and that the patent is entitled "System, Method and Computer Program Product for Sharing Information in a Distributed Framework." BMW is

10

without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18 and therefore denies each such allegation.

19. **The '477 Patent claims are materially different from the claims that had been considered in *Inter Partes* Reviews IPR2017-00676, IPR2017-00677, IPR2017-00457, IPR2017-00458, IPR2017-01503, IPR2017-01502, IPR2017-01504, 2017-01519, IPR2017-01520, IPR2017-01521; 2017-01522, which collectively involved Patent 8,209,705 claims 1-20, and Patent 8,566,843 claims 1-59 (collectively "Prior IPRs"). As one simple example, the '477 Patent claim 1 specifies a "layered system for sharing information," wherein the information is stored and, thereafter, the system "share[s] the stored information with at least one of a plurality of heterogeneous processes including at least one process associated with a second physical network selected from the group consisting of FlexRay, Controller Area Network, and Local Interconnect Network, utilizing a network protocol different from a protocol of the first physical network," which limitations were not included in the claims considered in the Prior IPRs.**

**ANSWER:** BMW specifically denies that the '477 patent claims are materially different from the claims that the PTAB found invalid in IPR2017-00457, IPR2017-00458, IPR2017-01502, IPR2017-01503, IPR2017-01504, IPR2017-01519, IPR2017-01520, IPR2017-01521; IPR 2017-01522, IPR2017-00676, and IPR2017-00677.   BMW denies the remaining allegations in Paragraph 19.

20. **During the prosecution of the applications leading to the '477 Patent, applicant cited to the Patent Office all the prior art that was raised during the course of the Prior IPRs, and advised the Patent Office of the Prior IPR proceedings, including that "The above cited inter partes reviews have received final written decisions rendering all challenged claims unpatentable."**

**ANSWER:** BMW specifically denies that the applicant cited to the Patent Office all the material it was required to under its duty of candor.  BMW denies the remaining allegations in Paragraph 20.

21. **Defendants have directly infringed at least claim 1 of the '477 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing Accused Instrumentalities, on and after April 2, 2019, without license or authority. Any Accused Instrumentalities containing at least one ECU that operates according to, or in compliance with, Autosar**

>4.x.x standards inherently and necessarily infringes the claims of the '477 Patent. Infringement is demonstrated by the preliminary claim chart attached as Exhibit E to this Complaint which compares the limitations of exemplary claim 1 of the '477 Patent against the Accused Instrumentalities. Defendants are also believed to infringe claims 2, 4-6, 9-13, 15-17, 20-24, and 26-30 of the '477 Patent, which will be determined once Plaintiff has an opportunity for discovery, including receipt of Defendants' core documents.

**ANSWER:** BMW specifically denies that is has directly or indirectly infringed any claim of the '477 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States.  BMW denies any remaining allegations in Paragraph 21.

>22.   **Plaintiff and Defendants have previously litigated U.S. Patents 8,209,705 and 8,566,843, which are patents which issued from a common application and are related to the '477 Patent. In that prior litigation, Defendants never produced any evidence that the Accused Instrumentalities were not practicing Autosar and/or were not infringing the claims of U.S. Patents 8,209,705 and 8,566,843. If such evidence had existed, Defendants would have disclosed such evidence to Plaintiff, because such proof would have been sufficient to avoid the cost of the prior or future litigations. Thus, Defendants' inability to identify any limitation in the Plaintiff's asserted patents that is not found in Autosar or in Defendants' automotive vehicles is an eloquent admission by Defendants that the implementation of Autosar infringes the claims of Plaintiff's asserted patents and that Defendants are knowingly infringing.**

**ANSWER:** BMW admits that BMW and Stragent fully litigated U.S. Patent Nos. 8,209,705 and 8,566,843, which are patents that issued from a common application and are related to the '477 patent, and that the Court in that litigation determined that BMW was the prevailing party.  BMW admits Stragent asserts that noninfringement evidence relevant to the '705 and '843 patents would also be relevant to the '477 patent, because the '477 patent contains patentably indistinct claims to the '705 and '843 patents.   BMW denies that it was obligated to produce evidence of noninfringement in the prior litigation involving the '705 and '843 patents because it was Stragent's burden to prove infringement and the patents were deemed invalid at an early stage in the litigation.   BMW specifically denies that it was unable to identify any limitation in the Plaintiff's asserted patents that is not found in Autosar or in Defendants' automotive vehicles, and

that BMW admitted "eloquently" or otherwise, that BMW's alleged implementation of Autosar infringes the claims of Plaintiff's asserted patents. Moreover, "one cannot infringe an invalid patent as a matter of law." *Finjan, Inc. v. Symantec Corp.*, 2013 U.S. Dist. LEXIS 134030, *179 (D. Del. Sept. 19, 2013); *see also Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 (Fed. Cir. 1983) ("an invalid claim cannot give rise to liability for infringement…."). BMW denies the remaining allegations in Paragraph 22.  BMW also specifically denies any alleged infringement.

23.     **Defendants' acts of infringement have caused and continue to cause damage to Plaintiff. Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful acts.**

**ANSWER:** BMW denies the allegations in Paragraph 23.  BMW also specifically denies any alleged infringement.

## COUNT II

## [ALLEGED] DIRECT INFRINGEMENT OF U.S. PATENT NO. 10,031,790

24.     **Plaintiff realleges and incorporates by reference prior paragraphs 1 through 16 of this Complaint, as if fully set forth herein.**

**ANSWER:** Although Stragent only reincorporates its prior allegations through Paragraph 16, BMW repeats each and every response contained in the preceding and following Paragraphs as though fully set forth herein.

25.     **Plaintiff is the owner by assignment of United States Patent No. 10,031,790 ("the '790 Patent") entitled "System, Method and Computer Program Product for Sharing Information in a Distributed Framework." The '790 Patent was duly and legally issued on July 24, 2018. A true and correct copy of the '790 Patent is attached as Exhibit B. Plaintiff holds the exclusive rights to bring suit with respect to any past, present, and future infringement of the Patent.**

**ANSWER:** BMW denies that the '790 patent was lawfully issued.  Nevertheless, BMW admits that the issue date on the face of the '790 patent, as indicated by a copy of the '790 patent

obtained from the USPTO's website, is July 24, 2018, and that the patent is entitled "System, Method and Computer Program Product for Sharing Information in a Distributed Framework." BMW is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 25 and therefore denies each such allegation.

26.    **The '790 Patent claims are materially different from the claims that had been considered in the Prior IPRs. Further, during the prosecution of the applications leading to the '790 Patent, applicant cited to the Patent Office all the prior art that was raised during the course of the Prior IPRs, and advised the Patent Office of the Prior IPR proceedings, including that "The above cited inter partes reviews have received final written decisions rendering all challenged claims unpatentable."**

**ANSWER:** BMW specifically denies that the '790 patent claims are materially different from the claims that the PTAB found invalid in IPR2017-00457, IPR2017-00458, IPR2017-01502, IPR2017-01503, IPR2017-01504, IPR2017-01519, IPR2017-01520, IPR2017-01521; IPR 2017-01522, IPR2017-00676, and IPR2017-00677.  BMW specifically denies that the applicant cited to the Patent Office all the material it was required to under its duty of candor.  BMW denies the remaining allegations in Paragraph 26.

27.    **Defendants have been and now are directly infringing at least claim 15 of the '790 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing BMW Autos without license or authority. Any BMW Auto containing at least one ECU that operates according to, or in compliance with, Autosar 4.x.x standards inherently and necessarily infringes the claims of this Patent. Infringement is demonstrated by the preliminary claim chart attached as Exhibit F to this Complaint which compares the limitations of exemplary claim 15 of the '790 Patent against the Accused Instrumentalities. Further, Defendants' BMW Autos may also be infringing claims 1, 2, 11, 13 and 26, which will be determined once Plaintiff has an opportunity for discovery, including receipt of Defendants' core documents.**

**ANSWER:** BMW specifically denies that is has directly or indirectly infringed any claim of the '790 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States.  BMW denies any remaining allegations in Paragraph 27.

14

28.     Defendants have been aware of the '790 Patent and its application to BMW Autos since at least June 22, 2018, when Plaintiff delivered a notice letter to Defendants' counsel, advising Defendants of the about-to-issue application for the '790 Patent, together with a claim chart demonstrating how BMW Autos fell within the scope of at least the allowed application claim 50, which is now claim 15 of the '790 Patent.

**ANSWER:** BMW specifically denies that the '790 patent has any applicability to BMW Autos, and that Stragent "demonstrate[ed] how BMW Autos fell within the scope of at least the allowed application claim 50, which is now claim 15 of the '790 Patent."  Neither the June 22, 2018 "notice letter" nor the accompanying claim charts identify any BMW Automobile by name or model.  The "notice letter" only vaguely states that "your company is employing the AUTOSAR standard in some of its products," and accompanying claim charts purportedly map the AUTOSAR standards to certain claims of Stragent's asserted patents, but the word "BMW" does not appear at all in the text of the "notice letter" or accompanying charts.  Moreover, "one cannot infringe an invalid patent as a matter of law."  *Finjan, Inc. v. Symantec Corp.*, 2013 U.S. Dist. LEXIS 134030, *179 (D. Del. Sept. 19, 2013); *see also Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 (Fed. Cir. 1983) ("an invalid claim cannot give rise to liability for infringement…."). BMW's counsel responded to Stragent's June 22, 2018 letter via a letter dated August 10, 2018, explaining that (1) the PTAB had already found patentably indistinct claims invalid; (2) Stragent failed to meet its duty of candor to the Patent Office by failing to disclose relevant information; (3) Stragent was estopped from obtaining and enforcing patents that were patentably indistinct in view of 37 C.F.R. 42.73(d)(3)(i); and (4) its infringement theories were deficient.  BMW denies any remaining allegations in Paragraph 28.  BMW also specifically denies any alleged infringement.

29.     Defendants' response to the above letter of June 22, 2018 never identified any limitation of the '790 Patent that was missing or could not be found in the Accused Instrumentalities. Further, Plaintiff and Defendants have previously litigated U.S. Patents 8,209,705 and 8,566,843, which are patents which issued from a common application and are related to the '790 Patent. In that prior litigation, Defendants never produced any evidence that the Accused

**Instrumentalities were not practicing Autosar and/or were not infringing the claims of U.S. Patents 8,209,705 and 8,566,843. If such evidence had existed, Defendants would have disclosed such evidence to Plaintiff, because such proof would have been sufficient to avoid the cost of the prior or future litigations. Thus, Defendants' inability to identify any limitation in the Plaintiff's patents that is not found in Autosar or in Defendants' automotive vehicles is an eloquent admission by Defendants that the implementation of Autosar infringes the claims of Plaintiff's asserted patents and that Defendants are knowingly infringing. Defendants' acts of infringement have been willful.**

**ANSWER:** BMW denies that BMW's response to Stragent's June 22, 2018 letter did not explain why BMW does not infringe the '790 patent.  BMW's counsel responded to Stragent's June 22, 2018 letter via a letter dated August 10, 2018, explaining that (1) the PTAB had already found patentably indistinct claims invalid; (2) Stragent failed to meet its duty of candor to the Patent Office by failing to disclose relevant information; (3) Stragent was estopped for obtaining and enforcing patents that were patentably indistinct in view of 37 C.F.R. 42.73(d)(3)(i); and (4) its infringement theories were deficient.  Further, neither the June 22, 2018 "notice letter" nor the accompanying claim charts identify any BMW Automobile by name or model.  The "notice letter" only vaguely states that "your company is employing the AUTOSAR standard in some of its products," and accompanying claim charts purportedly map the AUTOSAR standards to certain claims of Stragent's asserted patents, but the word "BMW" does not appear at all in the text of the "notice letter" or accompanying charts.  Moreover, "one cannot infringe an invalid patent as a matter of law."  *Finjan, Inc. v. Symantec Corp.*, 2013 U.S. Dist. LEXIS 134030, *179 (D. Del. Sept. 19, 2013); *see also Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 (Fed. Cir. 1983) ("an invalid claim cannot give rise to liability for infringement….").  BMW admits that BMW and Stragent fully litigated U.S. Patent Nos. 8,209,705 and 8,566,843, which are patents that issued from a common application and are related to the '790 patent, and that the Court in that litigation determined that BMW was the prevailing party.  BMW admits Stragent asserts that

16

noninfringement evidence relevant to the '705 and '843 patents would also be relevant to the '790 patent, because the '790 patent contains patentably indistinct claims to the '705 and '843 patents. BMW denies that it was obligated to produce evidence of noninfringement in the prior litigation involving the '705 and '843 patents because it is Stragent's burden to prove infringement and the patents were deemed invalid at an early stage in the litigation.   BMW denies the remaining allegations in Paragraph 29.  BMW also specifically denies any alleged infringement.

> 30.     **Defendants' acts of infringement have caused and continue to cause damage to Plaintiff. Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful acts.**

**ANSWER:** BMW denies the allegations in Paragraph 30.  BMW also specifically denies any alleged infringement.

**COUNT III**

**[ALLEGED] DIRECT INFRINGEMENT OF U.S. PATENT NO. 10,002,036**

> 31.     **Plaintiff realleges and incorporates by reference prior paragraphs 1 through 16 of this Complaint, as if fully set forth herein.**

**ANSWER:** Although Stragent only reincorporates its prior allegations through Paragraph 16, BMW repeats each and every response contained in the preceding and following Paragraphs as though fully set forth herein.

> 32.     **Plaintiff is the owner by assignment of United States Patent No. 10,002,036 ("the '036 Patent") entitled "System, Method and Computer Program Product for Sharing Information in a Distributed Framework." The '036 Patent was duly and legally issued on June 19, 2018. A true and correct copy of the '036 Patent is attached as Exhibit C. Plaintiff holds the exclusive rights to bring suit with respect to any past, present, and future infringement of the Patent.**

**ANSWER:** BMW denies that the '036 patent was lawfully issued.  Nevertheless, BMW admits that the issue date on the face of the '036 patent, as indicated by a copy of the '036 patent obtained from the USPTO's website, is June 19, 2018, and that the patent is entitled "System, Method and

Computer Program Product for Sharing Information in a Distributed Framework." BMW is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 32 and therefore denies each such allegation.

> 33. **The '036 Patent claims are materially different from the claims that had been considered in the Prior IPRs. Further, during the prosecution of the applications leading to the '036 Patent, applicant cited to the Patent Office the Prior IPRs and all the prior art that was raised during the course of the Prior IPRs.**

**ANSWER:** BMW specifically denies that the '036 patent claims are materially different from the claims that the PTAB found invalid in IPR2017-00457, IPR2017-00458, IPR2017-01502, IPR2017-01503, IPR2017-01504, IPR2017-01519, IPR2017-01520, IPR2017-01521; IPR 2017-01522, IPR2017-00676, and IPR2017-00677. BMW specifically denies that the applicant cited to the Patent Office all the material it was required to under its duty of candor. BMW denies the remaining allegations in Paragraph 33.

> 34. **Defendants have been and now is directly infringing at least claim 1 of the '036 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing the Accused Instrumentalities without license or authority. Any Accused Instrumentalities containing at least one ECU that operates according to, or in compliance with, Autosar 4.x.x standards inherently and necessarily infringes the claims of the '036 Patent. Infringement is demonstrated by the preliminary claim chart attached as Exhibit G to this Complaint which compares the limitations of exemplary claim 1 of the '036 Patent against the Accused Instrumentalities. Further, the Accused Instrumentalities may also be infringing claims 2-127, which will be determined once Plaintiff has an opportunity for discovery, including receipt of Defendants' core documents.**

**ANSWER:** BMW specifically denies that it is has directly or indirectly infringed any claim of the '036 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States. BMW denies any remaining allegations in Paragraph 34.

> 35. **Defendants have been aware of the '036 Patent and its application to the Accused Instrumentalities since at least June 22, 2018, when Plaintiff delivered a notice letter to Defendants' counsel, advising Defendants of the**

**'036 Patent, together with Exhibit G which demonstrated how the Accused Instrumentalities fell within the scope of claim 1 of the '036 Patent.**

**ANSWER:** BMW specifically denies that the '036 patent has any applicability to BMW Autos and that Stragent "demonstrate[ed] how the Accused Instrumentalities fell within the scope of claim 1 of the '036 Patent." Neither the June 22, 2018 "notice letter" nor the accompanying claim charts identify any BMW Automobile by name or model. The "notice letter" only vaguely states that "your company is employing the AUTOSAR standard in some of its products," and accompanying claim charts purportedly map the AUTOSAR standards to certain claims of Stragent's asserted patents, but the word "BMW" does not appear at all in the text of the "notice letter" or accompanying charts. BMW's counsel responded to Stragent's June 22, 2018 letter via a letter dated August 10, 2018, explaining that (1) the PTAB had already found patentably indistinct claims invalid; (2) Stragent failed to meet its duty of candor to the Patent Office by failing to disclose relevant information; (3) Stragent was estopped for obtaining and enforcing patents that were patentably indistinct in view of 37 C.F.R. 42.73(d)(3)(i); and (4) its infringement theories were deficient. Moreover, "one cannot infringe an invalid patent as a matter of law." *Finjan, Inc. v. Symantec Corp.*, 2013 U.S. Dist. LEXIS 134030, *179 (D. Del. Sept. 19, 2013); *see also Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 (Fed. Cir. 1983) ("an invalid claim cannot give rise to liability for infringement…."). BMW denies any remaining allegations in Paragraph 35. BMW also specifically denies any alleged infringement.

