IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STRAGENT, LLC,<br><br>**Plaintiff,**<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, and<br>BMW MANUFACTURING CO., LLC,<br><br>**Defendants.** | ~~Civil Action~~ **C.A.** No. ~~————~~20-510-LPS<br><br><br>**JURY TRIAL DEMANDED** |

**FIRST SUPPLEMENTAL COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement in which Plaintiff Stragent, LLC ("Plaintiff" or "Stragent") complains against Defendants BMW of North America, LLC and BMW Manufacturing Co., LLC, all upon information and belief, as follows:

**THE PARTIES**

1.      Plaintiff Stragent is a limited liability company existing under the laws of the State of Texas.

2.      Defendant BMW of North America, LLC ("BMW NA") is a limited liability company organized under the laws of Delaware, with its registered office located at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801, and having a place of business at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677.  BMW NA is a wholly owned subsidiary of BMW (US) Holding Corp., a holding entity, which in turn is a wholly owned subsidiary of Bayerische Motoren Werke AG ("BMW AG").  MINI USA, the distributor for the Mini brand of automobiles, is a division of BMW NA.

3.      Defendant BMW Manufacturing Co., LLC ("BMW MC") is a corporation

organized under the laws of Delaware, with its registered office located at The Corporation Trust

Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801, and

having a place of business at 1400 Highway 101 South, Greer, South Carolina 29651.  BMW

MC is a wholly owned subsidiary of BMW (US) Holding Corp., which in turn is a wholly owned

subsidiary of BMW AG.

4.      BMW AG is based in Munich, Germany, and is the parent company of the BMW

Group, which comprises BMW AG itself and all subsidiaries over which BMW AG has either

direct or indirect control.  The BMW Group encompasses entities in the Automotive,

Motorcycles and Financial Services operating segments operating in about 140 countries and

employing a workforce of about 134,682 people.  BMW NA and BMW MC are part of the

BMW Group.

5.      BMW NA markets all BMW-branded and Mini-branded automobiles in this

country.  BMW MC manufactures certain BMW cars in South Carolina, which it then transfers

to BMW NA to market in this country, or to export to other countries.

6.      The automobiles which are manufactured by BMW MC, whether sold in this

country or exported, and all BMW-branded and Mini-branded automobiles used, offered for sale,

sold or imported by BMW NA, since July 11, 2017, the date Patent No. 9,705,765 issued, are

collectively referred to here as "BMW Autos" or as "Accused Instrumentalities."

## JURISDICTION AND VENUE

7.      This is an action for patent infringement arising under the patent laws of the

United States of America, 35 U.S.C. § 1, et seq., including 35 U.S.C. § 271.  This Court has

subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.      This Court has general and specific personal jurisdiction over Defendants because

both Defendants reside in the State of Delaware.

9.      Venue is proper in this judicial district as to each Defendant under 28 U.S.C. §

1400(b) because both Defendants reside in this judicial district.

## DEFENDANTS' USE OF AUTOSAR TECHNOLOGY

10.      AUTOSAR (AUTomotive Open System ARchitecture) is an enabling technology,

and, particularly, a layered system for sharing information in an automobile vehicle, which has

been standardized by a worldwide development partnership of vehicle manufacturers, suppliers

and other companies from the electronics, semiconductor and software industry.  AUTOSAR

comprises, among other things, a set of specifications describing software architecture

components and defining their interfaces.  The AUTOSAR standards facilitate the exchange and

update of software and hardware over the service life of a vehicle by providing a common

software infrastructure for automotive systems of all vehicle domains based on standardized

interfaces for the different software layers.  E.g. the software in a control module is stored at

different levels. Highest up is the actual application that is unique to the different car

manufacturers.  The application corresponds to a certain function and means that something must

finally be carried out.  Execution is performed by the processor (Micro controller) generating an

electrical output signal. But before the applications request reaches the processor, it (i.e. the

request) must be managed by the different parts of the software.  Communication between these

software parts is now standardized according to guidelines from AUTOSAR.  This means that

the supplier supplies the control module with software that works directly with the car

manufacturer's application.  All control modules connected to FlexRay and CAN networks

contain software components corresponding to AUTOSAR's specifications.  AUTOSAR's

specifications also apply to communication that occurs via FlexRay and CAN networks.

