# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **STRAGENT, LLC,** | |
| **Plaintiff,** | |
| **v.** | **C.A. No. 20-510-LPS** |
| **BMW OF NORTH AMERICA, LLC** *et al,* | |
| **Defendants** | |
| **STRAGENT, LLC,** | |
| **Plaintiff,** | |
| **v.** | **C.A. No. 20-511-LPS** |
| **MERCEDES-BENZ USA, LLC** *et al,* | |
| **Defendants** | |
| **STRAGENT, LLC,** | |
| **Plaintiff,** | |
| **v.** | **C.A. No. 20-512-LPS** |
| **VOLVO CAR NORTH AMERICA, LLC,** | |
| **Defendant** | |

### PLAINTIFF'S ANSWERING
### CLAIM CONSTRUCTION BRIEF

George Pazuniak (DE Bar No. 478)
O'Kelly & O'Rourke, LLC
824 North Market Street, Suite 1001A
Wilmington, DE 19801
Direct: (207) 359-8576
gp@del-iplaw.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

I.    CLAIM CONSTRUCTIONS ............................................................................. - 1 -

   A.   "DEBUGGING MODE" ....................................................................... - 1 -

      i.   *No Distinction Between "Program" and "Mode"* .................................. *- 1 -*

      ii.   *Defendants Improperly Copy Specification As Claim Construction* .......... *2 -*

      iii.   *Defendants' Construction Creates Confusion* ............................................ *3 -*

      iv.   *Defendants Do Not Define "Debugging"* ................................................. *4 -*

      v.   *Defendants Do Not Materially Challenge Stragent's Construction* .......... *- 5 -*

   B.   "ISSUE A STORAGE RESOURCE REQUEST IN CONNECTION WITH A STORAGE RESOURCE OF THE AUTOMOTIVE ELECTRONIC CONTROL UNIT" ............................................................ - 5 -

      i.   *Defendants' Proposed Construction Adds Limitations* ............................. *- 5 -*

      ii.   *Defendants' Addition of A "Request For Storing A Message " Requirement* ............ *- 6 -*

      *Contradicts Express Language Of Some Claims* .................................................. *6 -*

      iii.   *Defendants Improperly Substitute "In Conjunction" for "In Connection"* ............. *- 7 -*

      iv.   *"With The Message Being Received" In Defendants' Construction* .......... *- 7 -*

      v.   *"Received At The Automotive ECU/Hardware Processor"* ....................... *- 8 -*

      vi.   *Defendants' Irrelevant Discussion Of The Bulletin Board* ....................... *- 8 -*

      vii.   *Stragent's Construction Is Correct* ........................................................... *- 9 -*

   C.   "DETERMINING WHETHER A STORAGE RESOURCE IS AVAILABLE" .................................. - 10 -

   D.   "RE-TRYING AN ACCESS IN CONNECTION WITH THE STORAGE RESOURCE" .................... - 11 -

   E.   "SHARING THE INFORMATION" .................................................................................. - 12 -

   F.   "CONFIGURE THE DATA STRUCTURE OF THE NON-VOLATILE MEMORY" ......................... - 16 -

iii

II.   CONCLUSION ................................................................................................................- 17 -

