IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STRAGENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-510 (LPS) |
| | ) | |
| BMW OF NORTH AMERICA, LLC and | ) | |
| BMW MANUFACTURING CO., LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| STRAGENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-511 (LPS) |
| | ) | |
| MERCEDES-BENZ USA, LLC, | ) | |
| MERCEDES-BENZ VANS, LLC, | ) | |
| DAIMLER TRUCKS NORTH AMERICA LLC and | ) | |
| DAIMLER NORTH AMERICA CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| STRAGENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-512 (LPS) |
| | ) | |
| VOLVO CAR NORTH AMERICA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................................................1

II.     RESPONSE TO STRAGENT'S BACKGROUND AND STATEMENT OF
        FACTS ...............................................................................................................1

III.    RESPONSE TO STRAGENT'S CLAIM CONSTRUCTION ARGUMENTS .................2

        A.      "debugging mode" ('477 patent, claims 27 and 28) ................................2

        B.      "issue a storage resource request in connection with a storage resource of
                the automotive electronic control unit" ('036 patent, claims 1 and 102;
                '790 patent, claims 1 and 15; '477 patent, claim 23)................................5

        C.      "determining whether a storage resource is available" ('036 patent, claim
                1 and 102; '765 patent, claims 12 and 24; '790 patent, claims 1 and 15;
                '477 patent, claim 23) ...............................................................................7

        D.      "re-trying an access in connection with the storage resource" ('765 patent,
                claims 12 and 24) .......................................................................................8

        E.      "sharing the information" ('765 patent, claims 12, 24, 28, and 31; '790
                patent, claims 1, 2, 5, 8, 9, 15, 16, 20, and 22-24; '036 patent, claims 1 and
                102-103)....................................................................................................10

        F.      "configure the data structure of the non-volatile memory" ('477 patent,
                claim 23) ..................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott Labs. v. Sandoz Inc.*,
   544 F.3d 1341 (Fed. Cir. 2008) ............................................................................................9

*Altiris, Inc. v. Symantec Corp.*,
   318 F.3d 1363 (Fed. Cir. 2003) ..........................................................................................12

*Cronos Techs., LLC v. Expedia, Inc.*,
   C.A. No. 13-1538-LPS, 2016 WL 3982309 (D. Del. July 22, 2016) ...................................15

*Curtiss-Wright Flow Control Corp. v. Velan Inc.*,
   438 F.3d 1374 (Fed. Cir. 2006) ............................................................................................3

*Ericsson, Inc. v. D-Link Systems, Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014) ..........................................................................................11

*Fantasy Sports Props. v. Sportsline.com, Inc.*,
   287 F.3d 1108 (Fed. Cir. 2002) ..........................................................................................10

*Finjan, Inc. v. Cisco Sys., Inc.*,
   837 Fed. Appx. 799 (Fed. Cir. 2020) ..................................................................................13

*Immunex Corp. v. Sanofi-Aventis U.S. LLC*,
   977 F.3d 1212 (Fed. Cir. 2020) ..........................................................................................10

*In re Suitco Surface, Inc.*,
   603 F.3d 1255 (Fed. Cir. 2010) ..........................................................................................10

*Jonsson v. Stanley Works*,
   903 F.2d 812 (Fed. Cir. 1990) ............................................................................................15

*Medegen MMS, Inc. v. ICU Medical, Inc.*,
   317 Fed. Appx. 982 (Fed. Cir. 2008) ..................................................................................13

*MTD Prods. Inc. v. Iancu*,
   933 F.3d 1336 (Fed. Cir. 2019) ....................................................................................11, 13

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) .................................................................................. *passim*

*Toro Co. v. White Consol. Indus., Inc.*,
   199 F.3d 1295 (Fed. Cir. 1999) ............................................................................................3

## I.      INTRODUCTION

Defendants BMW of North America, LLC and BMW Manufacturing Co., LLC ("BMW"); Mercedes-Benz USA, LLC, Mercedes-Benz Vans, LLC, Daimler Trucks North America, LLC, and Daimler North America Corp. ("Daimler-Mercedes"); and Volvo Car North America, LLC ("VCNA") (collectively, "Defendants") hereby submit their response to Stragent's Opening Claim Construction Brief (D.I. 66[1]).

