**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

# Claim Construction Hearing
June 29, 2022

STRAGENT, LLC

v.

BMW OF NORTH AMERICA et. al,. C.A. No. 20-510-JDW
MERCEDES-BENZ USA et. al., C.A. No. 20-511-JDW
VOLVO CAR USA LLC, C.A. No. 22-293-JDW

## Patents and Claims In Suit

- Patent 9,705,765 claims 12, 24, 26, 27, 28, 31

- Patent 10,002,036 claims 1, 9, 19, 34, 38, 72, 78, 79, 82, 98, 102-14, 117, 121, 122

- Patent 10,031,790 claims 1, 2, 4-6, 8, 9, 15, 16, 18-20, 22-24

- Patent 10,248,477 claims 23, 26, 27

- All four patents share common specification

2

## Legal Standard

- "'[T]he words of a claim are generally given their ordinary and customary meaning,' which is 'the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application.'"

- "although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments. … In particular, we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."

  - *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13, 1323 (Fed. Cir. 2005)

3

## A. "Debugging mode"   '477 claims 27, 28

| Stragent's Construction | Defendants' Construction |
|---|---|
| "a program or module [mode] to detect, locate and fix errors in the system while it is running." | "a mode, distinct from normal operation, that allows the network to run in a fail-safe reduced operation mode or in a diagnostic mode that allows inspection of the system, while it is running" |

***Plain and ordinary meaning to a skilled artisan:***

<u>Ordinary meaning to skilled artisan</u>:  "Debug" means "To detect, locate, and correct logical or syntactical errors in a program or malfunction in hardware" *(Microsoft Dictionary)*

<u>Different than "Diagnostic Mode"</u> --  "a mode, distinct from normal operation, that allows inspection of the system while it is running"  *(Joint Claim Chart)*

4

# "Debugging mode"  '477 claims 27, 28

- Claims differentiate "diagnostics" and "debugging":

> 4. The system of claim 1, wherein the electronic control unit comprises code for the electronic control unit to run in a diagnostic mode that allows inspection of the system, while the electronic control unit is running.
>
> 5. The system of claim 4, wherein the electronic control unit comprises code for the electronic control unit to additionally run in a debugging mode.

> 15. The system of claim 12, wherein the electronic control unit comprises code for the electronic control unit to run in a diagnostic mode that allows inspection of the system, while the electronic control unit is running.
>
> 16. The system of claim 15, wherein the electronic control unit comprises code for the electronic control unit to additionally run in a debugging mode.

> 28. The system of claim 24, wherein the electronic control unit comprises:
>     code to run in a diagnostic mode that allows inspection of the system, while the electronic control unit is running;
>     code to run in a debugging mode;

5

# Patent Uses "Debug" Consistently With Ordinary Technical Meaning



FIG. 17 describes the various modes that the distributed communications and computing system (100) can be operated in. In one embodiment, the system operates in various distinct modes in order to preserve the integrity of the system and still allow for changing the architecture and behavior of the network or the roles of the individual nodes. When the distributed computing and communication system wakes up from the sleep mode (1701), it can enter a configuration and upgrade mode (1702), an emergency or debug mode (1704), or the normal real-time run mode (1703).

Col 9, ll 56-66

But any processing node may enter a debug/emergency mode (1704) if a failure or other qualifying event occurs.

Col 10, ll 29-31

6

# "Debugging mode"     '477 claims 27, 28

- Sentence relied on by Defendants is consistent with ordinary technical meaning:

  "The *emergency or debug* mode <u>lets the network run</u> in a fail-safe reduced operation mode <u>or</u> in a diagnostic mode that allows inspection of the system, while it is running" (Col 11, ll. 36-39)

  "A claim term is generally given its plain and ordinary meaning as understood by a skilled artisan. … 'We depart from the plain and ordinary meaning of claim terms based on the specification in only two instances: lexicography and disavowal.' … 'To act as its own lexicographer, a patentee must **clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning and must clearly express an intent to redefine the term**.' … Embodiments in the specification—even if there is only one embodiment—cannot limit the scope of the claims absent the patentee's 'words or expressions of manifest exclusion or restriction.'"

