# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STRAGENT, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>BMW OF NORTH AMERICA, LLC, and<br>BMW MANUFACTURING CO., LLC,<br><br>  Defendants. | Civil Action No. 1:20-cv-00510-JDW |

## STRAGENT'S REPLY IN SUPPORT OF
## ITS MOTION FOR ISSUANCE OF A HAGUE CONVENTION REQUEST

George Pazuniak (#478)
O'Kelly & O'Rourke, LLC
824 North Market Street, Suite 10001A
Wilmington, DE 19801
Direct: 207-359-8576
gp@del-iplaw.com

*Attorneys for Plaintiff Stragent, LLC.*

**TABLE OF CONTENTS**

I. SUMMARY OF RESPONSE TO BMW'S OPPOSITION ................................... - 1 -

II. RESPONSE ................................................................................................................. - 2 -

    1. Stragent's Infringement Contentions are Not Limited to a Single ECU - 2 -

    2. The Third-Party OEMs Are Not Proper Discovery Targets .................... - 3 -

    3. Stragent's Discovery Is Limited and Relevant ......................................... - 6 -

    4. BMW's Objections Are Based on a Flawed Premise ................................. - 7 -

    5. Stragent Has Followed the New German Law ......................................... - 8 -

    6. *Aerospatiale* Factors .................................................................................. - 9 -

III. CONCLUSION ......................................................................................................... - 10 -

## TABLE OF AUTHORITIES

CASES

*Arcelik A.S. v. E.I. DuPont de Nemours & Co.*,

   856 F. App'x 392 (3d Cir. 2021)-------------------------------------------------------------- 8 -, - 10 -

*Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for the Southern Dist. of*

   *Iowa*,

   482 U.S. 522 (1987) ---------------------------------------------------------------------------- - 4 -, - 9 -

### I. Summary Of Response To BMW's Opposition

Defendants' (collectively "BMW") opposition to Stragent's reasonable discovery request distorts Stragent's First Supplemental Complaint ("FSC") and Stragent's infringement contentions as limiting infringement to one BMW part number. The accused instrumentalities in the FSC, in accordance with the claims, are all vehicles that BMW made or sold after July 2017. Yet, BMW's entire opposition rests on that mischaracterization of Stragent's FSC as being limited to the one part number.

BMW actually falls over its own feet in its opposition. On the one hand, BMW argues that it is not relevant for Stragent to discover which Autosar specification is utilized by the BMW Group, but then argues that only certain versions of Autosar could infringe the claims – in effect arguing that BMW can preclude finding of infringement because it can block discovery of which Autosar version it utilizes.

BMW also misportrays BMW AG as an innocent third-party. But BMW AG is BMW's parent. Moreover, it is BMW who had pointed the finger at BMW AG when BMW excused the failure to produce any relevant documents on the grounds that it is BMW AG that designs and specifies BMW's cars. BMW also proposes that Stragent should first pursue multiple Hague requests against BMW AG's third-party suppliers, and, yet, does not present even a pretense of a record that would justify the conclusion that filing such multiple Hague requests against such third-party suppliers would more efficiently adduce more material and credible information than seeking the information directly from BMW AG. BMW's proposed alternative of seeking discovery of multiple third-parties in Germany would not only fail to determine the issues against BMW, but would only multiply the number of Hague Requests that Stragent would have to pursue, with each presenting more difficult issues than the present straightforward request.

### II. Response

**1. Stragent's Infringement Contentions are Not Limited to a Single ECU**

BMW asserts that Stragent accuses only one ECU, BMW Part MEVD172G, of infringement. (DI 105 at 1, 4, 7). That is incorrect for at least two reasons. First, Stragent has not accused any ECU *per se* of infringement. To the contrary, Stragent has pled that "automobiles which are manufactured by BMW MC, whether sold in this country or exported, and all BMW-branded and Mini-branded automobiles used, offered for sale, sold or imported by BMW NA, since July 11, 2017" are accused of infringement. (D.I. 54 ¶¶ 6, 29, 37, 45). Indeed, one of the asserted claims specifically recites "a *vehicle* and an automotive electronic control unit installed in the *vehicle* …" (e.g., Patent 10,031,790 claim 26, DI 54 at p. 72, Col. 17 lines 10-12).[1] Directing infringement at the cars that contain ECUs is a proper approach as typical BMW automobiles are believed to include in excess of 100 ECUs, with each ECU being in communication with other ECUs in that automobile. Thus, the entire automotive unit is the only logical infringing entity.