36. **Defendants' response to the above letter of June 22, 2018 never identified any limitation of the '036 Patent that was missing or could not be found in the Accused Instrumentalities. Further, Plaintiff and Defendants have previously litigated U.S. Patents 8,209,705 and 8,566,843, which are patents which issued from a common application and are related to the '036 Patent. In that prior litigation, Defendants never produced any evidence that the Accused Instrumentalities were not practicing Autosar and/or were not infringing the claims of U.S. Patents 8,209,705 and 8,566,843. If such evidence had existed, Defendants would have disclosed such evidence to Plaintiff, because such proof would have been sufficient to avoid the cost of the prior or future**

**litigations. Thus, Defendants' inability to identify any limitation in the Plaintiff's asserted patents that is not found in Autosar or in Defendants' automotive vehicles is an eloquent admission by Defendant that the implementation of Autosar infringes the claims of Plaintiff's asserted patents and that Defendant is knowingly infringing. Defendants' acts of infringement have been willful.**

**ANSWER:** BMW denies that BMW's response to Stragent's June 22, 2018 letter did not explain why BMW does not infringe the '036 patent.  BMW's counsel responded to Stragent's June 22, 2018 letter via a letter dated August 10, 2018, explaining that (1) the PTAB had already found patentably indistinct claims invalid; (2) Stragent failed to meet its duty of candor to the Patent Office by failing to disclose relevant information; (3) Stragent was estopped for obtaining and enforcing patents that were patentably indistinct in view of 37 C.F.R. 42.73(d)(3)(i); and (4) its infringement theories were deficient.  Further, neither the June 22, 2018 "notice letter" nor the accompanying claim charts identify any BMW Automobile by name or model.  The "notice letter" only vaguely states that "your company is employing the AUTOSAR standard in some of its products," and accompanying claim charts purportedly map the AUTOSAR standards to certain claims of Stragent's asserted patents, but the word "BMW" does not appear at all in the text of the "notice letter" or accompanying charts.  Moreover, "one cannot infringe an invalid patent as a matter of law." *Finjan, Inc. v. Symantec Corp*., 2013 U.S. Dist. LEXIS 134030, *179 (D. Del. Sept. 19, 2013); *see also Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 (Fed. Cir. 1983) ("an invalid claim cannot give rise to liability for infringement…."). BMW admits that BMW and Stragent fully litigated U.S. Patent Nos. 8,209,705 and 8,566,843, which are patents that issued from a common application and are related to the '036 patent, and that the Court in that litigation determined that BMW was the prevailing party.  BMW admits Stragent asserts that noninfringement evidence relevant to the '705 and '843 patents would also be relevant to the '036 patent, because the '036 patent contains patentably indistinct claims to the '705 and '843 patents.

BMW denies that it was obligated to produce evidence of noninfringement in the prior litigation involving the '705 and '843 patents because it was Stragent's burden to prove infringement and the patents were deemed invalid at an early stage in the litigation.  BMW denies the remaining allegations in Paragraph 36.  BMW also specifically denies any alleged infringement.

37. **Defendants' acts of infringement have caused and continue to cause damage to Plaintiff. Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful acts.**

**ANSWER:** BMW denies the allegations in Paragraph 37.  BMW also specifically denies any alleged infringement.

## COUNT IV

## [ALLEGED] DIRECT INFRINGEMENT OF U.S. PATENT NO. 9,705,765

38. **Plaintiff realleges and incorporates by reference prior paragraphs 1 through 9 of this Complaint, as if fully set forth herein.**

**ANSWER:** Although Stragent only reincorporates its prior allegations through Paragraph 9, BMW repeats each and every response contained in the preceding and following Paragraphs as though fully set forth herein.

39. **Plaintiff is the owner by assignment of United States Patent No. 9,705,765 ("the '765 Patent") entitled "System, Method and Computer Program Product for Sharing Information in a Distributed Framework." The '765 Patent was duly and legally issued on July 11, 2017. A true and correct copy of the '765 Patent is attached as Exhibit D. Plaintiff holds the exclusive rights to bring suit with respect to any past, present, and future infringement of the Patent.**

**ANSWER:** BMW denies that the '765 patent was lawfully issued.  Nevertheless, BMW admits that the issue date on the face of the '765 patent, as indicated by a copy of the '765 patent obtained from the USPTO's website, is July 11, 2017, and that the patent is entitled "System, Method and Computer Program Product for Sharing Information in a Distributed Framework."  BMW is without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in Paragraph 39 and therefore denies each such allegation.

       40.    **The '765 Patent claims are materially different from the claims that had been considered in the Prior IPRs. Further, during the prosecution of the applications leading to the '765 Patent, applicant cited to the Patent Office the Prior IPRs and all the prior art that was raised during the course of the Prior IPRs.**

**ANSWER:** BMW specifically denies that the '765 patent claims are materially different from the claims that the PTAB found invalid in IPR2017-00457, IPR2017-00458, IPR2017-01502, IPR2017-01503, IPR2017-01504, IPR2017-01519, IPR2017-01520, IPR2017-01521; IPR 2017-01522, IPR2017-00676, and IPR2017-00677.  BMW specifically denies that the applicant cited to the Patent Office all the material it was required to under its duty of candor.  BMW denies the remaining allegations in Paragraph 40.

       41.    **Defendants have been and now is directly infringing at least claim 1 of the '765 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing the Accused Instrumentalities without license or authority. Any Accused Instrumentalities containing at least one ECU that operates according to, or in compliance with, Autosar 4.x.x standards inherently and necessarily infringes the claims of this Patent. Infringement is demonstrated by the preliminary claim chart attached as Exhibit H to this Complaint which compares the limitations of exemplary claim 1 of the '765 Patent against the Accused Instrumentalities. Further, the Accused Instrumentalities may also be infringing additional claims, which will be determined once Plaintiff has an opportunity for discovery, including receipt of Defendants' core documents.**

**ANSWER:** BMW specifically denies that is has directly or indirectly infringed any claim of the '765 patent, literally or under the doctrine of equivalents, in this judicial district or elsewhere in the United States.  BMW denies any remaining allegations in Paragraph 41.

       42.    **Defendants have been aware of the '765 Patent and its application to the Accused Instrumentalities since at least June 22, 2018, when Plaintiff delivered a notice letter to counsel, advising Defendants of the '765 Patent, together with a claim chart demonstrating how the Accused Instrumentalities fell within the scope of claim 1 of the '765 Patent.**

**ANSWER:** BMW specifically denies that the '765 patent has any applicability to BMW Autos

and that Stragent "demonstrate[ed] how the Accused Instrumentalities fell within the scope of claim 1 of the '765 Patent." Neither the June 22, 2018 "notice letter" nor the accompanying claim charts identify any BMW Automobile by name or model. The "notice letter" only vaguely states that "your company is employing the AUTOSAR standard in some of its products," and accompanying claim charts purportedly map the AUTOSAR standards to certain claims of Stragent's asserted patents, but the word "BMW" does not appear at all in the text of the "notice letter" or accompanying charts. Moreover, "one cannot infringe an invalid patent as a matter of law." *Finjan, Inc. v. Symantec Corp.*, 2013 U.S. Dist. LEXIS 134030, *179 (D. Del. Sept. 19, 2013); *see also Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 (Fed. Cir. 1983) ("an invalid claim cannot give rise to liability for infringement…."). BMW's counsel responded to Stragent's June 22, 2018 letter via a letter dated August 10, 2018, explaining that (1) the PTAB had already found patentably indistinct claims invalid; (2) Stragent failed to meet its duty of candor to the Patent Office by failing to disclose relevant information; (3) Stragent was estopped for obtaining and enforcing patents that were patentably indistinct in view of 37 C.F.R. 42.73(d)(3)(i); and (4) its infringement theories were deficient. BMW denies any remaining allegations in Paragraph 42. BMW also specifically denies any alleged infringement.

43. **Defendants' response to the above letter of June 22, 2018 never identified any limitation of the '765 Patent that was missing or could not be found in the Accused Instrumentalities. Further, Plaintiff and Defendants had previously litigated U.S. Patents 8,209,705 and 8,566,843, which are patents which issued from a common application and are related to the '765 Patent. In that prior litigation, Defendants never produced any evidence that the Accused Instrumentalities were not practicing Autosar and/or were not infringing the claims of U.S. Patents 8,209,705 and 8,566,843. If such evidence had existed, Defendants would have disclosed such evidence to Plaintiff, because such proof would have been sufficient to avoid the cost of the prior or future litigations. Thus, Defendants' inability to identify any limitation in the Plaintiff's asserted patents that is not found in Autosar or in Defendants' automotive vehicles is an eloquent admission by Defendants that the implementation of Autosar infringes the claims of Plaintiff's asserted patents**

and that Defendants are knowingly infringing. Defendant's acts of infringement have been willful.

**ANSWER:** BMW denies that BMW's response to Stragent's June 22, 2018 letter did not explain why BMW does not infringe the '765 patent.  BMW's counsel responded to Stragent's June 22, 2018 letter via a letter dated August 10, 2018, explaining that (1) the PTAB had already found patentably indistinct claims invalid; (2) Stragent failed to meet its duty of candor to the Patent Office by failing to disclose relevant information; (3) Stragent was estopped for obtaining and enforcing patents that were patentably indistinct in view of 37 C.F.R. 42.73(d)(3)(i); and (4) its infringement theories were deficient.  Further, neither the June 22, 2018 "notice letter" nor the accompanying claim charts identify any BMW Automobile by name or model.  The "notice letter" only vaguely states that "your company is employing the AUTOSAR standard in some of its products," and accompanying claim charts purportedly map the AUTOSAR standards to certain claims of Stragent's asserted patents, but the word "BMW" does not appear at all in the text of the "notice letter" or accompanying charts.  Moreover, "one cannot infringe an invalid patent as a matter of law."  *Finjan, Inc. v. Symantec Corp.*, 2013 U.S. Dist. LEXIS 134030, *179 (D. Del. Sept. 19, 2013); *see also Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 (Fed. Cir. 1983) ("an invalid claim cannot give rise to liability for infringement…."). BMW admits that BMW and Stragent fully litigated U.S. Patent Nos. 8,209,705 and 8,566,843, which are patents that issued from a common application and are related to the '765 patent, and that the Court in that litigation determined that BMW was the prevailing party.  BMW admits Stragent asserts that noninfringement evidence relevant to the '705 and '843 patents would also be relevant to the '765 patent, because the '765 patent contains patentably indistinct claims to the '705 and '843 patents. BMW denies that it was obligated to produce evidence of noninfringement in the prior litigation involving the '705 and '843 patents because it is Stragent's burden to prove infringement and the

patents were deemed invalid at an early stage in the litigation.  BMW denies the remaining allegations in Paragraph 43.  BMW also specifically denies any alleged infringement.

> 44.     **Defendants' acts of infringement have caused and continue to cause damage to Plaintiff. Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful acts.**

**ANSWER:** BMW denies the allegations in Paragraph 44.  BMW also specifically denies any alleged infringement.

## AFFIRMATIVE DEFENSES

1.   Without conceding that any of the following must necessarily be plead as an affirmative defense, or that any of the following is not already at issue by virtue of the foregoing denials, and without prejudice to BMW's rights to plead additional defenses as discovery into the facts of the matter warrants, BMW asserts the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE
### (Noninfringement)

2.   Stragent is not entitled to any relief against BMW because BMW has not infringed, is not infringing directly, indirectly, by inducement of infringement or contributory infringement, or in any way (either literally or under the doctrine of equivalents), any valid and enforceable claims of the '477, '790, '036 and '765 patents.

### SECOND AFFIRMATIVE DEFENSE
### (Invalidity)

3.   The '477, '790, '036 and '765 patents are invalid for failure to satisfy one or more of the conditions of patentability set in Title 35 of the United States Code, 35 U.S.C. § 100, et seq., including, but not limited to, §§ 101, 102, 103, and 112.

### THIRD AFFIRMATIVE DEFENSE
### (Claim Preclusion)

4.   Claim preclusion bars Stragent's assertion of the '477, '790, '036 and '765 patents at least

because (1) Stragent could have attempted to assert the '477, '790, '036, and '765 patents in *Stragent, LLC v. BMW of N. Am., LLC*, No. 6:16-cv-446-RWS-KNM (E.D. Tex.) but chose not to; (2) there has already been a final judgment on the merits finding BMW the "prevailing party" on the same cause of action; (3) there have already been eleven final PTAB decisions finding patentably indistinct claims invalid as documented below;

| Case No. | Parties | Patent | Petition | Institution | FWD | Outcome |
|---|---|---|---|---|---|---|
| IPR2017-00457 | Stragent Mercedes | 8,566,843 | Dec. 9, 2016 | June 16, 2017 | June 13, 2018 (D.I. 12, Ex. A) | Claims 1 and 47–51 unpatentable |
| IPR2017-00458 | Stragent Mercedes | 8,209,705 | Dec. 9, 2016 | June 16, 2017 | June 13, 2018 (D.I. 12, Ex. B) | Claims 1–7 and 20 unpatentable |
| IPR2017-00676 | Stragent BMWNA | 8,209,705 | Jan. 18, 2017 | June 16, 2017 | June 14, 2018 (D.I. 12, Ex. C) | Claims 1–6 and 20 unpatentable |
| IPR2017-00677 | Stragent BMWNA | 8,566,843 | Jan. 18, 2017 | June 16, 2017 | June 13, 2018 (D.I. 12, Ex. D) | Claims 51–59 unpatentable |
| IPR2017-01502 | Stragent Mercedes | 8,209,705 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. E) | Claims 8–19 unpatentable |
| IPR2017-01503 | Stragent Mercedes | 8,566,843 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. F) | Claims 2–37, 39–46, and 52–59 unpatentable |
| IPR2017-01504 | Stragent Mercedes | 8,566,843 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. G) | Claims 2–37, 40–46 and 52–59 unpatentable |
| IPR2017-01519 | Stragent BMWNA | 8,566,843 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. H) | Claims 1–50 unpatentable |
| IPR2017-01520 | Stragent BMWNA | 8,566,843 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. I) | Claims 1–18 and 20–50 unpatentable |
| IPR2017-01521 | Stragent BMWNA | 8,209,705 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. J) | Claims 7–17 and 19 unpatentable |
| IPR2017-01522 | Stragent BMWNA | 8,209,705 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. K) | Claims 7–14 and 16–19 unpatentable |

and (4) the estoppel provisions of 37 C.F.R. § 42.73(d)(3) should have barred Stragent from

obtaining the '477, '790, and '036 patents, and bars Stragent from asserting the '477, '790, and '036 patents, *see Regents of the University of Minnesota v. LSI Corp.*, 926 F.3d 1327, 1345 n.5 (Fed. Cir. 2019) (additional views opinion).  BMW expressly incorporates its Motion to Dismiss and Memorandum in Support (D.I. 11; D.I. 12), and all subsequent briefing and accompanying exhibits (D.I. 19, 26, 34, 35, 37).

**FOURTH AFFIRMATIVE DEFENSE**
**(Issue Preclusion)**

5.   Issue preclusion bars Stragent's assertion of the '477, '790, '036 and '765 patents at least because (1) Stragent could have attempted to assert the '477, '790, '036, and '765 patents in *Stragent, LLC v. BMW of N. Am., LLC*, No. 6:16-cv-446-RWS-KNM (E.D. Tex.) but chose not to; (2) there has already been a final judgment on the merits finding BMW the "prevailing party" on the same cause of action; (3) there has already been eight final PTAB decisions finding patentably indistinct claims invalid as documented below;

| Case No. | Parties | Patent | Petition | Institution | FWD | Outcome |
|---|---|---|---|---|---|---|
| IPR2017-00457 | Stragent Mercedes | 8,566,843 | Dec. 9, 2016 | June 16, 2017 | June 13, 2018 (D.I. 12, Ex. A) | Claims 1 and 47–51 unpatentable |
| IPR2017-00458 | Stragent Mercedes | 8,209,705 | Dec. 9, 2016 | June 16, 2017 | June 13, 2018 (D.I. 12, Ex. B) | Claims 1–7 and 20 unpatentable |
| IPR2017-00676 | Stragent BMWNA | 8,209,705 | Jan. 18, 2017 | June 16, 2017 | June 14, 2018 (D.I. 12, Ex. C) | Claims 1–6 and 20 unpatentable |
| IPR2017-00677 | Stragent BMWNA | 8,566,843 | Jan. 18, 2017 | June 16, 2017 | June 13, 2018 (D.I. 12, Ex. D) | Claims 51–59 unpatentable |
| IPR2017-01502 | Stragent Mercedes | 8,209,705 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. E) | Claims 8–19 unpatentable |
| IPR2017-01503 | Stragent Mercedes | 8,566,843 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. F) | Claims 2–37, 39–46, and 52–59 unpatentable |

27

| IPR2017-01504 | Stragent Mercedes | 8,566,843 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. G) | Claims 2–37, 40–46 and 52–59 unpatentable |
| IPR2017-01519 | Stragent BMWNA | 8,566,843 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. H) | Claims 1–50 unpatentable |
| IPR2017-01520 | Stragent BMWNA | 8,566,843 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. I) | Claims 1–18 and 20–50 unpatentable |
| IPR2017-01521 | Stragent BMWNA | 8,209,705 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. J) | Claims 7–17 and 19 unpatentable |
| IPR2017-01522 | Stragent BMWNA | 8,209,705 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. K) | Claims 7–14 and 16–19 unpatentable |

and (4) the estoppel provisions of 37 C.F.R. § 42.73(d)(3) should have barred Stragent from obtaining the '477, '790, and '036 patents, and bars Stragent from asserting the '477, '790, and '036 patents, *see Regents of the University of Minnesota v. LSI Corp.*, 926 F.3d 1327, 1345 n.5 (Fed. Cir. 2019) (additional views opinion).  BMW expressly incorporates its Motion to Dismiss and Memorandum in Support (D.I. 11; D.I. 12), and all subsequent briefing and accompanying exhibits (D.I. 19, 26, 34, 35, 37).

### FIFTH AFFIRMATIVE DEFENSE
#### (Unenforceability of the Asserted Patents)

6.   The presently asserted patents are continuations of patents that Stragent previously asserted against one or more of the named defendants in this case.  During prosecution of the '790, '036, and '765 patents, Stragent filed terminal disclaimers over one or both of the previously asserted patents: U.S. Patent Nos. 8,209,705 (the "'705 patent") and 8,566,843 (the "'843 patent") (the "Texas Patents").  During prosecution of the fourth asserted patent, the '477 patent, Stragent filed a terminal disclaimer over the '790 and '036 patents, each of which is terminally disclaimed over the '705 and '843 patents.  Stragent filed these terminal disclaimers rather than identifying any elements of the asserted patents that render their claims patentably distinct from the Texas Patents,

whose claims have all been found to be unpatentable by the Patent Office in *inter partes* review (IPR) proceedings, and intentionally withheld material information related to their alleged patentability from the Patent Office

### A.   Stragent's Earlier Unsuccessful Assertions of Patents in the Same Family

7.   In 2011, Stragent asserted the ultimate parent of the asserted patents, U.S. Patent No. 7,802,263 ("the '263 patent") against a host of companies, including Robert Bosch LLC ("Bosch"). Over a year later, Stragent dismissed its claims with prejudice.   *See Stragent, LLC v. STMicroelectronics, Inc.,* No. 6:11-cv-111-LED, D.I. 1 & 406 (E.D. Tex.) ("*Stragent I*").