11.     The BMW Group is a Core Partner in the AUTOSAR consortium.  The first

BMW automobiles incorporating the Autosar technology were the 2009 model year BMW Series

7.  Since then, Autosar has become the standard in all BMW automobiles.  Simon Furst, General

Manager Software Development and Software Infrastructure for BMW AG, confirmed that

AUTOSAR has been implemented as the core common requirement of all electronic control

units of all BMW automobiles, or, in Mr. Furst's words: "ONE ARCHITECTURE. ONE

STANDARD. AUTOSAR."  Dr. Furst's presentation indicates that BMW has incorporated the

entirety of the Autosar standard relevant to, at least, the Controller Area Network ("CAN"),

FlexRay and Ethernet networks.  There have been several releases of AUTOSAR.  The

AUTOSAR Releases are backward-compatible, and any differences in the releases do not affect

the application of the Autosar standard to the BMW Autos.

12.     In the period from July 11, 2017, all BMW Autos that have been made, used,

offered for sale, sold or imported into this country (including the X1, X2, X3, X4, X5, X6, X7,

i3, i8, The BMW 2, 3, 4, 5, 7, 8 Series, Z4 and M Models, as well as BMW's Mini-branded

automobiles) have incorporated the Autosar technology.

13.     The Autosar systems in BMW Autos include a number of automotive electronic

control units ("ECUs"), at least many of which are provided by third-party manufacturers.  The

ECUs comprise Autosar-related software provided by the BMW Group and software that is

specified by the BMW Group, and specifically (a) the Autosar stack, which is the Autosar basic

software ("BSW") including the microcontroller abstraction layer and run time environment

according to Autosar ver. 4.x.x; (b) BMW Autosar Core 4, which consists of the BMW System

Software and a compatible Autosar Stack; and (c)  BMW System Software, which denotes the

BMW specific parts of the BMW Autosar Core 4 as well as related software specifications,

documentations, software tools, exemplary build environment and tests.  Dr. Furst stated in his

presentation: "Common requirements and features to all OEMs shall be standardized in

Autosar," and that "BMW takes the AUTOSAR stack as base to develop and integrate all BMW

specific functionalities, called 'BMW system functions', on top," displaying an image of the

BMW Autosar implementation:



Dr. Furst continued: "BMW [i] delivers all BMW specific platform software parts as source code

for series development; [ii] delivers an example configuration and  a free license for the

make/build system; [and iii] delivers the SW-Cs in serial production quality and supports them

during the whole lifecycle."

14.     Thereafter, the ECU manufacturer will substitute its own Autosar Stack, but

BMW requires that the Stack be compliant with the Autosar 4.x.x. standard, or as Dr. Furst

stated, the ECU provider "Has to ensure that 'his' stack is compliant to the required AUTOSAR

version."  The ability to transmit data by way of AUTOSAR is an essential feature and function

of BMW Autos.

15.     Although, as noted above, it is apparent that all BMW Autos comprise the

Autosar systems specified by the BMW Group, it is impossible to determine the Autosar detail

for any given BMW Auto.  The reason is that the Autosar details are embedded in the firmware

of the various ECUs of the BMW Auto, and at least many of the ECUs in BMW Autos are VIN-

specific.  That firmware information cannot be extracted from the ECUs.  Further, the BMW

Group has maintained its implementation of Autosar as a trade secret, and it is not possible to

determine from publicly-available information the actual implementations of Autosar in BMW

Autos, at least beyond the information that the BMW Group has generally implemented the full

Autosar Release 4.x.x.  Thus, for example, one can consider BMW Part MEVD172G, which is

the Basic Control Unit DME:



16.     The part is manufactured by Bosch, pursuant to the BMW Group's specifications,

and is apparently incorporated into certain models.  Part MEVD172G has included the Infineon

TriCore TC1797 32-Bit Single-Chip Microcontroller:



The chip is designed to be compatible with Autosar for use in engine and transmission control

units, and includes, for example, both flash and Ram memory, both CAN and FlexRay

channels/modules, serial interfaces, and on-chip debug support.  Nevertheless, it is impossible to

credibly deconstruct the chip in the ECU to determine the software embedded in the chip.  This

illustrates the impossibility of determining the exact software that the BMW Group had specified

for any particular ECU or automobile.

COUNT I

INFRINGEMENT OF U.S. PATENT NO. 10,248,477

17.      Plaintiff realleges and incorporates by reference the paragraphs 1 through 16 of

this Complaint, as if fully set forth herein.