# TABLE OF AUTHORITIES

<u>CASES</u>

*Amgen Inc. v. Sandoz Inc.*,

   923 F.3d 1023 (Fed. Cir. 2019) --------------------------------------------------------------- 4 -

*Apple Inc. v. Wi-LAN Inc.*,

   ___ F.4th ___, 2022 WL 333666 (Fed. Cir. 2022) ------------------------------------------- 3 -

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,

   448 F.3d 1324 (Fed. Cir. 2006 --------------------------------------------------------------- 4 -

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,

   512 F.3d 1338 (Fed.Cir.2008)------------------------------------------------------------- - 14 -

*Biogen Int'l GMBH v. Mylan Pharms. Inc.*,

   18 F.4th 1333 (Fed. Cir. 2021) ------------------------------------------------------------ 2 -

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*,

   224 F.3d 1308 (Fed.Cir.2000)-------------------------------------------------------------- 4 -

*Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*,

   677 F.3d 1361 (Fed. Cir. 2012) ------------------------------------------------------------ 4 -

*Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*,

   946 F.3d 1367 (Fed. Cir. 2020) --------------------------------------------------- 2 -, - 15 -

*Evolusion Concepts, Inc. v. HOC Events, Inc.*,

   22 F.4th 1361 (Fed. Cir. 2022) ------------------------------------------------------------ 3 -

*Neville v. Found. Constructors, Inc.*,

   972 F.3d 1350 (Fed. Cir. 2020) ------------------------------------------------------------ 4 -

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,

   521 F.3d 1351 (Fed. Cir. 2008) ----------------------------------------------- - 4 -, - 9 -, - 13 -

*Phillips v. AWH Corp.*,

   415 F.3d 1303 (Fed. Cir. 2005) ----------------------------------------------- - 2 -, - 5 -, - 14 -

*ScriptPro LLC v. Innovation Assocs., Inc.*,

   833 F.3d 1336 (Fed. Cir. 2016) ------------------------------------------------------ 2 -

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,

   595 F.3d 1340 (Fed.Cir.2010) ------------------------------------------------------ 3 -

*Wi-Lan, Inc. v. Apple, Inc.*,

   811 F.3d 455 (Fed. Cir. 2016) ----------------------------------------------------- - 13 -

S<span style="font-variant:small-caps">TATUTES</span>

35 U.S.C. § 112 ------------------------------------------------------------------------ 2 -

## I.   CLAIM CONSTRUCTIONS

### a.   "Debugging mode"

**Pat. 10,248,477 claims 27, 28**

| Stragent's Construction | Defendants' Construction |
|---|---|
| "a program or module to detect, locate and fix errors in the system while it is running." | "a mode, distinct from normal operation, that allows the network to run in a fail-safe reduced operation mode or in a diagnostic mode that allows inspection of the system, while it is running" |

### i.   No Distinction Between "Program" and "Mode"

Contrary to Defendants' argument, raised for the first time in its brief, there is no issue surrounding the word "mode" versus "program or module."  The complete limitation in claims 27 and 28 reads "the electronic control unit comprises … *code to run in* a debugging mode." Further, the ordinary technical definition of the term "mode" is the operating state of a program or module:

> The operational state of a computer or *program*.  For example, edit mode is the state in which a program accepts changes to a file"

(Microsoft Dictionary, Exhibit 4) [1] , or

> The operating state in which one places a *program* by choosing among a set of exclusive operating option.

(Webster's New World Computer Dictionary, Exhibit 5).

Stragent's construction is correct because it incorporates the claim's requirement for a "code to run" the mode, which, in turn, is an operating state of a program.  But there would be no substantive difference if the word "mode" was substituted for "program or module" in Stragent's

---

[1]  All emphases are supplied unless otherwise indicated.

construction.

### ii.    <u>Defendants Improperly Copy Specification As Claim Construction</u>

Defendants admit that their proposed construction essentially copied a single sentence from the specification. (D.I. 67 at 3).  There are several problems with that approach.  It is axiomatic that a patent specification is written for a POSITA and not a lay person.  *Biogen Int'l GMBH v. Mylan Pharms. Inc.*, 18 F.4th 1333, 1350 (Fed. Cir. 2021); 35 U.S.C. § 112 ("The specification shall contain a written description of the invention … in such full, clear, concise, and exact terms as to enable any *person skilled in the art to which it pertains, or with which it is most nearly connected*, to make and use the same….").  Thus, a POSITA may understand the words in the specification, but a lay juror may not.

The more fundamental problem with Defendants' approach, however, is that copying a sentence from the specification to construe a claim term is a model example of "one of the cardinal sins of patent law—reading a limitation from the written description into the claims." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) (en banc).  Claims are not limited to the embodiments or examples in the specification.  *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d 1367, 1380 (Fed. Cir. 2020) ("examples alone cannot limit the claimed invention as a whole"); *ScriptPro LLC v. Innovation Assocs., Inc.*, 833 F.3d 1336, 1341 (Fed. Cir. 2016) ("a specification's focus on one particular embodiment or purpose cannot limit the described invention where that specification expressly contemplates other embodiments or purposes").