Each of Stragent's proposed constructions or non-constructions finds no support in the claims' language, contradicts the specification, or causes confusion for the jury.  For "debugging mode" and "sharing the information," Stragent's positions are undermined by Stragent's inconsistent constructions—construing "mode" two different ways—and inconsistent with the claims' plain language—ignoring both previous antecedent terms and conditional language.  For "configure the date structure of the non-volatile memory," Stragent claims that its proposed construction tracks the meaning of "configure," yet not only does Stragent's proposed construction not align with Stragent's preferred dictionary definitions, it finds no support in the intrinsic record. And for the remaining terms, Stragent's own arguments demonstrate that the terms must be construed to provide technical understanding to the jury, yet Stragent argues that no construction is needed.  Stragent's proposed constructions and non-constructions are unsupported by the law and the intrinsic record and should be rejected.

## II.     RESPONSE TO STRAGENT'S BACKGROUND AND STATEMENT OF FACTS

Stragent's description of purported novelty of the asserted patents over the prior art is unfounded and improper for claim construction.  Stragent characterizes the prior art as lacking

---

[1] Docket entries refer to C.A. No. 20-510-LPS unless otherwise noted.

features that are in fact in the prior art.  D.I. 66 at 2-6. Indeed, the PTAB found each of the allegedly missing features in the prior art when it invalidated the parent patents to those asserted here. *See generally,* D.I. 44 (Amended Answer and Counterclaims), ¶¶ 7-10, 15-16.  Contrary to Stragent's assertions, sharing information across different networks with different protocols was well-known prior to Stragent's alleged inventions.

Additionally, Stragent notes that the four asserted patents share a common specification, and to avoid confusion the parties have agreed to reference the specification of Patent 10,248,477 ("'477 Patent").  D.I. 66 at 1.  However, Stragent then asserts that this agreement was made "with the understanding that the different claims are not identical and, thus, claim differing inventions." *Id*.  Defendants do not agree with that characterization of the asserted patents and claims.  To the contrary, the claims of the four asserted patents are not patentably distinct from one another, nor are they patentably distinct from the claims of the parent patents that were previously invalidated by the PTAB.

Stragent also provides an incorrect listing of asserted claims.  D.I. 66 at 1.  In particular, claim 18 of U.S. Patent No. 10,002,036 is not among the list of asserted claims identified in Stragent's infringement contentions dated July 28, 2021.

## III.  RESPONSE TO STRAGENT'S CLAIM CONSTRUCTION ARGUMENTS

### A.  "debugging mode" ('477 patent, claims 27 and 28)

| Defendants' Proposed Construction | Stragent's Proposed Construction |
|---|---|
| "a mode, distinct from normal operation, that allows the network to run in a fail-safe reduced operation mode or in a diagnostic mode that allows inspection of the system, while it is running" | "a program or module to detect, locate and fix errors in the system while it is running" |

Contrary to Stragent's assertions, the specification of the asserted patents does not identify

"debugging mode" as entirely distinct from "diagnostic mode," nor does it "include the diagnostic mode as part of the 'emergency or debug' module." D.I. 66 at 7. Instead, the specification expressly states that the diagnostic mode is part of the debug *mode* (not a debug *module*):

> The emergency or debug *mode* lets the network run in a fail-safe reduced operation mode or in a diagnostic mode that allows inspection of the system, while it is running.

'477 patent, 11:36-39 (emphasis added).

Stragent argues that claim differentiation mandates that the terms "debugging mode" and "diagnostic mode" be distinguished. D.I. 66 at 7. But "the doctrine of claim differentiation does not serve to broaden claims beyond their meaning in light of the specification and does not override clear statements of scope in the specification and the prosecution history." *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1302 (Fed. Cir. 1999) (internal citations omitted). Claim differentiation merely creates a "presumption that an independent claim should not be construed as requiring a limitation added by a dependent claim." *See Curtiss-Wright Flow Control Corp. v. Velan Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006). This presumption can be rebutted if a claim term, when properly read in light of the specification, imposes a certain meaning on a term, then that meaning must apply, regardless of the presence of a similar limitations in a dependent claim. This understanding applies here.