  *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 967 (Fed. Cir. 2022) (internal citations omitted)

- Inventor did not change ordinary meaning or disclaim

7

## B.  "issue a storage resource request in connection with a storage resource of the automotive electronic control unit"

| Stragent's Construction | Defendants' Different Constructions |
|---|---|
| No construction is needed.<br><br>If construction is needed, "make a request in connection with the storage resource of the automotive electronic control unit" | *Claim chart:*<br>"issue a request for <u>storing a message</u> in conjunction with the message being received at the automotive electronic control unit/hardware processor"<br><br>*Revised in Answering Brief*:<br>"issue a request for <u>storing information associated with a message</u> in conjunction with the message being received at the automotive electronic control unit/hardware processor" |

- No construction required
- No fundamental dispute, but only Defendants' attempt at rewriting limitation

- *O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (recognizing that "district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims"); *Sentient Sensors, LLC v. Cypress Semiconductor Corp.*, 2021 U.S. Dist. LEXIS 93222 at *3 (D. Del. 2021) ("Defendant asserts that 'when parties dispute a term appearing in the body of the claims, it must be construed.' … That statement of law is incorrect")

8

## Problems With Defendants' Construction

> receive information in the form of a packet data unit including a datum carried by a received message from the first physical network, utilizing a first network protocol;
> in response to the receipt of the information, <u>issue a storage resource request in connection with a storage resource</u>;
> determine whether the storage resource is available for storing the information;

- *Defendants' construction*:
- "issue a request <u>**for storing information**</u> associated with a message **in conjunction** with the message being received at the automotive electronic control unit/hardware processor"

"For storing information"
  Limitation does not require that request must be "for storing information"

"Conjunction"
  The word is not found in the intrinsic record
  It is narrower than "connection"
  It is different than "in response"

9

# Problems With Defendants' Construction

> receive information in the form of a packet data unit including a datum carried by a received message from the first physical network, utilizing a first network protocol;
> in response to the receipt of the information, <u>issue a storage resource request in connection with a storage resource</u>;
> determine whether the storage resource is available for storing the information;

▸ *Defendants' construction*:

"issue a request <u>for storing information</u> associated with a message **in conjunction** with the message being received at the automotive electronic control unit/hardware processor"

"Conjunction" does not explain any term, but adds a new extraneous limitation to the claims that now would have to be construed

> "One problem with Mylan's proposed "minor variations" construction is that, without additional precision, it actually adds to the uncertainty of claim scope compared to the ordinary meaning. Such a construction works against the core purpose of claim construction, which is to clarify claim scope."
>
> *AstraZeneca AB v. Mylan Pharm. Inc.*, 19 F.4th 1325, 1342 (U.S. Fed. Cir. 2021)

10

## C. "determining whether a storage resource is available"
### '765 Patent, claims 12 and 24

| Stragent's Construction | Defendants' Different Constructions |
|---|---|
| No construction is needed.<br><br>If construction is needed, "ascertain or decide the availability of a storage resource" | *Claim Chart*:<br>"determine the availability of a storage resource <u>for a message in the automotive electronic control unit</u> in conjunction with the message being received by the automotive electronic control unit"<br><br>*Revised in Answering Brief*:<br>"determine the availability of a storage resource <u>for information associated with a message in the automotive electronic control unit</u> in conjunction with the message being received by the automotive electronic control unit" |

- No construction required

- Defendants' constructions rewrite limitation

11

# "determining whether a storage resource is available"
## '765, claims 12 and 24

> 12. An apparatus, comprising:
> an automotive electronic control unit comprising a hardware and instructions for:
> receiving information associated with a message received utilizing a Controller Area Network protocol associated with a Controller Area Network;
> <u>determining whether a storage resource is available;</u>
> if the storage resource is not available, ascertaining whether a threshold has been reached and re-trying an access in connection with the storage resource if the threshold has not been reached;

- *Defendants' current construction*:

  "determine the availability of a storage resource for information associated with a message in the automotive electronic control unit in conjunction with the message being received by the automotive electronic control unit"

- Everything in red is extraneous to limitation
- Directly inconsistent with Defendants' argument on "sharing"

12

# D. "re-trying an access in connection with the storage resource"
### '765, claims 12 and 24

| Stragent's Construction | Defendants' Construction |
|---|---|
| No construction is needed.<br><br>If construction is needed, "making another attempt to ascertain or decide the availability of a storage resource" | "again determining whether a storage resource is available after a first determination that a storage resource is not available, for example by issuing another storage resource request in connection with the storage resource" |

- No construction required

- The complete limitation:

> determining whether a storage resource is available;
> if the storage resource is not available, ascertaining whether a threshold has been reached and re-trying an access in connection with the storage resource if the threshold has not been reached;