Second, Stragent has accused all BMW automobiles sold since July 11, 2017 of infringing, which, again, is logical as BMW has standardized to include Autosar-compliant ECUs across all its car lines. Stragent has pled:

> 12. In the period from July 11, 2017, all BMW Autos that have been made, used, offered for sale, sold or imported into this country (including the X1, X2, X3, X4, X5, X6, X7, i3, i8, The BMW 2, 3, 4, 5, 7, 8 Series, Z4 and M Models, as well as BMW's Mini-branded automobiles) have incorporated the Autosar technology.

(DI 54 at ¶ 12). That Autosar-compliant automobiles infringe is supported by claim charts attached to the original Complaint (DI 001-5 through DI 1-8), and then further detailed in

---

[1] BMW refers to "Stragent's First Amended Complaint ("FAC")" (DI 105 at 1). In fact, Stragent filed a First Supplemental Complaint or FSC. (DI 54).

- 2 -

Stragent's Infringement Contentions which Stragent submitted during discovery.

Stragent cited BMW Part MEVD172G to illustrate that "it is impossible to determine the Autosar detail for any given BMW Auto" (DI 54 at ¶ 15); and that the part number "illustrates the impossibility of determining the exact software that the BMW Group had specified for any particular ECU or automobile." (*id*. at ¶ 16). Stragent never identified MEVD172G as an Accused Instrumentality, and certainly never suggested that its infringement allegations were limited to that one part.

In short, nothing in Stragent's First Supplemental Complaint suggests, or would lead to the conclusion, that this case involves only BMW Part MEVD172G, as opposed to all cars which BMW has made or sold in this country since July 2017.

**2.     The Third-Party OEMs Are Not Proper Discovery Targets**

BMW argues repeatedly that Stragent should first seek information from its original equipment manufacturers ("OEMs"), such a Bosch. For example, BMW argues: "Stragent never explains why it could not seek discovery from the suppliers more likely to have the information it seeks concerning the implementation and operation of AUTOSAR in those suppliers' products." (DI 105 p. 2). BMW's argument has multiple fatal deficiencies.

i.      BMW cites no record, and simply speculates, that BMW AG is not itself a manufacturer and supplier of Autosar-compliant ECUs. From all that BMW has disclosed about its manufacturing of its cars, it is just as likely that at least some of the Autosar ECUs were manufactured by BMW AG rather than by third-party OEMs.

ii.     BMW cites no record, and simply speculates, that the OEMs would have pertinent information. Even if the OEMs manufactured all Autosar ECUs, the ECUs are simply hardware with some software. BMW's cars are not charged with infringement because they contain ECUs,

but because they contain ECUs that are programmed to provide signaling following the Autosar specification.  No record shows that the final programming is provided by the OEMs, as opposed to by BMW AG.  Moreover, even if the OEMs program the ECUs, it is still BMW AG that decides what communication protocol will be embedded in the ECUs.

   iii. BMW presents no authority for its underlying proposition that the availability of alternate sources of information is a proper objection to Stragent's Request under the Hague Convention.  BMW cites *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for the Southern Dist. of Iowa*, 482 U.S. 522 (1987), and particularly footnote 28 which mentions "alternative means of securing information" as a "comity" factor.  But Stragent would have to go through the Hague Convention to, for example, obtain any information from Bosch in Germany.  Nothing in the Federal Rules or in the Hague Convention authorizes a Court to balance different sources of discovery to decide which is the better source, and certainly not when it is a choice between two Hague Requests to the same country.

   iv. BMW does not explain how it is more efficient or fairer to pursue Hague Convention discovery against multiple OEMs, than to proceed against BMW AG.  As between the OEMs and BMW AG, BMW AG is by far the more appropriate source of discovery.  BMW AG is the parent of the BMW Defendants in this case, and has manufactured and placed into this country at least many of the accused BMW cars.  The OEMs are not parties, and are not Defendants' parents, subsidiaries or other affiliates.  Nor do the OEMs build the cars with the networked Autosar-compliant ECUs.  As between BMW AG and the OEMs, the former is the proper target of discovery.

   v. BMW AG is the controlling party.  The OEMs do not supply Autosar-compliant ECUs to BMW as a commodity.  The record shows that BMW has publicly represented that it

requires its OEMs to supply ECUs that contain BMW-specified Autosar functionality. (DI 101-2 at pp. 2-4). Attached hereto is another BMW Press Release, issued when BMW introduced Autosar in its first car line, and where BMW clearly states:

> The new BMW 7 Series sees the global debut of ECUs with Autosar … in series production. AUTOSAR has been introduced both on the software applications layer of the 7 Series and in its infrastructure software. The BMW Group will continue to pursue the standardisation of interfaces together with its development partners. Step by step, AUTOSAR is set to make increasing inroads into future generations of vehicles. Elmar Frickenstein, Head of Electrics/Electronics and Driver Environment, confirms the goal going forward: "*We want to achieve 100% Autosar usage in all of our vehicles.*"

(Exhibit 1).