8.   In 2016, Stragent filed a complaint asserting later patents in the same family against a number of BMW, Mercedes, and Volvo corporate entities. *Stragent, LLC v. BMW of N. Am., LLC,* No. 6:16-cv-446-RWS-KNM (E.D. Tex.) ("*Stragent II*"), D.I. 1 & 60 (consolidating BMW case with cases filed against Mercedes and Volvo).  The '705 and '843 patents asserted in *Stragent II* were continuations of the '263 patent asserted in *Stragent I*, and the *Stragent II* complaint asserted infringement against automotive products allegedly compliant with AUTOSAR specifications.  Stragent's initial complaint in *Stragent II* was dismissed (without prejudice) for failing to properly plead infringement and identifying "no common element between the AUTOSAR Standard and the asserted claims, nor . . . explain[ing] how the accused products, by complying with the AUTOSAR Standard, . . . infringe the asserted claims."  *Id.*, D.I. 29 at 9–10 (Report and Recommendation to dismiss Stragent's improperly pleaded complaint).  Stragent later filed an amended complaint.   *Id.*, D.I. 34.  Stragent then served infringement contentions improperly attempting to assert a third patent in the same family (U.S. Patent No. 9,575,817 ("the '817 patent")), which is a continuation of the '843 patent asserted in the *Stragent II* complaints. When Defendants objected to the addition, Stragent argued there would be no prejudice because the '817 patent and the Texas Patents "share the same specification, cover the same subject matter,

and have closely related claims." *Id.*, D.I. 80 at 2, 3. *See also infra,* at "Patent Family Tree."

9.    While *Stragent II* was pending, BMW and Mercedes[2] filed multiple petitions for IPR

of the Texas Patents, resulting in eleven final written decisions in which the PTAB found all claims

of the Texas Patents unpatentable:

| Case No. | Parties | Patent | Petition | Institution | FWD | Outcome |
|---|---|---|---|---|---|---|
| IPR2017-00457 | Stragent Mercedes | 8,566,843 | Dec. 9, 2016 | June 16, 2017 | June 13, 2018 (D.I. 12, Ex. A) | Claims 1 and 47–51 unpatentable |
| IPR2017-00458 | Stragent Mercedes | 8,209,705 | Dec. 9, 2016 | June 16, 2017 | June 13, 2018 (D.I. 12, Ex. B) | Claims 1–7 and 20 unpatentable |
| IPR2017-00676 | Stragent BMWNA | 8,209,705 | Jan. 18, 2017 | June 16, 2017 | June 14, 2018 (D.I. 12, Ex. C) | Claims 1–6 and 20 unpatentable |
| IPR2017-00677 | Stragent BMWNA | 8,566,843 | Jan. 18, 2017 | June 16, 2017 | June 13, 2018 (D.I. 12, Ex. D) | Claims 51–59 unpatentable |
| IPR2017-01502 | Stragent Mercedes | 8,209,705 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. E) | Claims 8–19 unpatentable |
| IPR2017-01503 | Stragent Mercedes | 8,566,843 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. F) | Claims 2–37, 39–46, and 52–59 unpatentable |
| IPR2017-01504 | Stragent Mercedes | 8,566,843 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. G) | Claims 2–37, 40–46 and 52–59 unpatentable |
| IPR2017-01519 | Stragent BMWNA | 8,566,843 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. H) | Claims 1–50 unpatentable |
| IPR2017-01520 | Stragent BMWNA | 8,566,843 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. I) | Claims 1–18 and 20–50 unpatentable |
| IPR2017-01521 | Stragent BMWNA | 8,209,705 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. J) | Claims 7–17 and 19 unpatentable |
| IPR2017-01522 | Stragent BMWNA | 8,209,705 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. K) | Claims 7–14 and 16–19 unpatentable |

[2] The petitioning Mercedes parties were Daimler AG, Daimler North America Corporation, Mercedes-Benz USA, LLC, and Mercedes-Benz U.S. International, Inc.

10. Stragent appealed the first round of IPR decisions to the Court of Appeals for the Federal Circuit, but these appeals were dismissed for failure to prosecute after Stragent stated that it "would be a waste of the Court's time and the parties' resources to continue [Stragent's already noticed appeals] and/or file new appeals." *Stragent II*, D.I. 109, Ex. O at 5 (Jan. 24, 2019, email from Stragent counsel to BMW counsel); *Stragent, LLC v. BMW of N. Am., LLC*, No. 18-2294, D.I. 20 & No. 18-2295, D.I. 10 (Fed. Cir. Feb. 11, 2019) (dismissing appeals).  Stragent did not appeal any other IPR decisions.

11. Based on these final written decisions, BMW moved for summary judgment of invalidity. *Stragent II*, D.I. 109.  In response, Stragent disclaimed all claims of the Texas Patents and moved to dismiss its infringement allegations against BMW, Daimler-Mercedes and Volvo with prejudice.  *Id.*, D.I. 111, Exs. A & B (attaching disclaimers of the Texas Patents).  The Texas Court dismissed all the *Stragent II* cases **with prejudice** on July 23, 2019, finding Defendants to be the prevailing parties.  *Id.*, D.I. 121 at 2.  The Court issued the Final Judgment on June 16, 2020.  *Id.*, D.I. 141.

12. On June 22, 2018, while IPR proceedings for the Texas Patents and the *Stragent II* case were pending, Stragent sent Defendants' counsel letters threatening four patents, three of which it now asserts in this case: (1) the '765 patent; (2) the '036 patent; (3) the application that would become the '790 patent; and (4) the '817 patent (which is not asserted in this case).  *See, e.g.,* D.I. 12, Ex. L (June 8, 2020 BMW Rule 11 Letter Enclosure 1 (Stragent June 22, 2018 Threat Letter to BMW)).  In response, Defendants' respectively explained why the asserted patents were invalid and not infringed, at least because (1) the Patent Trial and Appeal Board ("PTAB") had already found patentably indistinct claims to be invalid; (2) Stragent failed to meet its duty of candor to the Patent Office by failing to disclose relevant information; (3) Stragent was estopped from

obtaining and enforcing patents that were patentably indistinct in view of 37 C.F.R. § 42.73(d)(3); and (4) Stragent's infringement theories were deficient.  D.I. 12, Ex. L (June 8, 2020 BMW Rule 11 Letter Enclosure 2 (BMW Aug. 10, 2018 letter to Stragent)); D.I. 12, Ex. M (Aug. 13, 2018 Volvo letter); D.I. 12, Ex. N (Aug. 14, 2018 Mercedes letter).

## B.    The Accused Technology Is Identical and the Asserted Claims Substantially, If Not Completely, Overlap Those in *Stragent II*

13. That the Accused Technology is identical to that accused in *Stragent II*, and the asserted claims substantially, if not completely, overlap the Texas Patents previously invalidated by the PTAB illustrates the materiality of those prior decisions to the patentability of the asserted patents.

### 1. The Patent Family Tree

14. The asserted patents are all continuations of, and terminally disclaimed over, the '263 patent, the Texas Patents (found invalid in IPRs and expressly disclaimed by Stragent), and the '817 patent (or to other patents in the chain that are terminally disclaimed to these patents):

| U.S. Provisional App. No. 60/434,018 Filed Dec. 17, 2002 | | Provisional Application | |
|---|---|---|---|
| U.S. Patent No. 7,802,263 (App. No. 10/737,690) Filed Dec. 15, 2003 | | '263 patent: Asserted unsuccessfully against Bosch in *Stragent I*; case dismissed with prejudice. | |
| U.S. Patent No. 8,209,705 (App. No. 12/182,570) Filed July 30, 2008 | | '705 patent (D.I. 12, Ex. O): PTAB final decisions finding all claims invalid; not appealed. | |
| U.S. Patent No. 8,566,843 (App. No. 13/531,319) Filed June 22, 2012 | | '843 patent (D.I. 12, Ex. P): PTAB final decisions finding all claims invalid;  not appealed. | |
| U.S. Patent No. 9,575,817 (App. No. 14/011,705) Filed Aug. 27, 2013 | | '817 patent: Stragent states that it "**share[s] the same specification, cover the same subject matter, and ha[s] closely related claims**" to those of the invalidated Texas Patents. | |
| U.S. Patent No. 9,705,765 (App. No. 15/405,088) | U.S. Patent No. 10,002,036 (App. No. 15/405,110) | '765 patent: Asserted here; terminally disclaimed over now-invalid '705 and '843 patents, as well as the | '036 patent: Asserted here; terminally disclaimed over now-invalid '705 and '843 patents, as well as the parent |

| Filed Jan. 12, 2017 | Filed Jan. 12, 2017 | parent '263 and '817 patents. | '263 and '817 patents and sister co-asserted '765 patent. |
|---|---|---|---|
| **U.S. Patent No. 10,031,790** (App. No. 15/919,201) Filed Mar. 12, 2018 | | '790 patent: Asserted here; terminally disclaimed over now-invalid '705 and '843 patents, as well as the parent '263, '817, and '036 patents. | |
| **U.S. Patent Pub. 2019/0004880** (App. No. 16/042,159) Filed July 23, 2018 | | Pending application; terminally disclaimed over '843, '036, '477, '790, and '817 patents. | |
| **U.S. Patent No. 10,248,477** (App. No. 16/148,949) Filed Oct. 1, 2018 | | '477 patent: Asserted here; terminally disclaimed over '790 and '036 patents, which themselves are terminally disclaimed over invalid patents as noted above. | |

### 2. The Texas Patents

15. The Texas Patents are both entitled "System, Method and Computer Program Product for Sharing Information in a Distributed Framework," and share a specification.  They are directed to using automotive electronic control unit ("ECU") gateway middleware having associated "bulletin board" memory that allows for "real-time" sharing of information across different in-vehicle networks—e.g., sharing information between two or more of a Controller Area Network ("CAN"), Local Interconnect Network ("LIN"), and FlexRay Network in "vehicle communication and control systems, real-time monitoring systems, industrial automation and control systems, as well as any other desired system."  D.I. 12, Ex. O ('705 patent at 1:22–25, 3:24–33).  The Texas Patents state that multiple automotive ECUs "control complex applications such as engine control, brake control, or diagnostics" while connected by multiplexing bus-systems corresponding to different networks.  *Id.* at 3:13–16, 3:26–33.  Such ECUs have software for interfacing with the ECU's input/output mechanisms and storing information within the ECU.  *Id.* at 4:45–5:9.  These ECUs share arbitrated access to a "common, or shared storage system that is connected to all of the system networks through network interfaces."  *Id.* at 7:30-32, 8:13–31.

16. This functionality was well known in the art before the respective priority dates.  *See, e.g.*, D.I. 12, Ex. K (IPR2017-1522, Paper No. 32 at 38–44); *see also* D.I. 12, Exs. A–K.  Thus, every

claim of these patents (79 total—20 for '705 patent and 59 for '843 patent) was found invalid by the Patent Office, as discussed above.

### 3. The Patents-in-Suit

17. The '765, '036, '790, and '477 patents-in-suit are each continuations of the '817 patent, which is a continuation of the Texas Patents, and a further continuation of the '263 patent.  Each of the patents-in-suit shares the same title and specification with these other patents in the priority chain.  All of these patents thus provide the same disclosure of an ECU gateway middleware having shared memory that operates to allow for the transmission of information between different in-vehicle environments.

### a. U.S. Patent No. 9,705,765

18. Stragent filed the continuation application that ultimately issued as the '765 patent on January 12, 2017, days before BMW and Mercedes filed the first round of IPRs on the Texas Patents.  D.I. 12, Ex. Q ('765 patent file history).  Though no office action was issued, Stragent and the Examiner communicated via email regarding Stragent's amended claims, which the Examiner said he would allow if Stragent filed terminal disclaimers over the invalid Texas Patents.[3]  *Id.* at 202-203.  Stragent did not dispute the need for these terminal disclaimers, nor did Stragent argue that the claims of the '765 patent were patentably distinct from its parent patents. *Id.* at 112 (Mar. 3, 2017, Terminal Disclaimers). Thus, Stragent tacitly admitted that the '765 patent contained the same or substantially the same subject matter as the invalid '705 and '843 patents.

19. Asserted claim 1 of the '765 patent is consistent in scope with the invalidated claims of the

---

[3] Terminal disclaimers may be "filed to obviate judicially created double patenting in a patent application."  37 C.F.R. § 1.321(c).  A "nonstatutory" double-patenting rejection, which is at issue here, is based on a judicially created doctrine grounded in public policy and which is primarily intended to prevent prolongation of the patent term by prohibiting claims in a second patent not patentably distinct from claims in a first patent.  M.P.E.P. § 1504.06.

Texas Patents.  For example, the core elements of each independent claim of the '765 patent, including claim 1, include: (a) an electronic control unit and nonvolatile memory; (b) software configured to receive information from a first physical network; (c) issuing a storage request in response to receipt of this information and determining whether a storage resource is available and whether a threshold has been reached; (d) in the event that a storage resource is not available and the threshold has not been reached, issuing another storage request in connection with the storage resource; (e) in the event the storage resource is not available and the threshold has been reached, sending a notification; (f) in the event the storage resource is available, storing the information in the storage resource; (g) sharing the stored information with at least a process associated with a second physical network in less than one second; and (h) interfaces, including a first communications interface having a first interface-related data link layer component for interfacing with a CAN and a second communication interface having a second interface-related data link layer component for interfacing with a Flexray network.  *See, e.g.*, D.I. 1, Ex. D at 26–29 ('765 patent at claims 1, 12, 13, 24).  Each of these elements (or a patentably indistinct variant) is found, for example, in invalidated claim 20 of the '705 patent and invalidated claim 51 of the '843 patent.[4]

### i. Stragent's Inequitable Conduct Regarding the '765 Patent

20. The '765 patent was prosecuted by Stragent's prosecution counsel, Thomas D. Fortenberry. *See, e.g.,* D.I. 12, Ex. Q at 29-30 (Dec. 27, 2016 Transmittal Letter), 111-112 (Feb. 27, 2017 Transmittal Letter).  Mr. Fortenberry intentionally and knowingly failed to disclose material information during the prosecution of the '765 patent in violation of his duty of candor to the Patent Office.  Had Mr. Fortenberry or Stragent disclosed this information, the '765 patent would

---

[4] *See* D.I. 11, 12, 19, 26, 34, 35, 37 (Motion to Dismiss and Memorandum in Support, and accompanying exhibits and briefing); *see also, e.g.,* D.I. 35-1 at 64-65, incorporated herein by reference.

not have issued.

21. For example, during prosecution of the '765 patent, Mr. Fortenberry admitted that "related patents" (*i.e.*, the '705 and '843 patents) were the subject of litigation in *Stragent II*, but Mr. Fortenberry expressly stated twice that "[n]o invalidity contentions" were provided in such litigation.  D.I. 12, Ex. Q at 29-30 (Dec. 27, 2016 Transmittal Letter) & 111-112 (Feb. 27, 2017 Transmittal Letter).  Yet, invalidity contentions were served on Stragent on June 22, 2017 (*see Stragent II,* D.I. 96), weeks before the '765 patent issued on July 11, 2017.  Notwithstanding, neither Stragent nor Mr. Fortenberry provided these contentions to the Examiner.  These invalidity contentions included claim charts detailing the invalidity of the '705 and '843 patents, which the Examiner would have found material to the patentability of the '765 patent.  Indeed, these contentions show that elements of the claims of the '705 and '843 patents are invalid, and as shown by Mr. Fortenberry's filing a terminal disclaimer to the '705 and '843 patents, Mr. Fortenberry knew and conceded that the '765 patent contained substantially the same subject matter as the invalid '705 and '843 patents.  Moreover, Mr. Fortenberry specifically mentioned to the Examiner that "no invalidity contentions [had] been provided in such litigation."  D.I. 12, Ex. Q at 30, 112.  These facts show that, at a minimum, Mr. Fortenberry and Stragent knew invalidity contentions to be material, and knew that he had an obligation to disclose such contentions if/when they were provided.  Stragent and Mr. Fortenberry knew that the invalidity contentions were material and knew that they had an obligation to disclose them to the Examiner.  *See, e.g.*, M.P.E.P. § 2001.06.(c) (providing that "the existence of such litigation and any other material information arising therefrom must be brought to the attention of the examiner" and noting that an example of "such material information is any assertion that is made during litigation and/or trial proceeding which is contradictory to assertions made to the examiner" and information that may arise in

36

"pleadings, admissions, discovery including interrogatories, depositions, and other documents and testimony.").

22. Additionally, although Mr. Fortenberry mentioned in transmittal letters that the '843 and '705 patents were subject to certain IPRs (Nos. 2017-00457, 2017-00458, 2017-00676, and 2017-00677) and stated that Stragent was submitting the references from those IPRs (D.I. 12, Ex. Q at 30, 112), Mr. Fortenberry failed to disclose these IPRs in a list as required by PTO rules.  As such, the file history of the '765 patent contains no indication that the Examiner focused on the IPRs, which is confirmed by the fact that the IPR decisions are not listed on the face of the '765 patent. *See* 37 C.F.R. § 1.98(a)(1); M.P.E.P. § 609.04(a)(I) (9th ed. Rev. 10.2019, June 2020) (explaining the requirement for a separate list of references); 37 C.F.R. § 1.97(i) (non-compliant disclosures are not considered); *Leviton Mfg. Co. v. Shanghai Meihao Elec., Inc.*, 613 F. Supp. 2d 670, 702 (D. Md. 2009) (recognizing that examiners rely on Information Disclosure Statement lists, not accompanying memoranda, when determining what to review), *vacated on other grounds by sub nom. Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1357, 1362 (Fed. Cir. 2010).  In other words, Mr. Fortenberry knowingly failed to disclose the actual IPRs directed at the '843 patent and '705 patent to the Examiner during prosecution of the '765 patent.  And, again, as shown by Mr. Fortenberry's filing a terminal disclaimer to the '705 and '843 patents, Mr. Fortenberry knew and conceded that the '765 patent contained substantially the same subject matter as the invalid '705 and '843 patents.