18.      Plaintiff is the owner by assignment of United States Patent No. 10,248,477

entitled "System, Method and Computer Program Product for Sharing Information in a

Distributed Framework" ("the '477 Patent").  The '477 Patent was duly and legally issued on

April 2, 2019.  A true and correct copy of the '477 Patent is attached as Exhibit A.  Plaintiff

holds the exclusive rights to bring suit with respect to any past, present, and future infringement

of the '477 Patent.

19.     The '477 Patent claims are materially different from the claims that had been

considered in *Inter Partes* Reviews IPR2017-00676, IPR2017-00677, IPR2017-00457, IPR2017-

00458, IPR2017-01503, IPR2017-01502, IPR2017-01504, 2017-01519, IPR2017-01520,

IPR2017-01521; 2017-01522, which collectively involved Patent 8,209,705 claims 1-20, and

Patent 8,566,843 claims 1-59 (collectively "Prior IPRs").  As one simple example, the '477

Patent claim 1 specifies a "layered system for sharing information," wherein the information is

stored and, thereafter, the system "share[s] the stored information with at least one of a plurality

of heterogeneous processes including at least one process associated with a second physical

network selected from the group consisting of FlexRay, Controller Area Network, and Local

Interconnect Network, utilizing a network protocol different from a protocol of the first physical

network," which limitations were not included in the claims considered in the Prior IPRs.

20.     During the prosecution of the applications leading to the '477 Patent, applicant

cited to the Patent Office all the prior art that was raised during the course of the Prior IPRs, and

advised the Patent Office of the Prior IPR proceedings, including that "The above cited *inter*

*partes* reviews have received final written decisions rendering all challenged claims

unpatentable."

21.     On or about January 21, 2021, Defendant BMW Of North America, LLC,

together with Mercedes-Benz USA, LLC, filed a "Petition For *Inter Partes* Review Of U.S.

Patent No. 10,248,477," which is Case IPR2021-00417.  On July 19, 2021, the United States

Patent And Trademark Office Patent Trial And Appeal Board Granted Institution of *Inter Partes*

Review of claims 1–30.

~~21.~~22.  Defendants have directly infringed ~~at least~~independent claim ~~1~~23 and its dependent claims 26, 27 and 28 of the '477 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing Accused Instrumentalities, on and after April 2, 2019, without license or authority.  Any Accused ~~Instrumentalities~~Instrumentality containing at least one ECU that operates according to, or in compliance with, Autosar 4.x.x standards inherently and necessarily infringes the above claims of  the '477 ~~Patent~~Patent.  Infringement is demonstrated by the ~~preliminary~~initial claim ~~chart attached as Exhibit E to this Complaint which compares the limitations of exemplary claim 1 of the '477 Patent against the Accused Instrumentalities.~~ charts served by Plaintiff on Defendants ~~are also believed to infringe claims 2, 4-6, 9-13, 15-17, 20-24, and 26-30 of the '477 Patent, which will be determined once Plaintiff has an opportunity for discovery, including receipt of Defendants' core documents~~on July 28, 2021.

~~22.~~23.  Plaintiff and Defendants have previously litigated U.S. Patents 8,209,705 and 8,566,843, which are patents which issued from a common application and are related to the '477 Patent.  In that prior litigation, Defendants never produced any evidence that the Accused Instrumentalities were not practicing Autosar and/or were not infringing the claims of U.S. Patents 8,209,705 and 8,566,843.  If such evidence had existed, Defendants would have disclosed such evidence to Plaintiff, because such proof would have been sufficient to avoid the cost of the prior or future litigations.  Thus, Defendants' inability to identify any limitation in the Plaintiff's asserted patents that is not found in Autosar or in Defendants' automotive vehicles is an eloquent admission by Defendants that the implementation of Autosar infringes the claims of Plaintiff's asserted patents and that Defendants are knowingly infringing.

23.24.  Defendants' acts of infringement have caused and continue to cause damage to

Plaintiff.  Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a

result of Defendants' wrongful acts.

**COUNT II**

**DIRECT INFRINGEMENT OF U.S. PATENT NO. 10,031,790**

24.25.  Plaintiff realleges and incorporates by reference prior paragraphs 1 through 16 of

this Complaint, as if fully set forth herein.