Defendants do not suggest that the one sentence that they copied constituted the inventors' definition or a disclaimer, and, thus, copying the sentence as the construction runs

afoul of the rule that claims are not limited to a patent's exact disclosure.  See, e.g., *Apple Inc. v. Wi-LAN Inc.*, ___ F.4th ___, 2022 WL 333666 at *4 (Fed. Cir. 2022); *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1352 (Fed.Cir.2010) ("[W]hen the specification uses a single embodiment to enable the claims, courts should not limit the broader claim language to that embodiment unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest execution or restriction").[2]

"Debugging mode" must be given "its plain and ordinary meaning as understood by a skilled artisan." *Apple, supra*.  It is improper to rely on a single sentence in a specification to limit an otherwise broader claim term.  *Evolusion Concepts, Inc. v. HOC Events, Inc.*, 22 F.4th 1361, 1367 (Fed. Cir. 2022) (reversing a district court's claim construction that "relied primarily on one sentence of the specification").

### iii.    **Defendants' Construction Creates Confusion**

As explained in Stragent's Opening Brief, the '477 claims separately require both a diagnostic mode and a debugging mode, and both terms have their respective and different ordinary meanings.  (D.I. 66 at 7-8).  By copying the sentence from the specification that referred

---

[2]  Further, the sentence copied by Defendants was included in a paragraph that begins with "The concept that an embedded communication and computing network can run in multiple modes as an example of the different modes …" and then lists various modes.  (11:28-44).  And after that paragraph, the inventors stated:

> While various embodiments have been described above, it should be understood that they have been presented by the way of example only, and not limitation. Thus, the breadth and scope of a preferred embodiment should be not limited by any of the above described exemplary embodiments, but should be defined only in accordance with the following claims and their equivalents.

(11:52-58).

- 3 -

to both modes, Defendants are causing confusion as to the distinction between the two modes, and potentially erroneously suggesting to the jury that debugging and diagnostics refer to the same thing. *Neville v. Found. Constructors, Inc.*, 972 F.3d 1350, 1357 (Fed. Cir. 2020) ("While the 'protrusion' and 'end plate' structures must be connected in some fashion, the use of these two terms in a claim requires that they connote different meanings"); *Amgen Inc. v. Sandoz Inc.*, 923 F.3d 1023, 1031 (Fed. Cir. 2019) ("Such a conclusion would require interpreting 'disease treating' as 'stem cell mobilizing,' but our precedent instructs that different claim terms are presumed to have different meanings"); *Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1369 (Fed. Cir. 2012) ("The general presumption [is] that different terms have different meanings"); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006) ("we must presume that the use of different terms in the claims connotes different meanings.") (quoting *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed.Cir.2000)).

There is no justification for introducing the diagnostics mode into the construction of the debugging mode.

### iv.   <u>Defendants Do Not Define "Debugging"</u>

Defendants do not construe "debugging."  Defendants say only that "debugging" is a mode that is distinct from normal operation but do not explain what constitutes "debugging." Defendants' construction is, thus, singularly unhelpful in helping the jury understand the meaning of the "debugging mode." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008).

- 4 -

### v.      **Defendants Further Err With "In A Fail-Safe Reduced Operation Mode"**

By copying the sentence from the specification, Defendants include the term "in a fail-safe reduced operation mode."  That addition does not help define "debugging mode" because the words "fail-safe reduced operation mode" is not understandable to a jury.

Further, Defendants are again guilty of the "cardinal sin" of "reading a limitation from the written description into the claims."  *Phillips, supra.*

### v.      **Defendants Do Not Materially Challenge Stragent's Construction**

Other than faulting Stragent for using the words "program or module" to explain "mode," Defendants notably do not challenge Stragent's construction of the "debugging mode."

### b.  **"issue a storage resource request in connection with a storage resource of the automotive electronic control unit"**

**Pats. 10,002,036 claims 1 and 102; 10,031,790 claim 1 and 15; 10,248,477 claim 23**

| Stragent's Construction | Defendants' Construction |
|---|---|
| No construction is needed.<br><br>If construction is needed, "make a request in connection with the storage resource of the automotive electronic control unit" | "issue a request for storing a message in conjunction with the message being received at the automotive electronic control unit/hardware processor" |

### i.      **Defendants' Proposed Construction Adds Limitations**

Defendants construe the claim term as being limited to "a request for storing a message." But the limitation in issue does not restrict the purpose of the storage resource request.  Thus, '477 Patent Claim 23 does not limit the purpose of the storage resource request at all:

> in response to the receipt of the <u>information</u>, issue a storage resource request in connection with a storage resource….