The only time the term "diagnostic mode" appears in the specification is in the passage cited above. '477 patent, 11:36-39. Thus, the specification imposes the meaning that "debugging mode" encompasses "a diagnostic mode." Although claims 11, 22, and 28 recite both "debugging mode" and "diagnostic mode," Defendants' proposed construction of "debugging mode" is disjunctive: a fail-safe reduced operation mode or a diagnostic mode. Thus, the use of both terms in the same claim is not inconsistent with Defendants' proposed construction because "debugging mode" can be read to mean something other than "a diagnostic mode"—i.e., "a fail-safe reduced

operation mode"—when the two terms are used in the same claim.  For at least these reasons, claim differentiation, even if applied, does not preclude Defendants' proposed construction (which is the definition provided in the specification for the term).

Stragent complains that Defendants' proposed construction will cause confusion by introducing the phrase "a fail-safe reduced operation mode."  But this phrase is not only readily understandable to a POSITA and a jury, it is also the exact phrase Stragent used to describe an aspect of the "debugging mode."  *See* '477 patent, 11:36-39.  With its proposed construction, Stragent seeks to divorce "debugging mode" from "a fail-safe reduced operation mode," contradicting the specification without citing any supporting intrinsic or extrinsic evidentiary basis whatsoever.

Finally, Stragent's reliance on *Evolusion Concepts, Inc. v. HOC Events, Inc.* is misplaced. First, contrary to Stragent's argument, Defendants do not contend that Stragent has disclaimed any meaning of "debugging mode."  D.I. 66 at p. 9.  Second, unlike *Evolusion*, the issue in this case is not whether Defendants' proposed construction excludes a particular meaning—Stragent does not assert that it does.  Rather, the issue is whether the Court should adopt Defendants' proposed construction, which is supported by the specification, or Stragent's proposed construction, which is not.  Because "claims must be read in view of the specification, of which they are a part," the Court should adopt Defendants' proposed construction and reject Stragent's proposed construction.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (internal quotation marks and citation omitted).

**B.**      **"issue a storage resource request in connection with a storage resource of the automotive electronic control unit" ('036 patent, claims 1 and 102; '790 patent, claims 1 and 15; '477 patent, claim 23)**

| Defendants' Proposed Construction | Stragent's Proposed Construction |
|---|---|
| "issue a request for storing <u>information associated with</u> a message in conjunction with the message being received at the automotive electronic control unit/hardware processor" | No construction is required.<br><br>If construction is required, "make a request in connection with the storage resource of the automotive electronic control unit" |

Defendants' proposed construction, which referenced storage of "messages," did not exclude any (let alone all) embodiments of the Asserted Patents, as Stragent claims. The "data" or "information" that Stragent identifies is a component of a "message," and therefore any construction directed to a message would necessarily include "data" or "information." Notwithstanding, Defendants do not contend that storage of an entire message is required, and accordingly have modified their proposed construction to clarify that what is requested to be stored in the storage resource includes at least information associated with a message.

Although Stragent argues that no construction of this phrase is required, its arguments indicate otherwise. For example, Stragent references Figs. 10 and 11 in relation to the term "request," but only one of these "request[s]" is relevant to the language of the asserted claims: the "bulletin board store procedure (804)" of Fig. 10. Within the context of this store procedure (referenced as "explicit resource management" in the patent), a request is made for a storage resource in association with data received at the automotive ECU. D.I. 66 at 10 (citing '477 patent, 7:52-57). This tracks the language of the claim, which is directed to the storing "the information [associated with a message ***received*** utilizing a Flexray network protocol associated with a Flexray network]" in the requested storage resource. *See, e.g.,* '036 patent, claim 1 (emphasis added); *see also id.*, claim 102 (referencing Controller Area Network); '790 patent, claim 1 and 15; '477

5

patent, claim 23 ("in response to the receipt of the information, issue a storage resource request in connection with a storage resource").

The embodiment of Fig. 11 is unrelated to the storing of information in a storage resource. Instead, this embodiment is directed to the retrieval of information that has already been stored. D.I. 66 at 10 (citing '477 patent, 8:12-16).  As the plain language of the asserted claims is directed to requesting a storage resource for storing information that is received at the automotive ECU, Stragent's citation to the embodiment of Fig. 11 is irrelevant.

Further, Stragent asserts that the claims recite issuing a storage resource request "without limiting the nature or subject of the storage request."  D.I. 66 at 12.  That is wrong. As discussed above, the request for a storage resource is made for the purpose of storing information associated with a message received by the ECU.  This is confirmed by the surrounding claim language,  which states that the ECU "determine[s] whether the resource is available for storing the information." *See, e.g.,* '036 patent, claim 1.  "[T]he information" referenced here is the same information received in the previous limitation, which is "received utilizing a Flexray network." *Id.*  This is the case for each claim in which this term appears—in each instance, the "storage resource request" is made for the purpose of determining whether the storage resource is available for storing "the information," which refers to information received by the ECU.  *See, e.g.,* '036 patent, claim 102; '790 patent, claims 1 and 15; '477 patent, claim 23.  Thus, the storage request of the claims is tied directly to the receipt of information.