- Defendants' "for example" is wholly made-up with no support in earlier claim language
  - Claims never required issuing a storage request

13

# E. "sharing *the* information"

| Stragent's Construction | Defendants' Different Constructions |
|---|---|
| "permitting the information stored in a storage resource to be used by another process" | *Claim Chart*: "transmitting the information, without requiring storage of the information prior to transmitting"<br><br>*Revised in Opening Brief*: "making the information accessible, without requiring storage of the information" |

- What is "*the* information"?
  - information that was stored as per prior limitations
  - any information received by ECU

- "the information" is the immediately prior "information,"
- which is the stored information

14

14

## "sharing the information"

Defendants' cited case does not support Defendants' argument.

The case provides a two-part test for determining if the steps of a method claim that do not otherwise recite an order, must nonetheless be performed in the order in which they are written:

> "First, we look to the claim language to determine if, as a matter of logic or grammar, they must be performed in the order written. … If not, we next look to the rest of the specification to determine whether it 'directly or implicitly requires such a narrow construction.'"

*Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369-70 (Fed. Cir. 2003)

15

# "sharing the information"

▸ Information has to be stored before being shared

▸ Claims require sharing using a different protocol

> in the event the storage resource is available, store the information utilizing the storage resource; and
> share the information utilizing a Controller Area Network protocol associated with the Controller Area Network, the automotive electronic control unit remaining in hardwired communication with the Flexray network and the Controller Area Network,

('790 Patent Claim 1)

> if the storage resource is available, storing the information utilizing the storage resource; and
> sharing the information utilizing a Flexray network protocol associated with a Flexray network;
> wherein the receiving, the determining, the storing, and the sharing all occur in less than one second;

('765 Patent Claims 12, 24)

▸ Not possible to share information utilizing a different protocol without first storing the information

16

# "sharing the information"

Defendants cite specification:

- "[i]n the context of the present description, such information may include data, a signal, and/or anything else capable of being stored *and* shared."
  - (DI 76 at 11, quoting '477 patent at 3:25–28).

- Consistent with Stragent's construction

- The conjunctive "and" says must be both "stored and shared"

17

## F. "configure the data structure of the non-volatile memory"
### '477, claim 23

| Stragent's Construction | Defendants' Construction |
|---|---|
| "Allocate memory, and/or implement the relationships between the data elements and/or the allowable functions" | "make a change to the data structure of the non-volatile memory" |

- Specification:

> The bulletin board manager (501) contains an upgrade and configuration manager (507), an event manager (505), a data access manager (508), and a data integrity watchdog (506). The upgrade and configuration manager (507) is necessary <u>to configure the data structure of the bulletin board and to make executable code available to individual processing nodes.</u>

- Specification does not redefine term or disclaim
- Hence plain and ordinary meaning applies

18

# Problems With Defendants' Construction

| Claim Language | Defendants' Construction |
|---|---|
| "configure the data structure of the non-volatile memory" | "make a change to the data structure of the non-volatile memory" |

- Defendants substitute "configure" with "make a change to" - which changes meaning

| "Configure" | "Change" |
|---|---|
| "to set up for operation especially in a particular way" | "1a. to make different in some particular …. 2a: to replace with another" |
| https://www.merriam-webster.com/dictionary/configure | https://www.merriam-webster.com/dictionary/change |

> "One problem with Mylan's proposed "minor variations" construction is that, without additional precision, it actually adds to the uncertainty of claim scope compared to the ordinary meaning. Such a construction works against the core purpose of claim construction, which is to clarify claim scope."
>
> *AstraZeneca AB v. Mylan Pharm. Inc.*, 19 F.4th 1325, 1342 (U.S. Fed. Cir. 2021)

19

# Problems With Defendants' Construction

| Claim Language | Defendants' Construction |
|---|---|
| "**configure** the data structure of the non-volatile memory" | "**make a change to** the data structure of the non-volatile memory" |

- No intrinsic record support that "configure" means "changing"

- Defendants cite '477 Patent at col 10 lines 12-15:

> Each processing node (ECU or gateway) <u>may have</u> security mechanisms such as a certificate that allows it to identify and authorize another entity (remote gateway, remote ECU, or development tool) <u>to make changes to its bulletin board parameters</u>.

- Cited section is merely a "may have" embodiment
- Inventor did not act as lexicographer or disclaim

- Further, "parameters" is not a "data structure"

20