Indeed, no car manufacturer would allow OEMs to supply ECUs with whatever signaling protocol that the OEM decided. Every car has to provide communication between scores of ECUs over multiple networks. Every car manufacturer must necessarily specify to its OEMs the required communication signaling which the OEMs must follow.

vi. BMW is, no doubt inadvertently, setting Stragent up to pursue Bosch or other OEMs only to have the OEMs challenge discovery because the information is BMW's trade secret.

vii. BMW cites the statement in DI 101-2 that "ECU manufacturers [s]hall have their own sourcing strategy for the AUTOSAR stack." (DI 105 at p. 10). But BMW requires that the OEM "Has to ensure that 'his' stack is compliant to the required AUTOSAR version." (DI 101-2 at p. 4). That is, multiple companies provide the basic Autosar software, and the OEMs can choose amongst them, or develop their own. However, it is BMW that specifies the "required Autosar version" -- i.e., it directs the OEMs what that Autosar software must do. It is preposterous to suggest that the "stack" language means that each OEM can choose which Autosar version will be embedded in its ECU – regardless of the Autosar version of all the other

ECUs. The "Autosar stack" merely executes the Autosar protocol that BMW AG specifies. Again, the programming choices come from BMW AG, not from the various OEMs.

        viii.    BMW AG has documents that the OEMs would not have. BMW does not suggest that any of the several OEMs would have the identical information as would BMW AG. While BMW AG would manifestly have the information relating to each of the OEMs, it is impossible for any OEM to have the full scope of documents that could be found in BMW AG.

        ix.    It makes no legal, practical or logical sense to seek discovery from multiple third-parties, when the critical information can be obtained from BMW AG which is Defendants' parent and is the lead orchestrator of the infringement. An OEM can only provide information relating to its own product, but not as to other ECUs. On the other hand, BMW AG can provide information as to all ECUs in all BMW cars.

**3.**     **Stragent's Discovery Is Limited and Relevant**

BMW's argument that Stragent seeks information about "hundreds or thousands of combinations of components and software" (p. 8) is unsupported. Stragent's three document requests are very limited and could potentially be satisfied by a relatively few documents. If there was a huge amount of documentation, BMW could easily have obtained, and provided to the Court, supporting information from BMW AG. BMW's failure to provide any actual detail speaks volumes. BMW has the burden of proving undue burden. Similarly, the scope of the testimony is very limited to basically just describing BMW AG's use of Autosar.

BMW's argument also makes no logical sense. BMW has repeatedly and clearly stated that it is "standardizing" on Autosar. (DI 101-2; Exhibit 1). "Standardization" means that that all the ECUs across the various car lines will utilize the same Autosar protocol which means that there is likely only one specification (perhaps with some version updates). It would contradict

BMW's stated policy of standardization if there were multiple different specifications for every different Autosar implementation, or if BMW would have separate communication protocols for each ECU as BMW argues here.  There is likely a single BMW specification that requires all ECUs in all BMW cars to comply with a defined Autosar version.  That one specification will define which Autosar version is incorporated in all ECUs in all BMW cars.  From there, the parties can proceed with their infringement and validity arguments. It is notable that neither of the other parties in the related cases have taken the position that producing the Autosar-related specification would be too burdensome.

4.     **BMW's Objections Are Based on a Flawed Premise**

BMW argues that Stragent seeks irrelevant information.  (DI 105 at pp. 1).  BMW's argument, however, assumes that Stragent accuses only one part number of infringement, which, of course, is plainly untrue.  (pp. 2-3, *supra*).  BMW has not presented any argument that Stragent's requests are irrelevant if one considers the correct premise that Stragent accuses all BMW automobiles made or sold in this country after June 2017 as the accused instrumentalities.

BMW also argues that Stragent's limited discovery does not seek relevant testimony. (DI 105 at 6-7).  But the discovery seeks to determine which Autosar version is embedded in BMW's cars, which can only come from BMW AG.  Thus, BMW argues that determining the Autosar version in its cars is not relevant.  But, at the same time, BMW underscores the critical nature of the discovery by itself arguing that "AUTOSAR has several different versions, each of which has optional features that may or may not be implicated" and that "Stragent's patents are not essential to each and every version and feature of Autosar."  (DI 105 at 7).  Thus, on the one hand, BMW argues that Stragent must prove which version of Autosar is embedded in its cars, but then tries to preclude Stragent from discovering that critical information.