23. Moreover, Mr. Fortenberry never submitted the institution decisions from the IPRs he did identify, despite the fact that those institution decisions issued on June 16, 2017, almost a month before the '765 patent issued on July 11, 2017.  And Mr. Fortenberry failed entirely to disclose the additional seven IPRs that were filed on June 6, 2017 (IPR2017-01502, IPR2017-01503, IPR2017-

01504, IPR2017-01519, IPR2017-01520, IPR2017-01521, IPR2017-01522), despite having over a month to do so before the '765 patent issued on July 11, 2017.

24. These failures are clear and convincing evidence that Mr. Fortenberry (1) misrepresented or omitted information material to patentability; and (2) did so with specific intent to mislead or deceive the PTO, rendering the '765 patent unenforceable.  This not only renders the '765 patent unenforceable, it impacts Stragent's patent portfolio as a whole.  *See Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1288-89 (Fed. Cir. 2011).

### b. U.S. Patent No. 10,002,036

25. Stragent filed the continuation application that ultimately issued as the '036 patent on January 12, 2017, the same day as the application for the '765 patent.  D.I. 12, Ex. S ('036 patent file history).  Like the '765 patent, no office action issued, but Stragent and the Examiner communicated via email and phone regarding claim amendments and filing terminal disclaimers (eTDs).  *Id.* at 247-48 (Apr. 25, 2018, emails).  Without attempting to traverse any double-patenting rejections, Stragent filed terminal disclaimers to the Texas Patents, the parent '263 and '817 patents, and also the sister co-asserted '765 patent on April 25 and 27, 2018.  *Id.* at 108-110, 116-18.  Thus, Stragent tacitly admitted that the '036 patent contained the same or substantially the same subject matter as the invalid '705 and '843 patents.

26. Asserted claim 1 of the '036 patent is consistent in scope with the invalidated claims of the Texas Patents.  For example, the core elements of each of the independent claims of the '036 patent, including claim 1, include: (a) an electronic control unit and nonvolatile memory; (b) software configured to receive information from a first physical network; (c) issuing a storage request in response to receipt of this information and determining whether a storage resource is available and whether a threshold has been reached; (d) in the event that a storage resource is not

available and the threshold has not been reached, issuing another storage request in connection with the storage resource; (e) in the event the storage resource is not available and the threshold has been reached, sending a notification; (f) in the event the storage resource is available, storing the information in the storage resource; (g) sharing the stored information with at least a process associated with a second physical network in less than one millisecond; and (h) interfaces, including a first communications interface having a first interface-related data link layer component for interfacing with a Flexray network (or CAN) and a second communication interface having a second interface-related data link layer component for interfacing with a CAN (or Flexray network). *See, e.g.*, D.I. 1, Ex. C at 26–27, 29–30 ('036 patent, claims 1, 102). Each of these elements is found, for example, in previously invalidated claim 20 of the '705 patent and claim 51 of the '843 patent.[5]

### i. Stragent's Inequitable Conduct Regarding the '036 Patent

27. The '036 patent was prosecuted by Stragent's prosecution counsel, Thomas D. Fortenberry and Patrick Caldwell. *See, e.g.,* D.I. 12, Ex. S at 78-79 (Jan. 12, 2017 Transmittal Letter); 106-07 (Feb. 27, 2017 Transmittal Letter); 131-33 (May 2, 2018 Transmittal Letter). Messrs. Fortenberry and Caldwell intentionally and knowingly failed to disclose material information during the prosecution of the '036 patent in violation of their duty of candor to the Patent Office. Had Messrs. Fortenberry and Caldwell or Stragent disclosed this information, the '036 patent would not have issued. Messrs. Fortenberry and Caldwell also continued to prosecute the '036 patent even though they knew related patents were held invalid.[6]

---

[5] *See* D.I. 11, 12, 19, 26, 34, 35, 37 (Motion to Dismiss and Memorandum in Support, and accompanying exhibits and briefing); *see also, e.g.,* D.I. 35-1 at 62-63, incorporated herein by reference.

[6] This is not the first time Mr. Caldwell, working as Stragent's prosecution counsel, has withheld material information from the Patent Office in pursuit of claims to asserted against BMW.  In a

28. For example, during prosecution of the '036 patent, Mr. Fortenberry admitted that "related patents" (i.e., the '705 and '843 patents) were the subject of litigation in *Stragent II*. However, again, Mr. Fortenberry expressly stated twice that "[n]o invalidity contentions [had] been provided in such litigation." D.I. 12, Ex. S at 78-79 (Jan. 12, 2017 Transmittal Letter) & 106-07 (Feb. 27, 2017 Transmittal Letter). And while Mr. Caldwell later retracted that statement, he did not submit the invalidity contentions themselves, claiming only that the art cited within the invalidity contentions had been previously disclosed (without identifying what the disclosed art was or when it was disclosed by Stragent). *Id.* at 132 (May 2, 2018 Transmittal Letter). As discussed above, the invalidity contentions themselves included detailed claim charts and explanations of the invalidity of the '705 and '843 patents, which the Examiner would have found material to the patentability of the substantially similar claims of the '036 patent. Indeed, these contentions show that elements of the claims of the '705 and '843 patents are invalid, and as shown by Mr. Fortenberry's filing a terminal disclaimer to the '705 and '843 patents, Mr. Fortenberry knew and conceded that the '036 patent contained substantially the same subject matter as the invalid '705 and '843 patents. Moreover, Mr. Fortenberry indicated that "no invalidity contentions [had] been provided in such litigation," D.I. 12, Ex. S at 79, 107, and Mr. Caldwell felt the need to correct this assertion, *id.* at 132. These facts shows that Messrs. Fortenberry and Caldwell knew the invalidity contentions themselves were material. Indeed, at a minimum, Stragent and Messrs. Fortenberry and Caldwell had a duty to disclose the invalidity contentions themselves, as the invalidity arguments and detailed claim charts set forth therein were clearly material to

---

2011 case Stragent filed against BMW and Mercedes (E.D. Tex. Case No. 6:11-cv-278), Mr. Caldwell withheld material litigation information during a reexamination of its asserted patent and prosecution of related applications. *See* Case No. 6:11-cv-278, D.I. 380 (BMW's Motion for Leave to Amend), D.I. 380-13 (April 16, 2013 Letter from L. Lavenue to P. Caldwell). Mr. Caldwell's pattern of behavior further evidences bad faith and an intent to deceive.

patentability.  Stragent and Messrs. Fortenberry and Caldwell knew that the invalidity contentions were material and knew that they had an obligation to disclose them to the Examiner.  *See, e.g.*, M.P.E.P. § 2001.06.(c).  And, again, as shown by Mr. Fortenberry's filing a terminal disclaimer to the '705 and '843 patents, Mr. Fortenberry knew and conceded that the '036 patent contained substantially the same subject matter as the invalid '705 and '843 patents.

29. Additionally, although Messrs. Fortenberry and Caldwell mentioned in transmittal letters that the '843 and '705 patents were subject to certain IPRs (Nos. 2017-00457, 2017-00458, 2017-00676, 2017-00677, 2017-01502, 2017-01503, 2017-01504, 2017-01519, 2017-01520, 2017-01521, and 2017-01522) and stated that Stragent was submitting the references from those IPRs (D.I. 12, Ex. S at 79, 107, 132), Messrs. Fortenberry and Caldwell failed to properly disclose the IPRs in a list as required by PTO rules.  This omission is clear from the face of the '036 patent, which does not list any of these IPRs.  This approach to identifying the IPRs was taken with the intent to deceive the Patent Office.  *See* 37 C.F.R. § 1.98(a)(1); M.P.E.P. § 609.04(a)(I) (9th ed. Rev. 10.2019, June 2020); 37 C.F.R. § 1.97(i) (non-compliant disclosures are not considered); *Leviton Mfg. Co. v. Shanghai Meihao Elec., Inc.*, 613 F. Supp. 2d 670, 702 (D. Md. 2009), *vacated on other grounds by sub nom. Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1357, 1362 (Fed. Cir. 2010).

30. Moreover, Messrs. Fortenberry and Caldwell never submitted the institution decisions from the IPRs they did identify, despite the fact that those institution decisions all issued in 2017, prior to the '036 patent's issuance on June 19, 2018.  Indeed, Messrs. Fortenberry and Caldwell even failed to notify the Examiner that on June 13 and 14, 2018, prior to the '036 patent's issuance on June 19, 2018, the PTAB issued final written decisions finding claims of the '705 and '843 patents invalid.  And though they knew that the PTAB held the closely related claims invalid,

Messrs. Fortenberry and Caldwell allowed the patent to issue, in violation of 37 C.F.R. § 42.73(d)(3).

31. These failures are clear and convincing evidence that Messrs. Fortenberry and Caldwell (1) misrepresented or omitted information material to patentability and (2) did so with specific intent to mislead or deceive the PTO, rendering the '036 patent unenforceable. This conduct not only renders the '036 patent unenforceable, it impacts Stragent's patent portfolio as a whole. *See Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1288-89 (Fed. Cir. 2011).

### c. U.S. Patent No. 10,031,790

32. Stragent filed the continuation application that ultimately issued as the '790 patent on March 12, 2018, after IPRs on the related Texas Patents had already been instituted.  D.I. 12, Ex. T ('790 patent file history).  Again, like the '765 and '036 patents, no office action issued, but Stragent and the Examiner communicated by phone on May 31, 2018 regarding the amended claims.  *Id.* at 143 (May 31, 2018, Examiner Interview Summary).  In those communications, Stragent agreed to file terminal disclaimers over the Texas Patents, as well as the '263, '817, and '036 patents.  *Id.* at 143, 121-22 (May 31, 2018, Terminal Disclaimers). Thus, Stragent tacitly admitted that the '790 patent contained the same or substantially the same subject matter as the invalid '705 and '843 patents.

33. Asserted claim 15 of the '790 patent is consistent in scope with the invalidated claims of the Texas Patents.  Each limitation of claim 15, or a patentably indistinct variant, is included in one of more claims of the Texas Patents.  For example, the core elements of each independent claim of the '790 patent, including claim 15, include: (a) an electronic control unit and nonvolatile memory; (b) software configured to receive information from a first physical network; (c) issuing a storage request in response to receipt of this information and determining whether a storage

resource is available and whether a threshold has been reached; (d) in the event that a storage resource is not available and the threshold has not been reached, issuing another storage request in connection with the storage resource; (e) in the event the storage resource is not available and the threshold has been reached, sending a notification; (f) in the event the storage resource is available, storing the information in the storage resource; (g) sharing the stored information with at least a process associated with a second physical network; and (h) interfaces, including a first communications interface having a first interface-related data link layer component for interfacing with a CAN and a second communication interface having a second interface-related data link layer component for interfacing with a Flexray network. *See, e.g.*, D.I. 1, Ex. B at 24–28 ('790 patent, claims 1, 15, 26, 29). Each of these elements is found, for example, in previously invalidated claim 20 of the '705 patent and claim 51 of the '843 patent.[7]

### i. Stragent's Inequitable Conduct Regarding the '790 Patent

34. The '790 patent was prosecuted by Stragent's prosecution counsel, Thomas D. Fortenberry. *See, e.g.,* D.I. 12, Ex. T at 161-162 (June 16, 2018 Transmittal Letter). Mr. Fortenberry intentionally and knowingly failed to disclose material information during the prosecution of the '790 patent in violation of his duty of candor to the Patent Office. Had Mr. Fortenberry or Stragent disclosed this information, the '790 patent would not have issued. Mr. Fortenberry also continued to prosecute the '790 patent even though it knew related patents were held invalid.

35. For example, during prosecution of the '790 patent, Mr. Fortenberry never disclosed that the related '705 and '843 patents were the subject of litigation in *Stragent II*, and thus never submitted the invalidity contentions or informed the Examiner whether the art in the contentions

---

[7] *See* D.I. 11, 12, 19, 26, 34, 35, 37 (Motion to Dismiss and Memorandum in Support, and accompanying exhibits and briefing); *see also, e.g.,* D.I. 35-1 at 66, incorporated herein by reference.

had been previously disclosed (without identifying what the disclosed art was or when it was allegedly disclosed by Stragent).   As discussed above, the invalidity contentions themselves included detailed claim charts and explanations of the invalidity of the '705 and '843 patents, which the Examiner would have found material to the patentability of the substantially similar claims of the '790 patent.  Indeed, these contentions show that elements of the claims of the '705 and '843 patents are invalid, and as shown by Mr. Fortenberry's filing a terminal disclaimer to the '705 and '843 patents, Mr. Fortenberry knew and conceded that the '790 patent contained substantially the same subject matter as the invalid '705 and '843 patents.   Moreover, Mr. Fortenberry indicated to the Examiner that "no invalidity contentions [had] been provided in such litigation" during prosecution of Stragent's other patents, *see, e.g.,* D.I. 12, Ex. S at 79, 107. These facts show that Mr. Fortenberry knew the invalidity contentions themselves were material.  Indeed, at a minimum, Mr. Fortenberry had a duty to also disclose the invalidity contentions themselves, as the invalidity arguments and detailed claim charts set forth therein were clearly material to patentability.  Stragent and Mr. Fortenberry knew that the invalidity contentions were material and knew that they had an obligation to disclose them to the Examiner.  *See, e.g.*, M.P.E.P. § 2001.06.(c).  And, again, as shown by Mr. Fortenberry's filing a terminal disclaimer to the '705 and '843 patents, Mr. Fortenberry knew and conceded that the '790 patent contained substantially the same subject matter as the invalid '705 and '843 patents.

36. Additionally, although Mr. Fortenberry mentioned in a transmittal letter that the '843 and '705 patents were subject to certain IPRs (Nos. 2017-00457, 2017-00458, 2017-00676, and 2017-00677), stated that Stragent was submitting the references from those IPRs, and said that the IPRs Mr. Fortenberry identified had "received final written decisions rendering all challenged claims unpatentable," (D.I. 12, Ex. T at 161-162), Mr. Fortenberry disclosed this information after the

Examiner issued a Notice of Allowance on June 15, 2018 (D.I. 12, Ex. T at 135-136).  Mr. Fortenberry failed to disclose the IPRs in a list as required by PTO rules.  This omission is clear from the face of the '790 patent, which does not list any of these IPRs.  This approach to identifying the IPRs was taken with the intent to deceive the Patent Office.  *See* 37 C.F.R. § 1.98(a)(1); M.P.E.P. § 609.04(a)(I) (9th ed. Rev. 10.2019, June 2020); 37 C.F.R. § 1.97(i) (non-compliant disclosures are not considered); *Leviton Mfg. Co. v. Shanghai Meihao Elec., Inc.*, 613 F. Supp. 2d 670, 702 (D. Md. 2009), *vacated on other grounds by sub nom. Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1357, 1362 (Fed. Cir. 2010).

37. Moreover, Mr. Fortenberry never identified during prosecution of the '790 patent that the '843 and '705 patents were subject to IPR Nos. 2017-01502, 2017-01503, 2017-01504, 2017-01519, 2017-01520, 2017-01521, and 2017-01522; and Mr. Fortenberry never submitted the institution decisions from these IPRs or any other IPRs involving the '843 and '705 patents, which all issued in 2017, prior to the '790 patent's issuance on July 24, 2018.  And though Mr. Fortenberry knew that the PTAB held the closely related claims invalid, Mr. Fortenberry allowed the '790 patent to issue, in violation of 37 C.F.R. § 42.73(d)(3).

38. These failures are clear and convincing evidence that Mr. Fortenberry (1) misrepresented or omitted information material to patentability and (2) did so with specific intent to mislead or deceive the PTO, rendering the '790 patent unenforceable. This conduct not only renders the '790 patent unenforceable, it impacts Stragent's patent portfolio as a whole.  *See Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1288-89 (Fed. Cir. 2011).

### d. U.S. Patent No. 10,248,477

39. Stragent filed the continuation application that ultimately issued as the '477 patent on October 1, 2018, nearly four months *after* the first PTAB decisions finding many claims of the

Texas Patents unpatentable.  D.I. 12, Ex. U ('477 patent file history).  Stragent received an office action on November 29, 2018, rejecting all '477 patent claims for obviousness-type double patenting in view of the '790 and '036 patents: "Although the claims at issue are not identical, they are not patentably distinct from each other because the claim limitations of the instant application is [sic] present in the ['790 patent]." *Id.* at 93; *see also id.* at 120 (noting claims were not ***patentably distinct*** from claims in the '036 patent). Stragent did not contest this assertion.  Instead, Stragent executed a terminal disclaimer to the '790 and '036 patents, which themselves had been terminally disclaimed to the Texas Patents, the '263 patent, and the '817 patent. *Id.* at 155-56.  Thus, Stragent tacitly admitted that the '477 patent contained the same or substantially the same subject matter as the invalid '705 and '843 patents.