25.26.  Plaintiff is the owner by assignment of United States Patent No. 10,031,790 ("the

'790 Patent") entitled "System, Method and Computer Program Product for Sharing Information

in a Distributed Framework."  The '790 Patent was duly and legally issued on July 24, 2018.  A

true and correct copy of the '790 Patent is attached as Exhibit B.  Plaintiff holds the exclusive

rights to bring suit with respect to any past, present, and future infringement of the Patent.

26.27.  The '790 Patent claims are materially different from the claims that had been

considered in the Prior IPRs.  Further, during the prosecution of the applications leading to the

'790 Patent, applicant cited to the Patent Office all the prior art that  was raised during the course

of the Prior IPRs, and advised the Patent Office of the Prior IPR proceedings, including that "The

above cited *inter partes* reviews have received final written decisions rendering all challenged

claims unpatentable."

28.     On or about January 21, 2021, Defendant BMW Of North America, LLC,

together with Mercedes-Benz USA, LLC, filed a "Petition For *Inter Partes* Review Of U.S.

Patent No. 10,031,790," which is Case IPR2021-00418.  On July 19, 2021, the United States

Patent And Trademark Office Patent Trial And Appeal Board Rejected Institution of *Inter Partes*

Review.

27.29.  Defendants have been and now are directly infringing at leastinfringed independent claim 1 and its dependent claims 2, 4, 5, 6, 8 and 9, and independent claim 15 and its dependent claims 16, 18, 19, 20, 22, 23 and 24 of the '790 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing BMW Autos without license or authority.  Any BMW AutoAccused Instrumentality containing at least one ECU that operates according to, or in compliance with, Autosar 4.x.x standards inherently and necessarily infringes the above claims of this Patent.  Infringement is demonstrated by the preliminaryinitial claim chart attached as Exhibit F to this Complaint which compares the limitations of exemplary claim 15 of the '790 Patent against the Accused Instrumentalities. Further, Defendants' BMW Autos may also be infringing claims 1, 2, 11, 13 and 26, which will be determined oncecharts served by Plaintiff has an opportunity for discovery, including receipt of Defendants' core documentson Defendants on July 28, 2021.

28.30.  Defendants have been aware of the '790 Patent and its application to BMW Autos since at least June 22, 2018, when Plaintiff delivered a notice letter to Defendants' counsel, advising Defendants of the about-to-issue application for the '790 Patent, together with a claim chart demonstrating how BMW Autos fell within the scope of at least the allowed application claim 50, which is now claim 15 of the '790 Patent.

29.31.  Defendants' response to the above letter of June 22, 2018 never identified any limitation of the '790 Patent that was missing or could not be found in the Accused Instrumentalities.  Further, Plaintiff and Defendants have previously litigated U.S. Patents 8,209,705 and  8,566,843, which are patents which issued from a comm on application and are related to the '790 Patent.  In that prior litigation, Defendants never produced any evidence that the Accused Instrumentalities were not practicing Autosar and/or were not infringing the claims

of U.S. Patents 8,209,705 and 8,566,843.  If such evidence had existed, Defendants would have

disclosed such evidence to Plaintiff, because such proof would have been sufficient to avoid the

cost of the prior or future litigations.  Thus, Defendants' inability to identify any limitation in the

Plaintiff's patents that is not found in Autosar or in Defendants' automotive vehicles is an

eloquent admission by Defendants that the implementation of Autosar infringes the claims of

Plaintiff's asserted patents and that Defendants are knowingly infringing.  Defendants' acts of

infringement have been willful.

30.32.  Defendants' acts of infringement have caused and continue to cause damage to

Plaintiff. Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a

result of Defendants' wrongful acts.

### COUNT III

### DIRECT INFRINGEMENT OF U.S. PATENT NO. 10,002,036

31.33.  Plaintiff realleges and incorporates by reference prior paragraphs 1 through 16 of

this Complaint, as if fully set forth herein.

32.34.  Plaintiff is the owner by assignment of United States Patent No. 10,002,036 ("the

'036 Patent") entitled "System, Method and Computer Program Product for Sharing Information

in a Distributed Framework."  The '036 Patent was duly and legally issued on June 19, 2018.  A

true and correct copy of the '036 Patent is attached as Exhibit C.  Plaintiff holds the exclusive

rights to bring suit with respect to any past, present, and future infringement of the Patent.