- 5 -

Defendants' Brief ignores the actual language of Claim 23, and never explains how the above claim language can be construed to mean "issue a request *for storing a message*." Defendants have artificially limited the claim by adding an extraneous limitation, which is impermissible rewriting of the claim.

### ii.   Defendants' Addition of A "Request For Storing A Message " Requirement Contradicts Express Language Of Some Claims

Even if it was proper to construe the claim term to include a specific purpose for the request, Defendants directly contradict the express language of the claims by proposing that the request must be "for storing a *messag*e." Thus, Claims 1 and 15 of the '790 Patent expressly say that the storage request has the purpose of "storing <u>the information</u>":

> in response to the <u>identification of the information,</u>
>
> issue a storage resource request in connection with a storage resource of the automotive ECU and determine whether the storage resource is available for <u>storing the information</u>….

The claim's express language, "storing the information," is very different than "storing a *message*" as Defendants propose. Indeed, claims 1 and 15 of the '790 Patent carefully distinguish between a "message" and "information." Thus, claim 1 includes the requirement for the ECU to "identify information associated with a message" clearly signifying that the two terms are distinct. The claim language is consistent with the specification which notes in the Summary of Invention" that the inventive system includes "receiving information in the form of a packet data unit representing datum information carried by an overall message from a first physical network." (1:38-44). Thus, a message carry information, but a message includes far more than the information.

- 6 -

Claims 1 and 102 of the '036 Patent similarly provide that the ECU will "identify information associated with a message" and then:

> issue a storage resource request in connection with a storage resource of the automotive ECU and determine whether the storage resource is available for <u>storing the information</u>;

There can be no infringement under Defendants' untenable construction that directly contradicts the claims' actual language because no ECU operates under the terms provided by Defendants.  Avoiding infringement, however, is not a reasonable basis for proposing such rewriting of the claims.  Defendants' proposed construction should be rejected.

### iii.   <u>Defendants Improperly Substitute "In Conjunction" for "In Connection"</u>

Defendants propose to artificially limit the claim term by substituting the claims' language "in connection" with "in conjunction."  As explained in Stragent's Opening Brief, "in conjunction" has narrower scope than "in connection," and Defendants propose the more restrictive term even though "in conjunction" is nowhere found in the intrinsic record.  (D.I. 66 at 12).  Yet, Defendants do not even address, much less support, their proposed substitution of the claim words with the more restrictive term.

### iv.   <u>"With The Message Being Received" In Defendants' Construction</u>

Defendants propose to further rewrite and artificially limit the claim term by adding the requirement the ECU must "issue a request for storing a message *in conjunction with the message being received*."  Incredibly, Defendants' only support for their proposed construction is that the claims include the limitation "in response to the identification of the *information*, issue a storage resource request *in connection* with a storage resource of the automotive ECU." (D.I. 67

at 5).  Defendants never try to justify their substitution of "message" for the word "information" in the claims, or the substitution of "in conjunction" for "in connection" in the claims.

### v.    <u>**"Received At The Automotive ECU/Hardware Processor"**</u>

A final defect of Defendants' construction is that Defendants require that the request issue "in conjunction" with "the message being received at the automotive ECU/hardware processor."  None of the claims say anything about any message or information being received "at the automotive ECU/hardware processor."  Defendants again do not address at all the addition of this extraneous limitation, much less support it.  Defendants' lack of transparency and Defendants' indiscriminate mixing of "messages" and "information" in other arguments create the added problem in that it is not apparent what is the "message" that is supposed to be received at the ECU/hardware processor.  This is an independent reason to reject Defendants' proposed construction.

### vi.    <u>**Defendants' Irrelevant Discussion Of The Bulletin Board**</u>

Defendants discuss the specification's description of the bulletin board embodiment. (D.I. 67 at 6-7).  Defendants' discussion centers on Figures 6, 8 and 10, and the associated text in the specification.

The discussion is irrelevant because Defendants do not point to anything in the specification's description of the bulletin board embodiment that could conceivably support their claim construction.  For example, the specification does not discuss storing messages and even the excerpts relied upon by Defendants say plainly that the cited portions of the specification depict a structure to "*store information* extracted from messages received from other network devices via a 'remote message communication interface.'"  (D.I. 67 at 6).  Defendants do not

point to anything in the cited bulletin board description that in any way supports Defendants' proposal to eradicate the careful distinction that the Stragent specification and claims draw between a message and the information that the messages carry, or which otherwise supports any of Defendants' proposed language.