Lastly, it is unclear what Stragent is arguing when it contends that "in connection with" is broader than "in conjunction with."  D.I. 66 at 12.  The claim language recites that the storage resource request is issued "in connection with a storage resource of the automotive electronic control unit," which is understood to mean that the request is directed to a storage resource of the

automotive ECU (instead of any generic storage resource anywhere).  *See, e.g.,* '036 patent, claim 1.  Defendants' construction further clarifies that the request is associated with the information associated with a message received utilizing a Flexray (or CAN) network protocol associated with a Flexray (or CAN) network.  *Id.*  In other words, when the automotive ECU receives a message via one of these networks, the ECU issues a storage resource request in conjunction with this receive operation to determine whether a storage resource request is available to store the received information.  This is entirely consistent with the specification of the Asserted Patents (*see, e.g.,* '477 patent, 7:25-30, 7:52-8:3), which specifies that the storage resource request is issued in response to the receipt of information from an external network (*see, e.g., id.*, claim 23).  To the extent that Stragent contends that the terms "connection" and "conjunction" are different in scope, without addressing or otherwise acknowledging the requirements of the claim language as a whole, it confirms that Defendant is correct in its belief that clarification of the requirements of this claim language is necessary.

C.     **"determining whether a storage resource is available" ('036 patent, claim 1 and 102; '765 patent, claims 12 and 24; '790 patent, claims 1 and 15; '477 patent, claim 23)**

| **Defendants' Proposed Construction** | **Stragent's Proposed Construction** |
|---|---|
| "determine the availability of a storage resource for <u>information associated with</u> a message in the automotive electronic control unit in conjunction with the message being received by the automotive electronic control unit" | No construction is required.<br><br>If construction is required, "ascertain or decide the availability of a storage resource" |

Consistent with Defendants' revision to their proposed construction for "issue a storage request…," Defendants clarify their construction to expressly reference "information associated with a message," rather than the entirety of the message.  With that revision, Defendants' proposed construction is correct.  Stragent contends that Defendants' proposed construction adds

requirements from the Asserted Patents' embodiments.  D.I. 66 at 13.  This is incorrect.  As discussed above in relation to "issue a storage request…," Defendants' proposed construction merely reflects how the identified language would be understood within the context of the claims as a whole, while Stragent's proposed construction ignores that context.

The plain language of the claims specifies that "if the storage resource is available, storing the information utilizing the storage resource."  '765 patent, claims 12 and 24; *see also* '036 patent, claims 1 and 102 ("in the event the storage resource is available, store the information utilizing the storage resource"); '790 patent, claim 1 (same); '477 patent, claim 23 ("in the event the storage resource is available, store the information in the storage resource").  "The information" referenced here is the information associated with a message "received utilizing a [Controller Area Network / Flexray network] protocol associated with a [Controller Area Network / Flexray network]."  *Id.* This language highlights the claims' requirement that the automotive ECU determines the storage resource's availability in response to receiving the information associated with a received message, so that the apparatus can ascertain whether this information can be stored in the storage resource. *Id.*  The claims' "determination" is not generic; it is made specifically in relation to the receipt of information, ascertaining whether storage resources are available for storing that specific information.  Although Stragent does not dispute this requirement, its contention that Defendants "seem[] intent on introducing requirements found in the patents' embodiments" acknowledges that Stragent seeks a non-construction of this term in an attempt to unduly broaden its scope.  This attempt should be rejected.