5.     **Stragent Has Followed the New German Law**

BMW alleges that the limited Hague Request here in issue contradicts German public or judicial policies. (DI 105 at 2, 11-14). The argument is legally irrelevant. The Third Circuit recently dismissed as a matter of law BMW's argument because "[t]o the extent Germany and India's national interests … are implicated in this case, their courts will provide the relevant protection." *Arcelik A.S. v. E.I. DuPont de Nemours & Co.*, 856 F. App'x 392, 399-400 (3d Cir. 2021). It is for the German Authority, and not this Court, to determine the allowable scope of the new law and what discovery should be allowed under the relevant German policies. This Court is not in a position to interpret a newly-passed law by Germany, particularly where the law allowed document discovery for the first time. Similarly, the German Authority can prescribe how testimony will be adduced. *Arcelik A.S.*, *supra* ("it was proper for the District Court to include the former employee's name in the letter of request under the Hague Convention, designating a person with relevant information and deferring to German courts to resolve any disputes about that person's testimony under German law.")

BMW AG may also need to assess its interests. It can agree to provide the limited information requested by Stragent so that the issues can be fully and completely determined against the U.S. Defendants in the present action. If BMW AG blocks such reasonable discovery in this case, Stragent would then likely have to bring an independent action against BMW AG. BMW AG is subject to this Court's personal jurisdiction and can be served under the Hague's Service of Process rules. Stragent could then seek the far-broader scope of discovery from BMW AG as a party to the action, rather than the limited discovery in the Request.

Further, even were the Court to assess German public policy, it is noteworthy that the German law cited by BMW does not even generally say what BMW argues, and BMW has not

presented any decisions by relevant German authorities in support of BMW's contentions. Instead, BMW presents only *ipsi dixit*.

Yet, until July 1, 2022, Germany forbade any document discovery under the Hague Convention, but has now amended its law to increase and expand allowable discovery. Stragent has prepared a Request that attempted to comply with the new law, and BMW has not pointed to any part of the Request that is contrary to the new law.

In accordance with the new law, Stragent narrowly tailored the Request to seek limited, but critical, documents necessary for Stragent to present its infringement case. The entire responsive production could reasonably consist of nothing more than one BMW specification and some OEM agreements. There is certainly nothing outlandish or unreasonable about the scope of the Request.

**6.     *Aerospatiale* Factors**

BMW argues that Stragent has not addressed the *Aerospatiale* comity factors. But that case involved an entirely different issue of whether the Hague Convention was the sole method of obtaining discovery, and the stated comity issues do not necessarily apply equally to different types of cases. The Court never stated that all the footnote 28 factors applied equally to a Request issued under the Hague Convention. In any event, the factors support the issuance of the Request:

(1) Importance of requested discovery: Given that the requested discovery goes to the heart of Stragent's infringement case and BMW claims not to have the relevant information, the requested discovery is unambiguously important to the litigation.

(2) Specificity of the request: The Request includes only three document requests, each being narrow and specific. Request 1 is for relatively current specifications for ECUs to the

extent that the specifications are directed to Autosar signaling.  Given that the entire point of Autosar is standardization across all ECUs and car lines, it is likely that this request could potentially be responded to with a single specification that provides the Autosar signaling requirements for BMW cars.  The other two document requests are for agreements between BMW AG and OEMs to the extent that they include the word Autosar in their body.  There would at most be only a handful of such Agreements, if any.

(3)  <u>Where information originated</u>:  This factor has no application to the Hague Convention, as the Hague requests are only applicable where the information is located in the country where assistance is being sought.  Germany has now, for the first time, allowed U.S. companies to seek production of documents in the hands of German entities located in Germany

(4)  <u>Availability of alternative means of securing the information</u>:  As previously detailed, the same information is not available from any other single source, if any is available.

(5)  <u>U.S. and German Public Interests</u>:  The U.S. has a strong public policy interest in affording reasonable discovery to permit Courts to correctly decide issue of liability for patent infringement in this country.  Germany has agreed to require local entities to produce documents located in Germany, and has agreed to some form of testimonial discovery.  This Court can pass judgment only as to U.S. policy.  It is not in a position to assess German policy, and should not attempt to do so.  *Arcelik A.S. supra*, 856 F. App'x at 399-400.

### III. <u>Conclusion</u>

For the foregoing reasons, the Court should grant this motion and issue the Letter of Request attached as Exhibit B to the Motion.

Respectfully Submitted,

*/s/ George Pazuniak*
George Pazuniak (#478)
O'Kelly & O'Rourke, LLC
824 North Market Street, Suite 10001A
Wilmington, DE 19801
Direct: 207-359-8576
gp@del-iplaw.com

*Attorneys for Plaintiff Stragent, LLC.*