40. Asserted claim 1 of the '477 patent is consistent in scope with the invalid claims of the Texas Patents.  Each limitation, or a patentably indistinct variant, of the '477 patent is found in the invalidated claims of the Texas Patents.  For example, the core elements of each independent claim of the '477 patent, including claim 1, include: (a) an electronic control unit and nonvolatile memory; (b) software configured to receive information from a first physical network; (c) issuing a storage request in response to receipt of this information and determining whether a storage resource is available and whether a threshold has been reached; (d) in the event that a storage resource is not available and the threshold has not been reached, issuing another storage request in connection with the storage resource; (e) in the event the storage resource is available, storing the information in the storage resource; (f) sharing the stored information with at least a process associated with a second physical network; and (g) interfaces, including a first communications interface for interfacing with the first physical network and a second communication interface for interfacing with the second physical network. *See, e.g.*, D.I. 1, Ex. A at 25–27 ('477 patent, claims

1, 12, 23).  Each of these elements is found, for example, in previously invalidated claims of the '705 and '843 patents.  BMW expressly incorporates its Motion to Dismiss and Memorandum in Support (D.I. 11; D.I. 12), and all subsequent briefing and accompanying exhibits (D.I. 19, 26, 34, 35, 37), which further explain that the Texas Patents are indistinct from the currently asserted patents.  *See also, e.g.,* D.I. 35-1 at 59-61.[8]

### i. Stragent's Inequitable Conduct Regarding the '477 Patent

41. The '477 patent was prosecuted by Stragent's prosecution counsel, Thomas D. Fortenberry and Patrick Caldwell.  *See, e.g.,* D.I. 12, Ex. U at 162-163 (Applicant's Remarks Made in an Amendment), 171-73 (Jan. 25, 2019 Transmittal Letter).  Messrs. Fortenberry and Caldwell intentionally and knowingly failed to disclose material information during the prosecution of the '477 patent in violation of their duty of candor to the Patent Office.  Had Messrs. Fortenberry and Caldwell or Stragent disclosed this information, the '477 patent would not have issued.  Messrs. Fortenberry and Caldwell also continued to prosecute the '477 patent even though they knew related patents were held invalid.

42. For example, during prosecution of the '477 patent Mr. Caldwell admitted that "related patents" (i.e., the '705 and '843 patents) were the subject of litigation in *Stragent II*.  However, again, Mr. Caldwell omitted that BMW served invalidity contentions on June 22, 2017 (*see Stragent II,* D.I. 96),[9] and thus Messrs. Fortenberry and Caldwell never submitted the invalidity

---

[8]  *See* D.I. 11, 12, 19, 26, 34, 35, 37 (Motion to Dismiss and Memorandum in Support, and accompanying exhibits and briefing); *see also, e.g.,* D.I. 35-1 at 66, incorporated herein by reference.

[9] As discussed above, Messrs. Caldwell and Fortenberry explicitly referenced these contentions in prior communications with the Patent Office in relation to Stragent's other patents, and thus they knew about the contentions and their materiality to the '477 patent.  *See* D.I. 12, Ex. S at 77-78 (Dec. 27, 2016 Transmittal Letter); 106-107 (Feb. 27, 2017 Transmittal Letter); 132-133 (May 2, 2018 Transmittal Letter).  Indeed, these contentions show that elements of the claims of the '705 and '843 patents are invalid, and as shown by Mr. Fortenberry's filing a terminal

contentions or informed the Examiner whether the art in the contentions had been previously disclosed (without identifying the disclosed art or when it was allegedly disclosed by Stragent). D.I. 12, Ex. U at 171-72 (Jan. 25, 2019 Transmittal Letter).  As discussed above, the invalidity contentions themselves included detailed claim charts and explanations of the invalidity of the '705 and '843 patents, which the Examiner would have found material to the patentability of the substantially similar claims of the '477 patent.  Messrs. Fortenberry and Caldwell and Stragent had a duty to also disclose the substance of the invalidity contentions themselves, as the invalidity arguments and detailed claim charts set forth were clearly material to patentability.  *See, e.g.*, M.P.E.P. § 2001.06.(c). And, again, as shown by Mr. Fortenberry's filing a terminal disclaimer to the '705 and '843 patents, Mr. Fortenberry knew and conceded that the '477 patent contained substantially the same subject matter as the invalid '705 and '843 patents.

43. Additionally, although Mr. Caldwell mentioned in a transmittal letter that the '843 and '705 patents were subject to certain IPRs (Nos. 2017-00457, 2017-00458, 2017-00676, 2017-00677, 2017-01502, 2017-01503, 2017-01504, 2017-01519, 2017-01520, 2017-01521, and 2017-01522), stated that Stragent had submitted the references from those IPRs, and said that the IPRs Mr. Caldwell identified had "received final written decisions rendering all challenged claims unpatentable," (D.I. 12, Ex. U at 172-173), Mr. Caldwell did not disclose this information until January 25, 2019.  Importantly, Mr. Caldwell omitted that *all* claims of the '843 and '705 patents had been invalidated; instead misleading the Examiner by stating that "all *challenged* claims" had been found unpatentable.  D.I. 12, Ex. U at 172 (emphasis added).  Moreover, this disclosure was

---

disclaimer to the '705 and '843 patents, Mr. Fortenberry knew and conceded that the '477 patent contained substantially the same subject matter as the invalid '705 and '843 patents.  At a minimum, Stragent and Messrs. Caldwell and Fortenberry knew that the invalidity contentions were material and knew that they had an obligation to disclose them to the Examiner.

almost two months after the latest final written decisions in the IPRs, more than six months after the earliest final written decisions in the IPRs, and only three days before the Examiner issued a Notice of Allowance.  Mr. Caldwell also failed to properly disclose the IPRs in a list as required by PTO rules.  This omission is clear from the face of the '477 patent, which does not list any of these IPRs.  This approach to identifying the IPR was taken with the intent to deceive the patent office.  *See* 37 C.F.R. § 1.98(a)(1); M.P.E.P. § 609.04(a)(I) (9th ed. Rev. 10.2019, June 2020); 37 C.F.R. § 1.97(i) (non-compliant disclosures are not considered); *Leviton Mfg. Co. v. Shanghai Meihao Elec., Inc.*, 613 F. Supp. 2d 670, 702 (D. Md. 2009), *vacated on other grounds by sub nom. Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1357, 1362 (Fed. Cir. 2010).

44. And even though they knew that the PTAB held the closely related claims invalid before they even filed this application, Messrs. Fortenberry and Caldwell continued to prosecute, and ultimately allowed these patentably indistinct claims to issue, in violation of 37 C.F.R. § 42.73(d)(3).

45. These failures are clear and convincing evidence that Messrs. Fortenberry and Caldwell (1) misrepresented or omitted information material to patentability and (2) did so with specific intent to mislead or deceive the PTO, rendering the '477 patent unenforceable.  This conduct not only renders the '477 patent unenforceable, it impacts Stragent's patent portfolio as a whole.  *See Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1288-89 (Fed. Cir. 2011).

## SIXTH AFFIRMATIVE DEFENSE
### (Laches, Waiver, Acquiescence, Estoppel, and/or Statute of Limitations)

46. Remedies requested by Stragent under the asserted patents are barred by laches, including patent prosecution laches, waiver, acquiescence, estoppels, and/or 35 U.S.C. § 286.

## SEVENTH AFFIRMATIVE DEFENSE

**(No Willful Infringement)**

47. Stragent is not entitled to a determination that BMW willfully infringed any asserted patent at least because BMW has not infringed, is not infringing directly, indirectly, by inducement of infringement or contributory infringement, or in any way (either literally or under the doctrine of equivalents), any valid and enforceable claims of the '477, '790, '036 and '765 patents.  Moreover, when Stragent sent BMW's counsel a letter on June 22, 2018, BMW's counsel responded via a letter dated August 10, 2018, explaining that (1) the PTAB had already found patentably indistinct claims invalid; (2) Stragent failed to meet its duty of candor to the Patent Office by failing to disclose relevant information; (3) Stragent was estopped for obtaining and enforcing patents that were patentably indistinct in view of 37 C.F.R. § 42.73(d)(3)(i); and (4) its infringement theories were deficient.  *See IP Power Holdings Limited v. Westfield Outdoor, Inc.*, 2-19-cv-01878 (D. Nev. June 4, 2020, Order).  Moreover, "one cannot infringe an invalid patent as a matter of law." *Finjan, Inc. v. Symantec Corp.*, 2013 U.S. Dist. LEXIS 134030, *179 (D. Del. Sept. 19, 2013); *see also Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 (Fed. Cir. 1983) ("an invalid claim cannot give rise to liability for infringement….").

**EIGHTH AFFIRMATIVE DEFENSE**
**(Failure to State a Claim)**

48. Stragent's Complaint against BMW fails to state a claim upon which relief can be granted.

**NINTH AFFIRMATIVE DEFENSE**
**(Failure to Join Necessary Party)**

49. Stragent's Complaint against BMW fails to join a necessary party.

**TENTH AFFIRMATIVE DEFENSE**
**(Prosecution History Estoppel and/or Disclaimer)**

50. Stragent is estopped from construing certain of the asserted claims of the Asserted Patents to cover or include, either literally or by application of the doctrine of equivalents, methods used

or products manufactured, used, imported, sold, or offered for sale by BMW because of admissions, amendments, and statements to the USPTO during prosecution of the applications leading to the issuance of the asserted patents or related family members.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Marking)

51. To the extent that Stragent and/or its licensees have not complied with the marking requirements of 35 U.S.C. § 287(a), Stragent is precluded from recovering damages for alleged infringement, if any, until the date that Stragent actually notified BMW of the alleged infringement.

## TWELFTH AFFIRMATIVE DEFENSE
### (No Costs)

52. Stragent is barred from recovering costs in connection with this action under 35 U.S.C. § 288.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (No Exceptional Case)

53. Stragent cannot prove that this case is exceptional, justifying an award of attorneys' fee against BMW under 35 U.S.C. § 285.  BMW has not engaged in any activity that would entitle Stragent to such fees.

## RESERVATION OF DEFENSES

54. BMW reserves all defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States and any other defenses, at law and equity, that may now or in the future be available based on discovery or any other factual investigation concerning this case or any other related case.

## DEMAND FOR JURY TRIAL

55. BMW, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of

any issues so triable by right.

### DEFENDANTS' RESPONSE TO STRAGENT'S PRAYER FOR RELIEF

56. BMW denies any infringement of the '477, '790, '036 and '765 patents. BMW specifically denies the allegations by Stragent of direct or indirect infringement of one or more claims of the '477, '790, '036 and '765 patents, either literally or under the doctrine of equivalents. BMW denies that Stragent is entitled to any form of relief at all and denies that Stragent is entitled to the relief sought in the prayer for relief. Accordingly, the prayer by Stragent should be denied in its entirety with prejudice, and Stragent should take nothing.

## COUNTERCLAIMS

1.   Pursuant to Fed. R. Civ. P. 13, Counterclaim Plaintiff BMW of North America, LLC ("BMW NA"), complains and alleges against Counterclaim Defendant Stragent, LLC ("Stragent") as follows:

## NATURE OF THE LAWSUIT

2.   These Counterclaims are an action for a declaration of patent non-infringement, invalidity, and unenforceability arising under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., and the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

## PARTIES

3.   BMW NA is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677.

4.   The Complaint alleges that Plaintiff Stragent, LLC is a Texas limited liability company.

## JURISDICTION AND VENUE

5.   This Court has subject matter jurisdiction over these counterclaims based on 28 U.S.C. §§ 1331, 1338, 2201-02 and under Fed. R. Civ. P. 13(a) in that this is a compulsory counterclaim to the allegations of the Complaint.

6.   Venue is proper in this judicial district because the declaratory relief sought is a compulsory counterclaim to claims filed by Stragent in this case and pursuant to 28 U.S.C. § 1391(b).

7.   This Court has personal jurisdiction over Stragent, *inter alia*, because Stragent has submitted to personal jurisdiction herein by filing its Complaint in this Court.

## FACTUAL BACKGROUND

8.   This Court has subject matter jurisdiction over these counterclaims based on 28 U.S.C. §§ 1331, 1338, 2201-02 and under Fed. R. Civ. P. 13(a) in that this is a compulsory counterclaim to the allegations of the Complaint.

9.   Although Stragent alleges in its Complaint that the '477, '790, '036, and '765 patents were duly issued by the U.S. Patent and Trademark Office ("PTO"), an actual controversy exists with respect to the enforceability of the '477, '790, '036, and '765 patents.

10. The presently asserted patents are continuations of patents that Stragent previously asserted against one or more of the named defendants in this case.  During prosecution of the '790, '036, and '765 patents, Stragent filed terminal disclaimers over one or both of the previously asserted patents: U.S. Patent Nos. 8,209,705 (the "'705 patent") and 8,566,843 (the "'843 patent") (the "Texas Patents").  During prosecution of the fourth asserted patent, the '477 patent, Stragent filed a terminal disclaimer over the '790 and '036 patents, each of which is terminally disclaimed over the '705 and '843 patents.  Stragent filed these terminal disclaimers rather than identifying any elements of the asserted patents that render their claims patentably distinct from the Texas Patents, whose claims have all been found to be unpatentable by the Patent Office in *inter partes* review (IPR) proceedings, and intentionally withheld material information related to their alleged patentability from the Patent Office

A.    **Stragent's Earlier Unsuccessful Assertions of Patents in the Same Family**

11. In 2011, Stragent asserted the ultimate parent of the asserted patents, U.S. Patent No. 7,802,263 ("the '263 patent") against a host of companies, including Robert Bosch LLC ("Bosch").  Over a year later, Stragent dismissed its claims with prejudice.   *See Stragent, LLC v. STMicroelectronics, Inc*., No. 6:11-cv-111-LED, D.I. 1 & 406 (E.D. Tex.) ("*Stragent I*").

12. In 2016, Stragent filed a complaint asserting later patents in the same family against a

number of BMW, Mercedes, and Volvo corporate entities. *Stragent, LLC v. BMW of N. Am., LLC*, No. 6:16-cv-446-RWS-KNM (E.D. Tex.) ("*Stragent II*"), D.I. 1 & 60 (consolidating BMW case with cases filed against Mercedes and Volvo). The '705 and '843 patents asserted in *Stragent II* were continuations of the '263 patent asserted in *Stragent I*, and the *Stragent II* complaint asserted infringement against automotive products allegedly compliant with AUTOSAR specifications. Stragent's initial complaint in *Stragent II* was dismissed (without prejudice) for failing to properly plead infringement and identifying "no common element between the AUTOSAR Standard and the asserted claims, nor . . . explain[ing] how the accused products, by complying with the AUTOSAR Standard, . . . infringe the asserted claims." *Id.*, D.I. 29 at 9–10 (Report and Recommendation to dismiss Stragent's improperly pleaded complaint). Stragent later filed an amended complaint. *Id.*, D.I. 34. Stragent then served infringement contentions improperly attempting to assert a third patent in the same family (U.S. Patent No. 9,575,817 ("the '817 patent")), which is a continuation of the '843 patent asserted in the *Stragent II* complaints. When Defendants objected to the addition, Stragent argued there would be no prejudice because the '817 patent and the Texas Patents "share the same specification, cover the same subject matter, and have closely related claims." *Id.*, D.I. 80 at 2, 3. *See also infra*, at "Patent Family Tree."

13. While *Stragent II* was pending, BMW and Mercedes[10] filed multiple petitions for IPR of the Texas Patents, resulting in eleven final written decisions in which the PTAB found all claims of the Texas Patents unpatentable:

---

[10] The petitioning Mercedes parties were Daimler AG, Daimler North America Corporation, Mercedes-Benz USA, LLC, and Mercedes-Benz U.S. International, Inc.

| Case No. | Parties | Patent | Petition | Institution | FWD | Outcome |
|---|---|---|---|---|---|---|
| IPR2017-00457 | Stragent Mercedes | 8,566,843 | Dec. 9, 2016 | June 16, 2017 | June 13, 2018 (D.I. 12, Ex. A) | Claims 1 and 47–51 unpatentable |
| IPR2017-00458 | Stragent Mercedes | 8,209,705 | Dec. 9, 2016 | June 16, 2017 | June 13, 2018 (D.I. 12, Ex. B) | Claims 1–7 and 20 unpatentable |
| IPR2017-00676 | Stragent BMWNA | 8,209,705 | Jan. 18, 2017 | June 16, 2017 | June 14, 2018 (D.I. 12, Ex. C) | Claims 1–6 and 20 unpatentable |
| IPR2017-00677 | Stragent BMWNA | 8,566,843 | Jan. 18, 2017 | June 16, 2017 | June 13, 2018 (D.I. 12, Ex. D) | Claims 51–59 unpatentable |
| IPR2017-01502 | Stragent Mercedes | 8,209,705 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. E) | Claims 8–19 unpatentable |
| IPR2017-01503 | Stragent Mercedes | 8,566,843 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. F) | Claims 2–37, 39–46, and 52–59 unpatentable |
| IPR2017-01504 | Stragent Mercedes | 8,566,843 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. G) | Claims 2–37, 40–46 and 52–59 unpatentable |
| IPR2017-01519 | Stragent BMWNA | 8,566,843 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. H) | Claims 1–50 unpatentable |
| IPR2017-01520 | Stragent BMWNA | 8,566,843 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. I) | Claims 1–18 and 20–50 unpatentable |
| IPR2017-01521 | Stragent BMWNA | 8,209,705 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. J) | Claims 7–17 and 19 unpatentable |
| IPR2017-01522 | Stragent BMWNA | 8,209,705 | June 6, 2017 | Dec. 8, 2017 | Dec. 6, 2018 (D.I. 12, Ex. K) | Claims 7–14 and 16–19 unpatentable |

14. Stragent appealed the first round of IPR decisions to the Court of Appeals for the Federal Circuit, but these appeals were dismissed for failure to prosecute after Stragent stated that it "would be a waste of the Court's time and the parties' resources to continue [Stragent's already noticed appeals] and/or file new appeals." *Stragent II*, D.I. 109, Ex. O at 5 (Jan. 24, 2019, email from Stragent counsel to BMW counsel); *Stragent, LLC v. BMW of N. Am., LLC*, No. 18-2294, D.I. 20 & No. 18-2295, D.I. 10 (Fed. Cir. Feb. 11, 2019) (dismissing appeals). Stragent did not appeal

any other IPR decisions.

15. Based on these final written decisions, BMW moved for summary judgment of invalidity. *Stragent II*, D.I. 109.  In response, Stragent disclaimed all claims of the Texas Patents and moved to dismiss its infringement allegations against BMW, Daimler-Mercedes and Volvo with prejudice.  *Id.*, D.I. 111, Exs. A & B (attaching disclaimers of the Texas Patents).  The Texas Court dismissed all the *Stragent II* cases with prejudice on July 23, 2019, finding Defendants to be the prevailing parties.  *Id.*, D.I. 121 at 2.  The Court issued the Final Judgment on June 16, 2020.  *Id.*, D.I. 141.