33.35.  The '036 Patent claims are materially different from the claims that had been

considered in the Prior IPRs.  Further, during the prosecution of the applications leading to the

'036 Patent, applicant cited to the Patent Office the Prior IPRs and all the prior art that  was

raised during the course of the Prior IPRs.

36.      ~~Defendants have been and now is directly infringing at least claim 1~~On or about

January 21, 2021, Defendant BMW Of North America, LLC, together with Mercedes-Benz

USA, LLC, filed a series of petitions for *Inter Partes* Review of U.S. Patent No. 10,002,036,

which are IPR Cases 2021-00425; 2021-00426 and 2021-00427.  On July 19, 2021, in a series of

Decisions, the United States Patent And Trademark Office Patent Trial And Appeal Board

Rejected Institution of *Inter Partes* Review.  Other petitions for *Inter Partes* Review are pending.

~~34.~~37.  Defendants have directly infringed independent claim 1 and its dependent claims

9, 19, 34, 38, 72, 79, 82 and 98; and independent claim 102 and its dependent claims 103, 104,

105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 117, 121 and 122, of the '036 Patent, literally

and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or

importing the Accused Instrumentalities without license or authority.  Any Accused

~~Instrumentalities~~Instrumentality containing at least one ECU that operates according to, or in

compliance with, Autosar 4.x.x standards inherently and necessarily infringes the above claims

of  the '036 Patent.  Infringement is demonstrated by the ~~preliminary~~initial claim ~~chart attached~~

~~as Exhibit G to this Complaint which compares the limitations of exemplary claim 1 of the '036~~

~~Patent against the Accused Instrumentalities.  Further, the Accused Instrumentalities may also be~~

~~infringing claims 2-127, which will be determined once~~charts served by Plaintiff ~~has an~~

~~opportunity for discovery, including receipt of Defendants' core documents.~~on Defendants on

July 28, 2021.

~~35.~~38.  Defendants have been aware of the '036 Patent and its application to the Accused

Instrumentalities since at least June 22, 2018, when Plaintiff delivered a notice letter to

Defendants' counsel, advising Defendants of the '036 Patent, together with Exhibit G which

demonstrated how the Accused Instrumentalities  fell within the scope of claim 1 of the '036

Patent.

36.39.  Defendants' response to the above letter of June 22, 2018 never identified any

limitation of the '036 Patent that was missing or could not be found in the Accused

Instrumentalities.  Further, Plaintiff and Defendants have previously litigated U.S. Patents

8,209,705 and  8,566,843, which are patents which issued from a common application and are

related to the '036 Patent.  In that prior litigation, Defendants never produced any evidence that

the Accused Instrumentalities were not practicing Autosar and/or were not infringing the claims

of U.S. Patents 8,209,705 and 8,566,843.  If such evidence had existed, Defendants would have

disclosed such evidence to Plaintiff, because such proof would have been sufficient to avoid the

cost of the prior or future litigations.  Thus, Defendants' inability to identify any limitation in the

Plaintiff's asserted patents that is not found in Autosar or in Defendants' automotive vehicles is

an eloquent admission by Defendant that the implementation of Autosar infringes the claims of

Plaintiff's asserted patents and that Defendant is knowingly infringing.  Defendants' acts of

infringement have been willful.

37.40.  Defendants' acts of infringement have caused and continue to cause damage to

Plaintiff.  Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a

result of Defendants' wrongful acts.

## COUNT IV

### DIRECT INFRINGEMENT OF U.S. PATENT NO. 9,705,765

38.41.  Plaintiff realleges and incorporates by reference prior paragraphs 1 through 9 of

this Complaint, as if fully set forth herein.

39.42.  Plaintiff is the owner by assignment of United States Patent No. 9,705,765 ("the

'765 Patent") entitled "System, Method and Computer Program Product for Sharing Information

in a Distributed Framework." The '765 Patent was duly and legally issued on July 11, 2017. A

true and correct copy of the '765 Patent is attached as Exhibit D. Plaintiff holds the exclusive

rights to bring suit with respect to any past, present, and future infringement of the Patent.

40.43. The '765 Patent claims are materially different from the claims that had been

considered in the Prior IPRs. Further, during the prosecution of the applications leading to the

'765 Patent, applicant cited to the Patent Office the Prior IPRs and all the prior art that  was

raised during the course of the Prior IPRs.