But beyond the mere fact that the bulletin board description does not support Defendants' construction, there is a more fundamental issue that the bulletin board is simply an embodiment of the claimed invention.  The bulletin board is not the invention, although some dependent claims do specifically call out for a bulletin board.  See, e.g., Claims 2, 3, 13, 14, 24 and 25 of the'477 Patent.  Thus, the bulletin board disclosure is merely an embodiment of the invention, and the embodiment does not restrict or limit the claims.

### vii.    Stragent's Construction Is Correct

Defendants argue that the Court's decision in *O2 Micro*, 521 F.3d at 1361, requires the district court to construe limitations if the parties present any dispute.  But *O2 Micro* held only that construction is needed only if "a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute."  *Id.*  Here, Defendant's wholly-improper proposed construction can be rejected, and, thus, there is no genuine dispute.

Defendants further assert, without any analysis or support, that Stragent's alternative construction is "inconsistent with the claims' express recital of a particular request—namely, a 'storage resource request.'"  It is unclear what Defendants are arguing, but Stragent's construction says ""make a request in connection with the storage resource of the automotive electronic control unit".

### c. "determining whether a storage resource is available"

### Pat. 9,705,765, claims 12 and 24

| Stragent's Construction | Defendants' Construction |
|---|---|
| No construction is needed.<br><br>If construction is needed, "ascertain or decide the availability of a storage resource" | "determine the availability of a storage resource for a message in the automotive electronic control unit in conjunction with the message being received by the automotive electronic control unit" |

The entire limitation reads "determining whether a storage resource is available." Nothing in the words of the limitation itself or any preceding limitation restricts the purpose of the "determining" step or addresses what would be stored. Defendants' proposed construction does not construe any words of the limitation but blatantly adds limitations. Defendants do not cite any legal authority for such revision of the claims in the guise of construction.

Defendants assert that "the ECU performs the step of 'determining whether a storage resource is available' so that it can decide whether to store the 'information associated with a message' received by the ECU—i.e., the 'determining' step is performed in conjunction with the message being received by the ECU, as Defendants propose." (D.I. 67 at 8-9). Notably, Defendants' argument is self-contradictory because Defendants again cite language referring to "information" to justify construing the limitation as requiring storage of messages, which, as previously noted, is a very different animal than "information." (p. 6, *supra*).

Defendants argue that their construction is correct because claims 12/24 later provide that "if the storage resource is available, storing <u>the information</u> utilizing the storage resource." (D.I. 67 at 8). Defendants' argument is legally erroneous. Defendants cite no authority for the proposition that an earlier limitation in a claim should be construed to incorporate a later separate

- 10 -

claim limitation.  Indeed the result would be plain confusion for the jury because there would be

a construction of one limitation that includes an element, and then there would be a separate

limitation providing for the same element.  It is not surprising that Defendants cannot provide

any support for their desire to create error and confusion.

Finally, Defendants again cite the bulletin board embodiment in the specification.  (D.I.

67 at 9).  For the same reasons as stated earlier, Defendants misconstrue the embodiment, but,

even if Defendants were correct, Defendants have not even suggested any basis as to why the

Court should ignore the law that claims are not limited to specific embodiments.  Defendants

have not argued "lexicography or disclaimer."  See pp. 2-3, *supra*.

.

### d.  "re-trying an access in connection with the storage resource"

### Pat. 9,705,765 claims 12 and 24

| Stragent's Construction | Defendants' Construction |
|---|---|
| No construction is needed.<br><br>If construction is needed, "making another attempt to ascertain or decide the availability of a storage resource" | "again determining whether a storage resource is available after a first determination that a storage resource is not available, for example by issuing another storage resource request in connection with the storage resource" |

Defendants have not explained why the term requires any construction.  Claims 12/24 of

the '765 Patent are straightforward:

> if the storage resource is not available, ascertaining whether a threshold has been
> reached and <u>re-trying an access in connection with the storage resource</u> if the
> threshold has not been reached….

Defendants assert that construction is required but then suggest a construction that has

many more words which not fail to clarify the claim language, but, instead, rewrite the claim in

- 11 -

words that are more confusing than anything in the claim language.

Preliminarily, Defendants begin the construction with the word "again." This word is unnecessary and confusing, because the construction does not identify the prior event to the jury. The jury could very easily be misled by the "again" and assume that the "again" refers to similar, but not identical, wording of the claims of other patents.