   **D.   "re-trying an access in connection with the storage resource" ('765 patent, claims 12 and 24)**

| Defendants' Proposed Construction | Stragent's Proposed Construction |
|---|---|
| "again determining whether a storage | No construction is required. |

8

| resource is available after a first determination that a storage resource is not available, for example by issuing another storage resource request in connection with the storage resource" | If construction is required, "making another attempt to ascertain or decide the availability of a storage resource" |
|---|---|

Stragent's arguments demonstrate that this Court should construe the term "re-trying an access in connection with the storage resource" because the plain and ordinary language is confusing and does not capture the actual meaning of the terms within the context of the claim as a whole. Though Stragent notes, "the plain language of the claim does not say – try again to 'determine[e] [*sic*] whether a storage resource is available,'" Stragent appears to agree that the claim requires "decid[ing] the availability of a storage resource," notwithstanding the fact that the plain language itself merely reflects "access" to the storage resource, rather than determining the resource's availability. D.I. 66 at 14 ("If construction is required, 'making another attempt to ascertain or decide the availability of a storage resource'"). This requirement—evident to a POSITA but admittedly absent from the plain language of the claims' text—should be explained to the jury through claim construction. *See Abbott Labs. v. Sandoz Inc.*, 544 F.3d 1341, 1360 (Fed. Cir. 2008) ("[Claim construction] aid[s] the decision-maker, by restating the claims in non-technical terms."). Indeed, as Defendants explained in their Initial Brief, re-trying access to a storage resource requires determining if the storage resource is available because, otherwise, the process would try only once. D.I. 67 at 10. The Court's claim construction should include this necessary step so the jury can understand the scope of the claims.

Further, Defendants' clarifying example used to explain the technical context of "re-trying" to the jury—by explaining how access in connection with the storage resource may be re-tried— will help the jury. Stragent's argument that clarifying examples are "fraught with potential risk that juries will come to view the claim language as requiring something equivalent to the proffered

example in the Court's construction," is incorrect and inconsistent with Federal Circuit precedent. D.I. 66 at 14. The Federal Circuit has used examples in claim constructions in other cases. *See, e.g.*, *Immunex Corp. v. Sanofi-Aventis U.S. LLC*, 977 F.3d 1212, 1219 (Fed. Cir. 2020) (construing "human antibodies" to "include[] those that are partially human—*including* 'humanized' antibodies.") (emphasis added); *Fantasy Sports Props. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1116 (Fed. Cir. 2002) (construing "bonus points" to mean "additional points awarded beyond those given in an actual football game for unusual scoring plays, *such as* when a player scores in a manner not typically associated with his position") (emphasis added); *In re Suitco Surface, Inc.*, 603 F.3d 1255, 1259–61 (Fed. Cir. 2010) (noting the construction of "uniform flexible film" to mean "*including, for example*, a flexible film having the same thickness throughout, as well as a flexible film having the same textured surface throughout," was unchallenged) (emphasis added). The exemplary language in Defendants' claim construction will help the jury understand the technical claim terms here.

Thus, so that it is clear for the jury, the term "re-trying an access in connection with the storage resource" should be construed as "again determining whether a storage resource is available after a first determination that a storage resource is not available, for example by issuing another storage resource request in connection with the storage resource."

**E.     "sharing the information" ('765 patent, claims 12, 24, 28, and 31; '790 patent, claims 1, 2, 5, 8, 9, 15, 16, 20, and 22-24; '036 patent, claims 1 and 102-103)**

| Defendants' Proposed Construction | Stragent's Proposed Construction |
|---|---|
| "making the information accessible, without requiring storage of the information" | "permitting the information stored in a storage resource to be used by another process" |

"Sharing the information" should be construed as "making the information accessible, without requiring storage of the information" because that construction is consistent with the claim

language and the specification, and does not read out embodiments.  Stragent's construction, on the other hand, is simply an attempt to import a limitation from the specification into the claims.

There is no requirement in the claims that "the information" be stored before it is shared. When construing a claim term, a court should begin with the claim's language, then refer to the patent's specification, before consulting dictionary definitions.  *See Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1218 (Fed. Cir. 2014) ("In fact, the specification is the single best guide to the meaning of the claim terms; it is usually dispositive.") (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc)).  Further, a claim construction that reads an embodiment out of the claim is generally disfavored. *See MTD Prods. Inc. v. Iancu*, 933 F.3d 1336, 1342 (Fed. Cir. 2019) (quoting *Phillips*, 415 F.3d at 1323).

Contrary to Stragent's proposed construction, the examples from the patent Stragent cites show that "sharing" information does not require that it first be "stored."  For instance, Stragent asserts that "the information" claimed in claims 1 and 15 of the '790 patent, claims 12 and 24 of the '765 patent, and claims 1 and 102 of the '036 patent has to be "stored" before being shared because "[t]he only antecedent in the claims is information that was stored."  D.I. 66 at 15–16. This antecedent argument has several fundamental flaws.