16. On June 22, 2018, while IPR proceedings for the Texas Patents and the *Stragent II* cases were pending, Stragent sent Defendants' counsel letters threatening four patents, three of which it now asserts in this case: (1) the '765 patent; (2) the '036 patent; (3) the application that would become the '790 patent; and (4) the '817 patent (which is not asserted in this case).  *See, e.g.*, D.I. 12, Ex. L (June 8, 2020 BMW Rule 11 Letter Enclosure 1 (Stragent June 22, 2018 Threat Letter to BMW)).  In response, Defendants' respectively explained why the asserted patents were invalid and not infringed, at least because (1) the Patent Trial and Appeal Board ("PTAB") had already found patentably indistinct claims to be invalid; (2) Stragent failed to meet its duty of candor to the Patent Office by failing to disclose relevant information; (3) Stragent was estopped from obtaining and enforcing patents that were patentably indistinct in view of 37 C.F.R. § 42.73(d)(3); and (4) Stragent's infringement theories were deficient.  D.I. 12, Ex. L (June 8, 2020 BMW Rule 11 Letter Enclosure 2 (BMW Aug. 10, 2018 letter to Stragent)); D.I. 12, Ex. M (Aug. 13, 2018 Volvo letter); D.I. 12, Ex. N (Aug. 14, 2018 Mercedes letter).

**B.    The Accused Technology Is Identical and the Asserted Claims Substantially, If Not Completely, Overlap Those in *Stragent II***

17. That the Accused Technology is identical to that accused in *Stragent II*, and the asserted

claims substantially, if not completely, overlap the Texas Patents previously invalidated by the PTAB illustrates the materiality of those prior decisions to the patentability of the asserted patents.

### 1. The Patent Family Tree

18. The asserted patents are all continuations of, and terminally disclaimed over, the '263 patent, the Texas Patents (found invalid in IPRs and expressly disclaimed by Stragent), and the '817 patent (or to other patents in the chain that are terminally disclaimed to these patents):

| | | | |
|---|---|---|---|
| **U.S. Provisional App. No. 60/434,018** Filed Dec. 17, 2002 | | Provisional Application | |
| **U.S. Patent No. 7,802,263** (App. No. 10/737,690) Filed Dec. 15, 2003 | | '263 patent: Asserted unsuccessfully against Bosch in *Stragent I*; case dismissed with prejudice. | |
| **U.S. Patent No. 8,209,705** (App. No. 12/182,570) Filed July 30, 2008 | | '705 patent (D.I. 12, Ex. O): PTAB final decisions finding all claims invalid; not appealed. | |
| **U.S. Patent No. 8,566,843** (App. No. 13/531,319) Filed June 22, 2012 | | '843 patent (D.I. 12, Ex. P): PTAB final decisions finding all claims invalid;  not appealed. | |
| **U.S. Patent No. 9,575,817** (App. No. 14/011,705) Filed Aug. 27, 2013 | | '817 patent: Stragent states that it "**share[s] the same specification, cover the same subject matter, and ha[s] closely related claims**" to those of the invalidated Texas Patents. | |
| **U.S. Patent No. 9,705,765** (App. No. 15/405,088) Filed Jan. 12, 2017 | **U.S. Patent No. 10,002,036** (App. No. 15/405,110) Filed Jan. 12, 2017 | '765 patent: Asserted here; terminally disclaimed over now-invalid '705 and '843 patents, as well as the parent '263 and '817 patents. | '036 patent: Asserted here; terminally disclaimed over now-invalid '705 and '843 patents, as well as the parent '263 and '817 patents and sister co-asserted '765 patent. |
| **U.S. Patent No. 10,031,790** (App. No. 15/919,201) Filed Mar. 12, 2018 | | '790 patent: Asserted here; terminally disclaimed over now-invalid '705 and '843 patents, as well as the parent '263, '817, and '036 patents. | |
| **U.S. Patent Pub. 2019/0004880** (App. No. 16/042,159) Filed July 23, 2018 | | Pending application; terminally disclaimed over '843, '036, '477, '790, and '817 patents. | |
| **U.S. Patent No. 10,248,477** (App. No. 16/148,949) Filed Oct. 1, 2018 | | '477 patent: Asserted here; terminally disclaimed over '790 and '036 patents, which themselves are terminally disclaimed over invalid patents as noted above. | |

### 2. The Texas Patents

19. The Texas Patents are both entitled "System, Method and Computer Program Product for Sharing Information in a Distributed Framework," and share a specification.  They are directed to using automotive electronic control unit ("ECU") gateway middleware having associated "bulletin board" memory that allows for "real-time" sharing of information across different in-vehicle networks—e.g., sharing information between two or more of a Controller Area Network ("CAN"), Local Interconnect Network ("LIN"), and FlexRay Network in "vehicle communication and control systems, real-time monitoring systems, industrial automation and control systems, as well as any other desired system."  D.I. 12, Ex. O ('705 patent at 1:22–25, 3:24–33).  The Texas Patents state that multiple automotive ECUs "control complex applications such as engine control, brake control, or diagnostics" while connected by multiplexing bus-systems corresponding to different networks.  *Id*. at 3:13–16, 3:26–33.  Such ECUs have software for interfacing with the ECU's input/output mechanisms and storing information within the ECU.  *Id*. at 4:45–5:9.  These ECUs share arbitrated access to a "common, or shared storage system that is connected to all of the system networks through network interfaces."  *Id.* at 7:30-32, 8:13–31.

20. This functionality was well known in the art before the respective priority dates.  *See, e.g*., D.I. 12, Ex. K (IPR2017-1522, Paper No. 32 at 38–44); *see also* D.I. 12, Exs. A–K.  Thus, every claim of these patents (79 total—20 for '705 patent and 59 for '843 patent) was found invalid by the Patent Office, as discussed above.

### 3. The Patents-in-Suit

21. The '765, '036, '790, and '477 patents-in-suit are each continuations of the '817 patent, which is a continuation of the Texas Patents, and a further continuation of the '263 patent.  Each of the patents-in-suit shares the same title and specification with these other patents in the priority chain.  All of these patents thus provide the same disclosure of an ECU gateway middleware

having shared memory that operates to allow for the transmission of information between different in-vehicle environments.

### a. U.S. Patent No. 9,705,765

22. Stragent filed the continuation application that ultimately issued as the '765 patent on January 12, 2017, days before BMW and Mercedes filed the first round of IPRs on the Texas Patents.  D.I. 12, Ex. Q ('765 patent file history).  Though no office action was issued, Stragent and the Examiner communicated via email regarding Stragent's amended claims, which the Examiner said he would allow if Stragent filed terminal disclaimers over the invalid Texas Patents.[11]  *Id.* at 202-203.  Stragent did not dispute the need for these terminal disclaimers, nor did Stragent argue that the claims of the '765 patent were patentably distinct from its parent patents. *Id.* at 112 (Mar. 3, 2017, Terminal Disclaimers).  Thus, Stragent tacitly admitted that the '765 patent contained the same or substantially the same subject matter as the invalid '705 and '843 patents.

23. Asserted claim 1 of the '765 patent is consistent in scope with the invalidated claims of the Texas Patents.  For example, the core elements of each independent claim of the '765 patent, including claim 1, include: (a) an electronic control unit and nonvolatile memory; (b) software configured to receive information from a first physical network; (c) issuing a storage request in response to receipt of this information and determining whether a storage resource is available and whether a threshold has been reached; (d) in the event that a storage resource is not available and the threshold has not been reached, issuing another storage request in connection with the storage

---

[11] Terminal disclaimers may be "filed to obviate judicially created double patenting in a patent application."  37 C.F.R. § 1.321(c).  A "nonstatutory" double-patenting rejection, which is at issue here, is based on a judicially created doctrine grounded in public policy and which is primarily intended to prevent prolongation of the patent term by prohibiting claims in a second patent not patentably distinct from claims in a first patent.  M.P.E.P. § 1504.06.

resource; (e) in the event the storage resource is not available and the threshold has been reached, sending a notification; (f) in the event the storage resource is available, storing the information in the storage resource; (g) sharing the stored information with at least a process associated with a second physical network in less than one second; and (h) interfaces, including a first communications interface having a first interface-related data link layer component for interfacing with a CAN and a second communication interface having a second interface-related data link layer component for interfacing with a Flexray network. *See, e.g.*, D.I. 1, Ex. D at 26–29 ('765 patent at claims 1, 12, 13, 24). Each of these elements (or a patentably indistinct variant) is found, for example, in invalidated claim 20 of the '705 patent and invalidated claim 51 of the '843 patent.[12]

### b. U.S. Patent No. 10,002,036

24. Stragent filed the continuation application that ultimately issued as the '036 patent on January 12, 2017, the same day as the application for the '765 patent. D.I. 12, Ex. S ('036 patent file history). Like the '765 patent, no office action issued, but Stragent and the Examiner communicated via email and phone regarding claim amendments and filing terminal disclaimers (eTDs). *Id.* at 247-48 (Apr. 25, 2018, emails). Without attempting to traverse any double-patenting rejections, Stragent filed terminal disclaimers to the Texas Patents, the parent '263 and '817 patents, and also the sister co-asserted '765 patent on April 25 and 27, 2018. *Id.* at 108-110, 116-18. Thus, Stragent tacitly admitted that the '036 patent contained the same or substantially the same subject matter as the invalid '705 and '843 patents.

---

[12] *See* D.I. 11, 12, 19, 26, 34, 35, 37 (Motion to Dismiss and Memorandum in Support, and accompanying exhibits and briefing); *see also, e.g.,* D.I. 35-1 at 64-65, incorporated herein by reference.

25. Asserted claim 1 of the '036 patent is consistent in scope with the invalidated claims of the Texas Patents.  For example, the core elements of each of the independent claims of the '036 patent, including claim 1, include: (a) an electronic control unit and nonvolatile memory; (b) software configured to receive information from a first physical network; (c) issuing a storage request in response to receipt of this information and determining whether a storage resource is available and whether a threshold has been reached; (d) in the event that a storage resource is not available and the threshold has not been reached, issuing another storage request in connection with the storage resource; (e) in the event the storage resource is not available and the threshold has been reached, sending a notification; (f) in the event the storage resource is available, storing the information in the storage resource; (g) sharing the stored information with at least a process associated with a second physical network in less than one millisecond; and (h) interfaces, including a first communications interface having a first interface-related data link layer component for interfacing with a Flexray network (or CAN) and a second communication interface having a second interface-related data link layer component for interfacing with a CAN (or Flexray network).  *See, e.g.*, D.I. 1, Ex. C at 26–27, 29–30 ('036 patent, claims 1, 102).  Each of these elements is found, for example, in previously invalidated claim 20 of the '705 patent and claim 51 of the '843 patent.[13]

### c. U.S. Patent No. 10,031,790

26. Stragent filed the continuation application that ultimately issued as the '790 patent on March 12, 2018, after IPRs on the related Texas Patents had already been instituted.  D.I. 12, Ex. T ('790 patent file history).  Again, like the '765 and '036 patents, no office action issued, but

---

[13] *See* D.I. 11, 12, 19, 26, 34, 35, 37 (Motion to Dismiss and Memorandum in Support, and accompanying exhibits and briefing); *see also, e.g.,* D.I. 35-1 at 62-63, incorporated herein by reference.

Stragent and the Examiner communicated by phone on May 31, 2018 regarding the amended claims. *Id.* at 143 (May 31, 2018, Examiner Interview Summary). In those communications, Stragent agreed to file terminal disclaimers over the Texas Patents, as well as the '263, '817, and '036 patents. *Id.* at 143, 121-22 (May 31, 2018, Terminal Disclaimers). Thus, Stragent tacitly admitted that the '790 patent contained the same or substantially the same subject matter as the invalid '705 and '843 patents.

27. Asserted claim 15 of the '790 patent is consistent in scope with the invalidated claims of the Texas Patents. Each limitation of claim 15, or a patentably indistinct variant, is included in one of more claims of the Texas Patents. For example, the core elements of each independent claim of the '790 patent, including claim 15, include: (a) an electronic control unit and nonvolatile memory; (b) software configured to receive information from a first physical network; (c) issuing a storage request in response to receipt of this information and determining whether a storage resource is available and whether a threshold has been reached; (d) in the event that a storage resource is not available and the threshold has not been reached, issuing another storage request in connection with the storage resource; (e) in the event the storage resource is not available and the threshold has been reached, sending a notification; (f) in the event the storage resource is available, storing the information in the storage resource; (g) sharing the stored information with at least a process associated with a second physical network; and (h) interfaces, including a first communications interface having a first interface-related data link layer component for interfacing with a CAN and a second communication interface having a second interface-related data link layer component for interfacing with a Flexray network. *See, e.g.*, D.I. 1, Ex. B at 24–28 ('790 patent, claims 1, 15, 26, 29). Each of these elements is found, for example, in previously

invalidated claim 20 of the '705 patent and claim 51 of the '843 patent.[14]

### d. U.S. Patent No. 10,248,477

28. Stragent filed the continuation application that ultimately issued as the '477 patent on October 1, 2018, nearly four months *after* the first PTAB decisions finding many claims of the Texas Patents unpatentable.  D.I. 12, Ex. U ('477 patent file history).  Stragent received an office action on November 29, 2018, rejecting all '477 patent claims for obviousness-type double patenting in view of the '790 and '036 patents: "Although the claims at issue are not identical, they are not patentably distinct from each other because the claim limitations of the instant application is [sic] present in the ['790 patent]." *Id.* at 93; *see also id.* at 120 (noting claims were not **patentably distinct** from claims in the '036 patent). Stragent did not contest this assertion.  Instead, Stragent executed a terminal disclaimer to the '790 and '036 patents, which themselves had been terminally disclaimed to the Texas Patents, the '263 patent, and the '817 patent. *Id.* at 155-56.  Thus, Stragent tacitly admitted that the '477 patent contained the same or substantially the same subject matter as the invalid '705 and '843 patents.

29. Asserted claim 1 of the '477 patent is consistent in scope with the invalid claims of the Texas Patents.  Each limitation, or a patentably indistinct variant, of the '477 patent is found in the invalidated claims of the Texas Patents.  For example, the core elements of each independent claim of the '477 patent, including claim 1, include: (a) an electronic control unit and nonvolatile memory; (b) software configured to receive information from a first physical network; (c) issuing a storage request in response to receipt of this information and determining whether a storage resource is available and whether a threshold has been reached; (d) in the event that a storage

---

[14] *See* D.I. 11, 12, 19, 26, 34, 35, 37 (Motion to Dismiss and Memorandum in Support, and accompanying exhibits and briefing); *see also, e.g.,* D.I. 35-1 at 66, incorporated herein by reference.

resource is not available and the threshold has not been reached, issuing another storage request in connection with the storage resource; (e) in the event the storage resource is available, storing the information in the storage resource; (f) sharing the stored information with at least a process associated with a second physical network; and (g) interfaces, including a first communications interface for interfacing with the first physical network and a second communication interface for interfacing with the second physical network. *See, e.g.*, D.I. 1, Ex. A at 25–27 ('477 patent, claims 1, 12, 23). Each of these elements is found, for example, in previously invalidated claims of the '705 and '843 patents. BMW expressly incorporates its Motion to Dismiss and Memorandum in Support (D.I. 11; D.I. 12), and all subsequent briefing and accompanying exhibits (D.I. 19, 26, 34, 35, 37), which further explain that the Texas Patents are indistinct from the currently asserted patents. *See also, e.g.,* D.I. 35-1 at 59-61.[15]

## <u>COUNT I</u>
### (Declaration of Non-Infringement of the '477 Patent)

30. BMW NA restates and incorporates by reference each of the allegations of paragraphs 1 through 29 of these Counterclaims as though fully set forth herein.

31. Stragent claims to be the owner and assignee of all rights, title and interest in and under the '477 patent.

32. Stragent has accused BMW NA of infringing the '477 patent and has created a substantial, immediate and real controversy between the parties as to the non-infringement of these patents.

33. BMW NA does not infringe and has not infringed the '477 patent through its use, sale, and/or offers to sell in the United States and/or importing into the United States any product. It is Stragent's burden to show infringement. *See Medtronic, Inc. v. Mirowski Family Ventures, LLC,*

---

[15]   *See* D.I. 11, 12, 19, 26, 34, 35, 37 (Motion to Dismiss and Memorandum in Support, and accompanying exhibits and briefing); *see also, e.g.,* D.I. 35-1 at 66, incorporated herein by reference.

571 U.S. 191, 194 (2014).

34. However, Stragent cannot meet its burden to show that any BMW NA product includes at least the "layered system," "automotive electronic control unit comprising a microprocessor and an operating system," "non-volatile memory comprising a database with a data structure," "FlexRay, Controller Area Network, and Local Interconnect Network," "issue another storage resource request, " "each physical network in communication with . . . at least one of a sensor, an actuator, or a gateway," "storing the packet data unit representing the datum information carried by the overall message from a first physical network in the database," and "stored information may be shared with the second physical network" elements of the '477 patent.

**COUNT II**
**(Declaration of Non-Infringement of the '790 Patent)**

35. BMW NA restates and incorporates by reference each of the allegations of paragraphs 1 through 34 of these Counterclaims as though fully set forth herein.

36. Stragent claims to be the owner and assignee of all rights, title and interest in and under the '790 patent.

37. Stragent has accused BMW NA of infringing the '790 patent and has created a substantial, immediate and real controversy between the parties as to the non-infringement of these patents.

38. BMW NA does not infringe and has not infringed the '790 patent through its use, sale, and/or offers to sell in the United States and/or importing into the United States any product.  It is Stragent's burden to show infringement.  *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 194 (2014).

39. However, Stragent cannot meet its burden to show that any BMW NA product includes at least the "an automotive electronic control unit including a non-transitory memory storage comprising instructions, and at least one hardware processor," "in the event the storage resource

is not available and the threshold associated with the storage resource request has not been reached, issue another storage resource request," "the automotive electronic control unit is in hardwired communication with the Controller Area Network and the FlexRay network," "the [first/second] interface including a [first/second] data link layer component," "a [first/second] network layer component," and "a duration between the information being received at the automotive electronic control unit, and the sharing being initiated at the automotive electronic control unit, is less than one microsecond" elements of the '790 patent.