44.    –On or about January 21, 2021, Defendant BMW Of North America, LLC,

together with Mercedes-Benz USA, LLC, filed a petition for *Inter Partes* Review of Patent

9,705,765, which is Case IPR2021-00419. On July 19, 2021, the United States Patent And

Trademark Office Patent Trial And Appeal Board Rejected Institution of *Inter Partes* Review.

41.45. Defendants have ~~been and now is~~ directly ~~infringing at least~~infringed independent

claims 12 and 24, and claims 26, 27, 28 and 31 dependent on claim ~~1~~24 of the '765 Patent,

literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling,

and/or importing the Accused Instrumentalities without license or authority. Any Accused

~~Instrumentalities~~Instrumentality containing at least one ECU that operates according to, or in

compliance with, Autosar 4.x.x standards inherently and necessarily infringes the above claims

of this Patent. Infringement is demonstrated by the ~~preliminary~~initial claim ~~chart attached as~~

~~Exhibit H to this Complaint which compares the limitations of exemplary claim 1 of the '765~~

~~Patent against the Accused Instrumentalities. Further, the Accused Instrumentalities may also be~~

~~infringing additional claims, which will be determined once~~charts served by Plaintiff ~~has an~~

~~opportunity for discovery, including receipt of Defendants' core documents.~~on Defendants on

July 28, 2021.

42.46.  Defendants have been aware of the '765 Patent and its application to the Accused

Instrumentalities since at least June 22, 2018, when Plaintiff delivered a notice letter to counsel,

advising Defendants of the '765 Patent, together with a claim chart demonstrating how the

Accused Instrumentalities fell within the scope of claim 1 of the '765 Patent.

43.47.  Defendants' response to the above letter of June 22, 2018 never identified any

limitation of the '765 Patent that was missing or could not be found in the Accused

Instrumentalities.  Further, Plaintiff and Defendants had previously litigated U.S. Patents

8,209,705 and 8,566,843, which are patents which issued from a common application and are

related to the '765  Patent.  In that prior litigation, Defendants never produced any evidence that

the Accused Instrumentalities were not practicing Autosar and/or were not infringing the claims

of U.S. Patents 8,209,705 and 8,566,843.  If such evidence had existed, Defendants would have

disclosed such evidence to Plaintiff, because such proof would have been sufficient to avoid the

cost of the prior or future litigations.  Thus, Defendants' inability to identify any limitation in the

Plaintiff's  asserted patents that is not found in Autosar or in Defendants' automotive vehicles is

an eloquent admission by Defendants that the implementation of Autosar infringes the claims of

Plaintiff's asserted patents and that Defendants are  knowingly infringing.  Defendant's acts of

infringement have been willful.

44.48.  Defendants' acts of infringement have caused and continue to cause damage to

Plaintiff.  Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a

result of Defendants' wrongful acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Stragent requests that this Court enter:

A.   A judgment in favor of Stragent that Defendants have infringed the '477 Patent, the

'790 Patent, the '036 Patent and the '765 Patent;

B.  A judgment and order requiring Defendants to pay Stragent its damages, costs,

expenses, prejudgment and post-judgment interest, and post-judgment royalties for

Defendants' infringement of the Patents as provided under 35 U.S.C. § 284;

C.  A judgment and order holding that Defendants' infringement was willful, and

awarding treble damages and attorney fees and expenses;

D.  Judgment that this is an exceptional case, and, thus, awarding attorney fees and

expenses to Plaintiff; and

E.  Any and all other relief to which the Court may deem Stragent entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiff Stragent, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial

by jury of any issues so triable by right.


Dated: July 30, 2021                              Respectfully submitted,

*Of Counsel*:                                     */s/ George Pazuniak*
                                                  George Pazuniak (DE Bar 478)
Thomas F. Meagher                                 O'KELLY & ~~ERNST~~O'ROURKE, LLC
Alan Christopher Pattillo                         824 N. Market St.
Meagher Emanuel Laks Goldberg & Liao,             Suite 1001A
LLP                                               Wilmington, DE 19801
One Palmer Square                                 ~~Tel: 302-478-4230~~
Suite 325                                         Direct: 207-359-8576
Princeton, New Jersey 08542                       Email: GP@del-iplaw.com
(609) 454-3500
tmeagher@meagheremanuel.com                       *Counsel for Plaintiff*
cpattillo@meagheremanuel.com                      *Stragent, LLC.*


- 17 -