To add further confusion, Defendants' proposed construction ends with a specific narrow "for example" that revises the claim language. Defendants' claim construction example is "issuing *another* storage resource request in connection with the storage resource." That example suggests that the claims had earlier required a "storage request." But Claims 12/24 do not include any "storage request." Claims 12/24 had earlier required "determining whether a storage resource *is available*." But determining a storage resource's <u>availability</u> is not a "storage request." Thus, Defendants' construction is not only unnecessary but is contradicts the plain wording of the claims.

### e. "sharing the information"

**Pats. 9,705,765 claims 12, 24, 28 and 31; 10,031,790 claims 1–2, 5, 8–9, 15–16, 20, and 22–24; 10,002,036, claims 1 and 102–103**

| Stragent's Construction | Defendants' Construction |
|---|---|
| "permitting the information stored in a storage resource to be used by another process" | *As set forth in the Parties' Joint Claim Chart (D.I. 63):* "transmitting the information, without requiring storage of the information prior to transmitting" <br><br> *As set forth in Defendants' Opening Brief (D.I. 67):* "making the information accessible, without requiring storage of the information" |

Defendants' argument is confusing, because, as shown above, Defendants' brief argues a different construction for "sharing the information" than that which Defendants had included in the Parties' Joint Claim Chart.  (D.I. 63).  More confusingly, the two alternative constructions are inconsistent with each other, and, yet, Defendants do not say whether they had changed their construction.  Although it is not clear whether Defendants are proposing the construction included in the Joint Claim Chart or the one in their brief, both alternatives are erroneous.

Whichever alternative and inconsistent construction Defendants intend to press at the hearing, Defendants propose the wording "without requiring storage of the information."  In support, Defendants allege that Stragent is including "storing" within the definition of "sharing." But Stragent never argued that "sharing" requires "storing."  That is a strawman.  As explained in Stragent's Opening Brief, the issue is identifying to the jury what information is "**the** information" that the claims require to be shared.

Defendants ignore the words "*the* information" in their proposed construction and in their Opening Brief.  Indeed, Defendants drop the article "the" when quoting the limitation.  See, for example, D.I. 67 at 12.  But, as Defendants themselves have argued (D.I. 67 at 7) the Court should construe claims whose meaning is disputed by the parties.  *O2 Micro*., *supra*, 521 F.3d at 1362 ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").  Here that mandated construction requires identifying to the jury what is "*the* information."

In construing "*the* information," the law is that "the definite articles 'the' or 'said' in a claim refers back to the same term recited earlier in the claim."  *Wi-Lan, Inc. v. Apple, Inc*., 811 F.3d 455, 462 (Fed. Cir. 2016) (citing *Baldwin Graphic Sys., Inc. v. Siebert, Inc*., 512 F.3d 1338,

1342 (Fed.Cir.2008)).  The only antecedent basis for "the information" in the claims here in issue is the information that had been stored.  Defendants have not challenged that stored information is the only antecedent for "*the* information."  It would help the jury to know what information is included within the term "the information" when determining infringement or validity.

Given that the antecedent for "*the* information" is information previously stored, Defendants' proposed construction is confusing and legally erroneous to the extent it suggests to the jury that "the information" need not be the stored information.

Defendants cite to various PTAB decisions.  However, the PTAB decisions are irrelevant for three independent reasons.  First, the claims involved in those decisions were different than the claims here involved, and were not written in the form that required "the information" to be stored.  Because the issue is the antecedent basis of a claim word that begins with the definite article "the," the issue is claim-specific.  "*The* information" in one claim may be different than "*the* information" in another claim.  Second, the decisions never construed "the information" in the claims then issue, and certainly not the claims here in suit.  Third, the decisions were rendered under the prior "broadest reasonable interpretation" standard, and not the *Phillips* standard that governs here.  (See, e.g., Defendant's Exh. E at 15; Exh. F at 15; Exh. G at 10; Exh. G at 11-12).[3]

---

[3]  Defendants note that the PTAB pointed to an excerpt in the specification that "did not appear" to require storing before sharing information.  (D.I. 67 at 13).  Notably the PTAB did not say that storing was positively not required, but only so "appeared."  (Exhibit E at 19).  But, even if the common specification were to describe one embodiment of sharing without storing, it also includes multiple embodiments where sharing is required, and it is not unusual for patent claims to cover some embodiments but not others.  Construction is always governed by the specific wording of the claims in issue.