First, Stragent identifies the incorrect antecedent for "the information" in the disputed terms.  Specifically, in claims 1 and 15 of the '790 patent, the antecedent to "the information" is "information associated with a message received utilizing a [Flexray network / Controller Area Network] protocol."  '790 patent 12:44–45, 15:3–5.  Thus, "the information" recited in the disputed claim language merely refers to "information associated with a message received"— contrary to Stragent's argument, at that stage, the "information" is not "stored."  The same is true in other claims in which the term "sharing the information" appears.  Specifically, in the claims of

the '036 patent, the antecedent to "the information" is "information associated with a message received utilizing a [Flexray network / Controller Area Network] protocol." '036 patent at 12:43–44; 18:49–51.  Similarly, in the claims of the '765 patent, the antecedent to "the information" is "information associated with a message received utilizing a [Controller Area Network / Flexray network] protocol." '765 patent at 14:7–8; 16:34–35.

Although the claims also recite that "the information" is stored if the storage resource is determined to be available, the mere fact that those limitations appear before the "sharing" limitations in the claims does not mean that the "storing" step must occur before the "sharing" step.  Claims are not ordinarily construed to be limited to the sequence in which steps appear as written, and there is no reason to depart from that general rule in this case.  *See, e.g.*, *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369–71 (Fed. Cir. 2003) (court erred in construing claim to require a "setting" step be perfrmed before a "booting" step and after a "testing automatically" step).  Here, although the automotive ECU must have received "the information" before that information can be shared or stored by the ECU, nothing in the claims requires that the information be stored before it is shared.  Nothing precludes information that is not stored from being shared, or otherwise precludes information from being stored and shared concurrently.

Additionally, the claim language Stragent quotes for its antecedent examples makes clear that *storing* the information in the storage resource is conditional (i.e., not required), but *sharing* the information is not conditional (i.e., required)—the plain language shows that the information is only stored in the storage resource *if* the storage resource is available.  Similarly, claims 1 and 15 of the '765 patent require only that the storage resource be *"configured to* store the information that is received," not that the storage resource be *required to* store the information.

Stragent's construction also erroneously focuses on a single embodinment—in Figure 7—

12

while reading out other embodiments in the specification. When describing the alleged invention as a whole, the specification confirms that information need not be stored before it can be shared. For example, the specification describes that "[t]he ECU may receive a set of real-time input variables from local sensors (108), which are connected via discrete signal lines (113), or from networked sensors (106), which are connected through a multiplexing bus-system (112). . . . Then the ECU (102) processes the input variables and generates a set of output variables that are either shared with other ECUs (102) as described above, or which are output to local actuators (109), which are connected via discrete signal lines (113), or to networked actuators, which are connected through a multiplexing bus (112)." '477 patent at 3:8–20. The specification further teaches that "[i]n the context of the present description, such information may include data, a signal, and/or anything else *capable of* being stored *and* shared." '477 patent at 3:25–28 (emphasis added).

Disregarding that general disclosure, Stragent focuses on only a single embodiment, in Figure 7, which it contends shows that information must be stored before it is shared. D.I. 66 at 17. But, even if information must be stored before being shared in the embodiment of Figure 7 (which Figure 7 does not show and the specification does not require), construing a term to cover this single embodiment and exclude others is improper. *See MTD*, 933 F.3d at 1342. A single embodiment cannot override what is clear from the claim language. *See Medegen MMS, Inc. v. ICU Medical, Inc.*, 317 Fed. Appx. 982, 987 (Fed. Cir. 2008) (quoting *Phillips*, 415 F.3d at 1323); *Finjan, Inc. v. Cisco Sys., Inc.*, 837 Fed. Appx. 799, 805 (Fed. Cir. 2020) ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms.") (quoting *Philips*, 415 F.3d at 1314) (internal quotation marks omitted; modification in original). Thus, Stragent's argument that Figure 7 requires both sharing and storing of information does not justify extending the storage requirement to the claim language, even if accurate.

13

Indeed, Stragent's flawed arguments and construction have already been rejected by the PTAB.  The PTAB found the phrase "sharing the information," used in directly related patents with the same specification (U.S. Patent Nos. 8,209,705 and 8,566,843), does not require the shared information to first be stored.  Specifically, in two separate proceedings finding the related patents to those asserted here unpatentable, the PTAB found:

- "[C]onstruction of 'sharing the information' *does not require* that the information be stored . . . the description of 'information' as 'capable of being stored *and* shared' in the '705 patent Specification is consistent with storage and sharing being *distinct concepts*."  IPR2017-00676, Paper No. 33 (Final Written Decision, '705 patent) at 18–19 (emphasis added).