<u>**COUNT III**</u>
**(Declaration of Non-Infringement of the '036 Patent)**

40. BMW NA restates and incorporates by reference each of the allegations of paragraphs 1 through 39 of these Counterclaims as though fully set forth herein.

41. Stragent claims to be the owner and assignee of all rights, title and interest in and under the '036 patent.

42. Stragent has accused BMW NA of infringing the '036 patent and has created a substantial, immediate and real controversy between the parties as to the non-infringement of these patents.

43. BMW NA does not infringe and has not infringed the '036 patent through its use, sale, and/or offers to sell in the United States and/or importing into the United States any product.  It is Stragent's burden to show infringement.  *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 194 (2014).

44. However, Stragent cannot meet its burden to show that any BMW NA product includes at least the "an automotive electronic control unit comprising a hardware and instructions for," "in the event the storage resource is not available and the threshold associated with the storage resource request has not been reached, issuing another storage resource request," "sharing the information in less than one millisecond . . . wherein the automotive electronic control unit remains

in hardwired communication with the Controller Area Network and the Flexray network," and "the [first/second] interface including a [first/second] data link layer component" and "a [first/second] network layer component" elements of the '036 patent.

<u>COUNT IV</u>
**(Declaration of Non-Infringement of the '765 Patent)**

45. BMW NA restates and incorporates by reference each of the allegations of paragraphs 1 through 22 of these Counterclaims as though fully set forth herein.

46. Stragent claims to be the owner and assignee of all rights, title and interest in and under the '765 patent.

47. Stragent has accused BMW NA of infringing the '765 patent and has created a substantial, immediate and real controversy between the parties as to the non-infringement of these patents.

48. BMW NA does not infringe and has not infringed the '765 patent through its use, sale, and/or offers to sell in the United States and/or importing into the United States any product.  It is Stragent's burden to show infringement.  *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 194 (2014).

49. However, Stragent cannot meet its burden to show that any BMW NA product includes at least the "an automotive electronic control unit comprising a hardware and instructions for," "identifying information associated with a message received utilizing a [CAN] protocol associated with a [CAN]," "in the event the storage resource is not available and the threshold associated with the storage resource request has not been reached, issuing another storage resource request," "sharing the information in less than one second . . . wherein the automotive electronic control unit remains in hardwired communication with the Controller Area Network and the Flexray network," "the [first/second] interface including a [first/second] data link layer component," and "a [first/second] network layer component" elements of the '036 patent.

## COUNT V
## (Declaration of Invalidity of the '477 Patent)

50. BMW NA restates and incorporates by reference each of the allegations of paragraphs 1 through 49 of these Counterclaims as though fully set forth herein.

51. The claims of the '477 patent are invalid for failure to comply with one or more provisions of the patent laws of the United States, including but not limited to 35 U.S.C. §§ 101, 102, 103 and/or 112.

52. For example, the claims of the '477 patent are invalid as obvious for at least the reasons explained in the following petition for *inter partes* review, which is hereby incorporated by reference: IPR2021-00417, Paper No. 1.

53. Additionally, the claims of the '477 patent lack and adequate written description. For example, the "memory manager" limitations (which are recited in each independent claim) lack written description support because that limitation is not described in the specification of the '477 patent.

54. Similarly, the '477 patent lacks written description support for the specific network configurations it claims.  For example, the '477 patent requires an ECU that interfaces with CAN, FlexRay, and LIN (or CAN, FlexRay, LIN, and MOST) and data exchange between two of those networks.  Although the '477 patent says that "multiple" ECUs may be connected through bus systems "such as" FlexRay, CAN, LIN, and MOST (among other different wired and wireless networks), the '477 patent does not describe a single embodiment that includes any particular network type or combination of network types, let alone the combinations described in the claims. "[O]ne cannot disclose a forest in the original application, and then later pick a tree out of the forest and say here is my invention. In order to satisfy the written description requirement, the blaze marks directing the skilled artisan to that tree must be in the originally filed

disclosure." *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1326-27 (Fed. Cir. 2000) (citing *In re Ruschig*, 379 F.2d 990 (CCPA 1967) ("[i]t is an old custom in the woods to mark trails by making blaze marks on the trees. It is of no help in finding a trail or in finding one's way through the woods where the trails have disappeared—or have not yet been made, which is more like the case here—to be confronted simply by a large number of unmarked trees. We are looking for blaze marks which single out particular trees. We see none."); *see also Gen. Hosp. Corp. v. Sienna Biopharmaceuticals, Inc.*, 888 F.3d 1368, 1372 (Fed. Cir. 2018) ("As we stated in *Purdue Pharma*, 'one cannot disclose a forest in the original application, and then pick a tree out of the forest and say here is my invention.'") (citing *Purdue*, 230 F.3d at 1326.).

55. BMW NA will serve detailed contentions regarding invalidity of the '477 patent after receiving detailed contentions from Stragent regarding how BMW NA's products allegedly infringe the claims of the asserted patents in accordance with the Court's standard scheduling order for patent cases.  BMW NA reserves the right to supplement its invalidity contentions as discovery progresses.

**COUNT VI**
**(Declaration of Invalidity of the '790 Patent)**

56. BMW NA restates and incorporates by reference each of the allegations of paragraphs 1 through 55 of these Counterclaims as though fully set forth herein.

57. The claims of the '790 patent are invalid for failure to comply with one or more provisions of the patent laws of the United States, including but not limited to 35 U.S.C. §§ 101, 102, 103 and/or 112.

58. For example, the claims of the '790 patent are invalid as obvious for at least the reasons explained in the following petition for *inter partes* review, which is hereby incorporated by reference: IPR2021-00418, Paper No. 1.

70

59. Additionally, the claims of the '790 patent lack and adequate written description. For example, the '790 patent lacks written description support for the specific network configurations it claims.  For example, the '790 patent requires interfaces for and data exchanges between CAN and FlexRay networks.  Although the '790 patent says that "multiple" ECUs may be connected through bus systems "such as" FlexRay, CAN, LIN, and MOST (among other different wired and wireless networks), the '790 patent does not describe a single embodiment that includes any particular network type or combination of network types, let alone the combinations described in the claims.  "[O]ne cannot disclose a forest in the original application, and then later pick a tree out of the forest and say here is my invention. In order to satisfy the written description requirement, the blaze marks directing the skilled artisan to that tree must be in the originally filed disclosure."  *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1326-27 (Fed. Cir. 2000) (citing *In re Ruschig*, 379 F.2d 990 (CCPA 1967) ("[i]t is an old custom in the woods to mark trails by making blaze marks on the trees. It is of no help in finding a trail or in finding one's way through the woods where the trails have disappeared—or have not yet been made, which is more like the case here—to be confronted simply by a large number of unmarked trees. We are looking for blaze marks which single out particular trees. We see none."); *see also Gen. Hosp. Corp. v. Sienna Biopharmaceuticals, Inc.*, 888 F.3d 1368, 1372 (Fed. Cir. 2018) ("As we stated in *Purdue Pharma*, 'one cannot disclose a forest in the original application, and then pick a tree out of the forest and say here is my invention.'") (citing *Purdue*, 230 F.3d at 1326.).

60. BMW NA will serve detailed contentions regarding invalidity of the '790 patent after receiving detailed contentions from Stragent regarding how BMW NA's products allegedly infringe the claims of the asserted patents in accordance with the Court's standard scheduling order for patent cases. BMW NA reserves the right to supplement its invalidity contentions as discovery

progresses.

## COUNT VII
### (Declaration of Invalidity of the '036 Patent)

61. BMW NA restates and incorporates by reference each of the allegations of paragraphs 1 through 60 of these Counterclaims as though fully set forth herein.

62. The claims of the '036 patent are invalid for failure to comply with one or more provisions of the patent laws of the United States, including but not limited to 35 U.S.C. §§ 101, 102, 103 and/or 112.

63. For example, the claims of the '036 patent are invalid as obvious for at least the reasons explained in the following petitions for *inter partes* review, which are hereby incorporated by reference: IPR2021-00425, Paper No. 1; IPR2021-00426, Paper No. 1; IPR2021-00427, Paper No. 1; IPR2021-00726, Paper No. 1; IPR2021-00727, Paper No. 1; IPR2021-00728, Paper No. 1.

64. Additionally, the claims of the '036 patent lack and adequate written description.  For example, the '036 patent lacks written description support for the specific network configurations it claims.  For example, the '036 patent requires interfaces for and data exchanges between CAN and FlexRay networks.  Although the '036 patent says that "multiple" ECUs may be connected through bus systems "such as" FlexRay, CAN, LIN, and MOST (among other different wired and wireless networks), the '790 patent does not describe a single embodiment that includes any particular network type or combination of network types, let alone the combinations described in the claims.  "[O]ne cannot disclose a forest in the original application, and then later pick a tree out of the forest and say here is my invention. In order to satisfy the written description requirement, the blaze marks directing the skilled artisan to that tree must be in the originally filed disclosure."  *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1326-27 (Fed. Cir. 2000) (citing *In re Ruschig*, 379 F.2d 990 (CCPA 1967) ("[i]t is an old custom in the woods to mark

trails by making blaze marks on the trees. It is of no help in finding a trail or in finding one's way through the woods where the trails have disappeared—or have not yet been made, which is more like the case here—to be confronted simply by a large number of unmarked trees. We are looking for blaze marks which single out particular trees. We see none."); *see also Gen. Hosp. Corp. v. Sienna Biopharmaceuticals, Inc.*, 888 F.3d 1368, 1372 (Fed. Cir. 2018) ("As we stated in *Purdue Pharma*, 'one cannot disclose a forest in the original application, and then pick a tree out of the forest and say here is my invention.'") (citing *Purdue*, 230 F.3d at 1326.).

65. BMW NA will serve detailed contentions regarding invalidity of the '036 patent after receiving detailed contentions from Stragent regarding how BMW NA's products allegedly infringe the claims of the asserted patents in accordance with the Court's standard scheduling order for patent cases. BMW NA reserves the right to supplement its invalidity contentions as discovery progresses.

## COUNT VIII
### (Declaration of Invalidity of the '765 Patent)

66. BMW NA restates and incorporates by reference each of the allegations of paragraphs 1 through 65 of these Counterclaims as though fully set forth herein.

67. The claims of the '765 patent are invalid for failure to comply with one or more provisions of the patent laws of the United States, including but not limited to 35 U.S.C. §§ 101, 102, 103 and/or 112.

68. For example, the claims of the '765 patent are invalid as obvious for at least the reasons explained in the following petitions for *inter partes* review, which are hereby incorporated by reference: IPR2021-00419, Paper No. 1.

69. Additionally, the claims of the '765 patent lack and adequate written description.  For example, the '765 patent lacks written description support for the specific network configurations

it claims.  For example, the '765 patent requires interfaces for and data exchanges between CAN and FlexRay networks.  Although the '765 patent says that "multiple" ECUs may be connected through bus systems "such as" FlexRay, CAN, LIN, and MOST (among other different wired and wireless networks), the '765 patent does not describe a single embodiment that includes any particular network type or combination of network types, let alone the combinations described in the claims.  "[O]ne cannot disclose a forest in the original application, and then later pick a tree out of the forest and say here is my invention. In order to satisfy the written description requirement, the blaze marks directing the skilled artisan to that tree must be in the originally filed disclosure."  *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1326-27 (Fed. Cir. 2000) (citing *In re Ruschig*, 379 F.2d 990 (CCPA 1967) ("[i]t is an old custom in the woods to mark trails by making blaze marks on the trees. It is of no help in finding a trail or in finding one's way through the woods where the trails have disappeared—or have not yet been made, which is more like the case here—to be confronted simply by a large number of unmarked trees. We are looking for blaze marks which single out particular trees. We see none."); *see also Gen. Hosp. Corp. v. Sienna Biopharmaceuticals, Inc.*, 888 F.3d 1368, 1372 (Fed. Cir. 2018) ("As we stated in *Purdue Pharma*, 'one cannot disclose a forest in the original application, and then pick a tree out of the forest and say here is my invention.'") (citing *Purdue*, 230 F.3d at 1326.).

70. BMW NA will serve detailed contentions regarding invalidity of the '765 patent after receiving detailed contentions from Stragent regarding how BMW NA's products allegedly infringe the claims of the asserted patents in accordance with the Court's standard scheduling order for patent cases. BMW NA reserves the right to supplement its invalidity contentions as discovery progresses.

## COUNT IX
### (Declaration of Unenforceability of the '477 Patent)

71. BMW NA restates and incorporates by reference each of the allegations of paragraphs 1 through 70 of these Counterclaims as though fully set forth herein.

72. The '477 patent was prosecuted by Stragent's prosecution counsel, Thomas D. Fortenberry and Patrick Caldwell. *See, e.g.,* D.I. 12, Ex. U at 162-163 (Applicant's Remarks Made in an Amendment), 171-73 (Jan. 25, 2019 Transmittal Letter). Messrs. Fortenberry and Caldwell intentionally and knowingly failed to disclose material information during the prosecution of the '477 patent in violation of their duty of candor to the Patent Office. Had Messrs. Fortenberry and Caldwell or Stragent disclosed this information, the '477 patent would not have issued. Messrs. Fortenberry and Caldwell also continued to prosecute the '477 patent even though they knew related patents were held invalid.

73. For example, during prosecution of the '477 patent Mr. Caldwell admitted that "related patents" (i.e., the '705 and '843 patents) were the subject of litigation in *Stragent II*. However, again, Mr. Caldwell omitted that BMW served invalidity contentions on June 22, 2017 (*see Stragent II,* D.I. 96),[16] and thus Messrs. Fortenberry and Caldwell never submitted the invalidity contentions or informed the Examiner whether the art in the contentions had been previously disclosed (without identifying the disclosed art or when it was allegedly disclosed by Stragent).

---

[16] As discussed, Messrs. Caldwell and Fortenberry explicitly referenced these contentions in prior communications with the Patent Office in relation to Stragent's other patents, and thus they knew about the contentions and their materiality to the '477 patent. *See* D.I. 12, Ex. S at 77-78 (Dec. 27, 2016 Transmittal Letter); 106-107 (Feb. 27, 2017 Transmittal Letter); 132-133 (May 2, 2018 Transmittal Letter). Indeed, these contentions show that elements of the claims of the '705 and '843 patents are invalid, and as shown by Mr. Fortenberry's filing a terminal disclaimer to the '705 and '843 patents, Mr. Fortenberry knew and conceded that the '477 patent contained substantially the same subject matter as the invalid '705 and '843 patents. At a minimum, Stragent and Messrs. Caldwell and Fortenberry knew that the invalidity contentions were material and knew that they had an obligation to disclose them to the Examiner.

D.I. 12, Ex. U at 171-72 (Jan. 25, 2019 Transmittal Letter).  As discussed above, the invalidity contentions themselves included detailed claim charts and explanations of the invalidity of the '705 and '843 patents, which the Examiner would have found material to the patentability of the substantially similar claims of the '477 patent.  Messrs. Fortenberry and Caldwell and Stragent had a duty to also disclose the substance of the invalidity contentions themselves, as the invalidity arguments and detailed claim charts set forth were clearly material to patentability.  *See, e.g.*, M.P.E.P. § 2001.06.(c). And, again, as shown by Mr. Fortenberry's filing a terminal disclaimer to the '705 and '843 patents, Mr. Fortenberry knew and conceded that the '477 patent contained substantially the same subject matter as the invalid '705 and '843 patents.

74. Additionally, although Mr. Caldwell mentioned in a transmittal letter that the '843 and '705 patents were subject to certain IPRs (Nos. 2017-00457, 2017-00458, 2017-00676, 2017-00677, 2017-01502, 2017-01503, 2017-01504, 2017-01519, 2017-01520, 2017-01521, and 2017-01522), stated that Stragent had submitted the references from those IPRs, and said that the IPRs Mr. Caldwell identified had "received final written decisions rendering all challenged claims unpatentable," (D.I. 12, Ex. U at 172-173), Mr. Caldwell did not disclose this information until January 25, 2019.  Importantly, Mr. Caldwell omitted that *all* claims of the '843 and '705 patents had been invalidated; instead misleading the Examiner by stating that "all *challenged* claims" had been found unpatentable.  D.I. 12, Ex. U at 172 (emphasis added).  Moreover, this disclosure was almost two months after the latest final written decisions in the IPRs, more than six months after the earliest final written decisions in the IPRs, and only three days before the Examiner issued a Notice of Allowance.  Mr. Caldwell also failed to properly disclose the IPRs in a list as required by PTO rules.  This omission is clear from the face of the '477 patent, which does not list any of these IPRs.  This approach to identifying the IPR was taken with the intent to deceive the patent

office.  *See* 37 C.F.R. § 1.98(a)(1); M.P.E.P. § 609.04(a)(I) (9th ed. Rev. 10.2019, June 2020); 37
C.F.R. § 1.97(i) (non-compliant disclosures are not considered); *Leviton Mfg. Co. v. Shanghai
Meihao Elec., Inc.*, 613 F. Supp. 2d 670, 702 (D. Md. 2009), *vacated on other grounds by sub
nom. Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1357, 1362 (Fed. Cir.
2010).

75. And even though they knew that the PTAB held the closely related claims invalid before
they even filed this application, Messrs. Fortenberry and Caldwell continued to prosecute, and
ultimately allowed these patentably indistinct claims to issue, in violation of 37 C.F.R.
§ 42.73(d)(3).

76. These failures are clear and convincing evidence that Messrs. Fortenberry and Caldwell
(1) misrepresented or omitted information material to patentability and (2) did so with specific
intent to mislead or deceive the PTO, rendering the '477 patent unenforceable.  This conduct not
only renders the '477 patent unenforceable, it impacts Stragent's patent portfolio as a whole.  *See
Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1288-89 (Fed. Cir. 2011).

## <u>COUNT X</u>
### (Declaration of Unenforceability of the '790 Patent)

77. BMW NA restates and incorporates by reference each of the allegations of paragraphs 1
through 76 of these Counterclaims as though fully set forth herein.