As to the other wording of the constructions, Defendants do not address their original proposal that "sharing" means "transmitting the information," and thus Defendants have abandoned that proposed language.  Defendants also do not support their new proposal that "sharing" means "making the information accessible," except for a short statement that the PTAB had in one decision so construed a similar limitation in the context of different claims.  (p. 14).  However, the PTAB never considered Stragent's terminology or the current claims, and, thus, the decisions are not helpful.

Finally, Defendants' proposal to include "without requiring storage of the information" in the construction is problematic.  "Negative limitations added during claim construction must find support either in the specification or the prosecution history" and may be included only if the "specification adequately supports the addition of a negative limitation where the limitation is expressly disclaimed or where 'independent lexicography in the written description' justifies adding it.  *Eko Brands, supra*, 946 F.3d at 1381.  Defendants' Brief ignores this law.

Further, the negative limitation is potentially misleading to the jury, because the claims admittedly require storing information which even Defendants concede can be shared.  Yet the language appears to affirmatively preclude stored information from being shared.  The negative limitation should be rejected.

Stragent's proposed construction is correct for the reasons detailed in Stragent's opening brief, and is more specific, and, thus, more helpful to the jury than Defendants' more generic language.  It should be adopted.

### f.   "configure the data structure of the non-volatile memory"

#### Pat. 10,248,477 claim 23

| Stragent's Construction | Defendants' Construction |
|---|---|
| "Allocate memory, and/or implement the relationships between the data elements and/or the allowable functions" | "make a change to the data structure of the non-volatile memory" |

Defendants never address the fundamental problems with their proposed construction.

First, the term being construed is "configure *the data structur*e of the non-volatile memory." Defendants do not define "data structure" but simply repeat the claim's wording except substituting the word "change" for the word "configure" in the claim.

Second, by substituting "configure" with "change," Defendants have altered the claim. The two words are not synonymous, as is plain from any dictionary definition of the two terms. See, for example, the definitions of the two words in the online Merriam-Webster :

| "Configure" | "Change" |
|---|---|
| "to set up for operation especially in a particular way" | "1a.  to make different in some particular …. 2a: to replace with another" |
| https://www.merriam-webster.com/dictionary/configure | https://www.merriam-webster.com/dictionary/change |

To be sure, configuring the data structure may include changing it, but configuration can also be broader because a set-up does not necessarily require any changes.

Defendants have not explained why "configure" must mean "change."  As shown in Stragent's Opening Brief, the specification uses the word "configure."  (4:42-45; 10:17-24)  The specification also uses the word "change." (10:9-16; 10:25-29)  And the specification refers to "change to the configuration and/or the functions (SW code)."  (11:32)  But nothing in the

- 16 -

intrinsic record says that the inventors redefined "configure" to mean "change," and did not disclaim the broader meaning of "configure."  Defendants have not explained by "configure" has to mean "change."  Thus, Defendants have not construed the claim limitation, but have simply rewritten the term.

Defendants contend that the '477 specification does not use the words of its construction. Stragent was attempting to assist the jury with the concept of configuring a data structure.  The concept of configuring a data structure would be understandable to a person skilled in the art, but is not specifically explained in the '477 Patent and would not necessarily be understandable to a lay juror.  If Stragent's explanation of the limitation is unsupported by the language of the specification, then the limitation should simply not be construed, and leave to the issue to expert testimony at trial.

The only dispute between the parties is whether it is proper to substitute the word "change" in Defendants' proposed definition for the word "configure" in the limitation.  For reasons detailed above, such substitution would not explain or construe the limitation, but change it.  If Defendants' proposed change is rejected, then there is no dispute between the parties that the Court needs to address.

## II.   <u>CONCLUSION</u>

Plaintiff Stragent respectfully asks that the Court construe the claims as set forth in Stragent's Opening Brief and this Answering Brief.

Respectfully Submitted,

_/s/ George Pazuniak_
George Pazuniak (DE Bar No. 478)
O'Kelly & O'Rourke, LLC
824 North Market Street, Suite 1001A
Wilmington, DE 19801
Direct: (207) 359-8676
gp@del-iplaw.com

_Attorney for Plaintiff_