- "Indeed, Petitioner identifies 'embodiments of the specification *that share information not using a shared storage*.'  In particular, the Specification of the '843 patent describes 'horizontal information sharing in a hierarchical system' where output variables generated by an ECU are output to local actuators, which are connected via discrete signal lines or networked actuators connected via a multiplexing bus."  IPR2017-01519, Paper No. 32 (Final Written Decision, '843 patent) at 17 (emphasis added, citations omitted).

Stragent raises two arguments in an attempt to distinguish the PTAB's findings.  Both fail.

First, Stragent argues that "the present claims are different from the claims considered in the IPRs."  D.I. 66 at 18.  But the specification and claim terms are identfical, and Stragent identifies no good reason why the term "sharing the information" should mean something different now than when the PTAB construed it.  Indeed, just as in the claims the PTAB considered, the claims of the '790, '765, and '036 patents use conditional language when describing storing the information.  *Compare* '705 patent at 12:29–30 ("in the event the storage resource is available, causing storage of the information utilizing the storage resource") *and* '843 patent at 12:29–31 ("code for, in the event the storage resource is available, causing storage of the information utilizing the storage resource"), *with* '790 patent at 13:1–2 ("in the event the storage resource is available, store the information utilizing the storage resource").  Stragent has not explained how

14

the claim language of the '790, '765, and '036 patents requires the term "storing the information" to be construed differently from the identical language in the related (and invalidated) '705 and '843 patents.

Second, Stragent argues that the PTAB's analysis is "irrelevant" because it construed the claims using the Broadest Reasonable Interpretation standard.  D.I. 66 at 18.  But Stragent does not explain why the different standard justifies ignoring the PTAB's previous analysis, which is part of each patent's file history and the intrinsic evidence.  *See Cronos Techs., LLC v. Expedia, Inc.*, C.A. No. 13-1538-LPS, 2016 WL 3982309, at *2 (D. Del. July 22, 2016) ("The prosecution history, which is 'intrinsic evidence,' 'consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent.'") (quoting *Phillips*, 415 F.3d at 1317); *Jonsson v. Stanley Works*, 903 F.2d 812, 818 (Fed. Cir. 1990) ("[T]he prosecution history of the [parent] patent and the construction of the term 'diffuse light' contained in that patent, is relevant to an understanding of 'diffuse light' as that term is used in the [CIP] patent.").  Stragent also does not explain what effect the different standard should have on the claims here.  Consistent with the PTAB, this Court should not "read [the 'stored'] limitation into the claims" based on Stragent's disregard of the intrinsic evidence and attempts to import limitations from embodiments in the specification into the claims.  D.I. 38 at 11 n.8.

Finally, Stragent's construction should also be rejected because it improperly prioritizes extrinsic evidence over the intrinsic record.  Dictionaries should be used to construe terms only after considering intrinsic evidence.  Yet, Stragent's primary support for its proposed construction is the Microsoft Computer Dictionary.  D.I. 66 at 15.  Notwithstanding, even Stragent's over-emphasis on this extrinsic evidence is misplaced, as not a single word from Stragent's proposed

construction is found in the Microsoft Computer Dictionary definition. *Compare id.* ("permitting the information stored in a storage resource to be used by another process"), *with* D.I. 66-6 at 7 ("share *vb.* To make files, directories, or folders accessible to other users over a network."). Indeed, Stragent's extrinsic evidence supports Defendants' consrtuction because the concept of "making" something "accessible," which is consistent with "sharing" information without "storing" it, is explicitly found in the Microsoft Computer Dictionary definition: "[t]o make files, directories, or folders accessible to other users over a network."[2]

For at least those reasons, the term "sharing the information" should be construed as "making the information accessible, without requiring storage of the information."