78. The '790 patent was prosecuted by Stragent's prosecution counsel, Thomas D. Fortenberry.
*See, e.g.*, D.I. 12, Ex. T at 161-162 (June 16, 2018 Transmittal Letter).   Mr. Fortenberry
intentionally and knowingly failed to disclose material information during the prosecution of the
'790 patent in violation of his duty of candor to the Patent Office.  Had Mr. Fortenberry or Stragent
disclosed this information, the '790 patent would not have issued.  Mr. Fortenberry also continued
to prosecute the '790 patent even though it knew related patents were held invalid.

79. For example, during prosecution of the '790 patent, Mr. Fortenberry never disclosed that the related '705 and '843 patents were the subject of litigation in *Stragent II*, and thus never submitted the invalidity contentions or informed the Examiner whether the art in the contentions had been previously disclosed (without identifying what the disclosed art was or when it was allegedly disclosed by Stragent).  As discussed above, the invalidity contentions themselves included detailed claim charts and explanations of the invalidity of the '705 and '843 patents, which the Examiner would have found material to the patentability of the substantially similar claims of the '790 patent.  Indeed, these contentions show that elements of the claims of the '705 and '843 patents are invalid, and as shown by Mr. Fortenberry's filing a terminal disclaimer to the '705 and '843 patents, Mr. Fortenberry knew and conceded that the '790 patent contained substantially the same subject matter as the invalid '705 and '843 patents.  Moreover, Mr. Fortenberry indicated to the Examiner that "no invalidity contentions [had] been provided in such litigation" during prosecution of Stragent's other patents, *see, e.g.*, D.I. 12, Ex. S at 79, 107.  These facts show that Mr. Fortenberry knew the invalidity contentions themselves were material.  Indeed, at a minimum, Mr. Fortenberry had a duty to also disclose the invalidity contentions themselves, as the invalidity arguments and detailed claim charts set forth therein were clearly material to patentability.  Stragent and Mr. Fortenberry knew that the invalidity contentions were material and knew that they had an obligation to disclose them to the Examiner.  *See, e.g.*, M.P.E.P. § 2001.06.(c).  And, again, as shown by Mr. Fortenberry's filing a terminal disclaimer to the '705 and '843 patents, Mr. Fortenberry knew and conceded that the '790 patent contained substantially the same subject matter as the invalid '705 and '843 patents.

80. Additionally, although Mr. Fortenberry mentioned in a transmittal letter that the '843 and '705 patents were subject to certain IPRs (Nos. 2017-00457, 2017-00458, 2017-00676, and 2017-

00677), stated that Stragent was submitting the references from those IPRs, and said that the IPRs Mr. Fortenberry identified had "received final written decisions rendering all challenged claims unpatentable," (D.I. 12, Ex. T at 161-162), Mr. Fortenberry disclosed this information after the Examiner issued a Notice of Allowance on June 15, 2018 (D.I. 12, Ex. T at 135-136).   Mr. Fortenberry failed to disclose the IPRs in a list as required by PTO rules.   This omission is clear from the face of the '790 patent, which does not list any of these IPRs.   This approach to identifying the IPRs was taken with the intent to deceive the Patent Office.   *See* 37 C.F.R. § 1.98(a)(1); M.P.E.P. § 609.04(a)(I) (9th ed. Rev. 10.2019, June 2020); 37 C.F.R. § 1.97(i) (non-compliant disclosures are not considered); *Leviton Mfg. Co. v. Shanghai Meihao Elec., Inc.*, 613 F. Supp. 2d 670, 702 (D. Md. 2009), *vacated on other grounds by sub nom. Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1357, 1362 (Fed. Cir. 2010).

81. Moreover, Mr. Fortenberry never identified during prosecution of the '790 patent that the '843 and '705 patents were subject to IPR Nos. 2017-01502, 2017-01503, 2017-01504, 2017-01519, 2017-01520, 2017-01521, and 2017-01522; and Mr. Fortenberry never submitted the institution decisions from these IPRs or any other IPRs involving the '843 and '705 patents, which all issued in 2017, prior to the '790 patent's issuance on July 24, 2018.   And though Mr. Fortenberry knew that the PTAB held the closely related claims invalid, Mr. Fortenberry allowed the '790 patent to issue, in violation of 37 C.F.R. § 42.73(d)(3).

82. These failures are clear and convincing evidence that Mr. Fortenberry (1) misrepresented or omitted information material to patentability and (2) did so with specific intent to mislead or deceive the PTO, rendering the '790 patent unenforceable.   This conduct not only renders the '790 patent unenforceable, it impacts Stragent's patent portfolio as a whole.   *See Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1288-89 (Fed. Cir. 2011).

<u>COUNT XI</u>
**(Declaration of Unenforceability of the '036 Patent)**

83. BMW NA restates and incorporates by reference each of the allegations of paragraphs 1 through 82 of these Counterclaims as though fully set forth herein.

84. The '036 patent was prosecuted by Stragent's prosecution counsel, Thomas D. Fortenberry and Patrick Caldwell.  *See, e.g.*, D.I. 12, Ex. S at 78-79 (Jan. 12, 2017 Transmittal Letter); 106-07 (Feb. 27, 2017 Transmittal Letter); 131-33 (May 2, 2018 Transmittal Letter). Messrs. Fortenberry and Caldwell intentionally and knowingly failed to disclose material information during the prosecution of the '036 patent in violation of their duty of candor to the Patent Office.  Had Messrs. Fortenberry and Caldwell or Stragent disclosed this information, the '036 patent would not have issued.  Messrs. Fortenberry and Caldwell also continued to prosecute the '036 patent even though they knew related patents were held invalid.[17]

85. For example, during prosecution of the '036 patent, Mr. Fortenberry admitted that "related patents" (i.e., the '705 and '843 patents) were the subject of litigation in *Stragent II*.  However, again, Mr. Fortenberry expressly stated twice that "[n]o invalidity contentions [had] been provided in such litigation."  D.I. 12, Ex. S at 78-79 (Jan. 12, 2017 Transmittal Letter) & 106-07 (Feb. 27, 2017 Transmittal Letter).  And while Mr. Caldwell later retracted that statement, he did not submit the invalidity contentions themselves, claiming only that the art cited within the invalidity contentions had been previously disclosed (without identifying what the disclosed art was or when

---

[17] This is not the first time Mr. Caldwell, working as Stragent's prosecution counsel, has withheld material information from the Patent Office in pursuit of claims to asserted against BMW.  In a 2011 case Stragent filed against BMW and Mercedes (E.D. Tex. Case No. 6:11-cv-278), Mr. Caldwell withheld material litigation information during a reexamination of its asserted patent and prosecution of related applications.  *See* Case No. 6:11-cv-278, D.I. 380 (BMW's Motion for Leave to Amend), D.I. 380-13 (April 16, 2013 Letter from L. Lavenue to P. Caldwell).  Mr. Caldwell's pattern of behavior further evidences bad faith and an intent to deceive.

it was disclosed by Stragent). *Id.* at 132 (May 2, 2018 Transmittal Letter).  As discussed above, the invalidity contentions themselves included detailed claim charts and explanations of the invalidity of the '705 and '843 patents, which the Examiner would have found material to the patentability of the substantially similar claims of the '036 patent.  Indeed, these contentions show that elements of the claims of the '705 and '843 patents are invalid, and as shown by Mr. Fortenberry's filing a terminal disclaimer to the '705 and '843 patents, Mr. Fortenberry knew and conceded that the '036 patent contained substantially the same subject matter as the invalid '705 and '843 patents.  Moreover, Mr. Fortenberry indicated that "no invalidity contentions [had] been provided in such litigation,"  D.I. 12, Ex. S at 79, 107, and Mr. Caldwell felt the need to correct this assertion, *id.* at 132.  These facts shows that Messrs. Fortenberry and Caldwell knew the invalidity contentions themselves were material.  Indeed, at a minimum, Stragent and Messrs. Fortenberry and Caldwell had a duty to disclose the invalidity contentions themselves, as the invalidity arguments and detailed claim charts set forth therein were clearly material to patentability.  Stragent and Messrs. Fortenberry and Caldwell knew that the invalidity contentions were material and knew that they had an obligation to disclose them to the Examiner. *See, e.g.*, M.P.E.P. § 2001.06.(c).  And, again, as shown by Mr. Fortenberry's filing a terminal disclaimer to the '705 and '843 patents, Mr. Fortenberry knew and conceded that the '036 patent contained substantially the same subject matter as the invalid '705 and '843 patents.

86. Additionally, although Messrs. Fortenberry and Caldwell mentioned in transmittal letters that the '843 and '705 patents were subject to certain IPRs (Nos. 2017-00457, 2017-00458, 2017-00676, 2017-00677, 2017-01502, 2017-01503, 2017-01504, 2017-01519, 2017-01520, 2017-01521, and 2017-01522) and stated that Stragent was submitting the references from those IPRs (D.I. 12, Ex. S at 79, 107, 132), Messrs. Fortenberry and Caldwell failed to properly disclose the

IPRs in a list as required by PTO rules.  This omission is clear from the face of the '036 patent, which does not list any of these IPRs.  This approach to identifying the IPRs was taken with the intent to deceive the Patent Office.  *See* 37 C.F.R. § 1.98(a)(1); M.P.E.P. § 609.04(a)(I) (9th ed. Rev. 10.2019, June 2020); 37 C.F.R. § 1.97(i) (non-compliant disclosures are not considered); *Leviton Mfg. Co. v. Shanghai Meihao Elec., Inc.*, 613 F. Supp. 2d 670, 702 (D. Md. 2009), *vacated on other grounds by sub nom. Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1357, 1362 (Fed. Cir. 2010).

87. Moreover, Messrs. Fortenberry and Caldwell never submitted the institution decisions from the IPRs they did identify, despite the fact that those institution decisions all issued in 2017, prior to the '036 patent's issuance on June 19, 2018.  Indeed, Messrs. Fortenberry and Caldwell even failed to notify the Examiner that on June 13 and 14, 2018, prior to the '036 patent's issuance on June 19, 2018, the PTAB issued final written decisions finding claims of the '705 and '843 patents invalid.  And though they knew that the PTAB held the closely related claims invalid, Messrs. Fortenberry and Caldwell allowed the patent to issue, in violation of 37 C.F.R. § 42.73(d)(3).

88. These failures are clear and convincing evidence that Messrs. Fortenberry and Caldwell (1) misrepresented or omitted information material to patentability and (2) did so with specific intent to mislead or deceive the PTO, rendering the '036 patent unenforceable.  This conduct not only renders the '036 patent unenforceable, it impacts Stragent's patent portfolio as a whole.  *See Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1288-89 (Fed. Cir. 2011).

## <u>COUNT XII</u>
### (Declaration of Unenforceability of the '765 Patent)

89. BMW NA restates and incorporates by reference each of the allegations of paragraphs 1 through 88 of these Counterclaims as though fully set forth herein.

90. The '765 patent was prosecuted by Stragent's prosecution counsel, Thomas D. Fortenberry. *See, e.g.*, D.I. 12, Ex. Q at 29-30 (Dec. 27, 2016 Transmittal Letter), 111-112 (Feb. 27, 2017 Transmittal Letter). Mr. Fortenberry intentionally and knowingly failed to disclose material information during the prosecution of the '765 patent in violation of his duty of candor to the Patent Office. Had Mr. Fortenberry or Stragent disclosed this information, the '765 patent would not have issued.

91. For example, during prosecution of the '765 patent, Mr. Fortenberry admitted that "related patents" (*i.e.*, the '705 and '843 patents) were the subject of litigation in *Stragent II*, but Mr. Fortenberry expressly stated twice that "[n]o invalidity contentions" were provided in such litigation. D.I. 12, Ex. Q at 29-30 (Dec. 27, 2016 Transmittal Letter) & 111-112 (Feb. 27, 2017 Transmittal Letter). Yet, invalidity contentions were served on Stragent on June 22, 2017 (*see Stragent II*, D.I. 96), weeks before the '765 patent issued on July 11, 2017. Notwithstanding, neither Stragent nor Mr. Fortenberry provided these contentions to the Examiner. These invalidity contentions included claim charts detailing the invalidity of the '705 and '843 patents, which the Examiner would have found material to the patentability of the '765 patent. Indeed, these contentions show that elements of the claims of the '705 and '843 patents are invalid, and as shown by Mr. Fortenberry's filing a terminal disclaimer to the '705 and '843 patents, Mr. Fortenberry knew and conceded that the '765 patent contained substantially the same subject matter as the invalid '705 and '843 patents. Moreover, Mr. Fortenberry specifically mentioned to the Examiner that "no invalidity contentions [had] been provided in such litigation." D.I. 12, Ex. Q at 30, 112. These facts show that, at a minimum, Mr. Fortenberry and Stragent knew invalidity contentions to be material, and knew that he had an obligation to disclose such contentions if/when they were provided. Stragent and Mr. Fortenberry knew that the invalidity contentions were material and

knew that they had an obligation to disclose them to the Examiner. *See, e.g.*, M.P.E.P. § 2001.06.(c) (providing that "the existence of such litigation and any other material information arising therefrom must be brought to the attention of the examiner" and noting that an example of "such material information is any assertion that is made during litigation and/or trial proceeding which is contradictory to assertions made to the examiner" and information that may arise in "pleadings, admissions, discovery including interrogatories, depositions, and other documents and testimony.").

92. Additionally, although Mr. Fortenberry mentioned in transmittal letters that the '843 and '705 patents were subject to certain IPRs (Nos. 2017-00457, 2017-00458, 2017-00676, and 2017-00677) and stated that Stragent was submitting the references from those IPRs (D.I. 12, Ex. Q at 30, 112), Mr. Fortenberry failed to disclose these IPRs in a list as required by PTO rules.  As such, the file history of the '765 patent contains no indication that the Examiner focused on the IPRs, which is confirmed by the fact that the IPR decisions are not listed on the face of the '765 patent. *See* 37 C.F.R. § 1.98(a)(1); M.P.E.P. § 609.04(a)(I) (9th ed. Rev. 10.2019, June 2020) (explaining the requirement for a separate list of references); 37 C.F.R. § 1.97(i) (non-compliant disclosures are not considered); *Leviton Mfg. Co. v. Shanghai Meihao Elec., Inc.*, 613 F. Supp. 2d 670, 702 (D. Md. 2009) (recognizing that examiners rely on Information Disclosure Statement lists, not accompanying memoranda, when determining what to review), *vacated on other grounds by sub nom. Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1357, 1362 (Fed. Cir. 2010).  In other words, Mr. Fortenberry knowingly failed to disclose the actual IPRs directed at the '843 patent and '705 patent to the Examiner during prosecution of the '765 patent.  And, again, as shown by Mr. Fortenberry's filing a terminal disclaimer to the '705 and '843 patents, Mr. Fortenberry knew and conceded that the '765 patent contained substantially the same subject

matter as the invalid '705 and '843 patents.

93. Moreover, Mr. Fortenberry never submitted the institution decisions from the IPRs he did identify, despite the fact that those institution decisions issued on June 16, 2017, almost a month before the '765 patent issued on July 11, 2017.  And Mr. Fortenberry failed entirely to disclose the additional seven IPRs that were filed on June 6, 2017 (IPR2017-01502, IPR2017-01503, IPR2017-01504, IPR2017-01519, IPR2017-01520, IPR2017-01521, IPR2017-01522), despite having over a month to do so before the '765 patent issued on July 11, 2017.

94. These failures are clear and convincing evidence that Mr. Fortenberry (1) misrepresented or omitted information material to patentability; and (2) did so with specific intent to mislead or deceive the PTO, rendering the '765 patent unenforceable.  This not only renders the '765 patent unenforceable, it impacts Stragent's patent portfolio as a whole.  *See Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1288-89 (Fed. Cir. 2011).

## PRAYER FOR RELIEF

WHEREFORE, BMW NA respectfully requests entry of judgment as follows:

1.  That the Court dismiss Stragent's Complaint with prejudice;

2.  That the Court find and declare, and enter judgment, in favor of BMW NA and against Stragent that BMW NA has not infringed U.S. Patent No. 10,248,477;

3.  That the Court find and declare, and enter judgment, in favor of BMW NA and against Stragent that BMW NA has not infringed U.S. Patent No. 10,031,790;

4.  That the Court find and declare, and enter judgment, in favor of BMW NA and against Stragent that BMW NA has not infringed U.S. Patent No. 10,002,036;

5.  That the Court find and declare, and enter judgment, in favor of BMW NA and against Stragent that BMW NA has not infringed U.S. Patent No. 9,705,765;

6.   That the Court find and declare, and enter judgment, in favor of BMW NA and against Stragent that U.S. Patent No. 10,248,477 is invalid;

7.   That the Court find and declare, and enter judgment, in favor of BMW NA and against Stragent that U.S. Patent No. 10,031,790 is invalid;

8.   That the Court find and declare, and enter judgment, in favor of BMW NA and against Stragent that U.S. Patent No. 10,002,036 is invalid;

9.   That the Court find and declare, and enter judgment, in favor of BMW NA and against Stragent that U.S. Patent No. 9,705,765 is invalid;

10. That the Court find and declare, and enter judgment, in favor of BMW NA and against Stragent that U.S. Patent No. 10,248,477 is unenforceable;

11. That the Court find and declare, and enter judgment, in favor of BMW NA and against Stragent that U.S. Patent No. 10,031,790 is unenforceable;

12. That the Court find and declare, and enter judgment, in favor of BMW NA and against Stragent that U.S. Patent No. 10,002,036 is unenforceable;

13. That the Court find and declare, and enter judgment, in favor of BMW NA and against Stragent that U.S. Patent No. 9,705,765 is unenforceable;

14. That this case be declared "exceptional" under 35 U.S.C. § 285 and that BMW NA be awarded its attorneys' fees, expenses, and costs incurred in this action;

15. That Stragent be ordered to pay all costs associated with this action; and

16. That the Court grant to BMW NA such other and further relief as may be deemed just and appropriate.

## DEMAND FOR JURY TRIAL

BMW NA, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury

of any issues so triable by right.

Respectfully submitted,

OF COUNSEL:

Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
1875 Explorer Street, Suite 800
Reston, VA 20190
(571) 203-2700

R. Benjamin Cassady
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

Dated: May 13, 2021

/s/ Nathan R. Hoeschen
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
dfry@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*