### F.    "configure the data structure of the non-volatile memory" ('477 patent, claim 23)

| Defendants' Proposed Construction | Stragent's Proposed Construction |
| --- | --- |
| "make a change to the data structure of the non-volatile memory" | "allocate memory, and/or implement the relationships between the data elements and/or the allowable functions" |

Stragent's argument in support of its proposed construction of "configure the data structure of the non-volatile memory" violates basic claim construction principles. First, Stragent again attempts to elevate dictionary definitions over the intrinsic record. But it is well-settled that dictionaries and other extrinsic evidence are generally "less reliable than the patent and its prosecution history in determining how to read claim terms." *Phillips*, 415 F.3d at 1318. Second,

---

[2] Stragent argues that there is a distinction between "sharing" and "transmitting," without explaining what this distinction is or why it matters. D.I. 66 at 17. Defendants advised Stragent before Stragent filed its Initial Brief that Defendants propose to construe "sharing the information" to mean "making the information accessible, without requiring storage of the information." Accordingly, Defendants' proposed construction never uses the word "transmitting," and any distinction between "sharing" and "transmitting" (which Stragent never explains) is irrelevant, and Stragent's unsupported argument should be ignored.

Stragent argues that the dictionary definition of "configure" is "to set up," but fails to explain how this definition supports its proposed construction, which is not "to set up."  D.I. 66 at 18.  Even assuming that the dictionary meaning of "configure" means something broader than "mak[ing] a change" to a data structure, that is not how the phrase "configure the data structure" is used in the '477 patent.  It is well-settled that the specification "is the single best guide to the meaning of a disputed term."  *Phillips*, 415 F.3d at 1315 (citations omitted).

As explained in Defendants' Opening Brief, the specification expressly discloses reconfiguring the disclosed system's computing infrastructure by "mak[ing] changes to its bulletin board parameters."  '477 patent at 10:15; D.I. 67 at 16–17.  These changes occur in a secured configuration and upgrade mode.  '477 patent at 11:31–33.  The only intrinsic evidence that Stragent cites in support of its proposed construction is a portion of the specification that refers to a configuration manager.  *Id.*  But Stragent fails to explain how this portion of the specification informs what "configure the data structure" means.  Because Defendants' proposed construction is supported by the specification and Stragent's is not, the Court should adopt Defendants' proposed construction.

SHAW KELLER LLP

*/s/ Andrew E. Russell*
_____

Karen E. Keller (#4489)
Andrew E. Russell (#5382)
Nathan R. Hoeschen (#6232)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

OF COUNSEL:

Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
1875 Explorer Street, Suite 800
Reston, VA  20190
(571) 203-2700

R. Benjamin Cassady
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER LLP
901 New York Avenue, NW

17

Washington, DC   20001-4413
(202) 408-4000

OF COUNSEL:

Edward J. DeFranco
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

Jeffrey S. Gerchick
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, DC  20005
(202)-538-8000

Brett N. Watkins
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
711 Louisiana Street, Suite 500
Houston, TX  77002
(713) 221-7030

*Attorneys for Defendants BMW of North
America, LLC and BMW Manufacturing Co.,
LLC*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Cameron P. Clark*
_____
Jack B. Blumenfeld (#1014)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendants Mercedes-Benz USA,
LLC, Mercedes-Benz Vans, LLC, Daimler
Trucks North America, LLC and Daimler
North America Corp.*

OF COUNSEL:

Lewis E. Hudnell, III
HUDNELL LAW GROUP P.C.
800 West El Comino Real, Suite 180
Mountain View, CA  94040
(650)564-7720

February 15, 2022

STAMOULIS & WEINBLATT, LLC

*/s/ Stamatios Stamoulis*
_____
Stamatios Stamoulis (#4606)
800 North West Street, Third Floor
Wilmington, DE  19801
(302) 999-1540
stamoulis@swdelaw.com

*Attorneys for Defendant
Volvo Car North America, LLC*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 15, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 15, 2022, upon the following in the manner indicated:

Sean T. O'Kelly, Esquire                                    *VIA ELECTRONIC MAIL*
George Pazuniak, Esquire
Thomas H. Kramer, Esquire
O'KELLY & ERNST, LLC
824 North Market Street, Suite 1001A
Wilmington, DE  19801
*Attorneys for Plaintiff*

Thomas F. Meagher, Esquire                              *VIA ELECTRONIC MAIL*
Alan Christopher Pattillo., Esquire
MEAGHER EMANUEL LAKS GOLDBERG
   & LIAO, LLP
One Palmer Square, Suite 325
Princeton, NJ  08542
*Attorneys for Plaintiff*


                                        */s/ Cameron P. Clark*
                                        _____
                                        Cameron P. Clark (#6647)